## THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Elizabeth Wilson Koeberer,
Beneficiary
Of the Elizabeth W. Koeberger (sic) Trust
2370 Village at Bexley Drive
Columbus, Ohio 43209

Plaintiff,

   v.

J. P. Morgan Chase Bank N.A.
CT Corporation System
4400 Easton  Commons Way
SUITE 125
COLUMBUS OH 43219

TD Ameritrade Inc.
CT Corporation System
4400 Easton Commons Way Suite 125
Columbus, Ohio 43219

Robert E. Weir, Attorney for
Wilson Family Trust
FRASE, WEIR, BAKER AND
MCCULLOUGH CO., L.P.A.
305 Main Street
Coshocton, OH 43812

Robert E. Weir, Attorney at Law
FRASE, WEIR, BAKER AND
MCCULLOUGH CO., L.P.A.
305 Main Street
Coshocton, OH 43812

Robert E. Weir, Successor Trustee
Elizabeth Koeberger  (sic) Trust
305 Main Street
Coshocton, OH 43812

Edson H. Wilson
7826 Nassau Loop,
Dublin, Ohio 43017

Christine Strom,
817 Lakewood Dr.
Jefferson City , Tn.37760

Ryan Gordon
Attorney at Law.
4921 McPartlan Court
Columbus, Ohio 43221

Ryan Gordon LLM
4921 McPartlan Court
Columbus, Ohio 43221

**Does 1-10**

Defendants,

## COMPLAINT

1.      Comes this day, Plaintiff Elizabeth Wilson Koeberer, by and through her attorney, who bring this Complaint for damages and federal declaratory relief against the Defendants, and represents as follows:

## JURISDICTION AND VENUE

2.      Because Plaintiffs claims arise under the laws of the United States this Court has jurisdiction over this matter. 28 U.S.C. § 1331.

3.      Because the Southern District of Ohio, is the judicial district and division in which the property that is the subject of the action is situated, where a substantial part of the events or omissions giving rise to the claims occurred and where the Plaintiffs reside, venue is proper. 28 U.S.C. § 1391(b); NDLR 3.1 B(1) – (3).

4.      Defendant JPMorgan Chase Bank, N.A. is an American multinational investment bank and financial services company headquartered in New York City and incorporated in Delaware.

5.      Chase is a national banking association organized under the laws of the United States. Chase is a citizen of Ohio with its main office located at 1111 Polaris Parkway, Columbus, Ohio 43240, as designated in the Articles of Association of Chase.

6.      This Court's exercise of personal jurisdiction over Chase would not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution because Defendant purposefully established minimum contacts in Ohio such that the maintenance of this action does not offend traditional notions of fair play and substantial justice. See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

7.      At all relevant times, Chase Bank engaged in business in Columbus, Ohio, and Coshocton, Ohio including but not limited to other locations, in their acts and practices described herein.

## PARTIES

8.      Defendant J.P. Morgan Chase Bank N.A. Defendant JPMorgan Chase Bank, N.A. is an American multinational investment bank and financial services company headquartered in New York City and incorporated in Delaware.

9.      Chase is a national banking association organized under the laws of the United States. Chase is a citizen of Ohio with its main office located at 1111 Polaris Parkway, Columbus, Ohio 43240, as designated in the Articles of Association of Chase.

10.      At all relevant times, Chase Bank engaged in business in Columbus, Ohio, and Coshocton, Ohio including but not limited to other locations, in their acts and practices described herein.

11.      Defendant T. D. Ameritrade Inc. is the holder of custodial of stocks and accounts under custody and control of Robert E. Weir, Trustee of the fictitiously named Elizabeth W. Koeberger (sic) Trust for the benefit of Plaintiff and her descendants.

12.      Defendant Robert E. Weir, Attorney at Law is the principal of Frase, Weir, Baker & and McCullough Co. L.P.A.  a dissolved corporation with its principal place of business listed as 305 Main Street, Coshocton, Ohio 43812 .

13.      Defendant Robert E. Weir, Attorney at Law is the successor trustee of Elizabeth W. Koeberger (sic)  Trust 7/15/11 **Exhibit A.**

14.      Defendant Robert E. Weir is an attorney in practice of law at 305 Main Street, Coshocton, Ohio 43812 and represents Wilson Family Trust.

15.     To the best of Plaintiff's information and belief, Defendant Robert E. Weir has been insured at all times by CNA Insurance under malpractice and fiduciary insurance renewed at all times relevant to this complaint.

16.     Defendant Edson H. Wilson is an individual residing at 7826 Nassau Loop, Dublin, Ohio. He is the youngest child of the decedent, Ruth J. Wilson with his siblings, Plaintiff Elizabeth Wilson Koeberer and Defendant Christine Wilson Strom.

17.     Defendant Christine Strom is an individual residing in the State of Tennessee and the sibling of the Plaintiff and Defendant Edson Hay Wilson.

18.     Defendant Ryan Gordon  is an attorney in the State of Ohio.

19.     Defendant Ryan Gordon also does business as Defendant Ryan Gordon, LLM and represented Plaintiff from 2021 to the filing of the civil action against Robert E. Weir in Franklin County Court of Common Pleas 22 cv 002604. On 4-20-2022, Defendant Gordon filed a verified complaint on behalf of Plaintiff which is still pending before Judge Cocroft however he withdrew as counsel for Plaintiff and she remains pro se in that matter.

## RELEVANT BANKING REGULATIONS

20.     Federal law requires banks to know their customers and understand their customers' banking behavior. Under applicable regulations, a bank must maintain procedures that allow it to "form a reasonable belief that it knows the true identity of each customer." 31 C.F.R. §§ 1020.220(a)(1), (2). Thus, banks are required to collect information about the holder of each account. Where an entity opens an account, the bank must obtain information concerning the individuals who control the account.

21.     The Financial Industry Regulatory Authority (FINRA) likewise imposes know-your-customer requirements and mandates "reasonable diligence, in regard to the opening and maintenance of every account," including the obligation "to know (and retain) the essential facts concerning every customer and concerning the authority of each person acting on behalf of such customer."

22.     **The Bank Secrecy Act (BSA)**, 31 USC 5311 *et seq* establishes program, recordkeeping and reporting requirements for national banks, federal savings associations, federal branches and agencies of foreign banks. The OCC's implementing regulations are found at 12 CFR 21.11 and 12 CFR 21.21. The **Bank Secrecy Act** was amended to incorporate the provisions of the USA PATRIOT Act which requires every bank to adopt a customer identification program as part of its BSA compliance program.

23.     Chase is obligated to comply with the Bank Secrecy Act (BSA), 12 C.F.R. § 21.21, including regulations broadening its anti-money laundering provisions.

24.     The BSA requires Chase to develop, administer, and maintain a program to ensure compliance. The program must be approved by the bank's board of directors and noted in the board meeting minutes. It must: (1) provide for a system of internal controls to ensure ongoing BSA compliance, (2) provide for independent testing of the bank's compliance, (3) designate an individual to coordinate and monitor compliance, and (4) provide training for appropriate personnel.

25.     Chase also must develop a customer due diligence program to assist in predicting the types of transactions, dollar volume, and transaction volume each customer is likely to conduct, thereby providing the bank with a means for identifying unusual or suspicious transactions for each customer. The customer due diligence program allows the bank to maintain awareness of the financial activity of its customers and the ability to predict the type and frequency of transactions in which its customers are likely to engage.

26.     Customer due diligence programs should be tailored to the risk presented by individual customers, such that the higher the risk presented, the more attention is paid. Where a customer is determined to be high risk, banks should gather additional information about the customer and accounts, including determining: (1) purpose of the account; (2) source of funds; (3) proximity of customer's residence to the bank; and (4) explanations for changes in account activity.

27.     Additionally, Chase must designate a BSA compliance officer who is a senior bank official responsible for coordinating and monitoring compliance with the BSA. The compliance officer

must, in turn, designate an individual at each office or branch to monitor the bank's day-to-day BSA compliance.

28.     The federal government established the Federal Financial Institutions Examination Council (FFIEC) in 1979 to prescribe uniform principles, standards, and report forms and to promote uniformity in the supervision of financial institutions. The FFIEC's Bank Secrecy Anti-Money Laundering Manual (FFIEC Manual) summarizes BSA and anti-money laundering compliance program requirements, risks and risk management expectations, industry sound practices, and examination procedures.

29.     The FFIEC Manual is based on BSA laws and regulations and BSA and anti-money laundering directives issued by federal banking agencies, such as the Federal Reserve, the Federal Deposit Insurance Corporation (FDIC), and the Office of the Comptroller of Currency. *See* FFIEC BSA/AML Examination Manual, at p. 5 (2010).

30.     Banks must also ensure that their employees follow BSA guidelines. Banks make compliance a condition of employment and incorporate compliance with the BSA and its implementing regulations into job descriptions and performance evaluations. Banks are therefore required to train all personnel whose duties may require knowledge of the BSA on that statute's requirements.

31.     Banks and their personnel must be able to identify and take appropriate action once put on notice of any of a series of money laundering "red flags" set forth in the FFIEC BSA/AML Examination Manual. These red flags include: (1) repetitive or unusual fund transfer activity; (2) fund transfers sent or received from the same person to or from different accounts; (3) transactions inconsistent with the account holder's business; (4) transfers of funds among related accounts; (5) depositing of funds into several accounts that are later consolidated into a single master account; (6) large fund transfers sent in round dollar amounts; (7) multiple accounts established in various corporate names that lack sufficient business purpose to justify the account complexities; (8) multiple high-value payments or transfers between shell companies without a legitimate business purpose; (9) payments unconnected to legitimate

contracts or revenue sources; (10) fund transfers containing limited content or related party information; (11) transacting businesses sharing the same address; and (12) an unusually large number of persons or entities receiving fund transfers from one company.

32.     The FFIEC Manual identifies "lending activities" and "nondeposit account services"—including nondeposit investment products—as services requiring enhanced due diligence and carrying a high risk of money laundering because they facilitate a higher degree of anonymity and involve high volumes of currency. Thus, the FFIEC Manual requires heightened due diligence on the part of banks when such services occur, including determining the purpose of the account, ascertaining the source and funds of wealth, identifying account control persons and signatories, scrutinizing the account holders' business operations, and obtaining explanations for account activity.

33.     Defendant Chase has custody and control of Defendant Weir's IOLTA account . "IOLTA" is an acronym for "Interest on Lawyers' Trust Accounts." Lawyers must place client funds into an IOLTA pursuant to Ohio Rule of Professional Conduct 1.15. The interest earned on these accounts generates revenue for the state's legal aid fund. Every lawyer licensed to practice in the state of Ohio who receives client funds (filing fees, unearned retainers, settlements, etc.) must establish an IOLTA. If a lawyer is associated with or employed by a law firm, the firm's IOLTA may be used. If a lawyer does not receive and disburse client funds and neither the lawyer nor the lawyer's firm maintains a trust account in Ohio, the lawyer is exempt from Ohio's IOLTA provisions.

## STATEMENT OF FACTS

34.     Plaintiff  **Elizabeth Wilson Koeberer** hereby incorporates the foregoing paragraphs as if fully set forth herein.

35.     Plaintiff is the great granddaughter of Sarah Hay Wilson who had four children, Mary Wilson Pomerene, Edson Hay Wilson, Jennie Wilson Burns McConnell and Belle Wilson Mizer.

36.     Plaintiff's great Aunts Belle Wilson Mizer and Mary Wilson Pomerene, both died without children and Great Aunt Mary Pomerene named Pomerene Hall after her husband at Ohio State University.

37.     Plaintiff is the granddaughter of Sarah Hay Wilson's son Edson Hay Wilson and his wife, Leila Biggs Wilson.

38.     Plaintiff's grandfather Edson Hay Wilson (also the name of her brother, the Executor of her mother's estate) died at a young age of 37 in 1909, from heart problems leaving her grandmother Leila Biggs Wilson to reside with her grandmother Sarah Hay Wilson and raise her two children, James Hay Wilson (Plaintiff's father) and Fred E. Wilson.

39.     Plaintiff's father Edson Hay Wilson was on the Board of Directors of Coshocton National Bank, and left his estate to his wife, Leila Biggs Wilson when he died in 1909, who then resided with Sarah Hay Wilson with her children.

40.     James Hay Wilson , Plaintiff's father was four years old when his father died in 1909.

41.     When James Hay Wilson, Plaintiff's father died in 1978 he was also on the Advisory Board of Directors of Coshocton National Bank.

42.     Upon James Hay Wilson's death, he left his estate to his wife, and their three children, Plaintiff **Elizabeth Wilson Koeberer**, a daughter Defendant **Christine Wilson Strom**, and her son also named Defendant **Edson Hay Wilson**.

43.     Plaintiff's father's estate included his bank stocks inherited from her grandfather.

44.     Plaintiff's mother, Ruth Jansson Wilson died  on 10-1-2013 in Franklin County Ohio.

45.     The generational wealth preserved by her grandmother, Leila Biggs Wilson and Plaintiff's great grandmother; Sarah Hay Wilson was passed on to Ruth J. Wilson for her stewardship.

46.     Plaintiff's great Aunt Mary Wilson Pomerene is the donor who affixed the name to "Pomerene Hall" in honor of her late husband Frank Pomerene's name and legal legacy.

47.     Prior to her mother's death in 2013 , Plaintiff Elizabeth Wilson Koeberer was recovering from an illness after being treated at the Cleveland Clinic in 2011 who misdiagnosed her condition as terminal.

48.     Plaintiff's severe illness resulted in the loss of her real estate portfolio when Plaintiff was unable to work, as well as the impact of the economic downturn in 2008.

49.     Subsequently her brother Edson Hay Wilson offered to assist her to "protect her assets" as she recovered from her serious illness.

50.     Before the death of Elizabeth's mother on October 1, 2013, Defendant Edson Hay Wilson retained the Sheppard Law Office 4-23-2012  to file an *Offer in Compromise* to settle Plaintiff's IRS debt after Plaintiff's illness.  All documents were submitted in the name of Elizabeth W. Koeberer while Plaintiff was ill and recovering in her home purchased by her mother in 2007.

51.     Edson Wilson, on behalf of the Wilson Family authorized the following representation to IRS:

> Sheppard Law Offices have been retained to submit an Offer in Compromise as full settlement of the tax debt Ms. Koeberer presently owes the Internal Revenue Service.
>
> Ms. Koeberer does not work, she has no means of income and has no assets other than a vehicle with the FMV of $3.421.60.
>
> The family has agreed to provide Ms. Koeberer with the funds to pay the Offer in Compromise in the amount of $3,421.00 which is the value of all Ms. Koeberer assets. As the situation presently exists; if Ms. Koeberer becomes deceased, there will be no assets for the IRS to collect from to resolve this tax issue.

**SHEPPARD LAW OFFICES CO., L.P.A.**

*We are a debt relief agency. We help people file for protection under the U.S. Bankruptcy Code.*

| Columbus Office | Newark (Main) Office | Mt. Vernon Office |
|---|---|---|
| 2600 Tiller Lane, Suite A | North Third Tower | 11 West Gambier Street |
| Columbus, Ohio 43231-2264 | 51 North Third Street Ste 409 | Mount Vernon, Ohio 43050-3301 |
| Phone: (614) 523-3106 | Newark, Ohio 43055-5566 | Phone: (740) 392-0404 |
| Fax: (614) 882-6750 | Phone: (740) 345-7138 | Toll Free: (877) 505-9455 |

February 20, 2013

Department of the Treasury
Internal Revenue Service
Brookhaven IRS Center COIC Unit
PO Box 9007
Holtsville, NY 11742-9007
(866) 611-6191

RE: Elizabeth W. Koeberer
    ID#: 279407530

To Whom It May Concern:

Sheppard Law Offices have been retained to submit an Offer in Compromise as full settlement of the tax debt Ms. Koeberer presently owes the Internal Revenue Service.

Ms. Koeberer does not work, she has no means of income and has no assets other than a vehicle with the FMV of $3,421.60.

Doctor Timothy Spiro of the Cleveland Clinic, Cleveland, Ohio has diagnosed Ms. Koeberer having Locally Advanced Left Lung Cancer which is considered terminally ill. There is a letter attached that expresses Ms. Koeberer condition in medical terms for your review.

The family has agreed to provide Ms. Koeberer with the funds to pay the Offer in Compromise in the amount of $3,421.00 which is the value of all Ms. Koeberer assets. As the situation presently exists; if Ms. Koeberer becomes deceased, there will be no assets for the IRS to collect from to resolve this tax issue. Ms. Koeberer is offering the value of her car as resolution to this tax debt before her death so for her to have piece of mind through this entire medical situation.

Please provide Sheppard Law Offices with your decision as soon as possible and if you need to contact my office, please call (614) 523 – 3106.

Thank you,

Kenneth L. Sheppard, Jr.
Attorney-at-Law

Cc:    file
      Ms. Elizabeth W. Koeberer

52.     The Offer in Compromise was subsequently rejected by the IRS in 2015.

53.     Plaintiff slowly recovered from her illness but was unable to return to work as a realtor and resides in the home at Village of Bexley that her mother purchased for her in 2007. Edson, her brother lives in the home that Ruth J. Wilson purchased for him and his family in 2004 on Nassau Loop, in Dublin, Ohio.

54.     Defendant Robert E. Weir was retained to open the estate of Ruth J. Wilson by Executor Edson H. Wilson in the Franklin County Probate Court on October 28, 2013.

55.     Defendant Weir is the scrivener of the estate planning documents on behalf of Plaintiff's mother, Ruth J. Wilson.

56.     Prior to her death Ruth Wilson had resided in Coshocton and Delaware Counties until being moved by her son Edson H. Wilson to Emerald Crossing, a nursing home facility in Franklin County, Ohio in 2010.

57.     During her stay, Defendant Robert Weir was hired by Defendant Edson Hay Wilson to assist Edson's mother with an estate plan that referred to *"Elizabeth W. Koeberger"*, a name that was never mentioned by her mother or the Plaintiff. The "error" remained undisclosed to Plaintiff until the death of Plaintiff's mother on October l, 2013.

58.     On October 28, 2013 Edson Hay Wilson was appointed Executor of the Last Will and Testament of Ruth J. Wilson, and the Trustee of the testamentary trust incorrectly titled in the fictitious name *Elizabeth W. Koeberger (sic)* Trust dated 7-15-11, and drafted by attorney Robert E. Weir.  **Exhibit A.**

59.     No corrections were made to the fictitious and unauthorized name of *Elizabeth W Koeberger* despite Elizabeth's request and promises by Defendant Weir that this "typographical error" would be corrected before the paperwork was filed.



60.     Plaintiff has never been known as "Elizabeth Koeberger" in any capacity.

61.     Plaintiff was named Ruth Elizabeth Wilson by her parents and known to her family as Elizabeth.

62.     Plaintiff was never known as "Liz" and objected to that nickname.

63.     Plaintiff has never authorized the "AKA" designation of the fictitious name "Koeberger" appended to her name by Defendant Weir as attorney for the Executor or as her Successor Trustee.

64.     Prior to October 28, 2013, the Plaintiff was asked by Defendant Weir acting as attorney for the Executor, to sign a form "*Waiver of Notice of Probate of Will*" that was incorrectly spelled as "*Koeberger*".

65.     This is the only document in the Franklin County Probate Case 563322 estate signed personally by Plaintiff before it was closed in June of 2015 by Defendant Weir as Attorney for the Executor Edson Hay Wilson.

66.     Plaintiff objected to the signing the form and was told by Defendant Weir it was "*only a typographical"* error and would be corrected as Weir brought the form to her in Columbus, and she had no printer or computer to use to make the correction.

67.     No copies of the will or trust were provided to her at the time of signing the "Waiver of Notice of Probate of Will". Plaintiff believed Defendant Weir who was married to her cousin, Rebecca Weir and Plaintiff relied on his representations. Defendant Weir had previously represented Plaintiff in a legal matter.

68.     Plaintiff signed the document correctly as Elizabeth W. Koeberer, relying on the specific oral representation of Robert E. Weir that her name would be corrected **before** it was filed as a mere "typographical error" on one form.

69.     Plaintiff did not consent or authorize the fictitious name Elizabeth W. Koeberger or AKA as she had never been known by this name or spelling, but always as Elizabeth Wilson Koeberer.

70.     At the time Plaintiff signed the document in front of  Defendant Weir, she had never seen the strange name and relied on Weir's representation that it was one "typographical error."

71.     The estate was opened on October 28, 2013, with the Plaintiff's erroneous Waiver of Notice of Probate of the Will, referring to a misnomer aka *Elizabeth W. Koeberger (sic)* now modified to read "AKA" without her knowledge or consent.

72.     Her brother Edson Hay Wilson and Defendant Weir signed all remaining documents on her behalf as *Trustee of the Elizabeth W. Koeberger(sic) trust*, as Executor, and as Attorney for the Executor.  All documents with this error were filed on the same date October 28, 2013.

73.     Franklin County Probate Court does not require certified mail service on the Inventory or the Final account, unlike Delaware County, Ohio where Ruth J. Wilson had been moved by Defendant Edson H. Wilson.

74.     After the initial meeting with Defendant Weir, Plaintiff never received any of the filings; subsequently, Defendant Weir and Plaintiff's brother, as Executor, both signed as her "Successor Trustee of the Elizabeth W. Koeberger Trust" as filed on 10-28-13.

75.     Just before Christmas, on December 23, 2013, Defendant Edson Hay Wilson and his wife brought a form from Northwestern Mutual Life Insurance to Plaintiff's home.  The form required Plaintiff's signature for life insurance that was to be paid to Plaintiff personally, as Elizabeth Koeberer but it had blanks and it was not filled out.

76.     Plaintiff was advised by her brother that the form was necessary for the estate administration  and would be completed after she signed.

76. a .Plaintiff immediately objected to signing a blank form which objection outraged her brother.

77.     Thereafter, on December 23, 2013, Plaintiff and Defendant Edson Hay Wilson had a physically confrontation at  Plaintiff's  home when Plaintiff objected to signing the document with blank fields.

78.     On December 23, 2013, Defendant Edson Wilson told Plaintiff since she was "divorced and alone", he as her brother, as Executor and her "Trustee" demanded she sign this document and she had "**better sign it", or "she would see what else he could do."**

79.     Edson Wilson physically threatened Plaintiff.  In tangible fear for her safety, Plaintiff signed the blank form so her brother and his wife would leave after the physical altercation, which they did.

80.     Plaintiff gave her brother the benefit of the doubt amidst the stress of the death of their mother, and in light of his history of temper towards her and her family, and Plaintiff signed the document in blank despite her objection.

81.     Plaintiff did not authorize the addition of language that the distribution check be sent to Defendant 's address "*as her attorney*" on the form submitted to Northwestern Mutual Life Insurance That address was not disclosed to her until 2019, when Plaintiff obtained a copy by subpoena from Northwestern Mutual Life Insurance Company.

82.     Plaintiff did not sign any waiver of conflict of interest with Defendant Weir that would allow him to act as the attorney for the Executor in the Estate of Ruth J. Wilson 563322 or to add AKA *Koeberger* (sic) after her name in any capacity.

83.     Northwestern Mutual Life Insurance Company issued a check for the distribution of insurance proceeds to Elizabeth Koeberer which was sent to Defendant Robert E. Weir's office That check was made out to Elizabeth Koeberer, for her personally.

84.     Defendant Weir deposited Plaintiff's personal proceeds into the IOLTA account of Frase Weir McCullough and Baker on or about January 2, 2014, without notification to the Plaintiff, or any consent on her part, in the amount of $22,726.36.

85.     Said Northwestern Mutual Life Insurance check was made out to Elizabeth Koeberer; and Defendant Weir's use of it constituted unauthorized, illegal commingling of Plaintiff's personal assets in Defendant Weir's IOLTA which was a voidable act pursuant to ORC 5808.02.

86.     The will contest period ORC 2107.76 for the Estate of Ruth J. Wilson ended on January 28, 2014 but Plaintiff's trust was not part of the estate.

87.     The Plaintiff did not receive her Northwestern Mutual Life Insurance distribution, as it was diverted by Defendant Weir for his own custody and control and deposited into his firm's IOLTA account not the probate estate account.

88.     On February 7, 2014, immediately after the will contest period ended, Plaintiff's brother, Edson Hay Wilson resigned as her "Trustee." Without Plaintiff's knowledge or consent, Edson appointed Defendant Robert E. Weir as his Successor Trustee for this defective, mis-named Trust.

89.     On February 8, 2014 Defendant Weir became the Successor Trustee, thus taking control of Plaintiff's inheritance. Her brother remained as Executor of her mother's estate.

90.    But Defendant Weir did not resign as attorney for Edson Hay Wilson in the Estate of Ruth Wilson.  When  her brother resigned and switched places with Defendant Weir, Weir became both the *Successor Trustee of the Elizabeth W. Koeberger Trust (sic)* and counsel to Edson Wilson, Executor, a clear conflict of interest. *Cincinnati Bar Assn. v. Robertson,* 145 Ohio St.3d 302, 2016-Ohio-654.]

91.    Prior to the death of Ruth J. Wilson (on October 1, 2013) Defendant Weir had transferred approximately $4.1 million in assets to Defendants Edson Hay Wilson and Christine Strom. Plaintiff was excluded from this transaction, which also included real estate transfers of Edson's home made on 12/29/12 as disclosed on the gift tax return provided to Adam Knolls CPA.

92.    Defendant Weir had conveyed the home Ruth J. Wilson had purchased in 2004 for Edson –the property at 7826 Nassau Loop, Dublin, Ohio to him on 12-26-2012 in fee simple using her Power of Attorney signed with an X. **(Exhibit B)**

93.    But Plaintiff's "home" at 2370 Village at Bexley Dr. was included in her mother's estate and she was forced "buy out" her siblings while her residence title was conveyed to Defendant Weir  (and still remains) in the name of Robert Weir, Trustee of the Elizabeth W. Koeberger Trust (sic)." instead of being titled in her own name.

94.    Defendant Weir continues to assert dominion and control over her leasehold and her mailing address and continues to incur unnecessary fees and taxes, while refusing to pay for maintenance costs of the condominium as a trust asset.

95.    Defendant Weir controls access to her private mailbox as a result of this conveyance.  As the named leaseholder, Defendant Weir receives U.S. mail addressed to Plaintiff, and may appoint adult individuals to sign for Plaintiff's mail without her knowledge or consent.

96.    Defendant Weir transferred assets of Ruth J. Wilson with a Power of Attorney **Exhibit B** signed on 11-19-2010 with an "X" by Ruth J. Wilson to Edson H. Wilson, her youngest son, indicating her dementia may have limited her understanding at the time the Power of Attorney was signed by her, and in 2010, Plaintiff was still very ill.

97.     Plaintiff's CPA, Adam Knolls, was advised by Defendant Weir as attorney for Plaintiff's brother that the remaining estate assets were $1.4 million, so that only one-third of those probate assets---not of the original $4.5 million---was the sum total of her inheritance, ignoring all the prior transfers which excluded Plaintiff and her descendants completely.

98.     Outraged by this trickery, Plaintiff demanded to know the location of the remainder of her inheritance.  Defendants Weir and Edson Wilson dodged answers, as they have continued to ignore her repeated demands that the name on the "Trust" be corrected.

99.     Plaintiff was never served with a copy of the Inventory, the Final Account, any fee consents or the waiver of a hearing on the final account in the Estate of Ruth J. Wilson 563322. No hearing was ever held by the Franklin County Probate Court.

100.     Plaintiff had retained Adam Knolls CPA to review the tax consequences of her inheritance and "trust" and to locate her missing inheritance.

101.     Defendant Weir signed a contract obligating Weir to provide accurate truthful information to the IRS and to Knolls, her CPA.

102.     The "*Elizabeth W. Koeberger (sic)" irrevocable trust* (**Exhibit A**) was not funded before the death of Ruth J. Wilson, resulting in punitive tax consequences which her CPA tried to resolve amicably with Defendants Weir and Edson H. Wilson, the Executor, but to no avail, incurring significant costs.

103.     Defendant Robert E. Weir was the scrivener of the Ruth J. Wilson estate plan including the defective *"Elizabeth W. Koeberger Trust (sic)"* created on 7-15-2011, executed when her mother was alive and had been relocated to Franklin County after Plaintiff had received her own mis-diagnosis of a terminal illness at Cleveland Clinic.

104.     As her "Successor Trustee," Defendant Weir has asserted that Plaintiff's medical care is within his "sole discretion." 22 CV 002604, Franklin County Court of Common Pleas,. Aside from minor reimbursements, Weir continues to refuse to disburse Plaintiff's funds to pay for her medical care.  Despite her repeated, increasingly desperate requests, Weir asserts that a "spendthrift" trust gives him sole discretion over these expenditures and the quality and privacy of her medical care.

105.    This uncertainty has wreaked havoc on the Plaintiff's physical and mental health, including her ability to care for herself and her daughter's immediate and long term medical needs.

106.    While refusing payments to cover Plaintiff's medical needs, Defendant Weir continues to self-deal himself large fee payments using Plaintiff's own money to extinguish Plaintiff's legal rights, including suing Plaintiff's chosen attorney and her CPA against Plaintiff's express wishes.

107.    Defendant Weir has required that every request by Plaintiff for access to her own funds must be made to him by her CPA, including requests for payments for medical reimbursements, heat, and other essential services.  All this happens while he has refused years of requests for a legitimate distribution schedule.

108.    Defendant Weir continues to make unauthorized reckless stock sales detrimental to Plaintiff as the sole vested beneficiary of said trust and her descendants with low basis stock.

109.    Left isolated and without access to her inheritance,  Plaintiff requested Adam Knolls, her CPA to verify with Defendant Weir, and her brother as executor the terms of the Elizabeth W. Koeberger (sic) Trust and to verify where the remaining assets of her inheritance had been transferred.

110.    After the death of Ruth Wilson in 2013, Plaintiff was advised by Defendant Weir that the trust had been created to protect her , that she would have "all the money she needed," and that he would not charge for his services as he was married to Plaintiff's cousin, Rebecca K. Weir.

111.    Plaintiff was not advised by Defendant Weir that he  believed that his right to  "sole discretion" outweighed the trust's health, safety and welfare clause and he could and would veto her medical decisions at his arbitrary whim without regard to her decisions.

112.    Defendant Weir continued to refuse to address the issue that  taxable consequences of Weir's mismanagement would be punitive to her without the step up in basis that the *IRS code 1015* provided to protect inheritances so that ongoing taxes were draining her future.

113.    In fact, the Elizabeth W. Koeberger (sic) Trust was only funded in 2015, **after** the date of death of her mother, with accounts being opened at Defendant Chase Bank, Defendant

Ameritrade, and non-party, Hendley and Company **(Exhibit H**) all in the fictitious name "Koeberger".

114. On 3-19-14, Magistrate Benjamin Suffron at Franklin County Probate Court had sent a letter returning Defendant Weir's filing, demanding correction of the incorrect Koeberger name on Plaintiff's Trust in Case. No. 563322 before approval.

115. But Defendant Weir only corrected the forms and resubmitted them to the probate court. He left the fictitious name Koeberger (sic), on all other documentation and accounts.

116. On May 22, 2015, Defendant Weir negligently represented to Adam Knolls, Plaintiff's CPA. that her rightful assets were being transferred **"from the Estate of Ruth J. Wilson"**.

117. Plaintiff's CPA Adam Knolls was again promised by Defendant Weir that the incorrect name on the Trust would be corrected. It was not.

118. Plaintiff was not advised that the assets would not receive the step up in basis *26 US code Sec. 1015,* because the grantor had not funded the irrevocable trust **prior to her death**, resulting in a defective trust with punitive consequences for Plaintiff as the sole vested "identified" beneficiary.

119. Plaintiff was not provided with a lease in her name for the home left her by her mother to Plaintiff at 2370 Village at Bexley, Columbus, Ohio 43209.

120. Instead, Plaintiff was told by Defendant Weir she had to pay for all maintenance costs out of her "distributions", even though no distribution schedule was provided to her, or to her CPA, Adam Knolls.

121. Defendant Weir continued to use the fictitious name *Elizabeth W. Koeberger (sic)* which continued to be a cause of great anxiety for the Plaintiff.

122. Plaintiff was advised by Defendant Weir that he had to make distributions to her in cash because he "could not open a bank account yet in her name."

123. After numerous cash distributions, some delivered in paper bags, without accompanying paperwork, finally in January of 2015, Defendant Weir instructed plaintiff to go to Defendant Chase Morgan Chase Bank in Coshocton, Ohio.

124.    Defendant J.P. Morgan Chase, by and through its authorized representatives presented Plaintiff with a personal signature card to open a personal bank account in the fictitious name of *Elizabeth W. Koeberger* on January 23, 2015. Account No. **xxxx7730.**

125.    Plaintiff immediately objected to the false name, told the bank it was a false name, and she signed only in her correct name, Koeberer, NOT "Koeberger".

126.    Defendant J.P. Morgan Chase, by and through its authorized representatives, did not disclose to the Plaintiff that Defendant Weir had opened an account **almost a year prior to this, on 2-24-14,** in the fictitious and unauthorized name Elizabeth W. Koeberger Trust (sic) **xxxx0772.**

127.    Plaintiff Elizabeth Wilson Koeberer did not authorize Defendant J. P. Morgan Chase to open this account in the fictitious name of *Elizabeth W. Koeberger (sic)* on **January 23, 2015.** She advised Defendant J.P. Morgan Chase Bank's representatives that her name was spelled incorrectly and requested it be immediately corrected.

128.    Plaintiff Elizabeth Wilson Koeberer did not authorize Defendant J. P. Morgan Chase to open this account in the fictitious name of **Elizabeth W. Koeberger (sic)** on January 23, 2015. Plaintiff presented Defendant's representatives with correct authentic information as to her correct address and identification required to comply with the Bank Secrecy Act. But the incorrect information was not corrected.

129.    Plaintiff was unaware of the earlier account established by Defendant Weir in the Koeberger (sic) name. Plaintiff did not authorize these accounts to be linked on January 23, 2015 or to any account owned by Defendant Weir, including his IOLTA.

130.    Defendant J. P Morgan Chase thus breached its duty under the BSA and Bank Identification federal statutes by negligently authorizing the creation of checks in the unauthorized fictitious name of **Robert E. Weir, Trustee of the Elizabeth W. Koeberger Trust (sic).**

131.    Defendant J. P Morgan Chase breached its duty under the BSA and Bank Identification federal statutes by negligently authorizing the creation of a digital profile in the unauthorized fictitious name of **Robert E. Weir, Trustee of the Elizabeth W. Koeberger Trust (sic).**

132.    Defendant J. P Morgan Chase illegally breached its strict liability duty under the Bank Secrecy Act and Bank Identification federal statutes by negligently failing to disclose that account was linked to Elizabeth Koeberer's "trust" account that had already been used for a year secretly by Defendant Robert E. Weir, Trustee of the Elizabeth W. Koeberger (sic) Trust. Account **xxxx0772.**

133.    Defendant J. P Morgan Chase breached its duty under the BSA and Bank Identification Act by illegally accepting a deposit from Defendant Robert E. Weir of Frase Weir Baker McCullough IOLTA account into the Plaintiff's account on February 21, 2014, at the address of 305 E. Main Street, Coshocton, Ohio, which was made out only to Elizabeth W. Koeberer.

134.    Plaintiff did not have knowledge, nor did she authorize any transfers, payments or withdrawals in or out of this account to any other account, including those at Defendant Chase.

135.    Defendant J. P Morgan Chase breached its duty under the Bank Secrecy Act, and the Bank Identification Act, by linking Plaintiff's personal account **xxxx7730** to Defendant Frase, Weir, Baker & McCullough's **IOLTA** account, and with Plaintiff's "trust" account **(0772)**, on **February 24, 2014**.

136.    All three accounts were listed at the address of Frase Weir Baker & McCullough at 305 E. Main Street, Coshocton, Ohio 43812.

137.    **Defendant J. P Morgan Chase** breached its duty under the BSA and Bank Identification Acts by allowing Defendant Robert E. Weir, to withdraw cash on the following dates: **April 15, 2014. June 11, 2014, August 22, 2014, November 13, 2014, January 9, 2015, and January 9, 2015**.

138.    Defendant J. P Morgan Chase breached its duty under the BSA and Bank Identification Act by illegally accepting a deposit made out to Koeberger (sic) from an unknown source on March 23, 2023.

139.    Defendant J. P. Morgan Chase breached its duty under the BSA and Bank Identification Act by accepting a deposit made out to Koeberger from an unknown source on May 8, 2023.

140.    Defendant J. P Morgan Chase breached its duty under the BSA and Bank Identification Act by accepting a deposit from Defendant Robert E. Weir from an unidentified source on October 4, 2023.

141.    Defendant J. P Morgan Chase breached its duty under the BSA and Bank Identification by not correcting an unauthorized name, and subsequently changing the account address to Defendant Weir's home address at 2851 Sams Way, Nashport, Ohio 43830 breaching Plaintiff's right to privacy.

142.    The negligent creation of this trojan account enabled Defendant Weir to act under color of authority that he did not have, on February 24, 2014, when he secretly opened the "trust" account in the unauthorized fictitious name *Elizabeth W. Koeberger* (sic) trust.

143.    Defendant Chase Bank negligently entrusted printed checks in the fictitious name of *Elizabeth W. Koeberger(sic)* to Defendant Weir, creating a foreseeable risk to Plaintiff.

144.    Below is the J.P. Morgan Chase Personal Signature Card which was opened in name of "Elizabeth W. Koeberger (sic)" on 1-23-2015; it was linked to Defendant Weir's address, is in the wrong name, and uses personal identification that does not match what was properly submitted to Defendant Chase by Plaintiff on that date.



**Defendant J.P. Morgan Chase Personal Signature Card -opened in name of "Elizabeth W. Koeberger" on 1-23-2015 was linked to Defendant Weir's address, is in the wrong name, and uses personal identification that does not match what was properly submitted to Defendant Chase by Plaintiff.**





145. **xxxx7730** Personal account was opened by Weir on 1-23-15 almost one year after in fictitious unauthorized name, then changed by Plaintiff after written objection.

146. **xxxx0772** Fictitious Koeberger Trust account opened by Weir with IOLTA Deposit 2-24-14 Defendant Chase Bank opened account for Defendant Weir **one year before** Plaintiff was allowed to open her personal account by Defendant Weir.



147. Defendant Chase accepted an unidentified source of deposit made by Defendant Weir into Plaintiffs Chase account on 3-22-23.



148.     Defendant Chase accepted an unidentified source of deposit made by Defendant Weir into Plaintiffs Chase on 5-8-23.



149.     Defendant Chase accepted an unidentified source of a deposit made by Defendant Weir into Plaintiffs Chase on 10-4-23.



150.    Defendant Chase Bank Authorized Defendant Weir's IOLTA for Frase Weir Baker & McCullough to be used since 2014 and linked to Plaintiff's accounts without her knowledge or consent for reimbursement of the Private Settlement Agreement and decanting documents by Kemp Shaeffer and Rowe payment for her Termination of her Defective Trust.

 

151.    Defendant Chase allowed IOLTA check to be deposited into Plaintiff's "personal" account at Defendant Weir's address without her knowledge or consent on 2-24-14.

152.     Defendant Chase allowed Plaintiff's "personal" account at Defendant Weir's to be changed to Defendant Weir's home address without her knowledge or consent 1-19-2019.



153.     Plaintiff timely notified Defendant Chase on 1-24-15, but change was not acknowledged until 10-29-15.

### Robert E. Weir Trustee, Elizabeth W. Koeberger (sic) Trust Ledger
### J.P. Morgan Chase Bank Account xx0772

| Date | Check | Credit | Debit | Payee/ payor | REW TTEE Balance | Description |
|---|---|---|---|---|---|---|
| 2/24/14 | DEP | $ 22,726.36 | | IOLTA | $ 22,726.36 | transfer of insurance money from trust account |
| 2/25/14 | 1 | | $ (91.48) | OSU MED | $ 22,634.88 | |
| 3/4/14 | BANK CHG | | $ (18.95) | | $ 22,615.93 | check order |
| 3/24/14 | 1001 | | $ (14.69) | Verizon | $ 22,601.24 | |
| 4/3/14 | DEP | $ 110.67 | | IOLTA | $ 22,711.91 | remaining balance |
| 4/15/14 | 1002 | | $ (5,000.00) | Cash | $ 17,711.91 | Distribution to Liz |
| 4/21/14 | 1003 | | $ (175.95) | Verizon | $ 17,535.96 | |
| 5/15/14 | 1004 | | $ (1,147.12) | Progressive | $ 16,388.84 | 2003 Nissan and 2006 Volvo thru 11/14 |
| 5/19/14 | 1005 | | | VOID | $ 16,388.84 | |
| 5/19/14 | 1006 | | $ (164.47) | Verizon | $ 16,224.37 | |
| 6/6/14 | 1007 | | $ (74.70) | OSU Physicians | $ 16,149.67 | |
| 6/6/14 | 1008 | | $ (96.81) | OSU | $ 16,052.86 | |
| 6/13/14 | 1009 | | $ (35.75) | BMV | $ 16,017.11 | tags for 2006 Volvo |
| 6/16/14 | 1010 | | $ (100.00) | William Weir | $ 15,917.11 | delivery of car |
| 6/20/11 | 1011 | | $ (167.75) | Verizon | $ 15,749.36 | |
| 7/11/14 | 1012 | | $ (8,000.00) | Cash | $ 7,749.36 | Distribution to Liz |
| 7/21/14 | 1013 | | $ (167.72) | Verizon | $ 7,581.64 | |
| 8/11/14 | 1014 | | $ (458.04) | Progressive | $ 7,123.60 | |
| 8/19/14 | 1015 | | $ (183.64) | Verizon | $ 6,939.96 | |
| 8/22/14 | 1016 | | | VOID | $ 6,939.96 | |
| 8/22/14 | 1017 | | $ (32.86) | Columbia Gas | $ 6,907.10 | |
| 8/22/14 | 1018 | | $ (88.88) | AEP Ohio | $ 6,818.22 | |
| 8/22/14 | 1019 | | $ (5,000.00) | CASH | $ 1,818.22 | Distribution to Liz |
| 8/25/14 | 1020 | | $ (284.99) | HOA | $ 1,533.23 | HOA and water |

| 9/16/14 | 1021 | | $ (59.15) | AEP Ohio | $ 1,474.08 | |
| 9/16/14 | 1022 | | $ (33.76) | Columbia Gas | $ 1,440.32 | |
| 9/22/14 | 1023 | | $ (281.76) | HOA+water | $ 1,158.56 | |
| 9/22/14 | 1024 | | $ (177.09) | Verizon | $ 981.47 | |
| 10/16/14 | 1025 | | | VOID | $ 981.47 | |
| 10/16/14 | 1026 | | $ (58.98) | Columbia Gas | $ 922.49 | |
| 10/16/14 | 1027 | | $ (86.01) | AEP Ohio | $ 836.48 | |
| 10/20/14 | 1028 | | $ (178.22) | Verizon | $ 658.26 | |
| 10/20/14 | fee | | $ (12.00) | Chase | $ 646.26 | |
| 10/23/14 | 1029 | | $ (295.86) | HOA+water | $ 350.40 | |
| 10/23/14 | DEP | $ 50,000.00 | | distribution from Estate | $ 50,350.40 | |
| 10/28/14 | 1030 | | $ (226.25) | Progressive | $ 50,124.15 | |
| 11/4/14 | DEP | $100,000.00 | | distribution from Estate | $ 150,124.15 | |

**Accounts age 80 of 123**

| 11/10/14 | 10P31 | $ (15.58) | OSU Wexner Medical | $ 150,108.57 | |
| 11/13/14 | 1032 | $ (77.16) | Columbia Gas | $ 150,031.41 | |
| 11/13/14 | 1033 | $ (2,093.00) | Progressive | $ 147,938.41 | |
| 11/13/14 | 1034 | $ (3,000.00) | cash | $ 144,938.41 | Distribution to Liz |
| 11/14/14 | 1035 | $ (106.47) | AEP Ohio | $ 144,831.94 | |
| 11/20/14 | 1036 | $ (178.48) | Verizon | $ 144,653.46 | |
| 11/28/14 | 1037 | $ (49.50) | BMV | $ 144,603.96 | new tags for 2006 |
| 11/28/14 | 1038 | $ (286.80) | HOA+water | $ 144,317.16 | |
| 12/16/14 | 1039 | | VOID | $ 144,317.16 | |
| 12/16/14 | 1040 | $ (109.30) | OSU Wexner Medical | $ 144,207.86 | |
| 12/16/14 | 1041 | $ (129.39) | Columbia Gas | $ 144,078.47 | |
| 12/22/14 | 1042 | $ (178.22) | Verizon | $ 143,900.25 | |
| 12/22/14 | 1043 | $ (282.67) | HOA+water | $ 143,617.58 | |
| 1/9/15 | 1044 | $ (5,000.00) | cash | $ 138,617.58 | Distribution to Liz |
| 1/9/15 | 1045 | $ (5,000.00) | cash | $ 133,617.58 | Distribution to Liz |
| 1/9/15 | 1046 | $ (136.99) | John Neil Lindsey, Esq. | $ 133,480.59 | deed walk thru and expenses |
| 1/13/15 | 1047 | $ (3,253.30) | Franklin Co. Treasurer | $ 130,227.29 | RE taxes |
| 1/15/15 | 1048 | $ (281.75) | AEP Ohio | $ 129,945.54 | |
| 1/20/15 | 1049 | $ (119.36) | Columbia Gas | $ 129,826.18 | |
| 1/23/15 | 1050 | $ (178.38) | Verizon | $ 129,647.80 | |
| 1/26/15 | 1051 | $ (288.82) | HOA+water | $ 129,358.98 | |

| 2/13/15 | 1052 | $ (168.86) | AEP Ohio | $ 129,190.12 | |
|---------|------|------------|----------|--------------|--|

154. Without authority or consent, Defendant Chase Bank authorized payments to be made from Defendant Robert E. Weir, Frase, Weir, Baker & McCullough's, IOLTA account for personal services without Plaintiff's knowledge or authorization and in violation of her privacy.

**Discovery 22CV002604; Defendant Robert E. Weir**

| **DISBURSEMENTS OF PRINCIPAL** **Elizabeth W. Koeberer Trust dtd 7/15/11** **For Period 1/1/2020 Through 12/31/2020** | | | | |
|---|---|---|---|---|
| | | | | |
| **To: Elizabeth. Koeberer** | | | | |
| **Payment to Verizon** | | | | |
| | | | | |
| **4/21/2020 Frase, Weir. Baker & McCullough Trust Account Checking** | | | | |
| **Check number;1398** | | **$ 136.81** | | |
| | | | | |
| **10/23/2020 Frase, Weir. Baker & McCullough Trust Account Checking** | | | | |
| **Cheek number: 1453** | | **$ 136.60** | | |
| | | | | |
| **11/20/2020 Frase, Weir. Baker & McCullough Trust Account Checking** | | | | |
| **Check number. 1459** | | **$ 136.60** | | |
| | | | | |
| **12/18/2020 Frase, Weir. Baker & McCullough Trust Account Checking** | | | | |
| **Check number. 1470** | | **$ 136.60** | | |

155.    After Defendant Chase changed her personal bank account to Defendant Weir's home address, Defendant Chase authorized use of Defendant Weir's IOLTA for Plaintiff's essential services without her knowledge or consent.

156.    This meant that if Plaintiff called Verizon about loss of service, she was not authorized to verify the account as it was being paid from a source she could not identify causing her stress and humiliation.

157.    Defendant Weir conveyed Ruth Wilson's property at 7826 Nassau Loop, Dublin, Ohio in 2012 with the 2010 POA signed with an X to Edson Wilson who had been living there with his family. The property was originally purchased for Defendant Edson H. Wilson by Ruth J. Wilson in 2004 .

158.    On 5-6-14 Defendant Robert E. Weir as attorney for Executor conveyed the property purchased by Ruth Wilson for her daughter, Elizabeth at 2370 Village at Bexley, Columbus Ohio 43209 to himself as the Trustee of the Elizabeth W. Koeberger (sic) Trust after an initial transfer to Edson H. Wilson and Christine Strom.

159.    No lease was provided to Plaintiff.  All maintenance costs have been paid by her unless Defendant Weir agrees at his sole discretion to reimburse them.   Defendant Weir maintains the property at his discretion, arbitrarily failing to provide basic repairs.

160.    Defendant Weir did not disclose to Plaintiff that he had limited  her right to privacy and access the USPS mail box at her residence at 2370 Village at Bexley Dr., and he continues to collect mail there, causing Plaintiff great anxiety.



161.     Defendant Weir established a Verizon mobile phone account, with himself as payor, in the fictitious name of Elizabeth Koeberger (sic). Defendant Weir's dominion over random payments continues to this day, more than a decade since he became "Trustee." Defendant Weir continues to make random, unreliable payments to Verizon, resulting in time and billing charges from her CPA, undermining Plaintiff's right to privacy and to secure communication services.



162.    Defendant Weir's use of the fictitious name Koeberger to the detriment of the Plaintiff has been part of Defendant Weir and Does 1-10's plan to divert the fee simple rights of the Plaintiff in the defective and fictitious trust, holding her assets captive while attempting to extinguish her family's rights to fee simple ownership of the corpus of the Elizabeth W. Koeberger (sic) Trust.

163.    Defendant Weir used the fictitious name Koeberger to set up Plaintiff's digital interface to Defendant J. P. Morgan Chase, while using Defendant Weir's illegally linked Chase accounts, including his IOLTA, for payments in the fictitious name.



164.    Defendant Weir continued to move Plaintiff's Verizon cell phone payments in and out of his IOLTA, and out of her control.  Consistent, reliable payments of such bills constitute a bare minimum of fiduciary duty; Weir's failure to perform has resulted in frustration and humiliation to Plaintiff.

165.    Defendant Weir's failure to perform this administrative task is one of many clear indicia of the  gaslighting tactics he has used to extinguish by adverse domination Plaintiff's rights to

rights to the benefits of her inheritance through the use of this deliberately misnamed, defective " trust".

166.     As part of the scheme, Defendant Weir's failure to pay Plaintiff's mobile account and then to mis-use his IOLTA, undermines her ability to protect her rights and her mother's created intention, causing immense emotional distress to Plaintiff.

167.     Defendant Weir continues to unreliably pay Plaintiff's mobile cell phone bill, ten years after he promised her name would be corrected, causing her constant and great anxiety.

168.     After the estate closed in June of 2015, IRS inquired about the commingling of the trust assets. On 8-11-15 Defendant Weir falsely represented to the IRS that the Northwestern Mutual Insurance check made out to Elizabeth Koeberer was deposited into her "trust."  Defendant Weir did not disclose the initial deposit in 2013 had been illegally made into his IOLTA, without Plaintiff's knowledge or consent not "her" trust.

169.     On 11-9-15, Defendant Weir's partner, Michael McCullough, told Plaintiff's CPA, Adam Knolls, that the loss of step-up in basis Weir caused cannot be corrected, stating that the Executor Edson Wilson and Defendant Weir are "resigned" to the low basis that has "reared its ugly head" due to their mismanagement and the scrivener's error by Defendant Weir, costing Plaintiff significant sums of money.

170.     Defendant Weir, as a member of Attorney McCullough's firm, Frase, Weir, Baker & McCullough, and as scrivener of this defective trust, had full knowledge of the tax consequences imposed on Plaintiff by failing to fund an irrevocable trust.

171.     On 11-9-15, Defendant Weir's partner Michael McCullough, advised Knolls that **10% tax savings could be had if the distributions were made directly to Plaintiff**. But Defendants Weir and Edson Wilson chose to ignore that advice, costing Plaintiff Wilson many thousands of dollars.

172.     Defendant Weir as scrivener of this document, wrote the "trust" and had knowledge of all of the low basis tax issues.  But months after the estate was closed, Defendant Weir continued to refuse to address both the issues of the defective trust, and the serious tax consequences he unleashed on Plaintiff's assets in his capacity as the SuccessorTrust of Plaintiff's defective trust.

173. On 4-16-16, Defendant Weir signed an engagement letter with Plaintiff's CPA Adam Knolls, requiring Weir to provide accurate information for reporting to Internal Revenue Service on behalf of Plaintiff Elizabeth Wilson Koeberer.

174. Plaintiff continued to incur the ongoing costs of paying CPA Adam Knolls to make repeated requests of Defendant "Trustee" Weir, who refused to provide vital tax information or a written distribution schedule. Knolls had to call Defendant Weir over and over with no action.

After Defendant Weir refused to make any distributions to Plaintiff for a period of eight months in 2016, leaving Plaintiff distraught and in serious financial straits, Plaintiff sought legal counsel to assist Knolls as her CPA.

175. On 1-5-2017 Plaintiff retained Attorney Phillip Collins of Collins and Slagle, to demand the resignation of Defendant Weir, and that he stop draining her trust with his reckless and unauthorized actions including refusing to make distributions to her for months at a time. **Exhibit F.**

176. On 1-5-2017 Plaintiff reiterated to Defendant Weir in writing that Weir had no authority to make tax decisions for her.

177. On 3-25-2017 Defendant Weir dissolved the Frase Weir Baker McCullough corporation. But he still used his father's name, Eugene Weir, in his letterhead, which continued to appear on checks and legal documents. Plaintiff was unaware of the dissolution of Defendant Weir's firm.

178. The Ohio State Bar Association's highest award for ethics, known as the "Weir Award," given yearly as a benchmark for ethical standards, is named after Defendant Weir's father, Eugene Weir. The Ohio Bar Board of Governors established the "Weir Award" to recognize one lawyer annually who "demonstrates an exceptional commitment to in professional responsibility championing professional responsibility among Ohio lawyers."

179. Plaintiff continued to pay her CPA an hourly fee to beg Defendant Weir to respond to calls, emails and basic routine information resulting in ongoing chaos and anxiety to Plaintiff.

180. In January of 2017, Attorney Phillip Collins demanded resignation of Defendant Weir. **Exhibit F.**

181.    In 2017, Defendant Weir changed the address of the defective Koeberger Trust (sic) bank account at Defendant Chase to his home address, breaching Plaintiff's right to privacy of her financial information while her cousin Rebecca Weir, Defendant Weir's spouse, has access to her financial and stock portfolio information.

182.    Attorney Collins, withdrew from representation after Plaintiff could not pay in full Collins's bill of $17,000.00, despite Defendant Weir's continuing to pay other legal bills from Plaintiff's inheritance without her approval.  Plaintiff was forced to make only a partial payment to Attorney Collins, while Defendant Weir continued to deny Plaintiff basic information about her misnamed "trust".

183.    On 8-31-17 Defendant Weir used the Defendant Chase Bank account with the fictitious name "Koeberger" **xx 0772** to pay Carlile Patchen Murphy as Attorney for her brother, Defendant Edson Wilson.  This payment for actions detrimental to Plaintiff's interests was made without Plaintiff's knowledge or consent until she obtained discovery responses from Carlile Patchen & Murphy on behalf of her brother Edson Hay Wilson.

184.    Plaintiff's demands continued to be ignored and from August of 2017 to October of 2018, Defendant "Trustee" Weir continued to run up billable time with Adam Knolls CPA as Defendant Weir continuing to stonewall and refused to provide a distribution schedule, or answers to critical tax issues.  He also continued to refuse to correct Plaintiff's name.

185.    Defendant Weir continued to bully and intimidate Plaintiff referring to her as "Liz" and refusing to provide timely information despite her constant requests to stop using that name "Liz." Plaintiff continued to ask Defendant Weir  to help her CPA with her financial plan; however, he refused.

186.    In July of 2018,  Plaintiff retained Attorney Bradley Hoffman to help protect her rights. Attorney Hoffman sought co-counsel, and Plaintiff retained Attorney Wasserman to help perfect her rights and correct her name and "trust".

187.    On Saturday, August 11, 2018, Defendant Robert E. Weir, on behalf of the Wilson Family Trust, as Successor Trustee of the Elizabeth W. Koeberger (sic) Trust, and as attorney for the

Executor of the Estate of Ruth J Wilson, authorized an auction on the remaining land from Plaintiff's great grandmother Sarah Hay Wilson in Coshocton, Ohio.

188.    On 10-17-18 Plaintiff authorized Attorney Hoffman and Attorney Susan Wasserman to file a Motion to Reopen the estate in Franklin County Probate Court, then under Judge Robert Montgomery, in the Estate of her mother, Ruth J. Wilson, Case 563322, for several purposes, including :

>       (l) to order the Executor Edson H. Wilson to immediately correct her name; and
>       (2) To have the court take jurisdiction of her trust for a trust construction of the terms depriving her of her of medical care, and
>       (3) to ascertain the voidable transactions and punitive actions that Defendant Weir continued to impose on Plaintiff, including use of a fictitious name, control of her mail and phone bill, refusal to pay medical bills, so that the defective fictitious trust could be terminated.

189.    Based on this 2018 filing, Plaintiff and Attorney Wasserman and others in 2020 reached a good faith agreement with Defendants Weir and Defendants Wilson and Strom to settle this estate. Weir authorized over $100,000 in legal fees from Plaintiff's funds to settle the matter amicably.

190.    Two years later, on January 15, 2021 Defendants Weir, Wilson and Strom repudiated the agreement without explanation after Plaintiff paid for everything Defendant Weir authorized.

191.    On December 27, 2023, some five years after this original 2018 filing, and several years after the good faith settlement agreement was reached, signed, paid for, and then inexplicably discarded, Franklin County Probate Judge Jeffrey Mackey deemed the Motion to Reopen as "frivolous." He imposed almost $200,000 in unprecedented sanctions against Plaintiff and Attorney Wasserman.  That ruling is now on appeal in 24 AP 00061.

192.    Plaintiff did not in 2018 file a will contest action, as these assets were not part of her mother's estate, and the will contest period had long since expired.  However, she was advised that a trust construction action ***could always be brought*** against voidable acts such as those committed by Defendant "Trustee" Weir, including, among other things, his refusal to correct the mis-named Koeberger Trust (sic), his refusal to make payments for Plaintiff's medical needs, etc. *Boli v. Huntington Nat'l Bank*, 2022 Ohio 2127 (Ohio Ct. App. 2022).

193.    Plaintiff was also advised that the Executor was required to correct the erroneous documents which both her brother, Executor Edson Hay Wilson, and his attorney Robert E. Weir, refused to do, despite their earlier promises, causing her great anxiety and confusion and costing her great sums of money.  She refused to relinquish the right to her name.

194.    Plaintiff had serious medical and other immediate needs that were at issue as she had no identification in this fraudulent name Koeberger, and thus no access to any information as to accounts held in this fake name, including costly stock transactions made in the name of her fictitious trust, or her mobile cell phone account for her private phone number, opened also in the fictitious name, and paid through Defendant Weir's IOLTA.

195.    Calls made by Plaintiff to Verizon ended with Defendant Weir's and her CPA's costly involvement to complete otherwise mundane transactions.  Defendant Weir's refusal to act, caused unnecessary chaos, anxiety and intimidation over the random failure of Plaintiff's mobile phone account.

196.    To support her motion, in 2019 Plaintiff retained the services of Attorney David L. Duren to prepare an expert opinion report on the ongoing damages to the plaintiff because of the "defective" trust.  His written report supported her claim in the approximate amount  of $300,000 in damages to support her Motion to Reopen. **Exhibit C**

197.    Franklin County Probate Court local rules require a civil action be filed for any trust joining all necessary parties. Defendant Weir authorized Robert Dunn, Bailey Cavalieri to prepare a tolling agreement and to offer a plan for the modification and termination of her defective trust as the next step to halt the bleeding of her assets.

198.    **Loc.R. 78.10 Trusts**

> "**Court Intervention in Unsupervised Trusts.** With regard to any trust that is not subject to ongoing court supervision:
> (1) Any action brought under R.C. Chapters 5801–5811 is a civil action, subject to the Rules of Civil Procedure, and **must be commenced by electronically filing a complaint which addresses jurisdiction, venue, and standing.** "

199.    Defendant Weir, as Attorney for the Executor, and as represented by Robert Dunn of Bailey Cavalieri, refused to file a civil action as required by local rules to join all necessary parties.

200.    Defendant Weir did not obtain a waiver of conflict of interest pursuant to Ohio Rules of Professional Procedure. Rules 1.7 et. seq. , but he continues to have numerous conflicts as a family member and as prior counsel of Plaintiff, as Weir himself noted on the Northwestern Mutual application for Plaintiff's personal assets.

201.    Plaintiff's Motion to Reopen, filed on October 17, 2018 was placed on the "Motion Docket" at the Franklin County Probate Court, as it was not a civil action which **must** be electronically filed. This issue is on appeal now in 24 AP 00061, Tenth District Court of Appeals.

202.    Extensive negotiations beginning in December of 2018 continued between Plaintiff and her brother, Edson Hay Wilson and Defendant Weir as attorney for the executor, and his attorney Robert Barnett, of Carlile Patchen & Murphy LLP for Edson "individually",  and Defendant Weir as her "Successor Trustee"  and his counsel Robert Dunn of Bailey Cavalieri, to resolve all claims between all beneficiaries, thus aiming to settle this matter without "costly and protracted litigation".  Plaintiff was represented in these negotiations by Attorney Brad Hoffman.

203.    On 11-3-2018 Robert Barnett, Carlile Patchen & Murphy, requested a meeting with Attorneys David Duren, Robert Dunn and Bradley Hoffman on behalf of the Plaintiff and all beneficiaries to avoid "*litigation lane".*

204.    On 11-13-2018 Attorney Robert Barnett, Carlile Patchen & Murphy entered an appearance for Edson H. Wilson, *individually*. Defendant Weir remained in his conflicted position as attorney for the Executor.

205.    On 11-28-18, Bailey Cavalieri attorneys Robert Dunn and Daniel Cvetanovich entered an appearance for Robert E. Weir, still acting as Trustee of the misnamed Elizabeth Koeberger Trust (sic).

206.    On 11-29-18 Defendant Weir authorized Attorney Robert Dunn to prepare a Tolling Agreement, which was circulated on December 5, 2018.

207.    Both Defendant Weir and his Attorney Dunn were paid for the preparation of the tolling agreement by the Elizabeth W. Koeberger (sic) Trust as authorized by Defendant Weir.

208.    On December 4, 2018, Attorney Robert Dunn, of Bailey Cavalieri, acting for Weir, stated:

> ----------        Forwarded        message        ----------
> From: **Robert        R.        Dunn** <rdunn@baileycav.com>
> Date:    Tue,    Dec    4,    2018    at    8:04 AM
> Subject:  12/04/18  E-mail  to  Counsel  re  Hearing  on
> Wilson/Koeberer                                        Trust
> To:    Matt    Wisniewski    <wisniewski.46@gmail.com>
> Cc:            Susan            Wasserman
> <susanrw67@gmail.com>, behoffman12@gmail.com <beho
> ffman12@gmail.com>,        Robert    B.    Barnett    Jr.
> (rbarnett@cpmlaw.com) <rbarnett@cpmlaw.com>, Dan L.
> Cvetanovich <dcvetanovich@baileycav.com>
> Counsel,
>
> I agree with Bob's earlier e-mails that it may be good to try
> and use the court date next week to discuss Ms. Koeberer's
> objectives and whether **there is the possibility of resolving
> this short of protracted and expensive litigation.** We too
> have held off preparing our memorandum in opposition to the
> **motion** to try and avoid unnecessary expense.
> I have placed the new date on the calendar and appreciate the
> continuance.
>
> )unn *Member*
> .d Street, Ste. 2100 • Columbus, OH 43215-3422
> .229.3284 • main: 614.221.3155 • fax: 614.221.0479
> .eycav.com | baileycav.com

209.    The "Tolling Agreement" was prepared and circulated by Attorney Dunn, and signed by all parties with a concurrent continuance, and was filed in the Franklin County Probate Court.

210.    Plaintiff's trust was charged and paid for these services to Bailey Cavalieri and Defendant Weir.

211.    On 12-13-18   multiple emails were exchanged by Defendant Weir's  counsel and Defendant Edson H. Wilson's counsel to discuss how to proceed to resolve all claims.

212.    On 2-19-19 Attorney Bradley Hoffman sent a demand letter to Edson's attorney Robert Barnett, Carlile Patchen & Murphy LLP and to Robert Dunn, Bailey Cavalieri on behalf of Weir.

213.    After 2-19-19, extensive discovery requests and information were exchanged by Edson Wilson's attorney Robert Barnett, Carlile Patchen & Murphy LLP ; Robert Dunn, of Bailey, Cavalieri; and Plaintiff's counsel, Hoffman, Wasserman and Duren.

214.    The tolling agreements and continuances were signed to delay any hearing in probate court, and specifically to delay Plaintiff from filing a "civil action" so that a global settlement could be completed with a Private Settlement Agreement.

215.    Neither Attorney Dunn nor Attorney Barnett filed any answers in Franklin County Probate Court 563322 in the Estate of Ruth J. Wilson, as no civil action had been filed and all counsel referred to the matter as a motion, not a civil action.

216.    Plaintiff was seeking equitable relief to order her brother the Executor to correct her fictitious name, and a trust construction action to correct and terminate the defective trust issues that were depriving the Plaintiff of her right to health care as a member of the Wilson Family, daughter of James and Ruth Wilson, granddaughter of Edson and Leila Biggs Wilson, and great granddaughter of Sarah Hay Wilson, the prominent matriarch of the Coshocton Wilson Family.

217.    Plaintiff's mother, Ruth J. Wilson had established a chair in Cardiology at Ohio State University and the Wilson Family always provided the best in health care not only to themselves but the community along with their extensive charitable efforts including the Wilson Hay Vocational Center in Coshocton, and her great aunt's "Pomerene Hall" at Ohio State University.

218.    Plaintiff's sister, Defendant Christine Strom, retained Attorney Jay Michael, who entered his appearance in Franklin County Probate Court on 9-10-2020.

219.    Attorney Jay Michael did not file an answer on behalf of Defendant Christine Strom, as no civil action had been filed by Plaintiff.  But Defendant Strom did sign all tolling agreements and continuances to effectuate Plaintiff's termination of her defective trust.

220.    The tolling agreements specifically referred to inducing Plaintiff, Elizabeth Wilson Koeberer, to delay the filing of a civil action.

221.    On 2-27-2019, Attorney Robert Barnett, of Carlile Patchen Murphy, acting for Edson H. Wilson *individually,* responded to extensive discovery requests submitted by

Plaintiff's counsel, Bradley Hoffman. Barnett submitted this extensive discovery information by email from Carlile Patchen Murphy LLP on behalf of Defendant Edson H. Wilson.

222.    On 3-14-19, Defendant Robert Weir, individually signed the tolling agreement as attorney for the Executor. Defendants Wilson and Strom also signed as well.

223.    On 5-16-19, Defendant Robert Weir, individually  signed the tolling agreement as attorney for the Executor. Defendants Wilson and Strom also signed as well.

224.    On 8-16-19; Attorney David L. Duren provided Plaintiff with an opinion report that the ongoing negative tax consequences of the mis-handled defective trust were estimated at $300,000 **(Exhibit C)**

225.    On 8-27-19, Attorney Bradley Hoffman, on behalf of Plaintiff, also sent a demand letter to Carlile Patchen & Murphy's attorney Robert Barnett, and Bailey Cavalieri's Attorney Robert Dunn.

226.    A third prior demand letter had been sent by Plaintiff, from Collins and Slagel's demand for Defendant Weir to resign on 1-5-17, all of which Plaintiff paid for out of her savings as a consequence of Defendant Weir's representations. **Exhibit E.**

227.    On 9-15-19, Defendant Robert Weir signed the tolling agreement as attorney for the Executor and Defendants Edson H. Wilson and Strom signed as well.

228.    In October of 2019, Plaintiff fell on property at a real estate showing, and this fall required surgery, resulting in vocal cord paralysis due to the injuries caused during the surgery.

229.    Defendant Weir, despite being her "trustee," did not assist Plaintiff, and continued to refuse to provide correct financial information, or a financial distribution schedule, creating more anxiety for the Plaintiff while she recovered another illness.

230.    On 10-15-19 Plaintiff receive two separate responses from Attorney Robert Dunn, Bailey Cavalieri, and from Robert Barnett, Carlile Patchen & Murphy, both responding to Attorney Dunn's expert report, and offering settlement of *all claims* to resolve Plaintiff's issues---which included the sale of low-basis stock, creating massive tax consequences without any benefit to the Plaintiff or her descendants, and eroding their generational wealth.

231.    On 11-7-19, Bailey Cavalieri's Attorney Dunn represented and offered to terminate the trust on behalf of Defendant Robert Weir as Trustee of the defective "Elizabeth W. Koeberger (sic) Trust" by means of a Private Settlement Agreement, Disclaimers, Decanting of the original defective trust, creating a new trust on behalf of the Plaintiff so she can "make her own distributions".

232.    Plaintiff accepted Bailey Cavalieri's Attorney Robert Dunn's offer to terminate her defective trust with a Private Settlement agreement, decanting of the defective trust and disclaimers to reconcile all parties claims which was the goal of the Plaintiff.

233.    On 11-25-19, numerous emails were exchanged between Plaintiff's counsel and Attorney Dunn of Bailey Cavalieri, who sent a draft Private Settlement Agreement and Decanting documents for review and modification by Plaintiff's counsel, including Attorney Duren, Hoffman and Wasserman so that Plaintiff could terminate the defective fictitious trust.







234. On 11-25-19 additional emails between Attorney David Duren, Bradley Hoffman and -Robert Barnett were exchanged to complete the settlement terms.

235.    On 12-4-19; Robert Dunn, Bailey Cavalieri sent emails to Plaintiff's counsel requesting consent to his fees of approximately $24,000.00, to be paid by Plaintiff, which Plaintiff consented to her counsel as part of the global and final settlement of her claims which was in progress.

236.    On 12-19-19, Plaintiff received an email advising her that *all parties have consented* which included Defendants Edson Hay Wilson and Defendant Christine Strom, and Defendant Robert weir, and authorizing her to proceed with preparing the Private Settlement Agreement documents to terminate her defective trust.

237.    On 1-7-2020 Attorney Bradley Hoffman verified with Attorney Duren that the Private Settlement Agreement and Decanting, Disclaimers and new trust would resolve the defective trust, and halt the  tax consequences that are eroding Plaintiff's assets and quality of life as well of her daughter, Alexandra Koeberer Manti.

238.    Plaintiff retained counsel Kemp Shaeffer & Rowe.  On 4-27-20, a ***Notice of Appearance of Counsel*** was filed at Franklin County Probate Court by Attorneys Steven Rowe and Michael Ferguson, who were then authorized to proceed and complete all necessary Private Settlement Agreement documentation so that Plaintiff could terminate the defective trust and move on with her life for herself and her family.

239.    On 5-15-20 Defendant Weir made a payment to *Kemp Shaeffer and Rowe* from Plaintiff's trust for the Private Settlement Agreement and related documents for the termination of the defective trust, including disclaimers from her brother and sister, decanting of her old trust, and a new trust in her correct name. **Exhibit H.**

240.    On May 4, 2020, Plaintiff's co-counsel, Susan Wasserman met with Magistrate Morris, of Franklin Probate Court, to announce her retirement and the phase-out of her case load, including her guardianship cases, where a successor guardian would need to be appointed by the court.

241.    Wasserman advised Magistrate Morris that she planned to leave the State of Ohio so that the court could proceed to appoint new guardians, as is the custom and practice of this court. Plaintiff's case was not discussed as settlement was underway.

242. On 5-18-2020, Defendant Weir, as Attorney for the Executor, authorized partial payment to counsel Susan Wasserman, and deposited $35,000.00 in Plaintiff's account for payment of Wasserman's legal services at $400.00 per hour.

243. Defendant Weir ratified Wasserman's legal services on behalf of the Plaintiff in terminating the defective trust and reconciling all claims with all parties in the Wilson Family.

244. On 7-15-2020 Defendant Weir made another payment from Plaintiff's trust to *Kemp Shaeffer and Rowe* for the Private Settlement Agreement and related documents to complete the termination of Plaintiff's defective trust.

245. On 9-16-20 Attorney Jane Higgins Marx, Carlile Patchen & Murphy requested the Status Conference in probate court be continued because of the health issues of Attorney Robert Barnett.

246. On 9-20-20, Robert Barnett, Carlile Patchen & Murphy passed away. His March 4, 2020 email to Plaintiff's counsel included Defendant Edson Hay Wilson signature on a Sixth Tolling Agreement in good faith.

247. On 10-15-20 Attorney Jane Higgins Marx, a managing partner at Carlile Patchen & Murphy, filed a ***Substitution of Counsel*** on behalf of Edson Wilson ***individually***.

248. Defendant Weir remained as counsel for Edson H. Wilson, as Executor, as well as holding his conflicted position as "Trustee" of the defective Koeberger Trust (sic).

249. On 10-30-20 Attorney Bradley Hoffman withdrew as co-counsel for Plaintiff, as Kemp Shaeffer and Rowe had been retained with Attorney Susan Wasserman to close out this matter.

250. **At this point, this entire matter appeared to have been settled to the satisfaction of all parties.**

251. On Tuesday, November 3, 2020, Jeffrey Mackey defeated Judge Robert Montgomery in the race for Franklin County Probate Judge.

252. On 11-22-20, without notice or consent to or from Plaintiff, Defendant Weir authorized a payment to Plaintiff's granddaughter, by way of depositing funds from Plaintiff's trust to the IOLTA account of Robert Dunn, of Bailey Cavalieri, in the amount of $1000.00.

253.    On 11-25-20, without explanation, Dunn advised Plaintiff that she was "not entitled to a written agreed entry" and demanded withdrawal of the 10-17-2018 Motion to Reopen.

254.    Bailey Cavalieri's counsel, Robert Dunn demanded that Plaintiff withdraw her motion to reopen in Franklin County Probate Court despite his previously agreed-to specific offer for Defendant Weir to resign, terminate  and decant her defective trust, and in spite of  this entire matter appearing to have been settled- at Plaintiff's expense.

255.    On 11-25-20, outraged by the threats and intimidation, Plaintiff refused to relinquish her rights without a written agreed entry to protect herself and her family.  This unexplained betrayal of the global good faith agreement, that had just been negotiated at such immense cost in time and money, came as a profound shock to Plaintiff, causing her exceedingly harmful pain and suffering.

256.    On 12-3-2020 Defendant Weir illegally authorized the transfer of stocks from the fraudulent Elizabeth W. Koeberger (sic) Trust to an "unknown" individual.  This fraudulent transaction was not disclosed to Plaintiff until Defendant Gordon obtained discovery in the 22 CV 002604 civil action. The identity of the transferee has never been disclosed.

257.    On 1-15-21, after Judge Mackey took office a new administration was in plac e,Defendant Weir authorized payment for Kemp Shaeffer & Rowe's services in negotiating the now-abandoned settlement agreement by sending Plaintiff Elizabeth Wilson Koeberer a final payment check for $6050.00 from the IOLTA account of Frase, Weir, Baker & McCullough.

258.    The same day, on 1-15-21,Defendant Weir as represented by  Attorney Robert Dunn, Attorney Jane Marx (representing Edson H. Wilson individually) and Plaintiff's sister Christine Strom, repudiated their consent to the termination of the defective trust, and to the Private Settlement Agreement, and filed without explanation a response to the original Motion to Reopen filed on 10-17-18.

259.    Despite having spent some 30 months of effort, and almost $100,000 with Defendant "Trustee" Weir's "good faith" direction and agreement, Plaintiff was advised that the negotiated terms of the agreement prepared at such immense expense were now null and void, and that she should abandon her rights and those of her family as to her inheritance from her mother.

260.   Her motion to reopen [for which she and her attorney would soon be sanctioned by Judge Mackey] had by then been pending for more than two and a half years, without objection from presiding Judge Robert Montgomery, or from Executor Edson Wilson, or from Plaintiff's sister Christine Strom, or from "Trustee" Robert Weir, or from any of the numerous attorneys involved.

261.   Enormous effort and expense wrung from Plaintiff was now apparently all for naught. This de facto bait-and-switch betrayal left her physically, emotionally and financially devastated. She and her Attorney Wasserman were now also, apparently, in the cross-hairs of a vicious attack for unprecedented "sanctions" whose charges of "frivolous" behavior had been raised by no one for more than two years of intense legal and financial negotiations, conducted with great seriousness and apparent good faith.

262.   In January, of 2021, at Plaintiff's request, Attorney Susan Wasserman delayed her retirement. Plaintiff directed Wasserman to file a response in the Franklin County Probate Court 563322, on behalf of Plaintiff, as all of her other counsel had been paid and had withdrawn.

263.   Attorney Wasserman stayed in Ohio to resolve Plaintiff's claims, as had been agreed to by Defendant Weir when he approved the settlement agreement, including his having authorized payment of Wasserman's fees in May of 2020.

264.   On 1-21-21, Plaintiff filed for Franklin County Probate Court to take jurisdiction of the "trust" in Case No. 607895 to allow the court to resolve her trust claims. The Court did not respond.

265.   Defendant Weir, as attorney for the Executor, ignored Plaintiff's filing. Defendant Weir continued to litigate against his own prior client and current trust beneficiary, Elizabeth Wilson Koeberer, resulting in relentless legal filings on her "Motion to Reopen" that had been placed on the motion docket on 10-17-18. These filings included an unprecedented novel demand for "sanctions," branding as "frivolous" Plaintiff's Motion to Reopen from 10/17/2018, which had been continued for more than two years of good faith negotiations, incurring roughly $100,000 in legal fees which were approved by Defendant Weir from Plaintiff's trust, including Weir's approval of fees for Susan Wasserman. Defendant Weir continues to file routinely file for

sanctions against Plaintiff, and her attorney, in other courts, weaponizing the demand for sanctions as a form of intimidation.

266.    On 2-7-2021, Plaintiff filed a response objecting to the "unholy alliance" of her cousin's husband, Defendant Weir, as her unwanted Trustee, and her brother Edson Wilson, as Executor.  She objected to the failure of the Executor to protect her interests, citing both *Cincinnati Bar Association    vs. Robertson*   145 Ohio St. 3rd 302, 2016 Ohio 654, and *Boli vs. Huntington National Bank 2023-Ohio-3308,* as well as the expert opinion in ongoing tax damages of $300,000, as presented by her Attorney David Duren **Exhibit C.**

267.    Though the matter had been continued for 2 years, and was then ordered into a briefing mandate by the court, there was no ruling on the "Motion to Reopen" that would trigger the right to file for sanctions and fees under ORC 2323.51.  Simply stated:  there was no ruling and the case was not over when Defendant Weir, and her brother's counsel Carlile Patchen & Murphy authorized the filings against Plaintiff

268.    Despite this, Attorney Jane Marx, as managing partner for Carlile Patchen & Murphy, on behalf of the Executor Edson Wilson, individually, filed "ambush" sanctions on 3-31-21, **prior** to any ruling as required in ORC 2323.51.  This undermined Plaintiff's rights to a timely appeal under the pretense that a hearing was now necessary to determine the "damages".

269.    On 4-13-21, Attorney Jane Marx, Carlile Patchen & Murphy, mocked the Plaintiff, stating there was **"no discovery"** in this case as it was closed, disregarding Carlile Patchen Murphy's extensive production of documents to Attorney Bradley Hoffman and Attorney David L. Duren, in 2019, as well as Barnett's settlement proposal which Plaintiff accepted. And which Marx had a duty to review both as the managing partner of Carlile Patchen & Murphy, and as "substituted" counsel for the Executor, after the death of Attorney Robert Barnett.

270.    On 5-12-21, Attorney Bryan Pritikin, of Carlile Patchen Murphy, entered an appearance in the Estate of Ruth J. Wilson as co-counsel with Attorney Jane Higgins Marx, adding his billing to the burden already being assessed against Plaintiff over her objection.

271.    On 7-1-21; Plaintiff requested in writing to Attorney Marx to send her the "damages" her brother was seeking against her.  Attorney Marx did not respond.

272.    On 7-5-21, Plaintiff filed a complaint with the Ohio Disciplinary Counsel. Plaintiff was told that her complaints could not be submitted until the case was "over". Plaintiff's documents were shredded and she was told the complaint was closed.

273.    Plaintiff then encountered a wall or rejection against securing legal representation in Franklin County, Ohio.

274.    Despite calling numerous attorneys in and out of Columbus, no attorney other than Susan Wasserman would represent Plaintiff against Defendant Weir's assault on her inheritance and her rights.

275.    On 7-27-21, Magistrate Morris, rendered his first decision declaring that Plaintiff's counsel Wasserman's arguments "defy reason" and that her Motion to Reopen, filed in 2018, nearly three years prior, was "frivolous" and subject to sanctions, which remain unprecedented in the history of the Probate Court, dating to the 1850s. No case law pursuant to ORC 2323.51 support these "sanctions" where a case is still being litigated in other courts. Here the case is now in two other courts with multiple claims against Plaintiff.

276.    Magistrate Morris's decision ignored the facts that there were no assets in the estate, and that the executor refused to make an appearance in the court-ordered briefing, or to resolve the issue of the deliberate mis-use of Plaintiff's name, or to consider that the Plaintiff had not filed a "civil action".

277.    In the course of his rendering his opinion, Magistrate Morris included gratuitous personal comments against Attorney Wasserman, who had been practicing in the Probate Court for more than three decades without ever having been subjected to such personal denigration as well as disregarding *Roll vs. Edwards* 156 Ohio App.3d 227, 2004-Ohio-767 which the Plaintiff relied on.

278.    As this was not a final appealable order, the court ordered a hearing and specified that the case differed the Plaintiff relied on:

> Finally, in support of her first and second objections, Ms. Koeberer appears to argue that she needed to attempt to reopen the probate estate in order to exhaust her probate remedies, thus allowing her to pursue a claim of intentional interference with inheritance. Ms. Koeberer cites Roll v. Edwards, 156 Ohio App. 3d 227, 2004-Ohio-767, 805 N.E.2d 162 (4th Dist.), **however this case is distinguishable on its facts, as the parties in Roll v. Edwards were engaged in concurrent, related litigation in both the probate division and general division of the court of common pleas.**
>
> As the matter of sanctions pursuant to R.C. 2323.51(B) remains outstanding, this entry shall not constitute a final appealable order pursuant to R.C. 2505.02 and Civ.R. 54(B).
> IT IS SO ORDERED.
> FILED # 6 JUL 27 2021

279.    ORC 2323.51 requires that the motion for fees be filed 30 days after the decision, so that the "sanctions" were required to be filed **by 8-27-21**. All of the filings were procedurally late and defective.

280.    The Executor cannot appear individually and create a surcharge against Plaintiff as a beneficiary when there were no assets in an estate.

281.    To the best of Plaintiff's information and belief, there are no cases like this in the legal database where the case is being litigated in other courts, and in which an attorney for an executor sues a beneficiary of an estate he is entrusted to administer in order to deter and undermine and intimidate the beneficiary's right to appeal and resolve termination of a defective and fictitiously titled trust.

282.    Since Defendant Attorney Ryan Gordon did file in Franklin County Court of Common Pleas on 4-20-22, the probate court's reference to *Roll vs. Edwards* 156 Ohio App.3d 227, 2004-Ohio-767 as not applicable was clearly incorrect and should have ended this case . Defendant Weir tried to stop Plaintiff from filing and he failed so he has created a litigation soup to undermine her rights to a timely resolution of this matter.

283.    Plaintiff's name, **Elizabeth Wilson Koeberer** is not negotiable. Plaintiff has a sacred right to an accurate accounting of her legal identity.  Defendant Weir cannot extinguish her rights to

appeal by collateral simultaneous legal attacks in multiple courts at her expense and extinguish her rights to protect the fee simple interest of her rights in the Wilson family.

284.    On advice of his independent counsel, Attorney Brittany Stephen, of Bailey Cavalieri, Defendant Robert Weir filed for sanctions against plaintiff on late-9-10-21, even though the original motion to reopen the estate had been filed and continued by his agreement well over two years prior, and the decision was rendered on 7-27-21. Plaintiff was charged for all of this work.

285.    Defendant Weir's inconsistent actions have included:

a.    Defendant Weir agreed to settle Plaintiff's estate; and had paid himself and Bailey Cavalieri from Plaintiff's fraudulently mis-named trust for services rendered in reaching that settlement; and then

b.    Defendant Weir approved and authorized Wasserman's legal fees rendered in the course of creating that 2020 global settlement on 5-18-20.

c.    Defendant Weir had also approved payment for services in the name of that settlement to Attorney Bradley Hoffman, David L. Duren and Kemp Shaeffer & Rowe, all in the course of attempting to terminate Plaintiff's defective trust, all at the expense of the Plaintiff, and then advised her she was not entitled to a written agreed entry; and

d.    Defendant Weir filed late for sanctions, and knew the case was not over. Even though the relevant decision he was now challenging with the attempt to impose unprecedented sanctions had been rendered more than thirty days prior to this illegal filing, which should have barred Weir's demand for a filing that was already inadmissibly late on the face of the record. The only purpose of this late filing was to delay Plaintiff's resolution of her repudiated settlement claims.

286.    On June 1, 2021, Plaintiff filed her first Objection to the Magistrate's Decision to extinguish Plaintiff's right to correct her name by the Executor, and to obtain relief from the defective trust created by Defendant Weir in the fictitious name he had attached to Plaintiff's Trust, and which was never corrected despite years of explicit requests.

287.    On 7-15-21, Steven Rowe and Michael Ferguson of Kemp Shaeffer and Rowe withdrew as co-counsel for Plaintiff in the Franklin County Probate Court 563322. They had been paid in full for the Private Settlement Agreement, Disclaimers, Decanting and new trust **(Exhibit H)** for Elizabeth Koeberer, as authorized by Defendant Weir and his counsel, Attorney Robert Dunn, of

Bailey Cavalieri. In addition, by that time, Plaintiff had paid for one expert opinion, from Attorney David Duren.

288.    On 8-31-21, Plaintiff served by certified mail subpoenas for the hearing scheduled by Judge Mackey for September of 2021,disclosing that both Attorney David Duren and the records of J. P. Morgan Chase Bank would be subpoenaed for the hearing.

289.    As none of the "sanctions" filed against Plaintiff and her counsel, jointly and severally, had any attorney fees attached, Plaintiff was forced to file a **Motion to Compel Verified Damages** on 9-17-21, or to prepare for the hearing on "sanctions," without any idea of what she was facing, as no "damage" information was provided in any of the three filings for attorney fees by Defendant Weir as Trustee, for Bailey Cavalieri on behalf of Plaintiff's brother, individually, or for Plaintiff's sister, Christine Strom.

290.    These sanctions were filed against Plaintiff and her attorney Susan Wasserman **jointly and severally,** alleging "frivolous" actions in filing the Motion to Reopen despite Attorney David Duren's expert report of substantial ongoing harm to Plaintiff. **(Exhibit C**)

291.    Defendant Weir had already relied on that report to authorize the termination of Plaintiff's defective trust with the Private Settlement Agreement, which was agreed to in 2020 by multiple parties.  Furthermore, Weir's Attorney, Robert Dunn, of Bailey Cavalieri, had specifically offered to Plaintiff his cooperation in order to avoid "costly and protracted litigation" with an agreement that Defendant Weir would resign and terminate the defective, mis-named Koeberger Trust (sic).

292.    The hearing date was continued by Magistrate Morris, on behalf of the Franklin County Probate Court, on its own motion, alleging that "schedule" issues had arisen soon after the subpoenas were issued by Plaintiff for the September 27, 2021 hearing and Plaintiff's expert report was served on all parties.

293.    On 11-12-21, Plaintiff filed a *Motion for Disqualification* of Bailey Cavalieri and Carlile Patchen Murphy in the Franklin County Probate Court.

294.    Neither firm filed a response.

295.    That matter was not placed on the motion docket.

296.    Just seven days later, on 11-19-21, Franklin County Probate Court Judge Mackey denied Plaintiff's Motion for Disqualification of Bailey Cavalieri and of Carlile Patchen Murphy.

297.    Now facing a hostile hearing, and having received a written doctor's opinion warning that testifying in person in such a hearing would jeopardize her health, Plaintiff filed ***Request for Admissions and Production of Documents*** so that the matter could be submitted on the record without her being subjected to a personal appearance that would threaten her health and saddle her with unnecessary costs.

298.    On 11-18-21, Edson H. Wilson, through his counsel Bryan Pritikin, of Carlile Patchen Murphy, filed an opposing response to Plaintiff's Request for Admissions and Production of Documents, **asserting that this was not a civil action** in which Plaintiff would be entitled to such a procedure.

299.    On 12-10-21, Bailey Cavaleri, filed opposing responses to Plaintiff's Request for Admissions and Production of Documents asserting that this was **not a civil action in which Plaintiff is entitled to such information,** attaching all tolling agreements that had been signed by the parties to terminate the fraudulent "Koeberger Trust" (sic) in an amicable settlement, but which had been repudiated without explanation.

300.    Plaintiff filed these requests because she had never had a hearing, and the cost of litigation where the matter must go up on appeal on the record was being gratuitously imposed on her, at her sole expense, by Defendant Weir, Defendant Edson Hay Wilson and Defendant Christine Strom.

301.    While litigating against Plaintiff's rights, Weir continued to self-deal Plaintiff's funds to pay himself, and his attorney Robert Dunn, Bailey Cavalieri. By using his position as Trustee of her Trust to work against her interests, Defendant Weir also shifted to Plaintiff the cost of her counsel and of Attorney David Duren as her expert witness. Defendant Weir was joined in his assault on Plaintiff's interests by the estate Executor, her brother, Defendant Edson Wilson, whom Weir also represented as Attorney, in direct conflict of interest with his role as Trustee of the fraudulent "Elizabeth Koeberger Trust" (sic).

302. Defendant Weir continued to refuse to provide a distribution schedule or reimburse all medical expenditures for Plaintiff, imposing pain and suffering while tangibly threatening her health.

303. On 12-14-21, Plaintiff retained the services of ethics expert **Mary Cibella, Attorney at Law** to provide an expert opinion on Defendant Weir's multiple conflicts of interest. **Exhibit D**

304. On 12-21-21, Plaintiff agreed to reimburse Wasserman for all legal expenses for her to retain additional counsel for the "hearing," including hiring additional trial counsel.

305. **Attorney Robert John Beggs** was retained to represent Wasserman simultaneously as Wasserman continued to defend Plaintiff in Franklin County Probate Court 563322.

306. Though planning to retire, Attorney Wasserman was required to remain in Ohio---while travelling back and forth to her family out of state---to defend Plaintiff, as authorized by Plaintiff Elizabeth Wilson Koeberer.

307. Plaintiff was forced to continue to incur costs for Wasserman and Beggs for the "hearing" demanded by Judge Mackey on "sanctions," despite having notified the Court that she was suffering from vocal cord paralysis.

308. When Plaintiff told the Court she could not testify at this hearing, Magistrate Morris suggested she might "whisper" or type in real time her testimony as the hearing would proceed with her physically present.

309. In February of 2022, mediation as requested by Plaintiff failed. Defendant Weir had told Plaintiff prior to the session that she should "bring her checkbook", even though he as Trustee of the fraudulent trust controlled her resources and had authorized a global settlement at her expense.

310. Attorney Beggs attended the mediation with Plaintiff's counsel Wasserman.

311. At the mediation, Attorney Robert Dunn threatened Wasserman on Zoom in from of Attorney Beggs by warning her that "this will not end well for you" if she continued to refuse to withdraw the Motion to Reopen, which had been filed more than two years earlier and had been continued by agreement of all parties, but which is now being sanctioned as "frivolous."

312.    Wasserman informed Attorney Dunn that the Plaintiff specifically had instructed her to make it clear that she would not give up her rights, or surrender her descendant's rights to her family legacy, and would appeal all decisions hostile to that commitment.

313.    Plaintiff remained steadfast to protect her family's rights and has authorized Wasserman to continue to protect her rights despite the threats against her, her descendants and her counsel.

314.    In February of 2022, all parties were ordered to file disclosure of witnesses. Plaintiff disclosed Defendant Chase bank records, and Attorney Mary Cibella, and Attorney David L. Duren, whose reports were provided to all counsel. **Exhibits C, D.**

315.    After suffering through years of deprivation and denigration, Plaintiff retained the services of Defendant Attorney Ryan Gordon to file a civil action against Defendant Weir for malpractice and for a trust construction action in the Franklin County Court of Common Pleas, which has concurrent jurisdiction with probate court.

316.    Attorney Gordon required a conflicts of interest check.    After completion of same, Defendant Gordon represented to Plaintiff that he had no conflicts with any counsel in this matter and "is not afraid of them".

317.    Defendant Attorney Gordon represented that he had specific expertise in "unfunded" trusts, and had an LLM in taxation,    Defendant Gordon confirmed that Plaintiff's claims were valid, substantial and not frivolous.

318.    Defendant Attorney Gordon, operating as a "tax expert," confirmed the substantial tax issues raised by Attorney Duren, including loss of step-up in basis in the unauthorized sales of the estate's stock, and the issues relayed by Attorney McCullough on the impact of the defective trust.  Defendant Gordon confirmed that Plaintiff's claims were valid and substantial.

319.    Defendant Attorney Gordon represented that he had reviewed all information provided to him by Adam Knolls, Plaintiff's CPA, and her remaining counsel, Susan Wasserman, including specifically Attorney Mary Cibella's expert opinion, Attorney David L. Duren's opinion reports, and Collins and Slagle's initial opinion from 1-5-2017, including detailed research,

correspondence, emails and point-by-point demands for Weir's resignation to protect Plaintiff's assets and health, demands Defendant Weir continued to refuse.

320.    Defendant Attorney Gordon specifically required that all services be paid in full before he proceeded at any given time.  He assured Plaintiff he would not proceed without authorization to work so that Plaintiff could expect he would withdraw **immediately** if she did not authorize the work. Plaintiff agreed and signed an agreement that required a retainer of $10,000.00, which she paid from her limited personal funds.

321.    Plaintiff and Defendant Gordon agreed that all digital exchanges would include her attorney Wasserman, as Plaintiff did not have a computer or printer in her home or the ability to use same.

322.    The initial meeting on September 24, 2021 with Defendant Ryan Gordon to discuss his fee agreement was held at Wasserman's office at 746 Yearling Road, Whitehall, Ohio 43213.  Present were Plaintiff, her CPA, Adam Knolls, Defendant Gordon, and Attorney Wasserman.

323.    Defendant Gordon was advised that Plaintiff did not have a computer or printer, and would rely on her counsel, Wasserman, and CPA Adam Knolls to assist her with all digital documentation.

324.    Defendant Gordon was advised of the pending sanctions hearing in Franklin County Probate Court 563322.  He insisted it would not interfere with his efforts in Franklin County Court of Common Pleas, and had nothing to do with the civil action he would be filing.

325.    Plaintiff required that all paperwork go through Wasserman's office, and that all payments would be made by check, not digitally, to which Defendant Gordon agreed.

326.    Attorney Gordon later retained the services of Attorney Paul Flowers for a third report **Exh. E** to substantiate Plaintiff's claims as outlined in his filing 22 CV 2604,  *Koeberer vs. Weir et.al.*

327.    Plaintiff and Defendant Gordon worked from September of 2021 until April of 2022 on her complaint against Defendant Weir. All drafts were sent to Wasserman to review with Plaintiff, for corrections and modifications as approved by Plaintiff and circulated to her CPA Adam Knolls.

328.    Before Defendant Gordon filed, on 4-15-22, Plaintiff dismissed her pending petition for Franklin County Probate Court 607895 to take jurisdiction of her "trust" as required so that she could  proceed in the Franklin County Court of Common Pleas.

329.    Defendant Weir, on advice of counsel, had refused to join all necessary parties and had ignored this attempt to resolve issues as required by local rule 78.10.

330.    Plaintiff was advised by Defendant Ryan Gordon, that she must now perfect her rights to file in Franklin County Court of Common Pleas, so that the fictitious "Koeberger" name and trust errors might be corrected, or else her claims would be forever barred.

331.    On 4-20-22, Plaintiff, by and through Attorney Ryan Gordon, filed her action in Franklin County Court of Common Pleas, 22 CV 002604 That action is still pending before Judge Kimberly Cocroft, for malpractice and construction of Plaintiff's "trust," including the avoidable costs to Plaintiff, which were wrongfully imposed by Defendant Weir's reckless, fraudulent, self-dealing actions.

332.    Defendant Attorney Gordon advised Plaintiff that he would not join her descendants in the action, for a procedural reason.  Plaintiff objected, arguing she is seeking a global resolution, but then agreed to follow his advice and authorized the filing of the civil action only against Defendant Robert E. Weir for malpractice and trust construction, and for termination of her trust as no longer of economic benefit asking the court to compel distribution to protect her assets from ongoing decline.

333.    To the best of her knowledge and information in July of 2022, CNA assigned Reminger panel attorneys Zachary Pyers and Shana Demooy, who entered an appearance for Defendant Weir in 22 CV 002604 in Franklin County Court of Common Pleas.

334.    Just months before in Franklin County Probate Court, on 4-28-22, Bailey Cavalieri, on behalf of Weir as Trustee; Carlile Patchen Murphy LLP, on behalf of Edson H. Wilson individually; and Defendant Christine Strom, filed a massive **Motion to Exclude or Limit Witnesses,**  to thwart Plaintiff's experts Cibella and Duren, as well as a **"Protective Order"**

continuing to force Plaintiff into an expensive hearing that would run up fees, harm her health, and intimidate her into relinquishing her rights to protect herself and her family.

335.    On 5-2-22, Plaintiff filed in the Ohio Supreme Court an *Affidavit of Disqualification of Judge Mackey*, attaching the billings of counsel, where Plaintiff was being charged by all participating attorneys at her expense. This churning of fees was decimating her assets, as did Defendant Weir's and Defendant Edson Wilson's incompetent disposition of low basis assets, and Defendant Weir's unauthorized attorney and fiduciary fees for funding from Plaintiff's own funds hostile legal proceedings adverse to Plaintiff.

336.    No authorization of such self-dealing fees or mis-managed stock sales have ever been approved by any court.

337.    The ORC 2323.51 sanctions hearing on 5-4-22 was continued by the Franklin County Probate Court after Plaintiff's filing for disqualification with the Ohio Supreme Court.

338.    On May 31, 2022, Defendant Weir filed a **Third-Party Complaint** against Plaintiff's CPA, Adam Knolls, and Plaintiff's counsel, Susan Wasserman, before Judge Cocroft. 22 CV 002604.

339.    Plaintiff authorized her attorney, Wasserman, to continue her representation, and agreed to reimburse her for the cost of the deductible charge for her malpractice carrier OBLIC to now represent Wasserman.

340.    Wasserman continued to protect Plaintiff's interests by paying the cost of the deductible $2500.00, while also retaining trial attorney Robert John Beggs, whose services were required because these sanctions were filed jointly and severally.

341.    Plaintiff agreed to reimburse Wasserman for all legal expenses incurred by her, including for Attorney Robert John Beggs as trial counsel, which required a retainer of $8,000.00.

342.    Plaintiff was subjected to needless pressure, anxiety and pain and suffering over Defendant Weir's on-going delay tactics, and his repudiation of the Private Settlement agreement that she was induced to pay for by Defendant Weir and his counsel, and as had been "agreed to by all parties" on November 19, 2019 by email.

343.     OBLIC appointed Weston Hurd to represent Plaintiff's chosen counsel, Susan Wasserman, and they filed a Motion to Dismiss. Plaintiff authorized Wasserman to pay all costs for reimbursement by her to assure her representation in the face of Defendant Weir's collateral attacks on Plaintiff's right to counsel.

344.     While Defendant Weir continued to represent the Executor, he refused to resign as "Trustee" of the fraudulently mis-named Koeberger Trust (sic), whose deliberate mis-naming he had perpetrated and continually refused to correct despite repeated requests.

345.     In June of 2022, Ohio Supreme Court Chief Justice Maureen O'Connor denied the Affidavit of Disqualification, ordering the "hearing" to continue before Judge Mackey.

346.     On September 6, 2022, Reminger attorneys Pyers and Demooy filed partial answers to discovery, *admitting that Weir had previously represented Plaintiff,* who he was now suing, and attaching a partial accounting showing use of multiple illegal IOLTA account transactions, with illegal commingling of assets, and distributions to unknown and unidentified beneficiaries, all in violation of Ohio Trust Code. The Iolta accounts used included Frase Weir Baker & McCullough and Bailey Cavalieri.

347.     Attorney Ryan Gordon refused to take action against Bailey Cavalieri, despite his prior assertion that he had no conflict of interest in this matter, asserted before Plaintiff, who was induced to sign Defendant Gordon's fee agreement and make substantial payments to him.

348.     On 9-12-22, Plaintiff submitted a letter from her physician, Dr. Whitfield, to Attorney Beggs, which he filed in Probate Court on her behalf, showing that "irreversible damage to her vocal cords" would result to her during in-person testimony. Her doctor advised against her testifying at any such hearing.

349.     On 9-12-22, at a hearing in Franklin County Probate Court, Plaintiff and her counsel Susan Wasserman filed a withdrawal by Wasserman because of Defendant Weir's pending third party complaint in 22 CV 002604, and the filing of the ambush sanctions against Wasserman and Plaintiff jointly and severally for filing a Motion to Reopen.

350.    On 9-12-22, probate court approved Wasserman's withdrawal, leaving Plaintiff without representation.  Plaintiff remains pro se in Franklin County Probate Court, where only the Executor can correct the fraudulent name attached to her Trust.

351.    On 9-22-2022, in Common Pleas 22CV002604 Defendant Weir dismissed without prejudice the Third-Party Claim against Plaintiff's CPA, Adam Knolls, but continued to prosecute his frivolous Third-Party claim against Wasserman, who had been required to withdraw from probate court representation of the Plaintiff because of this collateral attack designed to cripple Plaintiff.

352.    Plaintiff was left without official counsel amidst ongoing conflicts of interest, at the mercy of her brother, the Executor, his "individual" counsel Carlile Patchen & Murphy, and Defendant Weir, and his counsel Bailey Cavalieri while Defendant Weir continued to represent the Executor.

353.    On August 18, 2022, Defendant Weir filed an Amended Disclosure of his Third-Party Claim.  Inexplicably attached to this disclosure, as the third page, was his mother's obituary. referencing his father, Eugene Weir.  Plaintiff alleges this was filed to intimidate Judge Cocroft, presiding over 22 CV 2604 as to Weir's influence in the legal community.

354.    On August 18, 2022 Defendant Weir mailed to his malpractice attorney, Zachary Pyers, Reminger, the Certificate of Service for the Amended Disclosure of Third-Party Plaintiff's Trustee of the Elizabeth W. Koeberger (sic) Trust dated July 15, 2011, which was clearly in the fictitious unauthorized name of "Koeberger" and included the obituary.

355.    Thus Pyers, as a panel dependent attorney hired to resolve the malpractice claims of Plaintiff against Weir, had full knowledge of the filings of Defendant Weir, with both constructive and actual knowledge of the tactics Weir was using against Plaintiff to delay and undermine her rights to a timely resolution of her claims.

356.    On 11-2-2022, Defendant Weir authorized a payment from Plaintiff's trust for $1000.00 to Reminger without Plaintiff's authorization or consent, using Plaintiff's own money to pay Reminger for attacking Plaintiff.  Plaintiff was forced by Weir to pay for her own legal fees to

defend herself against actions by Reminger that "Trustee" Weir was funding with Plaintiff's own money which was commingled with his IOLTA and her trust fund.

357.    Defendant Weir continued to self-deal, paying himself and Bailey Cavalieri to fight against Plaintiff using Plaintiff's own money, without court approval, over her continued objections.

358.    On 11-8-2022, Plaintiff again filed in the Ohio Supreme Court, a **Writ of Prohibition and Procedendo;** alleging that the Probate Court does not have subject matter jurisdiction where the Executor refused to act, where there were no assets, where no civil action was filed in Probate Court as required by ORC 2323.51, and that the "hearing" would result in unnecessary fees representing the "costly and protracted" litigation that Attorney Dunn, in 2018, then acting at the behest of Defendant Weir, had agreed to avoid.

359.    Plaintiff asserted that the Executor and his counsel, now her "Successor Trustee," were taking positions adverse to her, even though Plaintiff was Weir's former client, and was a beneficiary of the trust Defendant Weir was draining for his personal benefit.

360.    In an estate, only the Executor can file a civil action. A beneficiary has the right to a surcharge, but in this matter, there were no assets. Plaintiff is seeking correction of her name and proper construction of her trust. Both issues are outside a will contest action, and are authorized by Ohio law. *Boli vs. Huntington National Bank* 2022 Ohio 2127 (Ohio Ct. App. 2022).

361.    Plaintiff had every legal right to petition the probate court by filing the Motion to Reopen, as well as the right to file her supporting expert report of damages by Attorney Duren. (**Exhibit C)** Defendant Weir's heavy handed attacks have caused unconscionable pain and suffering to the Plaintiff, who—as a direct result of Weir's self-dealing--- has already been unfairly burdened by substantial fees that had been meant achieve the agreement of all parties to resolve her claims, an agreement which Defendant Weir encouraged, using her funds, and then repudiated to her detriment and harm..

362.    In the Ohio Supreme Court Writ of Prohibition and Procedendo, on 12-5-2022, Defendant Weir authorized Bailey Cavalieri to file a Motion to Dismiss, using Plaintiffs funds to oppose Plaintiff's attempt to mitigate damages, and submit on the record.

363.    Attorney Robert Dunn cited this improper self-dealing directly in Dunn's filing "in the interests of the beneficiaries", while failing to disclose to the Court that the attorney for the Executor, his client, Defendant Weir, had previously authorized Attorney Dunn to approve a termination of the fraudulently misnamed Elizabeth Koeberger Trust (sic), as well as to authorize the preparation of the Private Settlement Agreement and that Dunn had ignored Local R. 78.10.

364.    These inconsistent actions were compounded because  there are no assets in the estate, the Executor refused to appear, and the Plaintiff had not filed a civil action, as all parties have agreed. Plaintiff's actions were anything but "frivolous," and were entirely consistent with her right to have a court review Defendant Weir's fraudulent, self-dealing and reckless action.

365.    Plaintiff' claims were amply supported by extensive reports, all of which Defendant Weir has ignored to his unwilling client's detriment, and after approving legal fees to accomplish the termination that he agreed to on 5-18-20.

366.    At Plaintiff's expense, Weir refuses to be held accountable to the consequences of his actions against her and his ongoing conflicts of interest in multiple capacities.

367.    Franklin County Local Rules require that a civil action be filed by the Executor, and that all necessary parties be joined. Defendant Weir, on advice of counsel Bailey Cavalieri, Robert A. Dunn, refused to follow the law, and continues to attempt to extinguish Plaintiff's rights to a timely appeal on a "motion to reopen", using Plaintiff's own money to attack Plaintiff with "sanctions" against her assertion of her constitutionally protected rights.

### Court Intervention in Unsupervised Trusts

368.    With regard to any trust that is not subject to ongoing court Supervision:

> (1) Any action brought under R.C. Chapters 5801–5811 is a civil action, subject to the Rules of Civil Procedure, and must be commenced by electronically filing a complaint which addresses jurisdiction, venue, and standing.
> (2) A copy of the trust instrument must be submitted to the court for review contemporaneous with the filing of the complaint. If the terms of the trust are not at issue in the complaint, however,

a plaintiff may request that the trust instrument be reviewed in camera and omitted from the public record.

(3) A plaintiff requesting an award of sanctions against a trustee shall allege in the complaint a breach of the trustee's fiduciary duties to warrant those sanctions.

(4) **A complaint including any request for a form of declaratory relief shall include as necessary parties: the trustee, all current and qualified beneficiaries, and any other persons who have or claim any interest that would be affected by the declaration.**

369.    Plaintiff's Motion to Reopen was not a civil action.  It was placed on the Motion Docket of Franklin County Probate Court. Defendant Weir as attorney for the Executor, splintered jurisdiction of this case to defeat and extinguish Plaintiff's rights while he continued to take adverse and inconsistent positions as both Attorney for the Executor and as Plaintiff's "Successor Trustee" of the fraudulently mis-named "Elizabeth W. Koeberger (sic) Trust" that was defective on its face.

370.    Carlile Patchen Murphy could not simultaneously represent Defendant Executor Edson Wilson individually, while shifting the sole duties and financial cost of representation, which is the sole duty of the Executor, to Plaintiff as a beneficiary of the Estate of Ruth J, Wilson, Franklin County Probate Court. 563322.

371.    Plaintiff herself, in Franklin County Probate Court Case **607895**, attempted to have the court take jurisdiction of the trust on 1-26-21 to fairly resolve the matter.  This attempt was ignored by Defendant Weir and his counsel, Bailey Cavaleri, Robert Dunn, who relentlessly filed expensive motions to delay Plaintiff's rights to a timely appeal of her Motion to Reopen, specifically needed to order her brother, the Executor to correct her name, answer for the mis-handling of the estate's stock assets, and other equitable relief.

372.    Plaintiff Elizabeth Wilson Koeberer has a right to her real name, and to an efficient competent resolution of her claims, as had been achieved at her expense, but which was then extinguished without cause or explanation by Defendant Weir, and with incalculable damage done to Plaintiff and her descendants, exacerbated by the unprecedented, vindictive, indefensible attempt to levy sanctions against her and her attorney.

373.    Plaintiff filed her second extraordinary *Writ of Mandamus* on 2-15-23, **2023-0228** to have Defendant Weir removed for his blatant refusal to recuse himself, to correct the name on the trust, and stop to draining Plaintiff's trust for his personal benefit.

374.    Defendant Weir, again represented at Plaintiff's expense against her interests by Bailey Cavalieri, stated clearly the intent of these motions in his filing on March 14, 2023.

> **"In the interest of the beneficiaries**, the Trustee moved for sanctions in the probate action against relator's counsel Susan Wasserman, related to the numerous motions filed in the probate action by Attorney Wasswerman. **The trustee is not seeking sanctions against Relator."**

375.    Said statement clearly states that the purpose of these sanctions is illegal. The Executor, represented by Weir, continued to use collateral attacks to undermine Plaintiff's right to appeal the denial of her "motion" and Defendant Weir's inconsistent, self-dealing actions in an estate with no assets, and where the Executor attempts to only represent himself "individually".

376.    The Ohio Supreme Court denied the extraordinary Writ of Mandamus to remove Defendant Weir and ordered the hearing to proceed before Judge Mackey, leaving Defendant Robert E. Weir free reign to force Plaintiff into appearing at an expensive hearing despite her vocal cord paralysis and her good faith attempts to submit on the record so that the appeal could proceed without delay.

377.    Defendant Weir has buried in his massive filings the fact that he is responsible for concurrent actions in the Franklin County Probate Court 563322 and the Franklin County Court of Common Pleas 22 CV 2604, leaving Plaintiff with no option but to continue to fight these illegal "sanctions," and for the right to her correct legal name, Elizabeth Wilson Koeberer, as constitutionally guaranteed for herself and her descendants.

378.    *Roll v. Edwards,* 156 Ohio App.3d 227, 2004-Ohio-767. has long been the safeguard against this kind of abuse.  But Defendant Weir, Defendant Edson Hay Wilson and Defendant Christine Strom have repudiated their own good faith agreement.  They have insisted that Plaintiff has an adequate remedy on appeal, while allowing Defendant Weir to continue to drain her assets without timely judicial review, and while continuing to hold her hostage in a defective fictitious trust without medical care, as she determines is necessary, as well as with the unwanted, negligent

mis-management of the assets she inherited from her mother, including her personal mail, cell phone bills, and violating her right to privacy and a timely good faith settlement of her claims.

379.    On 1-4-23, Attorney Jane Higgins Marx, Carlile Patchen & Murphy filed alleged proof of a successful United States Postal Service on Plaintiff, showing that service was made by USPS on an "adult," not specifically on Plaintiff, with a simulated feminine handwritten signature.

380.    This document was not signed by the Plaintiff, but by a "stranger" who then placed it in Plaintiff's mailbox, where Defendant Weir has access and control as title holder to her residence.

381.    This "arrangement" by Defendant Weir for a "stranger" to accept service is a ploy that appears in other litigation by this Defendant, and may allow mail, including insurance and bank accounts to be secreted away from its rightful recipient, the Plaintiff, under Defendant Weir's unwanted dominion and control as a part of scheme of adverse domination.

382.    On 2-15-23, Defendant Weir continued to incompetently liquidate and mis-manage Plaintiff's stock portfolio to fund payment of his self-dealt trustee and legal fees, creating massive losses to which Plaintiff has strenuously objected, all of which have been ignored by Defendant Weir as her unwanted "trustee".

383.    On 2-15-23, Plaintiff filed a second extraordinary **Writ of Mandamus** in the Ohio Supreme Court for removal of Attorney Robert E. Weir from the matter to end the disruption of his ongoing conflicts of interests.

384.    Defendant Weir is married to Rebecca K. Weir, Plaintiff's cousin, also a descendant of Sarah Hay Wilson, which was again disclosed to the Ohio Supreme Court in another attempt to remove Defendant Robert E. Weir from the probate matter in the 2-15-23 filing.

385.    On 3-14-22, Defendant Weir authorized Bailey Cavalieri, through Attorney Robert Dunn, to file a Motion to Dismiss, falsely alleging specifically that "**he does not represent any party to the case**."

386.    Before the hearing in 3-20-23 Plaintiff again filed and submitted her expert opinions on the record, as drafted by ethics Attorney Mary Cibella and tax Attorney David L. Duren, in Franklin County Probate Court 563322. (**Exhibits C, B**)

387.    The hearing on "sanctions" against Plaintiff and her counsel Wasserman was held on 3-21-23. On advice of her doctor, Plaintiff did not attend to avoid "irreparable damage to her vocal cords". Neither her sister or brother appeared.

388.    On 4-4-23; in Franklin County Court of Common Pleas Judge Kimberly Cocroft dismissed *with prejudice* Weir's Third Party Complaint against Plaintiff's counsel Susan Wasserman. 22 CV 02604.

389.    On 5-3-23 The Ohio Supreme Court denied the second extraordinary Writ of Mandamus and ordered the hearing to proceed before Judge Mackey.

390.    On 5-4-23, Plaintiff, pro se filed an ORC 2323.51 Motion before Judge Cocroft for Defendant Weir's frivolous actions.  This is still pending in 22 CV 02604.

391.    Plaintiff also filed protective orders for reimbursement of ongoing medical claims which Defendant Weir has refused to pay, also which remain pending in 22 CV 002604.

392.    Though Plaintiff had paid Defendant Gordon over $100,000.00, and relied on his expertise, Gordon objected to Plaintiff's filing for protective orders or for the ORC 2323.51.

393.    Plaintiff timely filed her ORC 2323.51 to have Judge Cocroft rule on Defendant Weir's suing her CPA and attorney in the middle of a pending probate matter, which was not a civil action, and seeking unauthorized and late sanctions to delay her appeal by filing his baseless Third-Party Claim on 5-31-22 which was dismissed with prejudice on 4-4-23.

394.    Defendant Gordon met with Plaintiff personally to collect her payments as she declined computer transactions or ACH as noted on his documents.

395.    Defendant Gordon was served with copies of the protective orders to reimburse and provide funds for Plaintiff's essential health care and personal needs that remain pending before Judge Cocroft in 22 CV 2604.

396.    Defendant Weir is represented in 22 CV 2604 by Reminger Attorneys Pyers and Demooy, who have opposed all distributions to Plaintiff, stating that Weir has sole and absolute discretion to deprive her of these reimbursements.

397.     Defendant Weir has used funds from Plaintiff's trust to pay Reminger for those filings against Plaintiff's interests, while at the same time refusing to pay medical bills essential to Plaintiff's health and well-being.

398.     Plaintiff's Complaint in 22CV002604 for construction of her defective, fraudulent trust survived Defendant Weir's Motion for Judgment on the Pleadings, leaving open for challenge billings done the last four years, covering the allegations relied on by Plaintiff.

399.     Defendant Weir through his panel counsel Pyers and Demooy filed for a Stay on Discovery which is still pending in 22CV002604.

400.     The trust construction matter remains pending before Judge Cocroft along with Plaintiff's protective orders and her own motion against Weir's reckless actions in suing her counsel and CPA.

401.     Plaintiff has no counsel as Defendant Gordon withdrew as her trial under pressure.  The docket sheet online is erroneous in its listing Wasserman as her attorney. Plaintiff is pro se in 22 CV 002604.

402.     The legal blackout against Plaintiff caused by Defendant' Weir's actions continue to leave Plaintiff without legal representation as Defendant Weir's threats against Plaintiff continued.

403.     Defendant Gordon was advised of the deeply damaging emotional turmoil that Defendant Weir had imposed on her, draining her limited savings left, exacerbating her ongoing vocal cord paralysis and antagonizing her with ongoing threats.

404.     Plaintiff met with Defendant Gordon in September of 2021, in front of her CPA, Adam Knolls and her attorney Susan Wasserman, when Defendant Gordon was initially retained and stated the pending sanctions were irrelevant to his representation.

405.     Defendant Gordon's initial fee agreement was sent by email to Wasserman for review by Koeberer who did not have a printer or computer in her home.

406.     After Plaintiff filed her protective orders and for frivolous filings, Attorney Ryan Gordon filed for withdrawal as counsel for Plaintiff. on 6-15-23.

407. The withdrawal was approved and Plaintiff was left pro se, as no attorney in Franklin County would assist her against Defendant Robert E. Weir.

408. Defendant Attorney Ryan Gordon did not withdraw his claim for attorney fees in the complaint he filed on 4-20-22, which remain pending now before Judge Cocroft.

409. On 5-8-23, Defendant Weir made an unknown deposit to Plaintiff's personal account at Defendant Chase Bank.

410. On 8-17-23 a data breach occurred at Bailey Cavalieri involving client accounts.

411. On 10-4-23, Defendant Weir made an unknown deposit to Plaintiff's personal account at Defendant Chase Bank.

412. On 11-4-23, after years of delays, Plaintiff counsel returned to California, leaving her office building vacant and for sale, as no ruling had been rendered in 563322.

413. On 12-17-23, Defendant Weir made an unknown deposit to Plaintiff's personal account at Defendant Chase Bank.

414. On 12-27-23, more than five years after the initial filing to reopen the estate of Ruth J. Wilson, during which time the estate had been settled and then inexplicably unsettled, Judge Mackey rendered a final appealable order resulting in unprecedented "sanctions" against Plaintiff and her counsel Wasserman, jointly and severally, for filing a Motion to Reopen in an estate with no assets, with no appearance from by the Executor since 10-17-18 and where no civil action had been filed. Further, the case was not over, which ORC 2323.51 requires.

415. Judge Mackey's awarded the following sanctions with Defendant Weir's name only as Trustee of the Elizabeth W. Koeberger (sic) Trust omitted:

> Accordingly, for the reasons set forth above, and after thoughtful consideration, the court hereby orders as follows:
>
> Elizabeth Koeberer's 'motion for frivolous filings' and motion for judicial notice are not well taken and are DENIED.
>
> **Edson Wilson's motion** for an award of expenses and fees is well-taken and is granted.

**Susan Wasserman and Elizabeth Koeberer are ORDERED to pay, jointly and severally, Edson Wilson's reasonable attorney fees and expenses in the amount of $80,349.44.**

Robert Weir's motion for an award of expenses and fees is well-taken and is granted. **Susan Wasserman IS ORDERED to pay Robert Weir's reasonable attorney fees and expenses in the amount of $64,675.46.**

Christine Strom's motion for an award of expenses and fees is well-taken and is granted.
**Susan Wasserman and Elizabeth Koeberer are ORDERED to pay, jointly and severally, Christine Strom's reasonable attorney fees and expenses in the amount of $35,316.50.**

Finding no just reason for delay, this judgment entry shall constitute a final appealable order pursuant to Civ.R. 54(B).

416.     In spite of the fact Defendant Weir had already paid himself the $64,675.46, Mackey awarded Weir for opposing Plaintiff's interests, personally extracting the money from Plaintiff's misnamed Trust, thereby rendering his claim to be a form of double-billing.

417.     Plaintiff immediately requested that Attorney Wasserman file a limited appearance to represent her on appeal with the Tenth District Court of Appeals as Wasserman had previously withdrawn as her counsel in Probate Court because of Defendant Weir's baseless third-party claim filed before Judge Cocroft.

418.     On 1-4-24, by email, Attorney Robert Dunn on behalf of Defendant Weir demanded Wasserman give him her home address and Dunn was provided her correct Ohio information.

419.     On January 11, 2024, Plaintiff's counsel sent Wasserman a *Notice of Appeal* to the Franklin County Probate court by USPS certified mail, with copies to all counsel of record by email.

420.     After almost two weeks, on January 23, 2024, it appeared the US certified mail had been diverted, as it was not received and the filing date was approaching.

421.    Plaintiff's counsel Wasserman authorized a courier to file the *Notice of Appeal* in person and hand deliver it to the Tenth District Court of Appeals, where the case is now pending  in 24 AP 000061.

422.    Plaintiff filed her brief raising, among other issues, that the Executor is a necessary party who has refused to protect Plaintiff's interests, as all filings have been filed by Carlile Patchen & Murphy as counsel for Edson H. Wilson, individually, and that the court does not have subject matter jurisdiction where there are no assets and no civil action was filed in probate, as well as the fact that Plaintiff filed for jurisdiction of her trust in 607895, which the Executor, represented in conflict of interest by Defendant "Trustee" Weir, ignored to her ongoing detriment.

423.    On 2-17-24, while the Tenth District Court of Appeals was pending, Defendant Weir retained additional counsel Attorney Jeffrey Lewis to open a case against Plaintiff's counsel in the Franklin County Court of Common Pleas before Judge Spirlazza 24 JG 9836.

424.    On 2-26-24, the signature of Plaintiff's counsel Susan Wasserman, was forged on USPS certified mail.  Attorney Wasserman's name was signed in a handwriting that is most definitely not hers, at a date, time and location when she was in another state.  The forged document was stuffed through a slot into her vacant building at 746 Yearling Road, Columbus, Ohio 43213.

425.    Plaintiff's counsel Wasserman promptly notified the USPS, the Franklin County Court of Common Pleas and the Franklin County Prosecutor, of the forgery of her name on USPS Certified mail delivered at her vacant office at 746 Yearling Road, Whitehall, Ohio, 43213.  Thus, two major federal felonies---forgery on a legal document, and USPS mail fraud---have been committed in this case.  Official investigations into this egregious abuse of the law are pending.  These issues of blatant criminal activity remain on the face of the record.

426.    Further, on June 4, 2024 Plaintiff 's appellate counsel, Wasserman was served with legal notice at her home address in California.  The delivery was accomplished through the filing of a Franklin County Court of Common Pleas form that *requires her signature, which she never provided or authorized.*

427. Neither Defendant Weir nor his personal Attorney, Jeffrey Lewis, nor anyone else had legal authority to change Wasserman's registered address to California or anywhere else. Thus this case now involves yet another forgery, involving the fraudulent abuse of legally established court procedures.

428. Plaintiff's Appellate response brief was due on June 7, 2024.

429. On June 4, 2024 Plaintiff received a threatening voice mail threat from Defendant Weir stating that on advice of counsel. **we will get "more fees out of you."**

430. Defendant Weir has confirmed that he personally made this phone call.

431. The violent tone and intimidating content of this hostile threat constituted a form of actionable assault. It deeply upset and disturbed Attorney Susan Wasserman and her entire family, causing irreparable pain and suffering. Here is the transcription of the call, which remains digitally archived:

> I'm calling you.
>  Bob Weir
> Give me  a  call here today please,
>  I don't understand how I'm just trying to get.
>  My beneficiary's money back from you.
>  And how you are standing in the way of giving it back to her.
>  I'm not going to call you.
>  For this frivolous conduct.
>  I'm.
>  I'm at 7 4 0 5 0 2 4 0 0 4.
>  7 4 0 5 0 2 4 0 0 4.
>  I assume if you don't call me back.
>  And the fight is on again,
>  and we're going to get more fees out of you.
>  **We're going to take your house.**
>  **We're going to take your building.**
>  **We're going to take everything until we get the money back.**
>  For Liz,
>  your former,
>  maybe your former client.
>  Thank your ghost writing that,
>  which is an ethical violation.
>  But anyway,
>  it would help if you would just.
>  I understand you don't know what you're doing.

We get that.
Give me a call 7 4 0 5 0 2 4 0 0 4.

432.    When Plaintiff's counsel Susan Wasserman filed evidence of the threat with the Court of Appeals, Defendant Weir, through his new counsel of record Attorney Jeff Lewis, filed a Motion to Strike and another Motion for Sanctions against Attorney Wasserman, which is pending before the Tenth District Court of Appeals 24 AP 00061.

433.    In the shadow of this hostile physical threat against Susan Wasserman, Defendant Weir through his counsel Jeffrey Lewis, filed to compel Wasserman's attendance from California at a Judgment Debtor Exam threating **criminal penalties** if she did not appear in person in Ohio within the following week, on **June 12, 2024.**  A request for a stay on the judgments  was denied in the Court of Appeals.

434.    Defendant Weir and Lewis threatened further filings to compel her attendance in person in Ohio to interrogate her about her personal assets.

435.    The multiple forgeries and mail fraud now involved with this case, plus Weir's threats, have made clear Wasserman might well be exposed to physical danger by being in his presence or that of his attorneys, a fear corroborated by Weir's recently being cited for physically intimidating behavior against another attorney, amidst a legal case, as documented in a police report filed in Zanesville, Ohio, in a case involving another beneficiary, Phillip Arthur in cases from Coshocton, Ohio. Zanesville Police report filed by Attorney Benbow December 28, 2023.

436.    Defendant Weir's violent threats have had a tangible impact on the cases in which he is involved.  Police reports are a matter of public record.  They confirm that a dispute has escalated to a dangerous level---resulting in unsafe interactions which have no place in the court system, or in a civil society, coming from any citizen, least of all a licensed attorney, especially when aimed at another attorney, in this case one representing the beneficiary of a trust in which the perpetrator is a "Trustee."

437. Combined with the physical threats endured by Plaintiff at the hands of Executor Edson Wilson, "Trustee" Weir's threatening phone call, especially in light of his documented threats against at least one other attorney in at least one other case, these threats must be taken extremely seriously.

438. On June 20, 2024 Plaintiff's counsel, Susan Wasserman, filed for removal of Weir vs. Wasserman to the Southern District of Ohio, which is pending.

439. On July 8, 2024, Defendant Ryan Gordon filed an action in the Franklin County Court of Common Pleas, against Plaintiff which is pending before Judge Andy Miller 24 CV 005253 alleging he is owed $25,815.93 despite his specific assurance to Plaintiff that he would not work unless explicitly authorized, to comply with her limited budget, stating emphatically "no money-no work". Plaintiff insisted on this safeguard as she has limited funds.

440. Despite this requirement, Defendant Gordon proceeded to run up over than $20,000.00 in fees aggregated in the Common Pleas Court of Judge Cocroft, before he withdrew.

441. Defendant Gordon has filed a Motion for Default, and now a Motion for Summary Judgment against Plaintiff. These matters remain pending before Judge Andy Miller. Plaintiff is pro se in 24 CV 005253. Plaintiff has been unable to secure counsel to represent her.

442. Plaintiff has paid Attorney Gordon well over $100,000.00 for the filing of 22 CV 002604, which is also pending before Judge Kimberly Cocroft in the Franklin County Court of Common Pleas.

443. On 8-14-24 Carlile Patchen filed their "judgment" in 24 JG 053372 which is pending in the Tenth District Court of Appeals 24 AP 000061.

**Certificate of Judgment**
**Plaintiff:** Carlile Patchen & Murphy LLP **Defendants:** Elizabeth Koeberer
**Amount:** $80,349.44 **Filed:** 08/14/2024
**Case No:** 24 JG 053372

444. This action filed by Carlile Patchen & Murphy LLP claims attorney fees for their representation of an individual client beneficiary who is also the executor, Edson Hay

Wilson, in Franklin County Probate Court 563322, despite the fact that the Executor has failed to appear.

445.   Plaintiff, her descendants, and her counsel, Susan Wasserman, have since received numerous threatening letters about collection and bankruptcy, as well as numerous phishing emails and ongoing threats of retaliation by Defendant Weir, actionably causing them tangible pain and suffering.

446.   Plaintiff Elizabeth Wilson Koeberer has been exposed to bankruptcy threats by these reckless actions causing her tangible anxiety, stress and humiliation as part of Defendant Weir's schemes to create a litigation soup and authorize multiple inconsisten actions adverse to her.

447.   On September 22, 2024 Plaintiff's counsel, Susan Wasserman, filed suit against Defendant Weir in *Wasserman v. Weir et. al.* which is pending before the Southern District of Ohio, Judge Morrison. Case 2:24- CV-03334.

448.   On December 17, 2024 Plaintiff was served with a garnishment of her personal account, at Chase Bank, of $80,349.44 by Defendant Carlile Patchen Murphy, who represents her brother, the Executor individually, actionably attacking her remaining personal assets, causing her tangible pain and suffering over the loss of dominion and control over her remaining personal assets, which are essential to her ability to live. That the attack once again came before Christmas has only added to her pain, suffering and humiliation.

**Estate Fiduciaries for Case Number: 563322**

| Fiduciary No. | Estate Fiduciaries | Title | Title Description | Appt Date | Term Date | Date Case Closed | Attorney Number | Attorney Name |
|---|---|---|---|---|---|---|---|---|
| 01 | WILSON, EDSON H. | 01 | EXECUTOR | 10/28/2013 | N/A | N/A | 0072407 | MARX, JANE HIGGINS |
| New Search | Probate Homepage | | | | | | | |

449.    Carlile Patchen and Murphy's attempt to only represent Defendant Edson H. Wilson individually are inconsistent with their appearance docketed at Franklin County Probate Court on behalf of the Executor.

450.    As they only represent Edson H. Wilson *individually*, their fees are his responsibility, and they also needed a Waiver of Conflict of Interest to represent the executor individually.

451.    At the same time, these judgements are on appeal in the Tenth District Court of Appeals,24AP000061, Defendant Weir individually, through his counsel Jeffrey Lewis, filed suit against Plaintiff's counsel Susan Wasserman, actionably attempting to prohibit her from completing the sale of her office building at 746 Yearling Road, Whitehall, Ohio 43213, the vacant building fraudulently served by the forged documents in 24 JG 9836 Franklin County Court of Common Pleas.

452.    On December 18, 2024, Plaintiff filed for removal of the Carlile Patchen & Murphy LLP judgement in the Southern District of Ohio, which is pending before Judge Graham. 2-24 cv-04280.

1. **Certificate of Judgment**
   **Plaintiff:** Carlile Patchen & Murphy LLP
2. **Defendants:** Elizabeth Koeberer
   **Amount:** $80,349.44 **Filed:** 08/14/2024

**Case No:** 24 JG 053372

453. On January 8, 2025, Plaintiff was without heat requiring repairs because Trustee Weir failed to maintain the condominium left to Plaintiff by her mother. Defendant Weir as "trustee," who continues to this day to fail to competently maintain the property, causing Plaintiff ongoing tangible, actionable damage to her health and well-being.

454. Defendant Weir replied to Plaintiff's CPA Adam Knoll's requests for funds by yet again threatening to induce lawsuits against Plaintiff's attorney, Susan Wasserman, despite the dismissal with prejudice of his suit against Wasserman on 4-4-2023 by Judge Cocroft in 22CV002604.

## Plaintiff has Standing to Sue Defendant Weir

455. Defendant Weir has a fiduciary duty to Plaintiff as her prior attorney for obtaining her personal assets to the Northwestern Mutual Life Insurance Company, and as her unwanted Successor Trustee of the defective Elizabeth W. Koeberger (sic) Trust, in which he has commingled same in his firm's IOLTA without her authority or consent.

456. In defiance of standard legal practice and basic common sense, Weir's unlawful IOLTA commingling has now involved mixing Plaintiff's funds with those of a campaign to restore the historic Carnegie Library in Coshocton, Ohio. *Deadman vs. Weir CA23-0217*. Muskingham County Court of Common Pleas. Further commingling comes from his handling of a Coshocton County case involving Philip Arthur, whose attorney, Brian Benbow, filed a police report against Weir for Weir's threats against him.




457.    Defendant Weir obtained the funds commingled with third party claimants by diversion of Plaintiff's personal assets to his address in Coshocton, Ohio.

458.    Pursuant to the Ohio Revised Code and the Ohio Trust Code, Defendant Weir owed Plaintiff a Duty of loyalty, a duty to accurately account to estate beneficiaries (including Plaintiff) for his asset management, legal actions and litigation expenditures, a duty to avoid to conflicts of interest, a duty not to comingle her personal or trust assets in his IOLTA.

459.    Defendant Weir submitted fictitious documents to Defendant Chase Bank to establish illegal accounts and procedures that have defrauded Plaintiff and her descendants of large sums of money and unauthorized stock transactions to unknown individuals.

460.    Defendant Weir has mis-used Plaintiff's funds, without her knowledge or consent, to pay multiple attorneys for private representation adverse to the interests of the Plaintiff.

461.    Defendant Weir's detrimental actions as both Successor Trustee of the fraudulent "Elizabeth Koeberger Trust" (sic) and as Attorney for Executor Edson Wilson constitute an

egregious conflict of interest and breach of fiduciary duty. These actions have resulted in substantial damage to the financial interests of Plaintiff and her descendants.

462.    Defendant Weir's multiple roles as Attorney for Executor, prior attorney for grantor, prior attorney for Plaintiff, current Successor Trustee with alleged sole discretion of a defective unfunded irrevocable spendthrift trust undermines the ability of the Plaintiff to obtain a timely resolution of her claims.

463.    Defendant Weir, as Plaintiff's Successor Trustee, commingled personal assets with his Iolta account to deprive plaintiff of access and information. with unidentified unlawful cash transactions linked to his IOLTA, Plaintiff's alleged personal account, and the deliberately mis-named and mis-managed "trust" account at Defendant JP Morgan Chase Bank.

464.    Upon information and belief, Defendant Weir further commingled her funds with those of third-party claimants Phillip Arthur and William Deadman, non-parties herein at this time.

465.    Defendant Weir, as Trustee of the "Elizabeth Koeberger Trust" (sic), failed to identify "descendants" or join them all as necessary parties in a mandatory efiling civil action on behalf of the Executor, as required by Franklin County Probate Court Local Rule 78.

466.    Defendant Weir, as Trustee of the "Elizabeth Koeberger Trust" (sic), breached his duty to Plaintiff when he made payments to "descendants" who were not current income beneficiaries, and when he authorized Bailey Cavalieri to use their IOLTA account to divert such payments from Plaintiff, who is the sole vested beneficiary and the current income beneficiary.

467.    Defendant Weir as Trustee breached his duty to Plaintiff when, as the Trustee, he cut off payments to Plaintiff as the sole identified beneficiary, which resulted in Plaintiff retaining Attorney Collins to demand Weir's resignation on 1-5-17.

468.    Defendant Weir as Trustee breached his duty to Plaintiff when as Successor Trustee did not correct the name on her Trust, after assuring Plaintiff that this fraudulent mis-named was somehow a "sole typographical error," and an "error" he has refused to correct despite a court order and years of requests and legal filings that he do so, a refusal that has had enormous harmful

impacts on Plaintiff's life, including the ability to pay bills for medical procedures on which her life depends.

469. Defendant Weir as Trustee breached his duty to Plaintiff when Trustee breached Plaintiff's confidentiality by moving her bank account to his home address

470. Defendant Weir as Trustee breached his duty to Plaintiff when he as Trustee paid personal expenses for his office out of Plaintiff's trust including to Reminger.

Reminger payment; Discovery filed by Defendant Weir 22CV002604.

| 11/2/2022 Payment to Reminger Co.LPA for paralegal fees for Franklin | $ 1,000.00 | | |
|---|---|---|---|
| County case | | | |
| Check number: 1198 | | | |

471. Defendant Weir as Trustee perpetrated a form of identity theft by using the unauthorized fictitious name on her trust to deprive Plaintiff of access to her correct identity, Elizabeth Wilson Koeberer as part of scheme to swindle Plaintiff and her defendants with the use of the fictitiously named defective Elizabeth W. Koeberger (sic) Trust.

472. Defendant Weir, as Successor Trustee, breached his legal obligation and moral duty of good faith and loyalty by failing to enforce the Private Settlement Agreement that Defendant Weir authorized and forced Plaintiff to pay for as "Trustee," egregiously mis-using the assets Plaintiff's mother designated for benefit of her daughter, the Plaintiff, and her descendants to the standards established by the Wilson family which included gifts to the Ohio State University for leading medical research in Cardiology in honor of her father, James Hay Wilson.

473. Plaintiff Elizabeth Wilson Koeberer and her descendants' rights were vested on October l, 2013, when she survived her mother, vesting her rights as the sole identified current beneficiary of this trust and her descendants in the corpus of this trust in the fictitiously named "Elizabeth W. Koeberger" (sic).

474. Defendant Weir as Trustee breached his duty to Plaintiff by opening a bank account in an unauthorized fictitious name without any official documents provided to Defendant Chase Bank, and not disclosing same to Plaintiff.

475. Defendant Weir as Trustee breached his duty to Plaintiff Trustee of loyalty when he did not disclose his access to Plaintiff's personal mail box and certified mail are under his dominion and control as the title holder to said real estate, the personal residence of the plaintiff.

476. Defendant Weir as Trustee breached his duty to Plaintiff By failing to represent Executor who had a duty to protect all beneficiaries.

477.    Defendant Weir has breached his duty to her by cost shifting her ongoing attorney fees to her where there are no assets in the estate, and she only filed a Motion to Reopen and where he on advice of his own private counsel, refuses to take action on behalf of the Executor Edson H. Wilson to resolve this matter pursuant to local rules of court by joining all necessary parties and terminate the defective trust.

478.    Defendant Edson H. Wilson or his descendants have no remainder rights in said defective trust in the fictitious name of Elizabeth W. Koeberger (sic) Trust.

479.    Defendant Christine Strom has no children, and has no remainder rights in said defective trust in the fictitious name of Elizabeth W. Koeberger (sic) Trust.

480.    Defendant Weir as Trustee breached his duty to Plaintiff By commingling her personal assets into his IOLTA and failing to segregate her claims, so that third party claimant William Deadman's claims and her claim are now commingled in his defunct firm's IOLTA to her detriment.

481.    Defendant Weir as Trustee breached his duty to Plaintiff by repudiating an agreement to cure the defective trust that he drafted where he funded the trust after the date of death creating punitive tax consequences with the loss of the step up in basis and failed to disclose the error to all beneficiaries as a material issue relevant to the ongoing administration of the trust in addition to the erroneous name, "Koeberger."

482.    A claim for breach of fiduciary duty is basically a negligence claim requiring a higher standard of care. *Strock v. Pressnell,* 38 Ohio St.3d 207, 216 (1988).

483.    Defendant Weir should be held to highest standard of care where he has acted recklessly to her detriment repudiating his agreement and payments for the Private Settlement Agreement, Disclaimers and Decanting into a new trust which he authorized Plaintiff's counsel, Kemp Shaeffer & Rowe as well as other counsel to complete. This work was specified by his counsel Robert Dunn, Bailey Cavalieri so that Plaintiff could be her own trustee, terminate the defective trust and stop the draining of her assets.

484.     Defendant Weir as Successor Trustee breached his duty to Plaintiff where he violated ethical standards including multiple concurrent roles as attorney for the Executor, Edson Hay Wilson, the Wilson Family Trust and as Successor Trustee for Plaintiff in the defective and fictitiously named trust.

485.     Defendant Weir uses his father's name Eugene Weir in his dissolved 2017 defunct Ohio corporation, and on his letterhead as color of authority, while the Ohio State Bar Association "Weir Award"–which is the highest level of professional ethics is inconsistent with Defendant Weir's pattern and practice of predatory and hostile actions adverse to his clients including Plaintiff Elizabeth Wilson Koeberer and imposes a higher standard of care with respect to his actions.

486.     The Plaintiff's allegations demonstrate that the defendant actions have likely caused the injuries resulting from multiple ongoing conflict of interests adverse to Plaintiff.



487. On May 18, 2020, Defendant Weir specifically approved Plaintiff's counsel Wasserman's legal services to resolve all claims in a global settlement that was agreed to and repudiated by Defendant Weir as attorney for Executor and as fiduciary represented by Bailey Cavalieri and as attorney for the Wilson Family Trust.

488. Defendant Weir authorized Plaintiff to retain Kemp Shaeffer and Rowe, which Defendant Weir authorized to complete the global settlement documents upon Weir's "authority" as Successor Trustee and as Attorney for the Executor Edson H. Wilson.

489. Defendant Weir specifically authorized the commingling of Plaintiff's personal assets into his firms Iolta without disclosing this commingling to Plaintiff or protecting non-parties, third party claimants, Wilson, Deadman and Arthur in his IOLTA account at Defendant J.P. Morgan Chase Bank.

490. Defendant Weir has commingled Plaintiff's claims, Third Party Claimant William Deadman's claims on behalf of the Carnegie Library in Coshocton and Third-Party Phillip Arthur's claims in his firm's IOLTA without authorization or consent and in breach of confidentiality of all clients.

491. Defendant Weir breached his duty of loyalty to Plaintiff by extinguishing all rights in probate court by Defendant Weir's consent to the payment of his own fees, by appending an unauthorized "AKA" creating the fictitious name Elizabeth W. Koeberger so that the right of appeal is not an adequate remedy after Plaintiff has been forced to incur her own legal fees while refusing to protect her interests and or recuse himself from his ongoing conflict of interest.

492. Defendant Weir represented that the misnomer Koeberger was a typographical error when he induced Plaintiff to sign the *Waiver of Notice of Probate of Will* filed on October 28, 2013 and all others "aka" designations were added without Plaintiff's authorization or consent.

493.    The Plaintiff Elizabeth Wilson Koeberer is the person bringing this lawsuit and has a personal stake in the outcome of the case.

494.    Plaintiff Elizabeth Wilson Koeberer has a personal stake in insuring that the corpus of her trust is in the right name.  Her claims must also be segregated from third party claimants William Deadman or Phillip Arthur, whose assets have been commingled in Defendant Weir's IOLTA.

495.    Plaintiff also has a right to know that her fee simple rights of herself on behalf of her descendants are protected and cannot be extinguished by the ongoing illegal and unethical self-dealings of Defendant Weir and Does 1-10.

496.    Plaintiff has raised the issue of Defendant Weir's conflict of interest multiple times which has never been ruled on.  All disqualifications have thus far been denied, as well as a specific Writ of Mandamus to remove Defendant Weir and his ongoing attacks against Plaintiff and her counsel.

497.    These include Defendant Weir's self-dealings in hiring multiple counsel in multiple forums, his actions to delay and extinguish Plaintiff's right to a trust construction, to deny her right to have her own name on her trust, to have adequate health care, to have a well-maintained place to live, to have secure access to her own mail, to have a fully funded private cell phone.

498. Defendant Weir's role as a serial litigator include his ongoing tactics of splintering jurisdiction, using Plaintiff's funds to defend his conflict of interest in multiple roles as "Trustee" and Attorney for the Executor, using Plaintiff's funds to obtain a global settlement which he then repudiated, suing for sanctions against Plaintiff and her attorney for filing the litigation that served as the basis of that settlement, pledging to defend her rights as a beneficiary, and as a legal client, then betraying her interests at every turn while refusing to step aside as her "Successor Trustee."

499. Defendant Weir is only permitted use his IOLTA for his legal clients. But Defendant Weir has elsewhere denied that Plaintiff was his "client." Defendant Weir then denied that this representation was material omitting to disclose that Northwestern Insurance distribution which intended only for Plaintiff, but which he secreted in his IOLTA.

500. Thus, Defendant Weir has taken inconsistent positions in multiple courts to Plaintiff's detriment, leaving multiple courts paralyzed by his tactics and Plaintiff without a remedy.




## CNA INSURANCE APPOINTS DEFENDANT WEIR COUNSEL

501. CNA Insurance is the nation's leading provider of Lawyers Professional Liability (LPL) coverage – insuring more than 50,000 law firms and 155,000 lawyers nationwide"-(CNA Insurance website, 2024.)

502. To the best of Plaintiff's information and belief, Defendant Robert E. Weir, Frase, Weir, Baker and McCullough. Co., LPA is an attorney in the State of Ohio and is insured by an insurance contract issued by the CNA insurance.

503. To the best of Plaintiff's information and belief, defendant Weir's insurance contract issued by CNA is authorized by the State of Ohio to provide legal malpractice insurance for attorneys to protect the public from third party claims that undermine public confidence in the judiciary system.

504. Plaintiff Elizabeth Wilson Koeberer, and individuals Phillip Arthur, and William Deadman, all have filed third party claims in the State of Ohio against CNA as insurer for Defendant Robert E. Weir. Plaintiff Elizabeth Wilson Koeberer has standing as a third-party plaintiff herein as their claims are commingled in Defendant Weir's IOLTA among other actions.

505. To the best of Plaintiff's information and belief, CNA insurance authorized **Attorney Ira Gerzog** to supervise all third-party claimant litigation on behalf of Defendant Robert E. Weir, Attorney at Law in the State of Ohio.

506. To the best of Plaintiff's information and belief, CNA Insurance has authorized the legal services of panel attorneys, Reminger, Co. L.P.A. on behalf of Defendant Weir including dependent attorneys to represent Defendant Weir, including: **Attorney Zachary B. Pyers**. 0083606, **Attorney Shana DeMooy.** 0098753, **Attorney Amanda Wager 10003**0 and **Attorney Marissa A. Kuryla** 0103557 **Attorney Graysen M. Wood**, 0102160, all employed by REMINGER CO., L.P.A. Columbus, Ohio.

507. On information and belief, Plaintiff alleges that the above noted counsel, on behalf of Reminger, Co., are selected by CNA Insurance because of their expertise and skill in the area of professional legal ethics, probate litigation and estate planning.

508.    Plaintiff alleges that CNA Insurance has knowledge of numerous third party claims, including but not limited to the following made against Defendant Robert E. Weir in the following courts, Southern District of Ohio, Eastern Division; Franklin County Court of Common Pleas, Franklin County Probate Court; Coshocton County Probate Court, Coshocton County Court of Common Pleas, Tenth District Court of Appeals, Fifth District Court of Appeals; and Muskingham County Court of Common Pleas, and may have knowledge of other claims.

509.    To the best of Plaintiff's information and belief third party claims made against Robert E. Weir include the following third-party claims by three individuals **Plaintiffs Elizabeth Wilson Koeberer**; **Phillip Arthur**, and **William Deadman** as set forth below.

510.    CNA Insurance retained Reminger Co. LPA and assigned  dependent attorneys Attorney Zachary Pyers and Attorney Shana Demooy in both matters against Defendant Robert E. Weir, including Plaintiff in Common Pleas in Koeberer vs. Weir filed in April of 2022, and  in the related matter filed by her counsel, Susan Wasserman in the Southern District of Ohio, Eastern Division Wasserman vs. Weir in September of 2024. Defendant Weir is represented by Attorney Jeffrey Lewis in his execution against Plaintiff's counsel, Susan Wasserman. also in the Southern, District of Ohio, Weir vs. Wasserman, removed by defendant on June 20, 2024.

511.    By Defendant Weir's design, Plaintiff's rights are frozen in multiple courts, all facing Defendant Weir and Does 1-10, in a litigation soup designed as a diversionary tactic, which denies her immediate right to health care that she and her daughter, Alexandra Koeberer Manti are entitled as the beneficiary of the Estate of Ruth J. Wilson, and as the sole vested identified beneficiary of the *Elizabeth W. Koeberger (sic) Trust*.

512.    In the Franklin County Court of Common Pleas before Judge Kimberly Cocroft, 22 CV 2604, *Koeberer vs. Robert E. Weir,* Attorneys Pyers and Demooy filed their answer on behalf of Defendant Weir on May 23, 2022:

0F933 - R9    Franklin County Ohio Clerk of Courts of the Common Pleas- 2022 May 23 3:26 PM-22CV002604

### IN THE COMMON PLEAS COURT OF FRANKLIN COUNTY, OHIO

| | | |
|---|---|---|
| Elizabeth W. Koeberer, | : | |
| Plaintiff, | : | Case No. 22CV-04-2604 |
| | : | |
| v. | : | Judge K. Cocroft |
| | : | |
| Robert E. Weir, et al., | : | Jury Demand Requested |
| | : | |
| Defendants. | : | |

#### ANSWER OF DEFENDANT ROBERT E. WEIR, INDIVIDUALLY AND AS TRUSTEE OF THE ELIZABETH W. KOEBERGER TRUST DATED JULY 15, 2011, TO PLAINTIFF'S COMPLAINT

Now comes Defendant, Robert E. Weir, individually, and as Trustee of the Elizabeth W. Koeberger Trust, dated July 15, 2011 (hereinafter collectively "Defendant"), by and through counsel, and states the following as his Answer to the Complaint (the "Complaint") and responds to the numbered paragraphs within as follows:

1. Denies without knowledge.
2. Admits.
3. Denies without knowledge.
4. Denies without knowledge.
5. Denies without knowledge.
6. Admits.
7. Admits.
8. Denies without knowledge.
9. Denies without knowledge.
10. Denies.
11. Denies without knowledge.

513.    Said counsel were served with Defendant Weir's Third party claims against CPA Adam Knolls and Wasserman and his amended disclosure of witnesses filed on 8-18-22, which includes Defendant Weir's mothers obituary which references his father Eugene Weir.

514.    There is no other reason to file this in a public record other than to use Eugene Weir's prominence in the legal community as an implied threat. This document was served on Attorney Zachary Pyers, and presumably relayed to CNA Ira Gerzog, with respect to Defendant Weirs actions as an attorney while CNA is authorizing Pyers to defend Defendant Weir as a fiduciary and an attorney.

0G044 - T57    Franklin County Ohio Clerk of Courts of the Common Pleas- 2022 Aug 18 1:00 PM-22CV002604

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Amended Initial Disclosures of Third-party Plaintiff, Robert E. Weir, Trustee of the Elizabeth W. Koeberger Trust dated July 15, 2011, was served upon Ryan A. Gordon, Attorney for Elizabeth W. Koeberer, Zachary B. Pyers, Attorney for Defendant, Robert E. Weir, Individually and Robert E. Weir, Trustee of the Elizabeth W. Koeberger Trust, Dated July 15, 2011, Edward G. Hubbard, Attorney for Third-party Defendant, Susan S. Wasserman, Mary M. Dengler, Attorney for Third-party Defendant, Adam M. Knolls and Third-party Defendant, All Done Services LLC c/o Adam M. Knolls, via email, this ___ day of August, 2022.

Robert E. Weir, Trustee

0G044 - T58    Franklin County Ohio Clerk of Courts of the Common Pleas- 2022 Aug 18 1:00 PM-22CV002604

Mona E. Weir, 90, of Coshocton, Ohio, died at 6:25 A.M. on Wednesday, August 17, 2022, at the Oaks at Bethesda, Zanesville, Ohio. She was born February 20, 1932, in Cleveland, Ohio, the daughter of the late Walter F. and Rose M. Reichel Egger. She graduated from Baldwin Wallace University with a Bachelor's Degree in Business. Mona spent her time taking care of her home, playing bridge relaxing with her friends at the pool and spending time with family and friends. She was known for "disciplining her two sons," and they say "There were no participation trophies in her house!"

She is survived by sons, Robert E. (Rebecca) Weir and William R. (Susan) Weir; grandchildren William K. Weir, Matthew Re. Weir, Samuel V. Weir and August R. (Rachel) Weir; and a special friend William F. Shurtz.

In addition to her parents, she was preceded in death by her husband of 41 years, Eugene R. Weir.

A cremation will take place under the direction of the BOLIN-DIERKES FUNERAL HOME & CREMATORY, 1271 BLUE AVENUE, ZANESVILLE. A private family graveside service will be held at South Lawn Cemetery, Coshocton.

In lieu of flowers, memorial contributions may be made in Mona's name to the Oaks at Bethesda, 2971 Maple Avenue, Zanesville, Ohio 43701.

To send a note of condolence visit www.bolin-dierkesfuneralhome.com, follow us on Facebook, or call our professional staff at (740)452-4551.

515.    Defendant Weir's ongoing relentless litigation adverse to third party claimant and Plaintiff herein, Elizabeth Wilson Koeberer, while Defendant Weir's other counsel took adverse inconsistent positions against her, is a breach of his duty of loyalty to a client.

516.    In Plaintiff's counsel's suit *Wasserman vs. Weir*, Southern District of District of Ohio, Eastern Division, Defendant Weir's Attorneys Pyers and Demooy filed a Motion for Judgment on the Pleadings and a Stay on Discovery, representing Weir as fiduciary (of the *"Elizabeth W. Koeberger Trust"*) as plaintiff's attorney and individually. The court granted the stay on discovery on January 17, 2025. The Stay on Discovery filed in 22 CV 002604 before Judge

Cocroft also remains in Franklin County Court of Common Pleas. Plaintiff continues to be held captive.

517.    Defendant Weir has blocked Plaintiff's redress to the court review of the construction of her defective trusts and correction of Plaintiff's name in Franklin County Probate Court, Franklin County Court of Common Pleas, Tenth District Court of Appeals, Ohio Supreme Court and now the Southern District of Ohio, Eastern Division.

518.    Plaintiff asserts her right to equitable relief and immediate removal and cessation of Defendant Weir's predatory actions as an attorney, a Trustee, a fiduciary, and as a relative of the Wilson Family and their attorney.

519.    Defendant Weir's pattern and practice of suing his beneficiary, suing their attorneys, litigating collateral attacks including service on a vacant buildings, a service that has involved forgery and mail fraud.  Weir's intimidating personal attacks on counsel Susan Wasserman, have created a cloud of anxiety and immeasurable stress, involving actionable pain and suffering as to Plaintiff and her descendants as well as to Wasserman whose fees were approved by Defendant Weir.

520.    Plaintiff has a right to her real name placed on the Trust meant to convey to her the assets left her by Ruth J. Wilson and to have those fee simple assets protected for herself and her daughter, who is her successor in interest as a descendant in the Elizabeth W. Koeberger (sic) Trust, fictitiously named by Defendant Weir.

521.    Plaintiff has a legal right to protect those assets from being used to fund hostile legal actions detrimental to her well-being, as filed by a self-dealing Trustee who refuses to step down, or to account for the handling of the assets in the Trust he is legally and morally bound to administer for Plaintiff's benefit.

522.    Defendant Weir's and Executor Edson Wilson's failure to fund this trust prior to the death of Ruth Wilson was a costly, egregious and indefensible error for which Executor Edson Wilson and Trustee Robert Weir refuse to fully account.

523.    This issue was addressed in the 2019-2020 authorization of the Private Settlement Agreement, Decanting of the Elizabeth W. Koeberger (sic) Trust, Disclaimers and new trust agreement for Elizabeth Wilson Koeberer, which Weir used Plaintiff's money to fund, and which he then repudiated, instead filing for sanctions jointly and severally against Plaintiff and her attorney, Susan Wasserman for the purposes of delay and intimidation.

524.    Defendant Weir continues to act as a serial litigator, operating under multiple titles and interests to defeat the Plaintiff's fee simple rights on behalf of herself and her descendants.

525.    As set forth herein, Plaintiff, on information and belief alleges that Defendant Weir is also litigating against other third party claimants (non parties Phillip Arthur and William Deadman) and assets of Koeberer, Arthur and Deadman may be commingled in Weir's IOLTA, to Plaintiff's substantial detriment.

526.    CNA, as insurer for Defendant Weir has direct knowledge of his actions including his breach of fiduciary duty in commingling his IOLTA on behalf of multiple clients over years, while litigating concurrently, retaining private and independent counsel as well as dependent counsel authorized by CNA.

527.    Plaintiff is seeking removal of Defendant Weir, and specific performance of the Private Settlement Agreement and closing documentation as part of the equitable relief sought herein.

528.    Plaintiff is asking the court to order a forensic accounting of Defendant Weir's IOLTA and the Elizabeth W. Koeberger (sic) Trust without delay, to protect her rights therein and to verify the stock and banking transactions including those to unknown individuals perpetrated by Defendant Weir and Does 1-10.

**Claims Made Against Robert E. Weir**
**Under**
**CNA  INSURANCE**
<u>**Third Party Claimant to CNA**</u>
**ELIZABETH WILSON KOEBERER**

1.  **Koeberer vs. Weir et. al.** 2**2CV002604**, Franklin County Court of Common Pleas-
2. **Wasserman vs. Weir 2:24-cv-03935-SDM-EPD**  In the Southern Federal District Court Eastern Division**.**

<u>**Third Party Claimant to CNA**</u>
**PHILLIP ARTHUR**
**Coshocton Court of Common Pleas-Estate of Hoffman-**Consolidated on appeal to the Fifth District Court of Appeals.

Litigation between Defendant Weir and Phil Arthur. 2023 CA0024 and CA0025.

| | | | |
|---|---|---|---|
| WEIR, ROBERT | DEFENDANT | 2023CA0024 | COURT OF APPEALS |
| **WEIR, ROBERT** | **DEFENDANT** | **2023CA0025** | **COURT OF APPEALS** |

<u>**Third Party Claimant to CNA**</u>
**WILLIAM DEADMAN, COSHOCTON, OHIO**
**Muskingham County Court of Common Pleas**

**William Deadman vs. Weir**

Case No. 23-0217, pending

<u>**SUMMARY OF THIRD-PARTY CLAIMS**</u>

**Third Party Claimant**
**Phillip Arthur, Coshocton**
**Filed against Defendant Weir**

529.    The individual and third-party claimant Phillip Arthur filed multiple claims against Defendant Robert E. Weir for self-dealing, including IOLTA violations and US Postal Service mail fraud, including allegations that a stranger was served instead of Philip Arthur in Coshocton Probate Court that are a matter of public record. Fifth District Court of Appeals remanded on appeal and the case was settled and closed after Plaintiff referenced them in her appeal in 24AP000061 in the Tenth District Court of Appeals that remains pending.

530.    Third Party Clamant, Arthur's initial legal counsel, Attorney Elizabeth I. Mayo, Porter Wright, reported ad hominin attacks by Defendant Weir before Judge Blanchard, Coshocton County Probate Court, August 31,-2017, 21540001.

531.    After Attorney Elizabeth Mayor resigned, Third Party Claimant, Arthur's next legal counsel Attorney Brian Benbow, had to file a police report with the Zanesville Police Report, against Defendant Weir on **December 29, 2023** for trespass and harassment on pending matters before cases were settled and closed.  This attack came days after the final appealable order in Franklin County Probate Court 563322.

532.    Defendant Weir had a duty to report these reports to his insurer, CNA.



533. On April 12, 2024 Attorney Benbow filed an appeal on behalf of third-party claimant Phillip Arthur against Defendant Weir in the Fifth District Court of Appeals.

534. CNA authorized Attorneys Zachary B. Pyers and Attorney Shana DeMooy to represent Defendant Weir in the Fifth District Court of Appeals In The Matter of the Estate of Sandra L. Hoffman, Deceased, Consolidated Appeals 2023 CA0024 and CA0025. Cases have now settled.



**Defendant Weir as**
**Judgment Creditor Files against Third Party Claimant's Counsel**

535.    On April 19, 2024 Defendant Weir filed against Third Party Claimant's Attorney Benbow as a Judgment Creditor.  Cases are now closed.



Trellis.Law
https://trellis.law › case › weir-robert-vs-benbow-brian    ⋮

## Weir, Robert Vs. Benbow, Brian Court Records

On April 19, 2024, **Weir**, Robert filed a Collections - (Creditor) case against **Arthur**, Phillip et al. in the jurisdiction of **Coshocton County**, OH.

**Third Party Claimant**
**William Deadman, Coshocton**
**Files against Defendant Weir**

536.     On 8-10-2023, Third Party Claimant William Deadman filed against Defendant Weir in Muskingham County Court of Common Pleas. William G. Deadman vs. Robert E. Weir- Case No. 23 CA . 23-0217 involving claims for legal malpractice including allegations as to the use of Defendant Weir's IOLTA, and with respect to his actions as to the insurance on the building referred to as the historic Andrew Carnegie Library, Coshocton, Ohio. The action filed in 2023, is pending. This action is running concurrently with Weir's claims involving Plaintiff.

537.     On Plaintiff's information and belief in this Complaint filed on 8-10-2023 involving claims against Defendant Weir alleging legal malpractice and use of his IOLTA in the Muskingham County Court of Common Pleas , CA2023-0217 DEADMAN, WILLIAM G. VS. WEIR, ROBERT E. WEIR. This action was filed in August of 2023 is running concurrently with Plaintiff's claims against Defendant Weir and both involve IOLTA violations.

538.     Upon Plaintiff's information and belief, CNA authorized Reminger attorneys Zachary B. Pyers and Shana DeMooy to enter an answer in Deadman vs. Weir in Muskingham County Court of Common Pleas on behalf of Defendant Robert E. Weir on October 11, 2023 which matter is still pending.

539.     Upon Plaintiff Elizabeth Wilson Koeberer's information and belief, Defendant Robert E. Weir has also retained private counsel including in Franklin County Probate Court, and the Tenth District Court of Appeals, to take adverse positions against her as follows:

540.     Plaintiff on information and belief, states that Defendant Weir's actions in retaining private independent counsel to adversely litigate against her has been ratified by CNA as insurer for Defendant Weir, as an attorney and as a fiduciary constituting disqualifying conflicts of interest as Defendant Weir and Does 1-10 have created a "litigation soup" where the conflicts of interest cannot be resolved.

**Private Independent Counsel paid for by Weir**

**as Trustee Imputed to CNA**

**Estate of Ruth J. Wilson 563322**
**Franklin County Probate Court**
**and**
**Tenth District Court of Appeals 24 AP 000061**

541.     Defendant Weir is represented by Defendant Bailey Cavalieri Attorneys Robert R. Dunn and Brittany Stephen in the Franklin County Probate Court, Estate of Ruth J. Wilson 563322 in which Plaintiff Elizabeth Wilson Koeberer and her counsel filed a joint Notice of Appeal on January 23, 2024 to the Tenth District Court of Appeals 24 AP 000061.

542.     Defendant Weir is also the Attorney for The Executor and an Appellee represented by Defendant Bailey Cavalieri in pending 24 AP 000061.

543.     The. Executor Defendant Edson Wilson is represented individually by Carlile Patchen & Murphy.

544.     Defendant Weir also has authorized Attorney Jeffrey Lewis to enter appearances in both Franklin County Probate Court 563322 and Tenth District Court of Appeals 24 AP 000061. 24JG9836 and the removal pending in that matter.

545.     Plaintiff Elizabeth Wilson Koeberer filed a Motion to Reopen her mother's estate on October 17, 2018, with supporting expert reports; almost three years later, the court found on July 27, 2021 that this action was "frivolous" and required that the matter be set for hearing.

546.     The ORC 2323.51 filings were late or premature to the first decision on this matter which was rendered on 7-27-2021. Defendant Weir filed late after the 30 days had expired.

547.     Defendant Weirs "sanctions" filed late on September 10, 2021, against Plaintiff and her attorney Wasserman as to the final appealable order on December 27, 2023, which are on appeal for lack of subject matter jurisdiction and fraud on the court and other issues. 24 AP 000061.

548.     Bailey Cavalieri has not withdrawn from these matters and continue to represent Defendant Weir individually as Successor Trustee.

549.     Carlile Patchen & Murphy also filed for garnishment and execution on the judgment on appeal, 24 AP 000061 against Plaintiff's remaining bank account, which has been removed to the Southern District of Ohio, Eastern Division Case No. 2:24 -cv-04280 leaving Plaintiff without access to her funds.

**Ohio Supreme Court**

550.     Plaintiff filed two extraordinary writs in the Ohio Supreme court in the Estate of Ruth J. Wilson, Franklin County Probate Court 563322 (In addition to the Affidavit of Disqualification filed on 5-4-22)

| Case Number | Case Caption | Date Filed | Status | Case Type | Prior Jurisdiction |
|---|---|---|---|---|---|
| 2023-0226 | Elizabeth Koeberer v. The Honorable Judge Jeffrey D. Mackey | 02-15-2023 | Disposed | Original Action in Mandamus | |
| 2022-1377 | Elizabeth Koeberer v. The Honorable Judge Jeffrey D. Mackey | 11-08-2022 | Disposed | Original Action in Procedendo and Prohibition | (None) |

551.     Plaintiff filed her first **Writ of Prohibition and Procedendo** to halt the unnecessary hearing and to mitigate damages and the second **Writ of Mandamus** to have Defendant Weir removed from the case.   The Ohio Supreme court dismissed both of the extraordinary writs **2023-0226, 2022-1377**.

552.     Attorney Robert R Dunn and Brittany Stephen, Bailey Cavaleri,  represented Defendant Weir in his *Motion to Dismiss* in the Ohio Supreme Court and opposed both writs against Plaintiff Elizabeth Wilson Koeberer while billing Plaintiff's trust.

553. Defendant Weir authorized his private counsel Bailey Cavalieri to mischaracterize Defendant Weir's conflict of interest and omit by design Defendant's representation of the Plaintiff as her attorney to Northwestern Mutual Life Insurance which is a material omission as the assets were diverted from Plaintiff illegally in Defendant's IOLTA in Defendant Weir's own handwriting without Plaintiff's knowledge or consent.

554. Bailey Cavalieri, as private counsel on behalf of Defendant Weir misconstrued that an appeal is an adequate remedy at law when the Plaintiff has exhausted all state remedies to remove Defendant Weir, including the Ohio Supreme Court, Franklin County Probate Court and the Ohio Disciplinary Counsel and that Bailey Cavalieri, Attorney Dunn had personally directly offered and authorized payment of a Private Settlement Agreement to the detriment of the Plaintiff on behalf of Defendant Weir.

555. Defendant Weir opened the estate of Ruth J. Wilson on 10-28-13, as attorney for the executor he did not obtain a waiver of conflict of interest from the plaintiff Plaintiff's prior counsel as admitted under oath in 22 CV 002604, Franklin County Court of Common Pleas that he did in fact previously represent Plaintiff.

556. Defendant Robert Weir on his own volition, alleging he was "Plaintiff's attorney," deposited the personal proceeds of the Northwestern Mutual Insurance check issued on 12-30-2013 into the IOLTA account for Frase Weir Baker & McCullough Co. at Defendant JP Morgan Chase commingling same without the knowledge or authorization of the Plaintiff.

557. Plaintiff had no knowledge Defendant Weir was diverting her funds as her "Trustee" in his IOLTA account for Frase, Weir, Baker & McCullough Co. at J. P. Morgan Chase Bank:

558.     Defendant Weir diverted Plaintiff's personal funds by representing he was Plaintiff's attorney and delivering cash to her on 4/15/14, 7/11/14, 8/22.14, 11/13/14 and 1/9/15 in paper bags without documentation or identification.



559.     Defendant Weir was advised that Plaintiff did not own a computer or printer and hand delivered all documents to Plaintiff for signature driving in from out of county instead of mailing them, so had time to review, and insisting they had to be signed that day.

560.     Defendant Weir advised Plaintiff that the error in the spelling of her name was a sole typographical error before she signed the document.

561.     Defendant Weir advised Plaintiff that the "typographical error" would be corrected before filing, as his office was not in Franklin County and had to be corrected with a typewriter.

562.     All documents in the name of "aka Elizabeth W. Koeberger" were filed by Defendant Weir without her consent or authorization by Plaintiff.

563.     Defendant Weir breached his fiduciary duty by applying for an EIN in the fictitious name of Elizabeth W. Koeberger with the unauthorized "aka Elizabeth W. Koeberger" (sic) instead of Elizabeth Wilson Koeberer.



564. Plaintiff has never signed a written waiver of conflict of interest for Defendant Robert E. Weir. Plaintiff objected to his detrimental actions, including the unauthorized sale of her stocks, through her CPA Adam Knolls, as she has suffered serious financial harm due to her initial detrimental reliance on Defendant Weir's representation.

565. Plaintiff previously sent a demand letter for Defendant Weir's resignation in 2017, by and through her counsel Phillip Collins of Collins & Slagle, which Defendant Weir ignored. **Exhibit F** Collins and Slagle withdrew as Plaintiff's counsel after Plaintiff made a partial payment and Weir ignored Plaintiff's demand that he resign.



566.    With full knowledge of Plaintiff's outstanding medical reimbursements that Defendant Weir refused to pay, Defendant Weir and his private counsel Bailey Cavalieri insisted that Plaintiff be compelled to testify at a hearing instead of opting for a submission on the record.

567.    Plaintiff filed another extraordinary **Writ of Mandamus** with the **Ohio Supreme Court** to have Defendant Robert E. Weir removed which was denied. **2022-1377.**

### Tenth District Court of Appeals

24 AP 000061

568.    Defendant Weir is represented by Bailey Cavalieri in the **Tenth District Court of Appeals 24 AP 00061** which is currently pending for lack of subject matter jurisdiction, and for fraud on the court, including failure to join necessary party Edson H. Wilson as Executor.

569.    Plaintiff requires remand in the Franklin County Probate Court because Executor will not correct her fictitious name **"Elizabeth W. Koeberger" (sic)** and continues to take adverse and

predatory and self-dealing action against her as a beneficiary and as a former client, pursuant to Ohio Professional Rules of Conduct 1.7. et. seq.

570. The jurisdiction of Plaintiff's construction of trust claims and professional negligence against Defendant Weir remains before Judge Kimberly Cocroft **22 CV 002604, Franklin County Court of Common Pleas** while she has multiple cases where Defendant Weir's vexatious litigation has stymied Plaintiff's rights

571. From Probate Court, Plaintiff is now on Appeal In the Tenth District Court of Appeals, appealing the unprecedented sanctions issued against herself and her counsel where no civil action was filed; where the executor refused to correct a name fraudulently attached to her Trust; where litigation in question was filed in 2017 and used as the basis for a global settlement that was then refuted by Defendant Weir; where there were no remaining assets, and more.

572. Plaintiff filed for a stay on the judgement in the Tenth District Court of Appeals that was denied. Appeal is still pending.

573. Defendant Weir is required each year to disclose any facts that would result in a malpractice action, and accordingly these matters are imputed to his insurer, whose responsibility is to settle third party claims efficiently in good faith to promote confidence in the legal system.

574. CNA as insurer for Defendant Weir ratified all of his actions as attorney and fiduciary in multiple capacities in all actions against Plaintiff Elizabeth Wilson Koeberer as they have renewed his policies each year for the times relevant herein.

575. Plaintiff Elizabeth Wilson Koeberer has no choice but to appeal or lose the right to have her fictitious name "Koeberger" corrected, and she refuses to allow her rights to be extinguished by Defendant Weir and Does 1-10's reckless actions against Plaintiff and her descendants.

576. Defendant Weir's goal appears to be to drive Plaintiff into bankruptcy, defeating her descendant's remainder fee simple rights to her share as represented by all parties herein, i.e. $1.7 million dollars in stocks and unidentified accounts, now locked up under the fictitious name "Elizabeth W. Koeberger" (sic) under the dominion and control of Defendant Ameritrade and Does 1-10 and Defendant Weir, in any and all capacities listed herein, which are

in fact the rightful property of the Plaintiff, Elizabeth Wilson Koeberer, the real party in interest on behalf of herself and her descendants of Ruth J. Wilson.

### Franklin County Court of Common Pleas
### Judge Bill Spirlazza
### 24 JG 009836

577.    On February 16, 2024, as a litigator Robert E. Weir, Attorney at Law, Frase, Weir, Baker & McCullough Co. LPA opened a new case **24 JG 009836** as Judgment Creditor against Susan Wasserman Judgment Debtor on February 16  2024. in which he is retained Attorney Jeffrey Lewis in the collection and execution attempts on the judgment against my attorney Susan Wasserman and her property at 746 Yearling Road, Whitehall, Ohio which was subsequently removed to the Southern District of Ohio.  This litigation remains pending.

578.    On February 26. 2024 Plaintiff's counsel Wasserman's signature was **forged** on USPS certified mail sent with respect to this matter to Attorney Wasserman's vacant building at 746 Yearling Road, Columbus Ohio, 43213 and timely disputed.

579.    On June 4, 2024 Plaintiff's counsel received a voice mail with intimidating  statements "We will get more fees out of you", made in retaliation of Plaintiff's appeal of these sanctions. Defendant Weir through his new counsel of record Jeffrey Lewis who has made a special appearance for Defendant Weir has filed for sanctions in the appeal as well, which are also pending before the **Tenth District Court of Appeals. 24 AP 00061.**

580.    Subsequently, Plaintiff's counsel Wasserman filed a dispute report with the Franklin County Prosecutor, United States Postal Service and the Franklin County Clerk reports reporting mail fraud and the forgery and falsification of her name on US certified mail delivered to a vacant building after reporting the fraud and forgery to the U.S. Postal Service.

### Southern District of Ohio, Eastern Division
### 2:24-cv-03935-SDM-EPD

581.    On  November 11, 2024, in the case filed in the Southern District of Ohio, Eastern Division, Case: 2:24-cv-03935-SDM-EPD  *Wasserman v. Weir et. al*. CNA authorized Attorney  Zachary

B. Pyers (0083606) and Attorney Marissa A. Kuryla (0103557) to file an Answer on behalf of *Counsel for Defendant* **in three (3) capacities** consistent with their coverage analysis and reservation of rights on behalf of their insured Defendant Robert E. Weir:

> *1-Robert E. Weir, Attorney at Law,*
> *2-Robert E. Weir, Successor Trustee Elizabeth Koeberger Trust and*
> *3-Robert E. Weir, Individually*

Respectfully submitted,
*/s/ Zachary B. Pyers*
**Zachary B. Pyers (0083606)**
**Marissa A. Kuryla (0103557**)
200 Civic Center Drive, Suite 800
Columbus, OH 43215
(614) 228-1311; Fax: (614) 232-2491
Email: zpyers@reminger.com mkuryla@reminger.com
*Counsel for Defendant Robert E. Weir, Attorney at Law, Robert E. Weir, Successor Trustee*
***Elizabeth Koeberger*** *Trust and Robert E. Weir, Individually*

**Franklin County Court of Common Pleas**
**Judge Kimberly Cocroft 22 CV 002604**

582.     On April 20, 2022 in the Franklin County Court of Common Pleas, Defendant **Attorney Ryan A. Gordon and Defendant Ryan A. Gordon LLM,** an expert in trust litigation on unfunded trusts on behalf of Plaintiff, Elizabeth W Koeberer filed her first civil action in the case: **Koeberer vs. Robert E. Weir, et. al. 22 CV 002604**, for malpractice, voidable actions in self-dealing, improper use of IOLTA, Spendthrift Trust Construction, removal of Weir and termination of the trust as supported by expert reports paid for by Plaintiff to Attorney David L. Duren, Attorney Mary Cibella and Attorney Paul Flowers.

583.     On May 22, 2022, after the complaint was filed, Attorney Gordon met with Plaintiff personally to pick up another check and have her sign documents. Attorney Wasserman was not present.

584.     On May 23, 2022 CNA Insurance authorized Attorneys **Zachary B. Pyers  00683606 and Shana B. DeMooy 0098753** to represent Defendant Weir to file answer on behalf of

Robert E. Weir individually and Robert E. Weir, Trustee of the Elizabeth W. Koeberger Trust, dated July 15, 2011.

**Zachary B. Pyers (0083606)**
**Shana B. DeMooy (0098753)**
**REMINGER CO., LP.A**

on behalf of Robert E. Weir individually and Robert E. Weir, Trustee of the Elizabeth W. Koeberger Trust, dated July 15, 2011.

**<u>Third Party Complaint against Plaintiff's CPA and Attorney</u>**

585.    In the same action before Judge Cocroft, 22 cv 002604 on May 31, 2022 Defendant Robert E. Weir, Attorney at Law filed a **Third Party Complaint** against Plaintiff's CPA, Adam Knolls, and her attorney Susan Wasserman in the amount of $124,090.25, alleging baseless claims including tortious interference with Plaintiff's trust; Defendant Knoll's counsel, Mary Dengler, advised the court "these causes of action do not exist."

### Historical Attorney, Trustee, and Accounting Fees During Robert E. Weir's Tenure as Trustee

| Date | Check | Debit | Payee/ payor | Description |
|---|---|---|---|---|
| 12/17/2018 | 1386 | $1,543.00 | Bailey Cavalieri LLC | Attorney Fees |
| 1/16/2019 | 1423 | $5,317.00 | Bailey Cavalieri LLC | Attorney Fees |
| 2/19/2019 | 1431 | $1,483.93 | Bailey Cavalieri LLC | Attorney Fees |
| 3/25/2019 | 1439 | $1,365.00 | Bailey Cavalieri LLC | Attorney Fees |
| 4/24/2019 | 1451 | $2,825.00 | Bailey Cavalieri LLC | Attorney Fees |
| 5/30/2019 | 1458 | $1,347.50 | Bailey Cavalieri LLC | Attorney Fees |
| 7/25/2019 | 1470 | $326.00 | Bailey Cavalieri LLC | Attorney Fees |
| 8/21/2019 | 1474 | $1,825.00 | Bailey Cavalieri LLC | Attorney Fees |
| 10/2/2019 | 1489 | $731.50 | Bailey Cavalieri LLC | Attorney Fees |
| 10/23/2019 | 1494 | $5,736.50 | Bailey Cavalieri LLC | Attorney Fees |
| 11/19/2019 | 1497 | $3,921.50 | Bailey Cavalieri LLC | Attorney Fees |
| 12/11/2019 | 1503 | $2,348.50 | Bailey Cavalieri LLC | Attorney Fees |
| 1/30/2020 | 1516 | $962.50 | Bailey Cavalieri LLC | Attorney Fees |
| 2/27/2020 | 1377 | $308.00 | Bailey Cavalieri LLC | Attorney Fees |
| 3/24/2020 | 1380 | $1,886.50 | Bailey Cavalieri LLC | Attorney Fees |
| 4/21/2020 | 1397 | $2,754.50 | Bailey Cavalieri LLC | Attorney Fees |
| 5/8/2020 | 1407 | $6,572.00 | Bailey Cavalieri LLC | Attorney Fees |
| 5/18/2020 | 1417 | $3,726.00 | Bailey Cavalieri LLC | Attorney Fees |
| 8/17/2020 | 1435 | $2,682.00 | Bailey Cavalieri LLC | Attorney Fees |
| 9/17/2020 | 1444 | $2,867.00 | Bailey Cavalieri LLC | Attorney Fees |
| 11/20/2020 | 1460 | $4,865.00 | Bailey Cavalieri LLC | Attorney Fees |
| 12/10/2020 | 1468 | $5,861.50 | Bailey Cavalieri LLC | Attorney Fees |
| 3/31/2021 | 3267 | $6,741.00 | Bailey Cavalieri LLC | Attorney Fees |
| **TOTAL** | | **$67,996.43** | | |
| 1/15/2016 | 1108 | $1,337.00 | Robert E. Weir, TTEE | Trustee Fees for 2014 |
| 1/15/2016 | 1109 | $7,077.48 | Robert E. Weir, TTEE | Trustee Fees for 2015 |
| 1/30/2017 | 1280 | $8,893.10 | Robert E. Weir, TTEE | Trustee Fees for 2016 |
| 1/24/2018 | 1350 | $10,976.90 | Robert E. Weir, TTEE | Trustee Fees for 2017 |
| 1/22/2019 | 1425 | $12,526.12 | Robert E. Weir, TTEE | Trustee Fees for 2018 |
| 6/5/2019 | 1459 | $3,505.01 | Robert E. Weir, TTEE | Extraordinary Trustee Fees |
| 8/21/2019 | 1475 | $625.00 | Robert E. Weir, TTEE | Extraordinary Trustee Fees |
| 10/2/2019 | 1490 | $912.50 | Robert E. Weir, TTEE | Extraordinary Trustee Fees |
| 10/29/2019 | 1495 | $315.00 | Robert E. Weir, TTEE | Extraordinary Trustee Fees |
| 2/4/2020 | 1518 | $450.00 | Robert E. Weir, TTEE | Extraordinary Trustee Fees |
| 2/4/2020 | 1520 | $350.00 | Robert E. Weir, TTEE | Extraordinary Trustee Fees |
| 5/7/2020 | 1403 | $11,238.42 | Robert E. Weir, TTEE | Trustee Fees for 2019 |
| 7/14/2020 | 1428 | $2,211.25 | Robert E. Weir, TTEE | Extraordinary Trustee Fees |
| 11/23/2020 | 1463 | $1,080.54 | Robert E. Weir, TTEE | Extraordinary Trustee Fees |
| 12/30/2020 | | $1,787.50 | Robert E. Weir, TTEE | Extraordinary Trustee Fees |
| 3/30/2021 | 3263 | $725.00 | Robert E. Weir, TTEE | Extraordinary Trustee Fees |
| 4/8/2021 | 1001 | $10,250.00 | Robert E. Weir, TTEE | Trustee Fees for 2020 |
| | | $750.00 | Robert E. Weir, TTEE | Extraordinary Trustee Fees |
| **TOTAL** | | **$75,000.82** | | |
| 6/27/2016 | 1267 | $910.00 | Trust Solutions | Accounting |
| 1/30/2017 | 1281 | $1,050.00 | Trust Solutions | Accounting |
| 1/24/2018 | 1351 | $1,250.00 | Trust Solutions | Accounting |
| 2/4/2020 | 1519 | $1,295.00 | Trust Solutions | Accounting |
| 2/17/2021 | 1494 | $1,225.00 | Trust Solutions | Accounting |
| 3/12/2021 | 9993 | $88.61 | Trust Solutions | Accounting |
| 2/7/2017 | 1291 | $450.00 | Wilson, Phillips & Agin | Accounting |
| 4/3/2018 | 1365 | $450.00 | Wilson, Phillips & Agin | Accounting |
| 5/8/2019 | 1453 | $450.00 | Wilson, Phillips & Agin | Accounting |
| 4/15/2020 | 1393 | $450.00 | Wilson, Phillips & Agin | Accounting |
| **TOTAL** | | **$7,663.61** | | |

16. A Combined Response of Edson Wilson, Christine Strom, and Robert Weir, Trustee to Ms. Koeberer's Objections to the Magistrate's Decision Filed May 7, 2021 pursuant to Civ. R. 53(D)(3)(b) was timely filed by Wilson, Strom and Weir, on June 10, 2021.

17. Koeberer filed a Reply to Combined Response of Edson Wilson, Christine Strom, and Robert E. Weir, Trustee, to Ms. Koeberer's Objections to the Magistrate's Decision filed May 7, 2021, pursuant to Civ. R. 53(D)(3)(b) which levied allegations against Wilson, Strom and Weir, but did not state or restate any specific objections, nor did it serve as a reply to the combined responses to the Objections.

18. A Combined Motion to Strike all New Argument and Documentation Contained in Ms. Koeberer's Reply in Support of Her Motions to Set Aside and Reopen, or Alternatively, for Leave to File Surreply to Ms. Koeberer's Motion to Set Aside and Motion to Reopen contained in the Reply Brief was filed by Wilson, Strom and Weir, on July 12, 2021.

19. Koeberer filed a Reply to Combined Motion to Strike all new Argument and Documentation Contained Ms. Koeberer's Reply in Support of her Motions to Set Aside and Reopen, or Alternatively, for Leave to File Surreply to Ms. Koeberer's Motion to Set Aside and Motion to Reopen on July 26, 2021.

20. On July 27, 2021, the Court filed a Judgment Entry Overruling Objections and Adopting the Magistrate's Decision Entered May 7, 2021.

21. The Court specifically found that Wasserman's argument that Koeberer was under a legal disability, pursuant to O.R.C. §2131.02(D) was "indefensible and wholly without merit".

22. Presently pending before the Probate Division are Wilson's, Strom's and the Trust's requests for fees and expenses.

23. Between July 27, 2021, various and sundry motions and memoranda were filed with the Court, as evidenced by the Case Docket attached to the Third-party Complaint.

24. To the date herein, the Trust has incurred attorney fees and expenses to defend these frivolous filings by Wasserman in the amount of $124,090.25.

Affiant further sayeth not.

_____
Robert E. Weir

Sworn to and acknowledged before me this 6th day of September, 2022.

Renee L. Miller
Notary Public, State of Ohio
My Commission Expires
June 3, 2023

_____
Notary Public

586.    On May 23, 2023 CNA, authorized Reminger Attorneys Zachary B. Pyers and Shana DeMooy to file an answer on behalf of Defendant Weir in Koeberer vs. Weir et. al. 22 CV002604.

587.    On September 6, 2022, Defendant CNA, authorized Attorneys Zachary B. Pyers and Shana DeMooy to file *Answers for Requests for Admissions* and Production of Documents and accountings sworn to by Defendant Weir under oath.



588.    Admissions included that Defendant Weir had provided legal services to Plaintiff and was continuing to represent multiple parties in adverse filings against Plaintiff and breach of fiduciary duty Responses by Weir and Discovery filed 9-8-2022. 22cv002604 by Attorney DeMooy.

587.    The discovery admissions were signed by Zachary B. Pyers and Shana DeMooy which show on the face of the record the following among other admissions: (a) Unauthorized use of Defendant Weir's Iolta and others, (b) distributions of stock to unknown individuals, (c) no

identified beneficiaries, (d) incorrect current income beneficiaries, (e)commingling of assets, (f) failure to comply with spendthrift statutory requirements and (g) no further economic benefit including the sale of low basis stocks and churning of her accounts.

> **REQUEST FOR ADMISSION NO. 8:** Admit or deny that you have acted as legal counsel to Elizabeth Koeberer individually at any time.
>
> **ANSWER: Admit.**
>
> Respectfully submitted,
> */s/ Shana B. DeMooy*
> **Zachary B. Pyers (0083606)**
> **Shana B. DeMooy (0098753)**
> **REMINGER CO., LP.A**

588. On September 12, 2022, Attorney Wasserman is required to withdraw as Plaintiffs' counsel in Franklin County Probate Court 563322 as Defendant Weir has filed against Plaintiff and her attorney jointly and severally in Franklin County Common Pleas 22CV002604.

589. Plaintiff agrees to reimburse Wasserman for all attorney fees and costs to ensure ongoing representation on her claims which includes legal fees and costs for Attorney Robert John Beggs to assist Wasserman while Defendant Weir continues his relentless adverse actions against Plaintiff as the sole vested current income beneficiary of the Estate of Ruth Wilson and retaining multiple counsel in different courts to litigate against her.

590. Defendant Weir remains as Attorney for the Executor Edson H. Wilson in the Estate of Ruth Wilson 563322 where only Probate Court has jurisdiction to order the Executor correct her name, and where he has a direct conflict of interest.

591. On September 12, 2022, Plaintiff approved the withdrawal of Attorney Wasserman as her counsel in Franklin County Probate Court; to allow Weston Hurd, to represent Wasserman in the concurrent proceedings filed by Defendant Weir's third-party claim in Franklin County Probate Court. 22 CV 002604 on May 31, 2022.

592. Plaintiff approved for reimbursement to her counsel Wasserman for all legal services necessary to protect Plaintiff and Plaintiff's family's legal interests incurred in Franklin County

Probate Court Estate of Ruth J. Wilson 563322. This included Attorney Robert John Beggs to represent Wasserman to assist Plaintiff's counsel with the "hearings" demanded by Defendant Weir as attorney for the Executor and as her "Trustee" since now Defendant Weir had named Plaintiff's counsel as a "party" subject to sanctions filed late on 9-10-2021 in case 563322.

593.    On November 2, 2022 Defendant Weir paid Reminger $1000 with funds from an account titled in the fictitious name Robert E. Weir Trustee of the "Elizabeth Koeberger Trust" (sic)  without Plaintiff's knowledge or consent.

594.    Defendant Weir's accounting is filed as discovery in 22 CV 002604 **Koeberer vs. Weir et. al. Franklin County Court of Common Pleas** under signature of Reminger Attorney Shana DeMooy: this accounting disclosed payments to Reminger from Plaintiff's 'Trust' for payment of Defendant Weir's deductible or expenses in litigation on 11-2-22, which constitutes a direct conflict of interest.

| 11/2/2022 Payment to Reminger Co.LPA for paralegal fees for Franklin | $ 1,000.00 | | |
|---|---|---|---|
| County case | | | |
| Check number: 1198 | | | |

595.    On July 13, 2022 Attorneys Pyers and DeMooy file in 22 CV 002604 a *Motion for Judgment* on the pleadings, based on Weir's actions in Probate Court, where he is represented by Bailey Cavaleri.  Pyers and DeMooy inaccurately reference the Plaintiff's Motion to Reopen, wrongfully representing to the Court that Plaintiff filed an "ill-fated will contest" in Franklin County Probate Court 563322.  They ignore Plaintiff's absolute right  to correct her name.  They also misconstrue her request that the court affirm that exposing Defendant Weir's unlawful self-dealing in a trust construction proceeding does not constitute a "will contest."

596.    Plaintiff alleges that panel attorney's Pyers and DeMooy spent considerable time dissecting probate court matters that involve ethical violations on the face of the record.  However instead of

requesting an accounting of the IOLTA they continue to litigate against Plaintiff to delay resolution of her claims to her detriment and harm seeking stays on discovery and attempting to defeat her claims.

597.    Despite Attorney Demooys misstatement that she "lost a will contest action" , Plaintiff never filed a will contest action in Probate Court.  This is one of several misrepresentations to the court that are filed to the detriment of the Plaintiff.

598.    Defendant Weir's Reminger Attorneys Pyers and Demooy incorrectly misconstrue the splintered jurisdiction required by Defendant Weir's unexplained repudiation of settlement agreement offered by Bailey Cavalieri Robert Dunn, on Defendant Weir's behalf.

599.    The statements made to the court by Attorneys Pyers and Demooy are misleading in that no will contest was ever filed by Plaintiff, nor was any surcharge action ever filed by Plaintiff against her siblings as a civil action in the Franklin County Probate Court.

600.    Defendant Weir, contrary to local rules 78.10v, refused to join all necessary parties to a civil action in Probate Court, as required, leaving Plaintiff no option but to retain Attorney Ryan Gordon to timely file a civil action in Common Pleas so that her "trust" would not continue to be adversely impacted by Defendant Weir's destructive actions and cause detrimental harm to her fee simple rights to herself and her descendants.

**Franklin County Court of Common Pleas**

**Judge Kimberly Cocroft 22 CV2604.**

601.    On April 20, 2022, Plaintiff finally did file a malpractice and trust construction civil action, represented by Defendant Attorney Ryan Gordon, which is still pending before Judge Kimberly Cocroft in the Franklin County Court of Common Pleas **22 CV 002604** .

602.    Defendant Ryan Gordon, as attorney for Plaintiff, was successful in surviving the Motion for Judgment of the Pleadings as to the last four years, 2018 to 2022 that support negligence and breach of fiduciary duty on the face of the record, which is still pending in  22 CV 002604 before Judge Cocroft as well as the construction of the trust, reimbursement of medical expenses and

damages including attorney fees for Defendant Weir's actions. He did not appeal the 4-4-23 decision.

603.    On 8-18-22, Defendant Weir had filed an amended Disclosure of Witnesses which included an obituary identifying the prominent deceased Attorney Eugene Weir as his father.  Plaintiff believes this may be part of a strategy from Defendant Weir aiming to discourage local attorneys from assisting Plaintiff in her opposition to the son of the founder of the prestigious "Weir Award." In fact, since the dissolution of the global settlement renounced by Weir, only Susan Wasserman has been willing to oppose Defendant Weir in a legal proceeding, and as Weir had approved her fees, on 5-18-2020 she has had no choice but to defend the very resolution that Defendant Weir authorized and then wrongfully repudiated.

604.    On April 4, 2023, Judge Kimberly Cocroft in 22 CV 002604 dismissed the third-party complaint against Wasserman, and Plaintiff filed an ORC 2323.51 complaint that is now pending.



Plaintiff is seeking reimbursement of all medical expenses that Defendant Weir has refused to pay, as well as any attorney fees paid based on Weir's negligent misrepresentation that Weir authorized termination of the defective trust he established under a fraudulent name, which he continues to refuse to correct.

605. Further, on March 7, 2023 Defendant Weir, represented by Reminger Attorneys Zachary B. Pyers and Attorney Shana DeMooy, who were paid in part with funds from Plaintiff's trust as authorized without her knowledge by Weir, opposed all motions and protective orders to defeat a Motion to Compel Distribution for Plaintiff's medical expenses, asserting Defendant Weir has utter and sole and absolute discretion over Plaintiff. Thus, once again, Weir used Plaintiff's inheritance, without Plaintiff's knowledge or consent, to fund attorneys to oppose her interests and to leave at the mercy of Defendant Weir who continues to act only for the benefit of her brother, Edson Hay Wilson and to the detriment of herself and her descendants.

## Franklin County Probate Court
## Estate of Ruth J. Wilson 563322

606. Robert E. Weir entered an appearance in The Estate of Ruth J. Wilson Franklin County Probate Court, Case No. 563322 as Robert E. Weir, representing himself as Attorney at Law for Executor Edson Wilson, on October 28, 2013.

607. As the oldest of Ruth Wilson's three children, Plaintiff had a conflict with Attorney Robert E. Weir who previously represented Plaintiff, and did not obtain a written waiver from her in reference to this obvious conflict of interest.

608. Attorney Robert E. Weir, as an attorney for the Executor did not serve a copy of the Inventory of in the Estate of Ruth J. Wilson, by certified mail or otherwise to the Plaintiff.

609. On February 7, 2014 Defendant Weir filed a Notice stating that Edson Wilson, had resigned as the Trustee of the "Elizabeth W. Koeberger Trust" (sic), and that Weir was now assuming the role of Trustee, to serve concurrently as Edson Wilson's attorney, a clear conflict of interest. Plaintiff was not notified of this substitution until her CPA Adam Knolls met with Defendant Weir who said he would not charge a fee.

610.    Attorney Robert E. Weir consented to all fiduciary and attorney fees in the Estate of Ruth Wilson on behalf of Plaintiff without her knowledge or consent.

611.    Defendant Edson H. Wilson had a conflict of interest with Plaintiff in respect to the protection of Plaintiff's inheritance and generational protection of Plaintiff's fee simple rights on behalf of her descendants.

### Motion to Reopen Estate of Ruth J. Wilson

612.    After years of frustration, on October 17, 2018 , Plaintiff filed a Motion to Reopen the. Estate of Ruth J. Wilson, Represented by Attorney Bradley Hoffman and Attorney Susan Wasserman, that was placed on **motion docket** of Franklin County Probate Court.

613.    In her motion, Plaintiff represented to the Court that her name was not Elizabeth W. Koeberger (sic), and never has been, and that the Executor refused to correct her name.  She asked for that name to be corrected for the purpose of resolving the outstanding issues with the Trustee Robert E. Weir including protecting her legal identity, for an accounting of tax issues with IRS resulting from Weir and Executor Wilson's mishandling of the estate's tax issues, for correcting a defective unfunded irrevocable trust, and more.

614.    Plaintiff asked for the court to reopen the estate to issue a new letter of authority as the Executor refused to correct her name to her detriment, and was acting in violation of the duties of the "Elizabeth W. Koeberger Trust" (sic) that he himself had written for her mother Ruth Jansson Wilson, who had signed her power of attorney with an "X".

615.    Plaintiff did not file a surcharge action as the estate was closed with no assets.

616.    Plaintiff did not file a civil action in the Estate of Ruth Wilson, Franklin County Probate Court 563322 on October 17, 2018 which requires mandatory efiling.

617.    Defendant Weir retained Defendant Robert R. Dunn of Bailey Cavalier to represent him as the Successor Trustee of the Elizabeth W. Koeberger Trust..

618.    Defendant Weir still refuses to resign as Attorney for the Executor Edson Wilson, or as unwanted Trustee of the mis-named "Elizabeth Koeberger Trust" (sic).

619.    Carlile Patchen Murphy LLP entered an appearance through Robert Barnett on 11-13-18 representing the Executor "individually" as Defendant Weir represented the Executor.

620.    Robert Dunn Bailey Cavalieri entered an appearance on 11-28-18 for Defendant Weir as the Successor Trustee of the Elizabeth W. Koeberger Trust.

621.    Plaintiff secured the services of Attorney David Duren who presented a report estimating Plaintiff's damages from mis-handled stock sales at over $300,000, which was sent Defendant Weir and all counsel. Based on these damages the parties agreed to resolve the issues.

622.    Defendant Weir agreed with counsel Carlile Patchen Murphy's Robert Barnett that to avoid "litigation lane" the trust could be terminated, and Plaintiff could be her own trustee so parties agreed to a decanting, termination and transfer of all assets to a new Elizabeth Wilson Koeberer trust. Barnett and Dunn prepared drafts and worked with Attorney David L. Duren and Kemp Shaeffer & Rowe—Steven Rowe and Michael Ferguson at Plaintiff's expense as well, to effectuate the termination of the defective trust without delay.

623.    No civil action was filed joining all parties by Defendant Weir as Attorney for the Executor as required by Franklin County local rule 78.10.

624.    On May 18, 2020 Defendant Weir approved the Plaintiff's legal fees be paid to Attorney Wasserman, for the settlement plan reached to terminate the defective trust, decant and establish a new trust in her correct name. Plaintiff relied on Defendant Weir's note in this regard:

> "I was thankful to receive the additional information regarding Attorney Wasserman's fee statement. Again, I have deposited the above amount within your Chase account for you to **pay such amount to Ms.Wasserman,**
>
> Please feel free to contact me with any questions or concerns."
> **Very truly yours,**
> **Robert B. Weir REW/rim**

625.    Years after this, in 2023 the Probate Court levied unprecedented sanctions for almost $200,000 against Plaintiff and her private attorney, Susan Wasserman, in retaliation for the allegedly "frivolous" filing that led to this settlement.

626. On March 4, 2020 A Sixth Tolling Agreement was circulated. Defendant Edson H. Wilson signed this and submitted it to his counsel Robert Barnett who sent to Attorney Hoffman.

627. On September 20, 2020, Attorney Robert Barnett died while representing the Executor, personally, and a *Substitution of Counsel* was subsequently filed by Jane Marx, of Carlile Patchen & Murphy in Franklin County Probate Court 563322 on behalf of Plaintiff's brother Edson Wilson as individually, although listed as Executor on the public docket.

628. Defendant Weir made further distributions to the Plaintiff for the attorney fees to Attorneys Kemp Shaffer & Rowe, also paying himself and his counsel, Robert R. Dunn, Bailey Cavalieri for all work performed to complete the Termination, Decanting and Disclaimers authorized by Defendant Weir, Defendant Edson H. Wilson and Defendant Christine Strom.

629. Payment was made to Plaintiff to pay the last invoice to Kemp, Shaeffer and Rowe on January 15, 2021 from Defendant Weir's IOLTA account at Defendant Chase Bank,

630. These legal fees paid out of Defendant Weir's IOLTA were authorized for the legal services paid for the *Private Settlement Agreement, Decanting, Waivers* and a new trust established for Plaintiff Elizabeth Wilson Koeberer her correct name. **Exhibit H.**

631. On the same date, January 15, 2021 Defendant Weir repudiated his agreement to terminate the trust, requiring Plaintiff's counsel to delay her retirement, remain in Ohio, and defend the settlement agreement that Plaintiff had consented to, in reliance of Defendant Weir representations to her by Robert Dunn, Defendant Bailey Cavalieri that Plaintiff would become her own Trustee, putting an end to Defendant Weir's further unnecessary involvement in her life.

632. After the unexplained repudiation, on January 21 2021 Plaintiff asked the court to take jurisdiction of the trust to resolve the issue of the settlement and join all necessary parties. Franklin County Probate Court 607895

633. Defendant Weir as Attorney for the Executor ignored the filing.

634. On March 31, 2021, Executor Edson H. Wilson individually filed for sanctions pursuant to ORC 2323.51 which was premature and incorrectly filed by Attorney Jane Higgins Marx, Carlile

Patchen & Murphy, as no decision had been rendered and was not in fact rendered until July 27, 2021 by Magistrate Robert Morris.

635.    On July 27, 2021, Franklin County Probate Judge Mackey ruled that Plaintiff and her attorney Susan Wasserman had engaged in "frivolous" behavior jointly and severally for trying to reopen the estate. The "sanctions" were set for hearing so the entry was not a final appealable order.

636.    On September 10, 2021 Defendant Weir, as Successor Trustee of the "Elizabeth Koeberger Trust" (sic) filed late for sanctions against Plaintiff and her attorney Susan Wasserman pursuant to ORC 2323.51 however no legal fees were attached.

637.    Plaintiff's sister Christine Strom, the third beneficiary, filed late for sanctions on 9-10-21 with Jay Michael however no legal fees were attached.

638.    On 8-31-21 in advance of the next hearing scheduled for 9-27-21, Plaintiff had served by certified mail, Attorney David Duren's reports, attached hereto as Exhibit C.

639.    Plaintiff has filed twice in the  Ohio Supreme Court with respect to Defendant Weir, A *Writ of Procedendo and Prohibition* meant to mitigate damages to avoid the cost of an unnecessary hearing, when the Motion to Reopen had never been set for hearing in the first place,

and a *Writ of Mandamus* to have Defendant Weir removed so the matter could be settled.

640.    Despite his role as Successor Trustee of Plaintiff's Trust, Defendant Weir, with knowledge of his insurer CNA, authorized private counsel to oppose Plaintiff in all filings to delay resolution of her claims.

641.    Defendant Weir opposed Plaintiff's both extraordinary writs and insisted on an expensive hearing when there had never been a hearing and Plaintiff's counsel requested that the matter be submitted on the record to mitigate damages as a transcript is necessary for an appeal.

642.    Defendant Weir cruelly continued to insist on a hearing against his former client and beneficiary—where  Plaintiff's doctor specifically advised  not to risk further damage to her paralyzed vocal cords in a contentious hearing with her brother, the Executor, Defendant Edson H. Wilson and his attorney Defendant Weir, still serving in multiple roles adverse to her.

643. Defendant Weir, through counsel Bailey Cavalieri, refused to allow Plaintiff to submit on the record arguing:

> *An adequate remedy exists for Relator. The Hearing has yet to occur, and the outcome could be favorable to Relator. If not, Relator will have the opportunity to object to any decision from the Magistrate and appeal any final order issued by the Probate Court. Also, the Probate Court has not refused to render a judgment but instead has attempted to proceed with the Hearing numerous times. Attorney Wasserman's continuances and delays, listed above, do not justify the extraordinary remedy of procedendo.*



**Liberty Spine, Sports & Nutritional Medicine**
10208 Sawmill Parkway | Powell, Ohio 43065
Phone: 614-792-2779 | Fax: 614-792-7255

RE:     Koeberer, Elizabeth

Date:   September 12, 2022

To Whom It May Concern:

Elizabeth has been a patient for several years. She was intubated in 9/2019 and her vocal cords were paralyzed. She has undergone many treatments and sought out many doctors to help her injury and restore her voice. Unfortunately, she has had no success and she continues to be severely challenged with talking, (phonation) and sustained speech. Sustained use of her vocal cords can and has caused further injury to her vocal cords such as laryngitis, hoarseness and loss of voice.

Elizabeth should not verbally testify in a court proceeding for fear of irreversible damage to her vocal cords.

Sincerely yours,

Damon M. Whitfield, D.O.
Boarded Neuromuscular Medicine
Boarded Emergency Medicine
Certificate of Added Qualification Pain Management

644. Facing irreversible damage to her vocal cords, Plaintiff sought relief in the Ohio Supreme court to remove Defendant Weir from this estate with no assets, where he continued to represent multiple parties at the same time while serving as attorney for the Executor, fighting to deny the rights of Plaintiff, whom he was allegedly representing as Trustee.

645. Defendant Weir's unwanted actions included continuing to liquidate Plaintiff's generational low- basis stocks despite her continued objection to the damage being done to her and

her descendants, with "Trustee" Weir taking adverse positions against her, at her direct expense, by filing sanctions against Plaintiff and her counsel, with Plaintiff being the sole vested identified beneficiary of the "trust" being negligently administered by Weir, including his refusal to correct her name, or to terminate a defective trust adversely impacting her access to necessary health care or to resolve ongoing tax consequences of voidable actions including failure to timely fund the trust.

**Writ of Mandamus**
**Ohio Supreme Court**

646.    In February of 20**23** Plaintiff filed a Writ of Mandamus to have Robert E. Weir removed from the Estate of Ruth J. Wilson Franklin County Probate Court 563322. The Ohio Supreme court dismissed the Writ. This was the second extraordinary writ filed in the Estate of Ruth J. Wilson.

647.    On March 21, 2023 a hearing on the sanctions was held before Judge Mackey Franklin County Probate Court on the ORC 2323.51, motion against Plaintiff and her counsel in an estate where there were no assets, where the Executor and Trustee refused to correct her name, and there was a pending matter in the court of Common Pleas 22 CV 002604 before Judge Cocroft.

648.    At the hearing only Attorney Beggs appeared.  Plaintiff Elizabeth Koeberer had authorized Attorney Robert John Beggs to appear for Susan Wasserman, and Plaintiff Elizabeth Koeberer did not appear. Plaintiff requested the matter be submitted on the record, but was denied.

649.    Before the hearing on March 20, 2023, Plaintiff filed her expert reports from Attorney David Duren and Attorney Mary Cibella, to support Plaintiff's argument that the Motion to Reopen was not a civil action, and that it was supported by evidence that justified the motion which was placed on the motion docket with no answer filed by any party.

650.    Judge Mackey took the matter under submission including Plaintiff's reports on March 21, 2023. No rulings were issued until December of 2023.

651.    Plaintiff paid for and submitted timely the transcript of the hearing on the first Objection to the Magistrate's Decision, rendered on July 27, 2021 along with her two expert reports from Attorney Duren, and Attorney Cibella. **Exhibits C and D**.

652. On December 27, 2023, Judge Jeffrey D. Mackey issued a final appealable Order authorizing the following punitive sanctions.

Franklin County Ohio Clerk of Courts of the Common Pleas- 2024 Feb 17 1:06 PM-24JG009836

DG736 - O46

Case No. 563322

jurisdiction to rule on a motion for sanctions regarding the appeal of a guardianship decision). Both Ms. Wasserman and Ms. Koeberer have repeatedly engaged in objectively frivolous conduct since the time this case was reopened, and the expenses the magistrate therefore awarded to the Opponents were both reasonable and warranted.

Accordingly, for the reasons set forth above, and after thoughtful consideration, the court hereby orders as follows:

Elizabeth Koeberer's 'motion for frivolous filings' and motion for judicial notice are not well taken and are **DENIED**.

Edson Wilson's motion for an award of expenses and fees is well-taken and is granted. Susan Wasserman and Elizabeth Koeberer are **ORDERED** to pay, jointly and severally, Edson Wilson's reasonable attorney fees and expenses in the amount of $80,349.44.

Robert Weir's motion for an award of expenses and fees is well-taken and is granted. Susan Wasserman is **ORDERED** to pay Robert Weir's reasonable attorney fees and expenses in the amount of $64,675.46.

Christine Strom's motion for an award of expenses and fees is well-taken and is granted. Susan Wasserman and Elizabeth Koeberer are **ORDERED** to pay, jointly and severally, Christine Strom's reasonable attorney fees and expenses in the amount of $35,316.50.

Finding no just reason for delay, this judgment entry shall constitute a final appealable order pursuant to Civ.R. 54(B).

**IT IS SO ORDERED.**

Jeffrey D. Mackey, Judge

FILED #19

DEC 2 7 2023

3

## LEGAL CLAIMS

## AS OF JANUARY 22, 2025

### COUNT : ONE

### Negligence Against Chase Bank

653.    Plaintiff Koeberer re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

654.    Defendant had a duty to exercise reasonable care and competence in preventing the illegal opening of any account in Plaintiff's alleged name **Elizabeth W. Koeberger (sic)** without any original documentation, allowing Defendant Weir access to authorize without her authority significant fraudulent transfers.

655.    Defendant J. P. Morgan Chase negligently entrusted their representative with the authority to allow Defendant Weir to "open" a personal account for Plaintiff that was linked to Weir's own private accounts, which acts created foreseeable risk to Plaintiff.

656.    Defendant Chase has a duty to comply with NACHA Rules and make reasonable efforts to prevent the fraudulently withdrawn or transferred funds from the bank(s) originating the fraudulent ACH transactions under the NACHA Rules.

657.    Defendant Weir directed Plaintiff to Defendant Chase on January 23, 2015 as a private client and  represented to her that as "Chase Private Client" receives an extra level of attention and service due to the significant sums that a Chase Private Client must deposit with Defendant.

658.    Defendant Chase represented to Plaintiff that they provided a "team of professionals" to help manage her banking needs and provide assistance.

659.    Defendant Chase breached its duty to Plaintiff by failing to protect Plaintiff from unreasonable risk of fraudulent activity on her Accounts.

670.    Defendant Chase, including the team of professionals purportedly providing Plaintiff with additional care and services, failed to properly monitor Plaintiff's Accounts and to notice the sufficiently suspicious circumstances and activity on Plaintiff's Accounts.

671.    Defendant Chase breached its legal duties to Plaintiff by failing to comply with original bank secrecy and original documentation rules, NACHA Rules, and by allowing Defendant Weir to link Plaintiff's personal account to Defendant Weir's access and control all without her consent or authorization.

672.    Defendant Chase also breached its duty to Plaintiff by thereafter failing to exercise reasonable care and competence in the opening, creation and monitoring of the procedure required to safeguard  Plaintiff's interests.

673.    Defendant Chase failed to consistently apply its own obligations under the Bank Secrecy Act, and Deposit Account Agreement terms and made decisions contrary to law, tangibly harming Plaintiff.

674.    Defendant Chase inexplicably diverted multiple requests for information multiple times, preventing Plaintiff from obtaining information that was made available only to Defendant Weir.

675.    Plaintiff insisted on the correct of the name on her trust.  To the best of Plaintiff's information and belief and after her repeated requests, Defendant Chase did make a change, acknowledging the legitimacy of the demand.  However, Chase changed only the name on account xx7730. The change was made unknown to Plaintiff.  Other of Plaintiff's accounts remained linked to those of Weir, illegally allowing him the "keys" to Plaintiff's account and unlimited control of Plaintiff's resources, which he has self-dealt for his personal enrichment.

676.    As a proximate and foreseeable result of Defendant Chase Bank's breach of its duties to Plaintiff, Plaintiff has been harmed in an amount in excess of $1.5 Million Dollars, to be proven at trial.

677.    Defendant Chase Bank breached its fiduciary duty by allowing Frase, Weir Baker & McCullough and Defendant Weir to use their IOLTA account to illegally divert and commingle sole and separate funds of the Plaintiff, in at least one case involving public funds involved with the restoration of an historic building in Coshocton, Ohio.

678.    Defendant Chase Bank breached its fiduciary duty by allowing the Frase, Weir Baker & McCullough IOLTA account to make payments for personal needs of the Plaintiff in a fictitious name of Koeberger.

679.    Defendant Chase Bank breached its fiduciary duty by allowing the Frase, Weir Baker & McCullough IOLTA account to be used to make distributions to unidentified individuals alleging they are clients from Plaintiff's funds without her authority or consent.

680.    Defendant Chase Bank breached its fiduciary duty and legal responsibilities by allowing the Frase, Weir Baker & McCullough IOLTA account to be used to make payments to unidentified individuals from Plaintiff's accounts without her authority or consent.

681.    Defendant Chase Bank breached its fiduciary duty by allowing the Frase, Weir Baker & McCullough IOLTA to be used for unauthorized payments for legal filings adverse to Plaintiff.

682.    Defendant Chase Bank breached its fiduciary duty and legal responsibilities by allowing the Frase, Weir Baker & McCullough IOLTA account to be used to commingle her personal funds with those of Weir's other "clients " including third party claimants William Deadman and Phillip Arthur in actions against Defendant Weir.

683.    Upon information and belief, Plaintiff alleges herein that in excess of approximately $1.5 Million Dollars, to be proven at trial, was wrongfully transferred and withdrawn from Plaintiff's Accounts without her knowledge or consent, including an alleged trust account fraudulently bearing the name of "Elizabeth W. Koeberger (sic)", a non-existent entity in this case.

684.    Had Defendant Chase Bank exercised its legally required duty of care to Plaintiff and properly monitored Plaintiff's Accounts, neither Defendant nor Weir nor anyone else could have ever opened this "Trust" account without original authentic identification from Plaintiff as required by the Bank Secrecy Act.

685.    Had Defendant Chase exercised its legal duty of care to Plaintiff, none of the fraudulent transfers would not have occurred on Plaintiff's Accounts; they would have been prevented.

686.    Had Defendant exercised its legally required duty of care to Plaintiff and complied with NACHA Rules and attempted to recover the fraudulent ACH withdrawals under NACHA, Plaintiff would have recovered all, or a vast majority, of the fraudulent ACH withdrawals made by Defendant Weir.

687.    Further, had Defendant exercised its duty of reasonable care and competence in investing Plaintiff's claims, Defendant would have recovered all, or a vast majority, of the fraudulent Weir's ACH withdrawals.

688.    As a proximate and foreseeable result of Defendant's breach of its duties to Plaintiff, Plaintiff has been tangibly and substantially harmed.

698.    Had Defendant exercised its legally required duty of care to Plaintiff, and properly monitored Plaintiff's Accounts, Defendant would have discovered Weir's fraudulent activity much earlier, and would have thus avoided very substantial harm.

690.    As a proximate and foreseeable result of Defendant Chase's breach of its legally binding duties to Plaintiff, Plaintiff has incurred damages in an amount to be determined at trial, but not less $1.5 Million, to be proven at trial.

<div align="center">

**COUNT TWO**
**Violations of Regulation E and the Electronic Funds Transfer Act**
**Against Chase Bank**
**(12 C.F.R. § 1005.1 et seq.; 15 U.S.C. § 1693, et seq.)**

</div>

691.    Plaintiff Koeberer re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

692.    Defendant Chase, as Plaintiff's bank, had a duty to exercise due care to not expose Plaintiff to an unreasonable and foreseeable risk of injury.

693.    Defendant Chase violated Regulation E, 12 C.F.R. §§ 1005, *et seq.*, whose "primary objective" is "the protection of individual consumers," 12 C.F.R. § 1005.1(b), and which "carries out the purposes of the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693, *et seq.*, the 'EFTA,'" 12 C.F.R. § 1005.1(b)).

694. The EFTA, which is implemented by Regulation E, authorizes a private right of action, pursuant to 15 U.S.C. § 1693(m), against a bank that fails to comply with any provision of the EFTA, including the provision limiting a consumer's liability for unauthorized transfers." *Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 584 (9th Cir. 2021).

695. Under the EFTA (15 U.S.C. § 1693g), the liability of a consumer, such as Plaintiff, for unauthorized electronic funds transfers is limited to the *lesser* of $50.00, or the amount of money (or value of property or services) obtained in such unauthorized electronic fund transfers prior to the time that the financial institution (*i.e.*, Defendant Chase Bank) is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has or may be effected.

696. Similarly, under Regulation E (12 CFR § 1005.6(b)(3)), a consumer must report an unauthorized electronic fund transfer that appears on a periodic statement within 60-days of the financial institution's transmittal of the statement to avoid liability for subsequent transfers.

697. If the consumer fails to do so, the consumer's liability shall not exceed the amount of the unauthorized transfers that occur after the close of the 60-days and before notice to the institution, and that the institution establishes would not have occurred had the consumer notified the institution within the 60-day period.

698. Plaintiff repeatedly notified Defendant Chase Bank of the unauthorized name on this Trust account. But Defendant Chase did not prevent future check orders and ongoing unauthorized activity, creating foreseeable injury to the Plaintiff.

699. Defendant was aware that Plaintiff did not choose online banking and relied on receipt of paper account statements in the mail.

700. On January 23 2015, Plaintiff notified Defendant of the incorrect name wrongfully affixed by Defendant Weir to her Trust.

701. On January 23, 2015 Plaintiff presented authentic information that was inconsistent with the account fraudulently opened in a fictional "name," and should have resulted in it being corrected immediately.

702. Accordingly, as of January 23, 2015, Defendant Chase Bank knew that Plaintiff's Checking Account should only be in the name of Elizabeth W. Koeberer, not "Koeberger" (sic).

703. As of said date, Defendant Chase Bank knew that any checks or other documentation with this information would cause foreseeable harm to the Plaintiff as representation in the public domain.

704. As of said date, Defendant Chase continued to prepare, order and deliver to Defendant Weir Plaintiff's personal bank statements and information, exposing her to ongoing risk and danger and identify theft with an unauthorized fictitious name.

705. Defendant Chase violated the EFTA (15 U.S.C. § 1693g) and Regulation E (12 CFR § 1005.6(b) by failing to limit Plaintiff's liability for the unauthorized transfers from her Accounts and imposing losses in excess of more than $1.5 Million, to be proven at trial.

706. Further, Defendant Chase has knowingly and willfully concluded that Plaintiff's claims were not in error, when such conclusion could not reasonably have been drawn from the information available to Defendant at the time of its investigation.

707. Defendant has not used at all relevant times, and is not currently using, the resources and procedures necessary to resolve the levels of fraud that have done such substantial damage to Plaintiff's Accounts.

708. Plaintiff repeatedly requested from Defendant Chase the documents and information it used in its investigation, but to no avail.

709. Defendant did not provide such documents and information or provide any basis for its failure to provide such information.

710. Defendant violated the EFTA (15 U.S.C. § 1693f) and Regulation E (12 CFR § 1005.11) by failing to conduct a good faith investigation into the unauthorized transactions that Plaintiff reported, and by failing to provide Plaintiff with the documents and information it relied on during its investigation as requested by Plaintiff.

711. Plaintiff is therefore entitled to recover treble damages under 15 U.S.C. § 1693f(e).

712.    As a direct and proximate result of Defendant's violation of the EFTA and Regulation E, Plaintiff has lost significant sums of money and has incurred damages an amount to be determined at trial but not less than and in excess of $1.5 Million, to be proven at trial.

713.    The Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiff has exhausted all other remedies, and has been and will continue to be irreparably injured, by the conduct of the Defendants Weir, Chase Bank and others, unless this court grants the declaratory and injunctive relief which plaintiff seeks.

### COUNT THREE
#### Negligence
#### Against Chase Bank

714.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

715.    Defendant Chase, as Plaintiff's bank, had a legal duty to exercise due care to not expose Plaintiff to an unreasonable risk of injury, which it has failed to do.

716.    Defendant had a duty to exercise reasonable care and competence in investigating Plaintiff's claims of an account wrongfully using her social security number and birth date in conjunction with a fictitious name fraudulently imposed on her Accounts by Defendant Weir in league with Defendant Chase.

717.    Defendant Chase had a duty to comply with National Automated Clearing House Association ("NACHA") Operating Rules and 12 CFR § 1005.6 ("Regulation E"), which implements the Electronic Fund Transfer Act ("EFTA"), and to make reasonable efforts to recover the fraudulently withdrawn funds from the bank(s) originating the fraudulent ACH transactions under the NACHA Rules.

718.    Defendant Weir represented to Plaintiff that he was directing her to Defendant Chase to provide a "team of professionals" to help manage her banking needs and provide assistance.

719.    Defendant Chase breached its legal responsibility to Plaintiff by failing to protect Plaintiff from unreasonable risk of fraudulent activity on her accounts.

720. Defendants Weir and Chase, including the "team of professionals" purportedly providing Plaintiff with additional care and services, failed to properly monitor Plaintiff's Accounts and to notice the sufficiently suspicious circumstances and activity on Plaintiff's Accounts, given the linking of Defendant Weir's IOLTA and her trust account to unknown accounts for deposits and cash transactions.

721. Defendant Chase breached its legal responsibilities and duties to Plaintiff by failing to comply with NACHA Rules, and to make reasonable efforts to recover the fraudulently withdrawn funds from the bank(s) originating the fraudulent ACH transactions under the NACHA Rules.

722. Defendant Chase also breached its legal responsibilities and duties to Plaintiff by thereafter failing to exercise reasonable and timely care and competence in investigating Plaintiff's claims.

723. Defendant Chase failed to provide any legal basis or explanation as to why it has denied nearly the entirety of Plaintiff's claims.

724. Defendant Chase has failed to consistently apply its own Deposit Account Agreement terms and made decisions contrary to law, to the detriment of Plaintiff.

725. Defendant Chase inexplicably denied several claims on the basis that the claims were for scheduled loan payments to third parties, despite Plaintiff not having authorized any scheduled loan payments and Defendant Chase not conducting any investigation that would have supported or denied Plaintiff's assertion and conclusion.

726. As a proximate and foreseeable result of Defendant Chase's breach of its duties to Plaintiff, Plaintiff has been tangibly harmed.

727. As alleged herein, an unknown amount of approximating $1.5 million has been fraudulently withdrawn, commingled and linked in and out of Plaintiff's Accounts, without Plaintiff's authorization, over a period of nearly ten (10) years, despite repeated warnings from Plaintiff and her Attorneys throughout this period.

728. Had Defendant Chase exercised its duty of care to Plaintiff and properly monitored Plaintiff's Accounts, Defendant Chase would have discovered the fraudulent activity much earlier, resulting in far less damage to Plaintiff.

729.    Had Defendant Chase exercised its duty of care to Plaintiff, none of---or likely a far smaller amount of ---the fraudulent ACH deposits and withdrawals would have occurred on Plaintiff's Accounts, or they would have been recovered.

730.    Had Defendant Chase exercised its legal duty of care to Plaintiff and complied with NACHA Rules and attempted to recover the fraudulent ACH withdrawals under NACHA, Plaintiff would have recovered all, or a vast majority, of the fraudulent ACH withdrawals.

731.    Further, had Defendant Chase exercised its duty of reasonable care and competence in investing Plaintiff's claims, Defendant would have recovered all, or a vast majority, of the fraudulent ACH withdrawals.

732.    As a proximate and foreseeable result of Defendant Chase's breach of its duties to Plaintiff, Plaintiff has incurred damages in an amount to be determined at trial, but not less than $1.5 Million.

<center>

**COUNT FOUR**

**Violation of NACHA Rules**

**Against Chase Bank**

</center>

733.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

734.    Defendant is a NACHA Direct Member and is legally required to comply with NACHA Rules and requirements.

735.    Under NACHA Rules, there is a 60-day "look back" period under which a consumer is entitled to reimbursement of fraudulent charges starting from the date the fraud is reported to the bank and counting backwards 60 days.

736.    The NACHA Rules allow a bank in Defendant Chase's position (the Receiving Depository Financial Institution or "RDFI") to return the original ACH withdrawal request to the bank that originated the request (the Originating Depository Financial Institution or "ODFI") if the RDFI reimburses its consumer and submits its return request to the ODFI "no later than the opening of

business on the Banking Day following the sixtieth calendar date following the Settlement Date of the original [withdrawal request]." NACHA Operating R. § 3.13.1(b).

737.    The NACHA Rules then provide that the ODFI "must accept" a timely and proper return request from the RDFI, which in effect, completes the reversal of the unauthorized or fraudulent ACH transaction. NACHA Operating R. § 2.12.1.

738.    Thus, under the NACHA Rules, a consumer's bank (the RDFI) can reimburse the consumer for any unauthorized ACH transactions within the 60-day settlement period starting from the date the consumer makes the report because NACHA allows the RDFI to initiate a reversal with the ODFI during this 60-day window.

739.    Defendant Chase was obligated to follow the aforementioned process after receiving Plaintiff's report of fraudulent ACH withdrawals from the Accounts in question.

740.    Defendant Chase failed to comply with NACHA Rules.

741.    Defendant Chase failed reimburse Plaintiff for the fraudulent ACH withdrawals pursuant to the NACHA Rules.

Defendant Chase failed to submit a return request to the ODFI(s) pursuant to the NACHA Rules.

742.    As a direct and proximate result of Defendant Chase's violation of the NACHA Rules, Plaintiff has lost significant sums of money and has incurred damages in an amount to be determined at trial but not less than $1.5 Million and attorney fees and costs expended in protection of these assets.

## COUNT FIVE

### Negligent and Misrepresentation
### Against Robert Weir
### Made against him in all capacities

743.    Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

744.    In Ohio, a party may prevail on a claim for negligent misrepresentation by proving that a defendant: (1) supplies false information; (2) for the guidance of others in their business transactions; (3) causing pecuniary loss to the plaintiff; (4) while the plaintiff justifiably relied on the information; and (5) while the defendant failed to exercise reasonable care in obtaining or communicating the information. *Palmer-Donavin Mfg. Co. v. Rheem Sales Co*., No. 2:14-CV-91, 2014 WL 2767665, at *8 (S.D. Ohio June 18, 2014) (citing *Picker Int'l v. Mayo Found*., 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998)); see also *Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 1, 534 N.E.2d 835, 838 (Ohio 1989).

745.    Additionally, Ohio law provides:

> A core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction. This relationship occurs only in 'special' circumstances. Usually the defendant is a professional (e.g., an account) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class. This 'special' relationship does not exist in ordinary business transactions. Those who are in the business of supplying information for the guidance of others typically include attorneys, surveyors, abstractors of title and banks dealing with non-depositors' checks.

*Palmer-Donavin Mfg. Co*., 2014 WL 2767665, at * 8 (internal quotations omitted) (quoting *Ziegler v. Findlay Indus., Inc*., 464 F. Supp. 2d 733, 738 (N.D. Ohio 2006) (recognizing that a 40-year relationship between a distributor and a manufacturer "is not the kind of relationship that is a necessary for . . . negligent misrepresentation" and dismissing the claim); see also 50 Ohio Jur. 3d Fraud and Deceit § 82 ("[A] core requirement in a claim of negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transactions; this relationship occurs only in special circumstances.").

746.     Moreover, courts have provided specific examples of special relationships for purposes of negligent misrepresentation claims. Those examples include attorneys, surveyors, abstractors of title, banks dealing with nondepositors' checks, and investment advisors. *See Ziegler*, 464 F. Supp. 2d at 738; *Alton v. Wyland*, 72 Ohio App. 3d 685, 689, 595 N.E.2d 993, 996 (10th Dist. Franklin Cty. 1991) (finding that one who gives investment advice for a fee may be liable for negligent misrepresentation); *cf. Picker Internat'l, Inc. v. May Found.*, 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998) (finding that a software licensor did not have the requisite special relationship with a licensee because nothing indicated the relationship was anything other than contractual).

**Creation of the Elizabeth W. Koeberger (sic)Trust – fictitious name Elizabeth W. Koeberger Trust by Robert E. Weir, Frase, Weir Baker & McCullough on July 15, 2011**

747.     Defendant Robert E. Weir's representation to Plaintiff Elizabeth W. Koeberer that the repeatedly and consistently (year after year) repeated false name of sole identified beneficiary Elizabeth W. Koeberger (sic) was "only a single typographical error" was negligently and disingenuously made, and was intended to induce her to rely on him as her prior attorney and Trustee to protect her interests.

748.     Defendant Weir's repeated false representations were material to the transactions at hand, i. e. the mandatory identification of sole identified beneficiary under the "Elizabeth W. Koeberger Trust" (sic) is required by law.

749.     Defendant Weir's repeated false statements were made recklessly by Defendant Weir with full knowledge of their falsity, as the scrivener and attorney for the Estate of Ruth J. Wilson.

750.     Defendant Weir's repeated false statements as the scrivener of documents were made with deliberate intent to mislead a public relying on such documents in the public domain.

751.     Plaintiff Koeberer justifiably relied on representations by Defendant Weir that the false name on the "Elizabeth Koeberger Trust" (sic) would be correctly changed to her rightful name Koeberer before being placed into public domain.



**Creation of IRS EIN in fictitious name Elizabeth W. Koeberger (sic) Trust 'AKA'.**

752.    Defendant Weir made deliberate repeated negligent representations that as the applicant he had authority to apply for an EIN for an unauthorized Fictitious name, the "Elizabeth W. Koeberger Trust" (sic).

753.    Defendant Weir made material repeated knowingly false statements that the name of Trust on EIN created an official document in the name of *Elizabeth W. Koeberger (sic)* who does not exist.

754.    Defendant Weir did not have authority or consent to add AKA Koeberger (sic) to any document and did not have authority to create any subsequent document in that false name.

755.    Plaintiff Koeberer has never been known by the name Elizabeth W. Koeberger, nor does she know anyone by that name.

756.    Defendant Weir repeatedly made such statements falsely, with full knowledge of their falsity.

757.    Plaintiff alleges to her information and belief no such person as "Elizabeth W. Koeberger" (sic) exists.

758. The damages from such misrepresentation were foreseeable from justifiable reliance by the public on name of legal document fraudulently created by Defendant Robert Weir.

759. Plaintiff has been tangibly damaged by the reliance on said negligent misrepresentations.

### Defendant Weir's Negligent Misrepresentation to open J.P. Morgan Chase bank accounts in a fictious name:

1. **Elizabeth W. Koeberger Trust Account**.    xx7772-opened 2-24-2014
2. **Elizabeth W. Koeberer checking account**  xx7730-opened 1-25-2015



760. As to account **xx7772** Defendant Weir's mis-representation and use of the fictitious name Elizabeth W. Koeberger has been an ongoing and continuous unauthorized negligent misrepresentation.

761. As to account **xx7770** Defendant Weir does not have authority to open this account by perpetrating a personal signature card in the unauthorized fictitious name of Elizabeth W. Koeberger (sic).

762. As to account **xx 7772** Defendant Weir does not have authority to commingle funds of Plaintiff Elizabeth Wilson Koeberer under the unauthorized fictitious name of Elizabeth W. Koeberger (sic).

763.     As to account **xx7770** Defendant Weir has repeatedly, knowingly and fraudulently mis-represented to Defendant Chase that he has had the authority to link this account to any other, which relates to the special relationship Defendant Weir has at Defendant JP Morgan Chase Bank, allowing him to link this account to the sham account **xxx 7772.**

764.     As to account **xx 7772** Defendant Weir fraudulently set up this account in utter disregard for his express representation to plaintiff Koeberer that this spelling mistake was a "typographical" error that would be immediately corrected before placement into the public domain, which he failed to do.

765.     As to account **xx 7772** Defendant Weir set up this account in fraudulent disregard of his representation to Plaintiff that he would comply with her order to make this correction before filing in the public domain.

766.     As to account **xx 7770** Defendant Weir fraudulently authorized linking this account to his other accounts, in illegal disregard of the unauthorized fictitious name, unauthorized personal address and unauthorized affixation of a handwritten date not signed by Plaintiff.

767.     As to account **xx7772** Plaintiff Koeberer justifiably relied on the representation that Defendant Weir  would correct his "Scrivner's error," which he has never done.

768.     As to account **xx7770** Plaintiff Koeberer justifiably relied on representation of Defendant Weir that he could not open this "corrected" bank account until January of 2015.

769.     As to account **xx7770** Plaintiff justifiably relied on representation of Defendant Weir that this was Plaintiff's personal and private account.

770.     As to account **xx7772**-Defendant, illegally misrepresented the unauthorized fictitious name Koeberger (sic) to allow multiple illegal commingling of IOLTA accounts and money laundering with transfers to unauthorized recipients who are unidentified and unknown to Plaintiff.

771.     As to account **xx7770** Defendant Weir's fraudulent misrepresentations illegally breached Plaintiff's right to privacy with unauthorized transfers of cash to and from Defendant Weir's IOLTA and account **xxx7772.**

**Representations to Plaintiff that Weir
"could not open a personal checking account yet" and had to personally deliver her cash in
paper bags on 4-15-14, 7-11-14, 8-22-14, 11-13-14 and 1-9-15.**

772.    Defendant Robert Weir negligently misrepresented to Plaintiff that he had to make distributions from her "trust" in cash only on 4-15-14, 7-11-14, 8-22-14, 11-13-14 and 1-9-15.

773.    Plaintiff Koeberer could not verify the source of the deposit with any cash received by Defendant Weir, undermining Plaintiff's ability to protect her interests without a source of the deposit or correct identification as to the name of the "Trust."

774.    Defendant Weir did not disclose that the "Trust" account was already opened by him on 2-14-2014, without Plaintiff's knowledge or consent, at Defendant J. P. Morgan Chase Bank.

775.    Defendant Weir negligently mis-represented to Plaintiff Koeberer that as her "Trustee" he had a legal duty to deliver cash, yet he would not provide any written information documenting such deliveries on 4-15-14, 7-11-14, 8-22-14, 11-13-14 and 1-9-15

776.    Defendant Weir fraudulently misrepresented and omitted the source of the cash deposits before Plaintiff's personal account was opened by Defendant Weir in unauthorized fictitious name on 1-25-15 at Defendant Chase Bank.

777.    Defendant Weir fraudulently misrepresented that Ohio trust law required him to deliver cash without documentation to Plaintiff  on 4-15-14, 7-11-14, 8-22-14, 11-13-14 and 1-9-15.

778.    Plaintiff justifiably relied upon the representation of Defendant Weir that he had to deliver undocumented cash to her 4-15-14, 7-11-14, 8-22-14, 11-13-14 and 1-9-15 because he could not open a bank account for her.

779.    Plaintiff's justifiable reliance on Defendant Weir's failure to disclose the linking of these accounts, and the source of all deposits, injured Plaintiff's access to use her personal funds for her timely legal claims, damaged Plaintiff and hindered her ability to protect her interests, while being deprived of accurate identifying information by her unwanted fiduciary, Defendant Robert Weir.

780.    Defendant Weir did not disclose to Plaintiff that he had opened the original account in February of 2014 at Defendant Chase Bank in a fictitious name, Elizabeth W. Koeberger (sic).

781.    Defendant Weir did not disclose to Plaintiff that he had commingled her personal assets, including the distribution from Northwestern Mutual Life Insurance made out to Elizabeth W. Koeberer, with other deposits from other accounts, including the restoration effort for the historic Carnegie Library in Coshocton, Ohio, as involved with William Deadman, and assets of Philip Arthur, whose attorney Brian Benbow filed a police report against Defendant Weir in connection with Arthur's case.

782.    Defendant Weir's concealment of Plaintiff Koeberer's personal distribution from Northwestern Mutual Life Insurance by illegally commingling it in his IOLTA account for Frase, Weir, Baker & McCullough, deprived Plaintiff of access to funds she required to protect her legal interests.

783.    Plaintiff did not authorize Weir's deposit of her personal distribution from Northwestern Mutual Life Insurance into Defendant's IOLTA account at Defendant Chase Bank.

Koeberger trust checking account at Chase 861870772 REW

| Date | Check | Credit | Debit | Payee/ payor | TTEE Balance | Description |
|---|---|---|---|---|---|---|
| 2/24/14 | DEP | $ 22,726.36 | | IOLTA | $ 22,726.36 | transfer of insurance money from trust account |
| 4/3/14 | DEP | $ 110.67 | | IOLTA | $ 22,711.91 | remaining balance |
| 4/15/14 | 1002 | | **$ (5,000.00)** | **Cash** | $ 17,711.91 | Distribution to Liz |
| 7/11/14 | 1012 | | $ (8,000.00) | Cash | $ 7,749.36 | Distribution to Liz |
| 8/22/14 | 1019 | | $ (5,000.00) | CASH | $ 1,818.22 | Distribution to Liz |
| 11/13/14 | 1034 | | $ (3,000.00) | cash | $ 144,938.41 | Distribution to Liz |
| 1/9/15 | 1044 | | $ (5,000.00) | cash | $ 138,617.58 | Distribution to Liz |
| 1/9/15 | 1045 | | $ (5,000.00) | cash | $ 133,617.58 | Distribution to Liz |

2/13/15  1053               $        LIZ'S ACCT    $
                       (25.00)    TO OPEN     129,165.12

**Unauthorized representation to Northwestern Mutual Life Insurance Company  to divert personal funds to Weir as attorney for Elizabeth Koeberer signed without RW's additional instructions to mail Defendant Weir Plaintiff's check as "her attorney" on 12-24-13.**

784.    Defendant Weir negligently misrepresented to Northwestern Mutual Life Insurance Company that they should send Plaintiff's check, received after the passing of Plaintiff's mother, to Weir's office, falsely representing that this diversion was authorized by Plaintiff Koeberer when in fact it was not.  This resulted in the diversion of her personal funds of to his office, with the concealment of Plaintiff's personal assets, which were illegally commingled in Weir's firm's IOLTA Account.

785.    Defendant Weir's fraudulent tampering with the Northwestern Mutual Insurance form diverting distribution of Plaintiff's check to his own address for unauthorized custody and control, was made with deliberate intent to deprive Plaintiff of her right to protect her interest in that money, which came in the wake of the death of her mother.

786.    Plaintiff justifiably relied on Defendant Weir's representation and that of, Frase Weir Baker and McCullough.

787.    Defendant Weir's unauthorized deposit of Plaintiff's personal funds was commingled in FWBM IOLTA account, with subsequent unauthorized commingling of Plaintiff's personal assets with IOLTA at Defendant J.P. Morgan Chase bank accounts all linked by and through Defendant Weir, Defendant J. P. Morgan Chase and Does 1-10.





**Representation on 5-22-2015 to Adam Knolls CPA for Plaintiff that assets were being transferred from the Estate of Ruth Wilson.**

788.    Plaintiff's CPA, Adam Knolls relied on the representations of Defendant Weir, made to him in writing on 5-12-2015.  But Defendant Weir intentionally did not disclose that all assets were **not transferred at death from Estate of Ruth Wilson** but transferred by him **after the death** of his client, Ruth J. Wilson which resulted in the loss of the step up in basis to Plaintiff under the defective trust.

789.    Plaintiff's CPA Adam Knolls required that Defendant Weir sign an agreement on 4-16-16 to provide accurate information to IRS on behalf of Elizabeth Wilson Koeberer.

790.    Defendant Weir, Frase, Weir, Baker & McCullough had prepared the conveyances, and Weir transferred the assets himself to Defendants Edson Hay Wilson and Christine Strom in 2012 prior to the death of the Plaintiff's mother Ruth J. Wilson.  Defendant Weir had personal knowledge that Ruth J. Wilson had only left an unfunded irrevocable testamentary trust.

791.    Plaintiff authorized the services of her CPA Adam Knolls, who required a contract for accurate information which Defendant Weir signed on 4-16-16.

792.    Plaintiff retained Attorney David L. Duren as her expert witness to substantiate her damages for her defective trust and provided copies of same to Defendant Weir and Bailey Cavalieri, and Carlile Patchen Murphy, on 8-31-21 by certified mail**.**



**Representations to Plaintiff that Robert E. Weir was authorized to sign tolling agreements for the purposes of a global settlement.**



793.    Defendant Weir retained Bailey Cavalieri as the Successor Trustee and did not  resign from the Estate of Ruth J. Wilson in the Franklin County Probate Court 563322 in which he represents Executor Edson H. Wilson.

794.    Defendant Robert Dunn on behalf of Defendant Weir prepared Tolling agreements which specifically represented that the intent was to delay filing of a timely civil action, on 12-27-2018, Defendant Weir authorized Robert Dunn, Bailey Cavalieri to repudiate these agreements while misrepresenting to all other courts the following statement, which is misleading and in violation of local rules where Bailey Cavaleri had to file a civil action themselves and join all necessary parties – rather than ambushing Plaintiff at her cost to delay her valid claims.

795.    Defendant Weir's counsel Bailey Cavalieri argued as an officer of the court?

> **"Trustee is acting as a fiduciary in the Probate Court and attempting to recoup expenses for Relator's benefit. He does not represent anyone"**
>
>> Ohio Supreme Court Motion to Dismiss f
>> filed by Robert Dunn, Bailey Cavalieri, Attorney for Robert
>> E. Weir, Trustee of the Elizabeth Koeberger [sic] trust."

796.    Plaintiff spent considerable resources in shaping this global agreement, in justifiable reliance on Defendant Weir who is a licensed attorney in the State of Ohio, and represents the Executor of the Estate and assumed the position of "Successor Trustee" at the same time.

797.    At Defendant Weir's direction and authorization, Plaintiff paid approximately $17,000 to Kemp Shaeffer and Rowe, and $17,000 to Attorney Bradley Hoffman.  She also paid fees to David L. Duren, who estimated approximate damages from the mishandling of the estate at $300,000.00, all of which was reviewed by Defendant Gordon who then charged her another $100,000.00 or more,  to file the civil action against Defendant Weir. This is in addition to the $17,000.00 bill incurred by Collin & Slagel, also paid in part by the Plaintiff when Defendant Weir refused to resign and continued to hold her captive in a defective fictitious trust.

**Representation to Plaintiff that Trustee intended to terminate trust and authorized and paid for modification, termination and decanting documents and legal fees.**

798.    Defendant Weir's negligent misrepresentations in the correspondence to Plaintiff trapped Plaintiff and her counsel in this matter as Plaintiff has been required to defend at her expense an agreement authorized by Defendant Weir and agreed to by all parties, but then repudiated  by Defendant Weir, followed by his demand for sanctions against Plaintiff and her attorney, Susan Wasserman and subsequent voice mail threats.

799.    Defendant Weir failed to advise Plaintiff  that he did not agree with Plaintiff's plan; and

that he would oppose Plaintiff 's termination of her defective trust, even though he authorized

Bailey Cavalieri to specifically authorize proceeding with her Private Settlement Agreement, and that Defendant Weir ratified this authorization by paying Attorney Hoffman, Attorney David L. Duren and Attorneys Kemp Shaeffer and Rowe, among others, in reliance of Bailey Cavalieri's representations.

800.    Attorney for Weir, Robert Dunn, Bailey Cavalieri negligently misrepresented that the "Elizabeth W. Koeberger (sic) Trust" would be terminated to avoid "protracted and costly" litigation, which in fact did occur when the agreement to terminate the Trust was repudiated.

801.    On January 15, 2021, the same day that Defendant Weir authorized a final payment to Kemp Shaeffer and Rowe's legal services for Plaintiff's Private Settlement Agreement, Decanting, Disclaimers and new trust, --Defendant Weir also authorized Bailey Cavalieri to proceed with costly hostile filings in the Franklin County Probate Court, constituting inconsistent legal positions to the detriment of the Plaintiff as a beneficiary of the estate of Ruth J. Wilson.

802.    Plaintiff Koeberer justifiably relied on Weir's authorization to proceed with retaining Kemp Shaeffer and Rowe to work with Attorney David L. Duren to complete the necessary documentation to terminate her defective trust in Franklin County Probate Court.

### Failure to Disclose that Defendant Weir authorized
### Village at Bexley Condominium Association to accept certified mail for Plaintiff

803.    Defendant Weir did not disclose to Plaintiff that as the formal title holder in the name of *Robert Weir, Trustee of the Elizabeth W. Koeberger (sic) Trust* he would control access to the mail at her personal residence at 2370 Village at Bexley, Columbus Ohio 43209

804.    Defendant Weir has abrogated the power to access and control Plaintiff's certified mail to her residence to her detriment and harm to her trust.

805.    Defendant Weir has diverted the authority, without consent from Plaintiff, to gather and divert mail from this postal address.

806. Upon information and belief, Plaintiff alleges that Defendant Weir has authorized strangers without her knowledge or consent to sign for US certified mail addressed to her at her personal residence.

807. Plaintiff's right to privacy at her personal home address has been undermined by Defendant Weir's failure to disclose his control over the clustered mail box that he has access to as title holder to the property at 2370 Village at Bexley, Columbus, Ohio 43209.

808. Defendant Weir failed to disclose this access in utter disregard and recklessness as to Plaintiff's safety and right to privacy.

809. Defendant Weir failed to disclose the possession of this power to Plaintiff when he authorized unknown individuals to sign for Plaintiff's certified mail without Plaintiff's authorization or consent.

810. Plaintiff has suffered actionable damages on the invasion of her privacy and interference with her receipt of certified mail, where Defendant Weir authorized "an adult" to receive her mail that she did not authorize or consent to. The control of Plaintiff's USPS mail box allowed Defendant Weir to fraudulently transact business with Plaintiff's private USPS mail that she did not consent to and had no knowledge of, including bank and insurance companies, to her detriment and tangible pain and suffering from, among other things, great anxiety.

811. Upon information and belief, Plaintiff alleges that Defendant Weir has refused to disclose what confidential mail has been received only by him, including authentic bank statements, authentic life insurance proceeds and statements, and certified mail intended to be received and signed for only by Elizabeth Wilson Koeberer.

812. Upon information and belief, mail addressed to Elizabeth W. Koeberger may have been diverted by Defendant Weir who has authority and control over her mail at her personal residence without her consent.

**Failure to disclose to Plaintiff that as scrivener of the Elizabeth W. Koeberger [sic] Trust "health safety and welfare clause "was impotent as Defendant Weir has sole discretion over timing or amount of all or any distributions, and that he did not have the expertise necessary to administer the defective trust and protect the trust.**

813. Defendant Weir represented to Plaintiff that "she had all the money she would need for the rest of her life", without disclosing that the "Elizabeth Koeberger Trust" (sic) "health safety and welfare" clause to protect her interests was subject to his "sole and absolute discretion".

814. Defendant Weir falsely represented that he had the financial expertise necessary to protect Plaintiff's inheritance for herself and her descendants, including incompetent stock transactions and tax decisions, which he has made without Plaintiff's consultation, to Plaintiff's substantial detriment and over her objection.

815. The defective "Elizabeth W. Koeberger Trust's" (sic) health safety and welfare clause is rendered impotent as it is under sole and absolute discretion of Defendant Weir, leaving Plaintiff at the mercy of a personal conflict of interest by Defendant Weir.

816. Defendant Weir who has "sole" discretion over all distributions has recklessly made numerous self-dealing decisions to the detriment of the Plaintiff and her descendants and continues to deny her medical reimbursements.

817. Defendant Weir's failure to disclose the defective terms of the trust which were personally known to him as scrivener of the document, were unknown to the Plaintiff, and Plaintiff detrimentally relied on said omission, i.e. that the name "Elizabeth W. Koeberger" (sic) would be corrected as a sole "typographical error."

818. Plaintiff justifiably relied on Defendant Weir's knowledge that she "would have as much money as she wanted to live tor the rest of her life in the manner enjoyed by the Wilson family."

819. Plaintiff's family set the standard for Plaintiff's standard of care; the Wilson family established extensive philanthropy and charitable bequests for the public good, including the Ohio State University Chair in Cardiology established by her mother in honor of her father where bequests such as these are made where the family 's health safety and welfare are protected and not jeopardized.

820.    Defendant Weir has used adverse domination and intimidation to impose a fiscal stranglehold on the Plaintiff by the fraudulent mis-use of this defective trust including threats to her counsel and CPA by filing a baseless third-party claim on May 31, 2022 in 22 CV 002604 to delay her timely resolution of her claims.

821.    Defendant Weir has refused to make vital distributions for much-needed medical reimbursements, jeopardizing Plaintiff's health, safety and welfare, and causing her tangible pain, suffering and physical harm.

822.    Defendant Weir has used a scheme of adverse domination to exploit and extinguish Plaintiff's rights to her assets as fraudulently mis-used in the defective fictitious unauthorized name "Elizabeth W. Koeberger" (sic).

823.    In the instant case, Defendant Weir made the foregoing representations (the "representations" hereinafter) of fact as true to Plaintiff Koeberer, knowing the same to be false, when he had a duty to disclose to her they were false.

824.    Defendant Weir's representations to Plaintiff Koeberer were material and calculated in the furtherance of his self-dealing schemes to defraud the Plaintiff of her assets.

825.    Defendant Weir's repeated misrepresentations to Plaintiff Koeberer were made falsely, either with knowledge or with utter disregard to their truthfulness.

826.    Defendant Weir's fraudulent, repeated misrepresentations to Plaintiff Koeberer were made with the conscious intent to mislead Plaintiff Koeberer into relying upon them as true.

827.    Plaintiff Koeberer justifiably relied upon Defendant Weir's knowingly false representations to her, and as a direct and proximate cause thereof, has sustained economical injuries---exclusive of health, mental anguish and other tangible damages---in the approximate amount of one million, five hundred thousand dollars---to be determined at public trial.

828.    IRS requested verification from Defendant Weir as to why Plaintiff's personal check from Northwestern Mutual Life was deposited into his IOLTA. He omitted to disclose that his Iolta had been used to divert her funds for almost a year, deprive of her of funds to retain counsel, and was only deposited into her "trust" in 2015, not the original date of 2-24-14.

829. Under Ohio law, the elements of ***fraudulent misrepresentation*** are: (1) a representation or a concealment of fact when there is a duty to disclose; (2) that is material to the transaction at hand; (3) made falsely, either with knowledge or with utter disregard to its truthfulness; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by the reliance. Stuckey v. Online Res. Corp., 819 F. Supp. 2d 673, 682 (S.D. Ohio 2011).

830. The elements of fraud include: (1) a representation or, where a duty to disclose exists, concealment of a fact, (2) which is material to the agreement in question, (3) made falsely, with knowledge of its falsity, or with complete disregard as to its truthfulness, (4) with the intent to mislead another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) resulting harm proximately caused by the reliance. Burr v. Board of County Com'rs of Stark County, 23 Ohio St.3d 69 at syllabus ¶2 (1986). The elements of fraudulent inducement, fraudulent  is  representation, fraudulent concealment, and fraudulent non-disclosure are essentially the same as those for fraud. See Gentile v. Ristas, 160 Ohio App.3d 765, 781(Franklin Co. 2005).

## NEGLIGENT REPRESENTATION

### Attorney Ryan Gordon, Ryan Gordon LLM

831. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

832. To the best of her information and belief , on Friday September 24, 2021, Ryan Gordon Attorney at Law doing business as Ryan Gordon LLM, represented to Elizabeth Wilson Koeberer at office of her attorney Susan Wasserman and with her CPA Adam Knolls present, at 746 S Yearling Rd, Columbus, OH 43213:

A. That he had the expertise to litigate a trust construction that had sanctions pending in probate court on her behalf and that the probate matter would not impact his performance in the common pleas action for malpractice, breach of fiduciary duty and trust construction.

B. That he had no conflicts with any party or attorney in the mater Gordon would not meet until he completed conflicts check on:

Robert E. Weir, Coshocton
Bailey Cavalieri, Robert Dunn Brittany Stephen
Carlile Patchen & Murphy LLP-Robert Barnett, Jane Higgins Marx or Bryan Pritikin
Edson Hay Wilson
Chrstine Strom
Jay Michael

C.  That Defendant Gordon was "not afraid of anyone" and would protect Elizabeth's interest knowing that t was adverse and hostile.

D.  That Defendant Gordon had specific expertise in litigation on unfunded trusts with a recent case where an attorney was held responsible for an unfunded trust and its consequences.

E.  That he had specific expertise in tax consequences and current income  beneficiaries and the requirement that all beneficiaries be identified.

F.  That he would not work unless authorized –"**no money no work"**  If Elizabeth did not pay him and authorize work he would immediately withdraw as Elizabeth advised him she had limited funds because Trustee refused to make distributions on any schedule.

G.  That all paperwork would be reviewed by Attorney Wasserman as Elizabeth did not have a computer or printer and needed assistance.

H.  That all payments to him would be by check not digitally because Elizabeth did not have a computer or a printer and was not able to handle digital interfaces.

I. Defendant Gordon represented that  would include her descendants as necessary parties but later changed his mind.

J.  That he represented to Plaintiff that he had the trial expertise to litigate a violation of an unfunded spendthrift trust with voidable transactions involving commingling of her personal assets.

833.    Defendant Gordon's aforementioned representations to the Plaintiff were not true.

834.    Defendant Gordon made each and every one of the complained of representations to Plaintiff Koeberer with in intent to induce to sign a fee agreement resulting in his filing 22-CV-002604.

835.    These representations made by Defendant Gordon to Plaintiff were material to her decision to hire the Plaintiff to represent her in the case of *Koeberer vs. Robert E. Weir*, and but for

Defendant Gordon's representation, she never would have signed a fee agreement resulting in his filing 22-CV-002604.

836.     Defendant Gordon made each and every one of the complained of representations to Plaintiff Koeberer negligently, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, to induce her to sign fee agreements which authorized him to file a verified complaint on her behalf in Franklin County Court of Common Pleas 22-CV-002604.

837.     Because Defendant Ryan Gordon, at all times relevant hereto, was an attorney duly licensed to practice law, admitted to practice law before the Court, and represented to her that his representations to her were true, Defendant Koeberer had a right to rely upon them and did not know that Defendant Gordon's representations were false, designed to mislead her, and she relied upon Defendant Gordon's representations.

838.     As a direct and proximate cause of Defendant Ryan Gordon's knowingly and intentionally false representations to her, Plaintiff Koeberer has sustained damages not less than $25,000.00, to be proven at trial.

## Abuse of Process

### Against Defendants Weir and Edson Hay Wilson and Christine Strom

839.     Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

840.     The Sixth Circuit has recently noted that under Ohio law, the tort of abuse of process has three elements:

> (1) a legal proceeding has been set in motion in proper form and with probable cause, (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, and (3) direct damage has resulted from the wrongful use of process.  Graham v. Best Buy Stores, L.P., 298 Fed.Appx. 487 (6th Cir. 2008).  The Sixth Circuit recognizes that An abuse-of-process claim will not survive a motion to dismiss when it is supported only by 'conclusory allegations regarding the defendants' ulterior motives with no facts to support those contentions.' This court has also noted that 'there is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'
>
> Id. (citing Hahn v. Star Bank, 190 F.3d 708, 718 (6th Cir.1999).

841.    Ohio courts have stated, "An action for abuse of process is concerned with the improper use of process after it has been issued: whether there has been employment of process in a manner not contemplated by law or to obtain an object which such process is not intended by law to effect." *Kavlich v. Hildebrand,* 2009 WL 625725 (Ohio 8th App. Dist. March 12, 2009) (citations omitted).  And, "Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Id*. (citing *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St.3d 264 (1996)).  Furthermore, "Abuse of process does not lie for the wrongful bringing of an action, but for the improper use, or 'abuse,' of process.  Thus, if one uses process properly, but with a malicious motive, there is no abuse of process, though a claim for malicious prosecution may lie.  The tortious character of the defendant's conduct consists of his attempts to employ a legitimate process for a legitimate purpose in an improper manner." *Id*. (citing *Kremer v. Cox*, 114 Ohio App.3d 41 (1996).

842.    Defendant Weir authorized both his dependent and independent counsel to authorize inconsistent litigation adverse to his former client and the sole vested beneficiary of the "Elizabeth W. Koeberger Trust" (sic) 7-15-11, of which he is the "Successor Trustee."

843.    Defendants Weir, Edson Hay Wilson and Christine Strom did not get served with a civil action, did not file an answer, instead all agreeing to multiple tolling agreements and continuances and subsequent repudiation on 1-15-21 for the purpose of delaying resolution of Plaintiff's valid claims as the sole vested identified beneficiary of the Elizabeth W. Koeberger (sic) Trust 7-15-11 which agreement they subsequently repudiated without cause and to the detriment of the Plaintiff and her descendants.

844.    Defendant Weir's tampering with records in Probate Court using an unauthorized fictitious name and without consent affixing AKA Elizabeth W. Koeberger to probate court filings in the Estate of Ruth J. Wilson Franklin County Probate Court 563322, were consented to by Defendant's Wilson and Strom, with knowledge of their falsity.

845.    Defendant Weir's filing a baseless lawsuit against Plaintiff's CPA Adam Knolls, and counsel Wasserman which was dismissed with prejudice in Franklin County Court of Common Pleas 22 CV2604; he did not appeal.

846.    Defendant Weir authorized Attorney Zachary Pyers in using this decision in his pending Motion for Judgment on the Pleadings in 24 cv 003935 despite the fact that it was an unfavorable outcome to him.

847.    Defendant Weir's multiple and contemporaneous conflicts of interest on behalf of his client, Executor, Edson H. Wilson, Edson H. Wilson individually and Christine Strom and the commingling of Plaintiff's assets in his IOLTA to the detriment of the Plaintiff and her descendants.

<div align="center"><b><u>Declaratory Judgment Act Relief</u></b></div>

848.    Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

849.    Plaintiff, Elizabeth Wilson Koeberer for herself, her successor in interest, her daughter Alexandra Koeberer Manti, and her descendants, does hereby petition this honorable court to determine the rights and liabilities of the parties as follows pursuant to the Declaratory Judgment Act, citation including equitable relief and damages.

850.    As a preliminary matter, this Court may choose whether to exercise jurisdiction over Colette's claims brought pursuant to the Declaratory Judgment Act. *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 552 (6th Cir. 2008).[3] Under the Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration" in a case or controversy where the court has subject matter jurisdiction. 28 U.S.C. § 220l(a). A court may decline to exercise jurisdiction even where subject matter jurisdiction criteria are met. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995). The choice to exercise jurisdiction in a declaratory action is discretionary and not jurisdictional. *Flowers,* 513 F.3d at 552. When deciding whether to exercise jurisdiction, this Court considers the following factors:

(1)    whether the declaratory action would settle the controversy;

     (2)     whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
     (3)     whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
     (4)     whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
     (5)     whether there is an alternative remedy which is better or more effective.
*Grand Trunk WR. Co. v. Consol. Rail Corp.,* 746 F.2d 323, 326 (6th Cir. 1984).

851.    The facts of this case weigh in favor of exercising jurisdiction. *Scottsdale Ins. Co.,* 513 F.3d at 557 (these factors are often analyzed together as "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue.")

852.    While resolution of the declaratory actions may not settle the entire controversy, resolution would clarify the legal relationship between the parties by settling among other issues:

    1.   The threshold matters of which trust document governs, the terms and rights  of the defective and fictitious  Elizabeth W. Koeberger (sic) Trust and

    2.   The voidable act of the unlawful commingling of Plaintiff's personal assets in his IOLTA account of Defendant Weir with thirty party claimant William Deadman in the concurrent matter pending in  the Muskingham County Court of Common Pleas. CA 23 – 0217 *Deadman vs. Robert E. Weir.*

853.    The  numerous present state court proceedings in this matter  are in favor of this court's jurisdiction. *See Flowers,* 513 F.3d at 558-59. The fifth factor favors resolution because the declaratory judgment claims are intertwined with Plaintiff's  other claims before this Court. *See Adrian Energy Assocs. v. Michigan Pub. Serv. Comm 'n,* 481 F.3d 414, 422-23 (6th Cir. 2007) ("When a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court *must address,* then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources."

854.    Accordingly, Plaintiff petitions this court to exercise jurisdiction of this matter and requests that the court take into consideration that the ongoing litigation continues to cause her harm

855. The concurrent state proceedings which include Defendant Weir's IOLTA and hiring dependent panel attorneys and independent counsel to take adverse inconsistent positions with respect to Plaintiff while simultaneously charging Plaintiff's trust for all legal work:

     1. **Franklin County Court of Common Pleas** – 22 CV 002604- Trust Construction and malpractice and breach of fiduciary duty

     2 **Franklin County Probate Court** 563322-correction of Plaintiff's name, sanctions and attorney fees on appeal against Koeberer and her attorney Wasserman. Sanctions filed by late by Defendant Weir, Defendant Christine Strom and prematurely by Defendant Edson Wilson individually.

     3. **Tenth District Court of Appeals** – 24 AP 000061, Estate of Ruth J. Wilson-appeal of denial of Motion to Reopen and Sanctions. Additional Sanctions filed by Defendant Weir for reporting voice mail threat to counsel.

     4. **Southern District of Ohio;** *Weir vs Wasserman* – Removal of Weir vs. Wasserman 24 JG 9836 2:24:CV 03334, Sanctions filed by Defendant Weir.

     5. **Southern District of Ohio**: *Wasserman vs. Weir* et. al. 2:24:cv-3935;

     6. **Southern District of Ohio** *Carlile Patchen Murphy vs. Elizabeth Koeberer* Removal 2:24-cv-4280 Sanctions filed by Executor's individual counsel

     7. **Franklin County Court of Common Pleas** *Ryan Gordon vs. Elizabeth Koeberer* 24CV005253

     8. **Deadman vs. Weir Muskingham County Court of Common Pleas** CA 23-0217

856. Plaintiff submits that the "litigation soup" created by Defendant Weir as to his conflicts of interest in his multiple capacities, his actions in splintering jurisdiction and the ongoing concurrent litigation including suing Plaintiff's private independent counsel and Adam Knolls, her CPA, necessitates the federal jurisdiction to protect her rights to a timely resolution of her claims.

857.    Defendant Weir's tactics of splintering jurisdiction, repudiation of a global settlement agreement, filing baseless suits against Plaintiff's CPA and attorney, hiring multiple independent and dependent counsel by Defendant Weir as attorney and fiduciary taking inconsistent positions and ongoing attempts to execute void judgments without subject matter jurisdiction and on appeal against Plaintiff and her counsel as the sole vested identified beneficiary of the Elizabeth W. Koeberger (sic) Trust support federal jurisdiction and will save judicial resources.

858.    To the best of her information and belief Plaintiff's "trust" has been charged for all Defendant's "independent" counsel and continues to threaten the corpus of the trust on behalf of herself and her beneficiaries with his unauthorized sales of stock and commingling of her assets in his IOLTA for years to deprive her of her rights.

859.    Plaintiff has exhausted state remedies in the Ohio Supreme Court against Defendant Weir 2022-1377; 2023-0226; and in which both matters, Plaintiff's trust was charged for all legal work for Defendant Weir instead of recusing himself and settling the matter.

860.    **To date, Defendant Weir's actions have prevented any court from:**

l. Ruling on the trust construction and voidable acts in commingling her personal assets and his IOLTA and her defective and fictitiously named "Elizabeth W. Koeberger (sic) Trust."

2. Ordering Defendant Weir to cease and desist stock sales or conveyances of said stock to unknown individuals.

3. Ordering Defendant Weir to cease and desist payment of all attorney fees and costs to anyone including himself until further order of the court.

4. Determining that the "spendthrift" wording in the Elizabeth W. Koeberger (sic) Trust does not prohibit any court from ordering the Trustee to pay reasonable attorney fees to Plaintiff to defend herself and her descendants in protection of her fee simple rights.

5. Determining that the "spendthrift" wording in the Elizabeth W. Koeberger (sic) Trust does not prevent this court from prohibiting scorched earth tactics against a beneficiary who seeks equitable relief where no adequate remedy exists at law for her immediate medical needs and protection of her fee simple rights on behalf of herself and her family.

**PRAYER FOR RELIEF**

861.    WHEREFORE, plaintiff respectfully prays that this court enter judgment granting plaintiff:

862.    A preliminary and permanent injunction ordering Defendants Ameritrade as the custodial holder of assets, Defendants Robert Weir, Attorney at Law and Successor of the Elizabeth W. Koeberger (sic) Trust for an accounting of his IOLTA and all accounts involving the Elizabeth W. Koeberger (sic) Trust, and all stock transactions and distributions to and from Defendant Weir in any capacity to any individual or defendant herein.

863.    Compensatory damages in the amount of $250,000.00 against each defendant, jointly and severally not including the corpus of the Elizabeth W. Koeberger (sic) Trust.

864.    Punitive damages to be determined by this court as equitable relief for the Plaintiff and her descendants.

865.    A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States, and:

866.    That **Defendant J. P. Morgan Chase Bank** is strictly liable for the creation of the fraudulently named bank account in the fictitious name of the "Elizabeth W. Koeberger Trust" (sic),  for the linking of Plaintiff's accounts with any of Defendant Weir's accounts, for cash transactions and the acceptance of deposits from unidentified sources all without Plaintiff's knowledge or consent, and accordingly the bank accounts are void *ab initio*.

867.    That **Plaintiff, Elizabeth Wilson Koeberer** is the sole vested identified beneficiary of the defective "Elizabeth W. Koeberger (sic) Trust" and is entitled to have her name corrected without delay and to a determination of the rights and liabilities thereunder.

868.    That **Defendant Robert E. Weir's** multiple negligent misrepresentations and commingling of her personal assets constitute a breach of his fiduciary duty and constitute an abuse of process, designed to extinguish her rights and those of her descendants to her fee simple rights in the  Elizabeth W. Koeberger (sic) Trust.

869.    That **Defendant Robert E. Weir's** actions constitute a conflict of interest in hiring dependent and independent attorneys to take adverse hostile actions which violate legal and ethical

rules meant to protect the Plaintiff as a former client and as a beneficiary of the Elizabeth W. Koeberger (sic) Trust and as a third party claimant against Defendant Weir.

870.     That **Defendant Robert E. Weir's** actions have created serious harm to the trust, constitute a breach of his duty of loyalty in his actions, and require that he should be removed without delay.

871.     That **Defendant Robert Weir** is insured currently by CNA insurance in all capacities relevant to this complaint, as attorney, trustee and individually including but not limited to:

> **Attorney for Defendant Edson H. Wilson**
>        as Executor in the Estate of Ruth J. Wilson, Franklin County Probate Court 563322
> **Attorney for The Wilson Family Trust in sale of**
>        Wilson Family Farms on 8-11-18
> **Defendant in the Koeberer vs. Weir**
>        22 CV 002604, Franklin County Court of Common Pleas
> **Defendant in Wasserman vs. Weir et**. al. Southern District of Ohio
>        2:24cv3935-SDM-EPD
> **Defendant in the Deadman vs. Weir**,
>        Muskingham County Court of Common Pleas CA 23 -0217
> **Appellee in the Appeal**-Estate of Ruth J. Wilson on
>        Motion to Reopen 24 AP00061, Tenth District Court of Appeals

872.     That Defendant Weir in all capacities is insured by CNA insurance who have ratified his actions *as attorney, fiduciary and individually*, by renewal of his insurance policies each year, and has an affirmative duty to settle cases without delay, and that all panel dependent and independent counsel are required to be in compliance with the Ohio, Federal Rules of Professional Conduct and Ohio Trust Code with respect to their client's duty of loyalty and fair dealing in representation of an attorney by an insurer.

873.     That Defendant Weir actions in all capacities constitute an actionable breach of fiduciary duty as a matter of law where adverse actions are being litigated in multiple courts simultaneously at the expense of the Plaintiff and to the detriment of herself and her descendants.

874.     That Defendant Weir's legal position is incorrect and inequitable as a matter of law, i.e. that the "health safety and welfare" of Plaintiff and her daughter's immediate medical needs cannot be extinguished by the terms "sole and absolute discretion" wording of the "Elizabeth W.

Koeberger (sic) Trust" to allow Defendant Weir to arbitrarily veto and control of Plaintiff's health decisions, causing her irreparable pain and suffering.

875.    That Defendant Weir has intentionally caused Plaintiff damages including threats to her right to counsel, to limit her health care and threats to drive her into bankruptcy by his reckless actions,

876.    Including all of Plaintiff's attorney fees paid and owing in detrimental reliance of the global settlement to terminate this defective trust written and authorized by Defendant Weir;

878.    Plaintiff's damages in reliance of said negligent representations include but are not limited to the approximate amounts as follows to be verified for trial:

        1.  Collins and Slagel                17,000.00-paid in part

        2.  Adam Knolls, CPA.               25,000.00-paid in full

        3.  Bradley Hoffman, Attorney at Law     17,000.00-paid in full

        4.  David L. Duren, Attorney at Law       10,000.00-paid in full

        5.  Mary Cibella, Attorney at Law         7500.00-paid in full

        6.  Robert John Beggs, Attorney at Law    22,000.00-partial payment

        7.  Ryan Gordon Attorney at Law        105,000.00-paid in full

        8.  Ryan Gordon Attorney at Law        25,000.00- *in litigation*

        9.  Oblic Deductible for Wasserman      2,500.00-paid in full

        10. Kemp, Shaeffer & Rowe           17,000.00-paid in full

        11. Attorney Wasserman fees approved by Defendant Weir on May 18, 2020 and ongoing attorney fees and costs.

        12. Attorney fees and costs of ongoing litigation in all concurrent courts.

879.    That Defendant Weir's failure to reimburse Plaintiff for medical bills in the amount of $ 65,000.00 as of 2023, now pending in her pro se motion for a Protective Order in 22 CV 002604 cannot be overcome by his allegations that he has sole and absolute discretion under the Elizabeth W. Koeberger (sic) Trust.

880.    That Defendant Weir's actions and Does 1-10 actions have caused serious harm to the trust including unauthorized stock sales, cash transactions, transfer of stock to unknown individuals and payment of attorney and fiduciary fees over objection or without knowledge of the Plaintiff, constitute a breach of his fiduciary duty to the "trust".

881.    Plaintiff as the sole vested identified beneficiary and the current income beneficiary is entitled to a forensic accounting of all fees and transactions, including all accounts opened, closed and used by Defendant Weir with respect to Plaintiff and her descendants including those of custodial Defendant Ameritrade and nonparty Hendley and Company.

882.    That Defendant Weir's actions in commingling his firm's IOLTA of multiple clients including Plaintiff Elizabeth Wilson Koeberer, third party claimants, William Deadman and Phillip Arthur, and that Plaintiff is entitled for a forensic accounting of the Frase, Weir, Baker & McCullough IOLTA to ascertain her commingled assets and to secure same without delay.

883.    That Defendant Edson H. Wilson or his descendants have no remainder or other interests in the "Elizabeth W. Koeberger (sic) Trust."

884.    That Defendant Christine Strom or her descendants has no remainder or other interests in the "Elizabeth W. Koeberger (sic) Trust."

885.    That said defective trust does not comply with "spendthrift" requirements by law, as erroneously and fraudulently mis-represented by Defendant Weir so as to defeat Plaintiff's right to her health care as she determines necessary. Attorney Duren's Report. **Exhibit C.**

886.    That Defendant Ryan Gordon and Defendant Ryan Gordon LLM's negligent misrepresentations have left Plaintiff abandoned and without counsel, to her detriment.

887.    That Defendant Ameritrade's accounts in the name of the "Elizabeth W. Koeberger (sic) Trust" were opened by Defendant Weir without authority in a fictitious and unauthorized name and said accounts be changed to Elizabeth Wilson Koeberer without delay, and all accounts opened and closed by Defendant Weir be accounted for to this court.

888.    That a determination that the Plaintiff is entitled to specific performance of the Private Settlement Agreement authorized by Defendant Weir and paid for by Defendant Weir as Successor Trustee with Plaintiff's assets.

889.    That Defendant Ameritrade's accounts as held by nonparty Hendley and Company **(Exhibit G)** are void ab initio and Plaintiff is entitled to a correction to her correct name without delay.

890.    A determination that a law firm representing an executor "individually" requires a written waiver of conflict from all parties, and any fees for said "executor" cannot be shifted to a beneficiary.

891.    A determination Defendant Weir and his attorney fees by Bailey Cavalieri cannot be shifted to a beneficiary without his filing a civil action

892.    A determination that  all attorney fees in an estate where the executor failed to protect the interests of all beneficiaries must be paid by the individual parties represented where the Executor's omission and failure to act did not protect  all beneficiaries specifically the Plaintiff.

893.    Where Defendant Weir's actions in the name of the fictitious "Elizabeth W. Koeberger Trust" (sic) were void ab initio, Defendant Weir's action and void authorizations in opening said Defendant J. P. Morgan Chase bank accounts and subsequent  Defendant Ameritrade's accounts, are also void ab initio; further actions, sales, conveyances and distributions entitle Plaintiff to a forensic accounting of same.

894.    That Plaintiff is entitled to bifurcate the issue of damages and attorney fees so that her immediate needs for her health, safety and welfare, and those of her daughter can be resolved without further delay including a jury trial on all issues triable by jury.

895.     Plaintiff's requests attorney fees and costs in this suit and any additional relief this court deems just, proper, and equitable.

Respectfully submitted,

*/s/ Susan Wasserman, Esq.*
SUSAN S. WASSERMAN, ESQ.
12439 MAGNOLIA BLVD., #18
LOS ANGELES, CA. 91607
(614) 403-6177
SUSANRW67@GMAIL.COM

Attorney for Elizabeth Wilson Koeberer, Plaintiff


## **VERIFICATION**

896.     I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Los Angeles, California, on the 4rd day of February, 2025.

*/s/ Susan Wasserman, Esq.*
SUSAN S. WASSERMAN, ESQ.
12439 MAGNOLIA BLVD., #18
LOS ANGELES, CA. 91607
(614) 403-6177
SUSANRW67@GMAIL.COM

Attorney for Elizabeth Wilson Koeberer, Plaintiff

# Elizabeth W. Koeberger Trust

## Table of Contents

A. Elizabeth W. Koeberger (sic) Trust ...................................................... 2

B. Ruth J. Wilson Power of Attorney ...................................................... 6

C. David L. Duren Attorney Opinion Letters ......................................... 12

D. Mary Cibella Attorney Opinion Letters ............................................. 26

E. Paul Flowers Attorney Opinion Letter ............................................... 48

F. Collins & Slagle Opinion Letter and Resignation Demand ............... 59

G. Hendley and Company Statement in fictitious Name of Koeberger.. 66

H. Private Settlement Agreemnt (PSA) ...................................................67

## ELIZABETH W. KOEBERGER TRUST

This Trust is created this _15th_ day of _July_, 2011 by the undersigned Ruth J. Wilson as Settlor (in which capacity I shall hereinafter be referred to in the first person) and Edson H. Wilson as Trustee (the "Trustee"). This trust shall be known as the Elizabeth W. Koeberger Trust dtd _7/15_/11.

**Article I.**  Distribution of Income and Principal During My Life .

If property other than assets of nominal value is included in the trust estate during my lifetime, the net income and principal of the trust estate shall be disposed of in such manner as I may direct from time to time by written instrument delivered to the Trustee. In default of such direction, the Trustee shall pay to me or expend for my benefit, quarterly or more often, the net income of the trust estate, together with such sum or sums from the principal of the trust estate as the Trustee, in the exercise of his sole discretion, determines to be necessary for my health, maintenance, care, support and emergency needs. It is my intention that after my death this trust will be used to hold for the benefit of my daughter Elizabeth W. Koeberger and her issue an amount equal to one-third of the net distributable assets in my Estate plus any amounts transferred hereafter but prior to my death to this trust or to my children; I intend that the other two-thirds shall be distributed hereunder or under my Will outright and free of trust equally to my other two children, Edson H. Wilson and Christine W. Strom or their issue or spouses as provided in my Will. My Trustee is directed to take all action necessary to carry such intention into effect. I am stating such intention in case my assets are transferred to this trust during my Life for the administrative convenience of dealing with them under a trust.

**Article II.**  Distribution of Income and Principal After My Death

After my death, the Trustee shall, subject to a spendthrift trust, pay to, or expend for the benefit of, my daughter Elizabeth W. Koeberger, and her lineal descendants living from time to time such part of all of the net income and principal of the trust as the Trustee, in the exercise of his sole discretion, determines. The Trustee shall not be required to equalize distributions among the permissible beneficiaries and his determination of the amount and manner of making such distributions shall be final and binding on all interested parties.

**Article III.**  Disposition of the Trust Estate

The trust shall terminate upon the death of Elizabeth W. Koeberger, whereupon the Trustee shall

FRASE, WEIR, BAKER & McCULLOUGH CO. LPA ATTORNEYS-AT-LAW 305 MAIN ST. COSHOCTON, OHIO 43812-1582 (740) 622-8464 FAX (740) 622-8137 law@fraseweir.com

1

FILED #41

OCT 17 2018

Robert G. Montgomery, Judge
Franklin County Probate Court

**Exhibit C**      **Case No. 563322**

Page 2

Elizabeth W. Koeberger (sic) Trust

distribute the property then comprising the trust estate to her then living lineal descendants and, if none, in equal shares to my son Edson H. Wilson and my daughter Christine W. Strom, provided that i) if my said son is not then living his share shall pass to his wife, Barbara S. Wilson, and if she is not then living to his son, Christopher J. Wilson and ii) if my said daughter is not then living her share shall pass to her husband, Mark Strom, and iii) if there is no taker then living for a share hereunder pursuant to the foregoing provisions then such share shall lapse and be added to the other shares hereunder in the proportion which each share which has not lapsed bears to the total of the shares which have not so lapsed.

## Article IV.  Powers of the Trustee

(a) OTC Powers.  In the administration of each trust estate created hereunder, the Trustee or any successor Trustee shall have all powers granted to a trustee under the Ohio Trust Code ("OTC") found in Title 58 of the Ohio Revised Code, to be exercised from time to time in his sole discretion and without order of court.

(b) Other Explicit Powers.  I hereby explicitly grant to the Trustee and any successor the following powers, to be similarly exercisable:

1. To retain without liability for depreciation or loss any investments originally received or purchased from my estate, and to invest and reinvest all or any part of any property comprising the trust estate or any trust fund held hereunder in stocks (both preferred and common), bonds, notes and other obligations of corporations, shares in real estate trusts, mutual funds, and in any other kind of property, including, without limitation, real estate, regardless of the proportion which any investment or any class or type of investment of similar character may bear to the entire amount of the trust estate or any trust fund held hereunder, and without being limited to the classes of investments which a trustee is authorized by law or any rule of court to make;

2. To exercise rights and options to purchase shares of stock or other property, to borrow money for such purposes pursuant to the powers given above, and to sell or redeem fractional shares of stock or other property;

3. To execute deeds, leases, transfers, assignments and any other instruments necessary to carry out the Trustee's powers hereunder.

## Article V.  Successor Trustee and Distribution Advisor

(a) Successor Trustees.  If Edson H. Wilson fails to serve as Trustee hereunder, the successor trustee shall be such person as may be designated in writing by my son, Edson H. Wilson.  If there is no such designation, then the successor Trustee shall be Park National Bank, Newark, Ohio, or, if it fails to serve or

FRASE WEIR,
AKER & McCULLOUGH
CO., L.P.A.
ATTORNEYS AT LAW
305 MAIN ST.
COSHOCTON, OHIO
43812-1582
(740) 622-8464
FAX (740) 622-6102
law@fraseweir.com

2

FILED #41

OCT 17 2018

Robert G. Montgomery, Judge
Franklin County Probate Court

**Exhibit C**     **Case No. 563322**

Page  3

Elizabeth W. Koeberger (sic) Trust

no successor is otherwise provided for herein, the successor trustee shall be such person as may be designated in writing by a majority of the principals of Frase, Weir, Baker & McCullough Co., LPA or its successor (including a principal with such firm).

(b) Transfer of Trusteeship. Upon the execution by a successor Trustee of a written acceptance, the successor Trustee, without further act, shall be vested with all the estate, title, powers, duties, discretions and immunities granted to the Trustee hereunder. The previous Trustee shall execute and deliver to the successor Trustee such assignments or other instruments as may be necessary or advisable. No successor Trustee shall be charged with any default occurring prior to becoming a Trustee hereunder.

## Article VI. Payment of Debts, Legacies and Taxes

The Trustee may, in his sole discretion, upon the request of the Executor of my estate, pay to such Executor such part or all of the amount which the Executor certifies to the Trustee for payment with respect to administration expenses, taxes and claims in connection with the administration of my Estate.

## Article VII. Accounts and Statements

(a) Accounts. The Trustee shall keep accurate books of account with respect to this trust.

(b) Approval of Accounts. The accounts of the Trustee may be settled and the Trustee and his successors and assigns fully discharged from all liability to me and all other persons, including persons not in being, who have or claim to have any beneficial interest in the income or principal, by the joint written action of the Trustee and all of such persons who are adults and competent so to act or by action of a court of competent jurisdiction after notice to persons having an interest in the trust estate who would be entitled to notice of an accounting if the trust were subject to rules under the Ohio Probate Code governing testamentary trusts.

## Article VIII. Miscellaneous Provisions

No bond shall be required of any person serving as Trustee hereunder.

IN WITNESS WHEREOF, I have set my hand to this instrument the day and year first above written.

Ruth J. Wilson, Settlor

Edson H. Wilson, Trustee

(Execution in accordance with Chapter 5301. of the Revised Code)

FILED #41
OCT 17 2018
Robert G. Montgomery, Judge
Franklin County Probate Court

**Exhibit C      Case No. 563322**

Page 4

Elizabeth W. Koeberger (sic) Trust

STATE OF OHIO

COUNTY OF COSHOCTON

The foregoing instrument was acknowledged before me this _15_ day of _July_ , 2011 by Ruth J. Wilson, Settlor.

Notary Public, ROBERT E. WEIR, Lawyer
Notary Public, State of Ohio
My commission has no expiration date
Section 147.03 R. C.

STATE OF OHIO

COUNTY OF COSHOCTON

The foregoing instrument was acknowledged before me this _15_ day of _July_ , 2011 by Edson H. Wilson, Settlor.

Notary Public
ROBERT E. WEIR, Lawyer
Notary Public, State of Ohio
My commission has no expiration date
Section 147.03 R. C.

FRASE, WEIR,
BAKER & McCULLOUGH
CO., L.P.A
ATTORNEYS-AT-LAW
309 MAIN ST.
COSHOCTON, OHIO
43812-1562
(740) 622-6464
FAX (740) 622-6105
law@frasrweir.com

FILED #41

OCT 17 2018

Robert G. Montgomery, Judge
Franklin County Probate Court

**Exhibit C**      **Case No. 563322**

Elizabeth W. Koeberger (sic) Trust

201100002477
FRASE,WEIR,BAKER & MCCULLOUGH CO LPA
305 MAIN ST
COSHOCTON OH 43812

Instrument
201100002477

201100002477
Filed for Record in
COSHOCTON COUNTY, OHIO
DAVID H DILLY
07-29-2011 At 01:19 pm.
POA          56.00
OR Book   548 Page  895 - 897

## DURABLE POWER OF ATTORNEY
## FOR FINANCIAL MATTERS

KNOW ALL MEN BY THESE PRESENTS, that I, Ruth J. Wilson, of State of Ohio, do hereby constitute and appoint Edson H. Wilson, 7826 Nassau Loop, Dublin, Ohio, to be my true and lawful attorney in fact, with full power in my name and stead and on my behalf at any time and from time to time to manage all my business affairs, handle my investments, arrange for the investment and reinvestment of my funds and property, and in general to do all things in such manner and with such authority as I myself might or could do if personally present and acting, including, without limiting the generality of the foregoing, the following:

To accept any remittances of income or principal and to disburse the same, including authority to open bank accounts in my name and endorse checks or other instruments for deposit therein in any bank, trust company, fund or other financial institution of any kind where I may at any time have money on deposit, and to sign checks or similar drafts covering withdrawals therefrom.

To endorse stock certificates, bonds, or other securities for transfer and to make delivery of stocks, bonds or other securities to be sold for my account and receive the proceeds of such sale; to purchase or subscribe for any shares of stock, bonds, or other securities granted or available to me, or to sell the rights thereto.

To represent me and my ownership in any business, whether a sole proprietorship, partnership, corporation or otherwise, including power to vote in my name and to give proxies therefor, to enjoy the same access to the books and records thereof as my ownership would entitle me, and to make such exchange of stocks, bonds, or other securities or evidences of participation as may be called for by plans of readjustment or reorganization, and to deposit any stocks, bonds, or other securities with any properly designated depository under any scheme of protection or reorganization and in such event to receive either in my said attorney's own name or in my name the new certificates offered and accepted in exchange or, if issued, interim receipts or certificates; to consent to the election by any corporation in which I own stock to be treated as an S Corporation under the Internal Revenue Code, to consent to the revocation thereof, to withhold such consents, and to make or fail to make any other elections pertinent thereto.

To make and sign all tax returns required by law for any period of time, including Federal, state and local income tax and property tax returns; to receive confidential

FRASE, WEIR,
BAKER & McCULLOUGH
CO., L.P.A.
ATTORNEYS-AT-LAW
305 MAIN ST.
COSHOCTON, OHIO
43812-1582
(740) 622-6464
FAX (740) 622-8107
law@fraseweir.com

Ruth J. Wilson Power of Attorney

information, notices and all other written communications concerning any of such taxes; to consent to assessment of any such tax or to refuse to consent, and to contest the same before any office, appeal division, bureau, board, person, commission, department, or court, whether local, state or Federal, and to execute and file all claims for abatement or refund and all other papers relating to any such tax assessed or to be assessed, to represent me at hearings thereon and to make adjustments thereof by compromise or otherwise; and to receive, endorse and cash refund checks for the same or any other taxes; all of such powers in this paragraph to relate in particular to, but are not limited to, the Federal Form 1040 and related forms and state income tax return for the years 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009 and every year thereafter.

To sell or otherwise transfer for consideration all or any part of the real and personal property owned by me for credit or upon any other terms and conditions.

To sign, execute, acknowledge and deliver as my attorney and on my behalf any deed of transfer or conveyance covering personal property or real estate wheresoever situated or any discharge or release of mortgage held by me on real estate; to negotiate and execute leases for any period of time of any property, real or personal, which I may own from time to time; and to provide for the proper care and maintenance of such property, to pay expenses incurred in connection therewith and to declare defaults for non-payment of all or a portion of rents due under any such lease.

To borrow money from time to time in my name, and to give promissory notes or other obligations therefor, and to deposit as collateral thereunder or pledge or hypothecate as security for the payment thereof any or all of my securities or other property of whatsoever nature.

To lease or otherwise acquire safe deposit boxes either in my name or in the name of my said attorney, and to have access thereto and to any and all safe deposit boxes of which I am now or may become possessed, and as the lessee or as my agent and a deputy under the lease to remove therefrom any securities, papers or other articles, and to cancel the leases to any such boxes.

To demand, collect, sue for, receive and receipt for any money, debts or property of any kind, now or hereafter payable, due or deliverable to me; for me and in my name to prosecute and to defend any and all proceedings at law or in equity and to dismiss the same; for me and in my name to enforce by appropriate proceedings any right, claim or cause of action which now has or may hereafter accrue to me, and to resist and defend any claim, charges, suits, or actions that may have been or may hereafter be made or brought against me and to pay, adjust, settle, compromise, or submit to arbitration, any accounts, debts, claims, demands, disputes or matters which are now subsisting or may hereafter arise between me or my said attorney and any person, firm or corporation.

To make gifts of any part or all of my property to my spouse, if any, my children, their lineal descendants, and the spouses of any of them, who may be living from time to time and including my agent acting under this power of attorney, by making gifts to any one or more of such persons in any amount that my said agent may determine from time to time, but not in excess of the amount allowed as an annual exclusion under then current Federal

FRASE, WEIR,
BAKER & McCULLOUGH
CO., L.P.A.
ATTORNEYS-AT-LAW
305 MAIN ST.
COSHOCTON, OHIO
43812-1582
(740) 622-6464
FAX (740) 622-8107
law@fraseweir.com

gift tax law except in the case of gifts to my spouse and except in a case whereby my agent determines that a larger gift promotes estate planning for me and such potential beneficiaries and either will not unreasonably reduce my financial security or is a part of my obtaining qualification for a specific government program.

For all purposes of this instrument, real property in which I have an interest includes, but is not limited to, real estate located in the following jurisdictions:  Franklin, Delaware and Coshocton Counties, Ohio, and, Lee County, Florida.   I may have real property located in other jurisdictions and those will also be subject to this Power of Attorney.

I also give my attorney in fact the power in his or her discretion to constitute and appoint from time to time, as occasion may require, one or more agents under him or her, to substitute one or more attorneys in fact for me in his or her place, and at pleasure to revoke the authority of all such agents or attorneys.

This power of attorney shall not be affected by disability of the principal or lapse of time.  I hereby ratify, confirm and approve each and every act of my said attorney heretofore or hereafter taken in conformity with this power of attorney.

Executed this 19ᵗʰ day of November, 2010.

Her _____ Mark
Ruth J. Wilson

(Execution in accordance with Chapter 5301. of the Revised Code)

State of Ohio
Franklin _____ County

The foregoing instrument was acknowledged before me this 19ᵗʰ day of November, 2010 by Ruth J. Wilson making her mark.

_____
Notary Public

FRASE, WEIR,
BAKER & McCULLOUGH
CO., L.P.A.
ATTORNEYS-AT-LAW
305 MAIN ST.
COSHOCTON, OHIO
43812-1582
(740) 622-6464
FAX (740) 622-8107
law@frasweir.com

THIS INSTRUMENT PREPARED BY:
Frase, Weir, Baker and
McCullough Co., L.P.A.
Robert E. Weir, Attorney

ROBERT E. WEIR, Lawyer
Notary Public, State of Ohio
My commission has no expiration date
Section 147.03 R. C.

201100002477
Filed for Record in
COSHOCTON COUNTY, OHIO
DAVID H DILLY
07-29-2011 At 01:19 pm.
POA         56.00
OR Book    548 Page 895 - 897

VOL 0551 PAGE 038

201100002869
Filed for Record in
COSHOCTON COUNTY, OHIO
DAVID H DILLY
08-29-2011 At 10:50 am.
DEED          28.00
OR Book    551 Page   38 -  38

201100002869
LSPGLAW
240 S 4TH ST
COSHOCTON OH 43812

Instrument
201100002869

TRANSFERRED NO. 400
FEE PAID $ 140.00
CONVEYANCE EXAMINED
SEC. 319.202 COMPLIED WITH

AUG 2 9 2011

BY _____
AUDITOR, COSHOCTON COUNTY, OH

Description Approved
Frederick T. Wachtel
Coshocton County Engineer

proved By: _____
Date: 8/25/11

## KNOW ALL MEN BY THESE PRESENTS

That Ruth J. Wilson, unmarried, of Franklin County, Ohio, for valuable consideration paid, grants with general warranty covenants, to WEAVER & SONS ENTERPRISES LTD

whose tax mailing address is as follows:      412½ Main Street
                                                Coshocton, Ohio 43812

the following real property:

Situated in the City of Coshocton, County of Coshocton and State of Ohio and being bounded and described as being Lots Numbered Three Thousand Six (3006), Three Thousand Seven (3007) and Three Thousand Eight (3008) in the Cambridge Road Addition to the City of Coshocton as the same is marked and delineated on the recorded plat of said Addition, Plat Book 2, Page 85, Coshocton County Plat Records.

Subject to the conditions and restrictions as set forth in Volume 323, Page 481, Coshocton County Deed Records.

Parcel Nos.  043-00004957-00, 043-00004958-00 and 043-00004959-00.
Prior Instrument References: Volume 323, Page 481, Coshocton County Deed Records and Volume 175, Page 369, Coshocton County Deed Records.

This conveyance is subject to all mineral and oil and gas leases recorded and unrecorded, rights-of-way recorded and unrecorded, easements recorded and unrecorded, highways recorded and unrecorded, plat and deed restrictions of record, zoning laws, governmental and administrative regulations, and real estate taxes which shall be prorated to the date hereof, which the grantees herein by the acceptance of this deed agree to assume.

Executed this 15th day of August, 2011.

Ruth J. Wilson

By: _Edson J Wilson POA_
Edson H. Wilson, Attorney in fact
pursuant to a Power of Attorney
recorded in Volume 548, Page 895,
Coshocton County Official Records

(Execution in accordance with Chapter 5301. of the Revised Code)

State of Ohio
Coshocton County
        The foregoing instrument was acknowledged before me this 15th day of August, 2011 by Edson H. Wilson, as attorney in fact on behalf of Ruth J. Wilson.

_____
Notary Public
ROBERT E. WEIR, Lawyer
Notary Public, State of Ohio
My commission has no expiration date.
Section 147.03 R.C.

This instrument prepared by Robert E. Weir, Esq.

Page 9
Ruth J. Wilson Power of Attorney

OR0559 PG994

201100004482
Filed for Record in
COSHOCTON COUNTY, OHIO
DAVID H DILLY
12-13-2011 At 01:10 pm.
DEED         28.00
OR Book    559 Page  994 - 995

201100004482
LSPGLAW
240 S 4TH ST
COSHOCTON OH 43812

TRANSFERRED NO. 658
FEE PAID $ 32.00
CONVEYANCE EXAMINED
SEC. 319.202 COMPLIED WITH
DEC 13 2011
BY _____
AUDITOR, COSHOCTON COUNTY, OH

Approved By:
Description Approved
Frederick T. Wachtel
Coshocton County Engineer
Date: 11/2/11

### Warranty Deed

KNOW ALL MEN BY THESE PRESENTS, THAT WEAVER & SONS ENTERPRISES LTD, an Ohio Limited Liability Company, (the "Grantor"), for valuable consideration paid, grant(s), with general warranty covenants, to **David W. Shutt and Amy C. Shutt, for their joint lives, remainder to the survivor of them**, whose tax mailing address is **1817 Enslee Road, Coshocton, Ohio 43812** (the "Grantees"), the following described real property:

Situated in the City of Coshocton, County of Coshocton and State of Ohio and being bounded and described as being Lots Numbered Three Thousand Six (3006), Three Thousand Seven (3007) and Three Thousand Eight (3008) in the Cambridge Road Addition to the City of Coshocton as the same is marked and delineated on the recorded plat of said Addition, Plat Book 2, Page 85, Coshocton County Plat Records.

Subject to the following conditions and restrictions as set forth in Volume 323, Page 481, Coshocton County Deed Records:

1.      The minimum size of any house for a one floor plan, shall have an area on the foundation of not less than 1,200 square feet, exclusive of porches, terrace, stoop, garage, etc.
2.      The minimum size of any home containing first and second floor plan, shall have an area on the foundation of not less than 500 square feet, exclusive of porches, terrace, stoop, garage, etc.
3.      No house nor any extension of house such as porch, stoop, garage, etc., which is covered with a roof shall be nearer than 30 feet to the front property line.
4.      No house nor any extension of house such as porch, stoop, garage, etc., which is covered by a roof shall be nearer than 4 feet to the property side line.
5.      The lot is to be used for residential purposes only, containing a single dwelling, and the construction of doubles, duplex or apartments is prohibited. No dwelling shall be built to accommodate more than one family, and the buildings outside shall be built of wood, stone or brick; the use of composition siding for exterior sidewalks to imitate brick, etc., is prohibited.
6.      No intoxicating liquor shall be sold or manufactured on the premises.
7.      Livestock of any description is not to be kept on the premises.
8.      A dog kennel on the premises is prohibited.

Prior Instrument Reference: Volume 551, Page 38, Coshocton County Official Records.

Parcel Nos.: 043-00004957-00, 043-00004958-00 and 043-00004959-00.

The real property described above is conveyed subject to, and there are excepted from the general warranty covenants, the following:

1.   All easements, covenants, conditions and restrictions of record;
2.   All legal highways;
3.   Zoning, building and other laws, ordinances and regulations; and,
4.   Real estate taxes and assessments not yet due and payable.


Executed this ___30th___ day of ___November___ 2011.


**WEAVER & SONS ENTERPRISES LTD**

*Thomas J Weaver Pres.*

By:  Thomas J. Weaver
Its:  President

```
201100004482
Filed for Record in
COSHOCTON COUNTY, OHIO
DAVID H DILLY
12-13-2011 At 01:10 pm.
DEED            28.00
OR Book    559 Page  994 - 995
```

*STATE OF OHIO*          ss:
*COSHOCTON COUNTY:*


The foregoing instrument was acknowledged before me this ___30th___ day of ___November___, 2011 by Thomas J. Weaver, President of **WEAVER & SONS ENTERPRISES LTD**, on behalf of the limited liability company.

*Cheryl L. Grossenbaugh*
Notary Public

**CHERYL L. GROSSENBAUGH**
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES JUNE 1, 2015


This instrument prepared by:
 Paul R. Scherbel, Attorney at Law (clg)
Leech, Scherbel, Peddicord & Given Ltd
240 South 4th Street
Coshocton, OH 43812
(740)622-0166


Page  11

Ruth J. Wilson Power of Attorney

# PROBATE COURT OF FRANKLIN COUNTY, OHIO
### Robert G. Montgomery, Probate Judge

ESTATE OF: _____ Ruth J. Wilson _____, DECEASED

CASE NO. ___563322___

### SUPPLEMENTAL REPORT

This Supplemental Report is being issued as a result of the review of additional information subdmitted to me, by the Attorneys for Elizabeth Koeberer. After review of the various documents, I would reaffirm that my conclusions stated in my Preliminary Report, would remain substantially unchanged, with the following additional information and conclusions, discussed herein.

The most significant additional information I reviewed were the Income Tax Returns filed on behalf of the Elizabeth Koeberer Trust (Form 1041); and, the Tax Returns filed by Elizabeth Koeberer, individually (Form 1040), for tax years 2015, 2016, 2017, and 2018. The most remarkable items contained on the various Returns were the systematic liquidation of the low-basis Stock, discussed previously in my Preliminary Report. The sale of these assets demonstrate the effect of the ill-advised transfers by the Power of Attorney, before the death of the Decedent, and prior to the closing of tax year 2012.

Beginning in tax year 2015, the Trustee began selling off the highly appreciated Stock, generating a capital gain, resulting in the payment of tax on that capital gain. I note that slightly over $162,000.00 of capital gains was generated by the sale of the four "ancient" stocks sold during 2013, of which $148,805.00 of capital gain was inappropriately passed through to Elizabeth's 1040 Income Tax Return. It was inappropriate for the Trustee to pass through capital gains to the beneficiary, since capital gains typically must be retained by the Trust (and the capital gains tax paid by the Trust), in any year except the final year of the Trust's existence.

In this case, passing through the capital gain to Elizabeth not only resulted in her being taxed on the capital gains, but the inappropriate transfer also generated an unnecessary tax on $56,293.00 of her Social Security benefits for 2015. It is my understanding that her Social Security benefits weren't typically as large as those received in 2015, but there was some sort of lump sum distribution, which enhanced her annual Social Security receipts.

In any event, tax was unnecessarily paid on the capital gains, whether paid by the Trust or the beneficiary; but, to add insult to injury, the inappropriate pass through by the Trustee also generated additional unnecessary tax on Elizabeth's Social Security benefits. By my calculations, Elizabeth paid an unnecessary tax of $33,391.00 on her Federal Return, which generated an unnecessary tax on her Ohio Return of $6,004.00. An estimate of her "loss" for 2015, would be $39,395.00.

On the 1041 Return for 2016, the Trustee reported approximately $152,210.00 of "unnecessary" capital gain on the ancient assets of the Trust, of which $141,296.00 was, again,

Page 12

David L. Duren Attorney Opinion Letters

inappropriately passed through by the Trustee, to Elizabeth, for inclusion on her 2016 1040 Income Tax Return. Again, this made a substantial portion of Elizabeth's Social Security benefits taxable, resulting in approximately $18,500.00 of unnecessary tax on Elizabeth's Federal Return, which generated $4,806.00 in unnecessary tax on her Ohio 1040 Return.

On the 2017 Trust 1041 Income Tax Return, the Trustee finally discontinued the inappropriate pass through of the capital gain to the beneficiary. However, the Trust Return indicates $421,867.00 of capital gain, generating $101,166.00 of tax paid with the 1041; of which, approximately $84,400.00 of tax is the amount attributed to the capital gain on the improperly transferred Stock by the Power of Attorney. The Ohio IT-1041 Return indicates a tax of approximately $19,000.00, of which it appears approximately $6,000.00 would have been the tax on the dividends and interest, leaving an estimated $12,900 of unnecessary tax paid, due to the ill-advised lifetime gifts by the Power of Attorney.

Finally, on the Trust 1041 Return for 2018, the Return indicates approximately $651,000.00 of capital gain generated during that tax year. Some of the gain was generated by the sale of the undervalued real estate, and approximately $374,000.00 of capital gain was generated on the ancient low-basis Stock. In rough numbers, this equated to approximately $126,500.00 of capital gains tax paid on the Federal Return; which generated approximately $30,000.00 of tax on the Ohio IT-1041 Return. Again, a rough estimate of the unnecessary capital gains tax would be in the neighborhood of $156,000.00, for tax year 2018.

In summary, one must consider that we are now reviewing this matter in August of 2019. While it might be possible to force the issues back into the estate of Ruth J. Wilson, for resolution through appropriate litigation, there is no guarantee that the IRS would abide by any decision of the Franklin County Probate Court, in voiding the pre-death transfers by the Power of Attorney. Even though it clearly appears that the Power of Attorney acknowledged the inappropriateness of his transferring assets only to himself and one of his two sisters, there is no guarantee that the IRS would accept the decision of the local Court in voiding those transfers and forcing the assets back through the estate.

Therefore, it may be appropriate to proceed to seek damages from the Power of Attorney for his ill-conceived, inappropriate, and possibly illegal transfers of the Decedent's assets under the Power of Attorney. Particularly, in light of the execution of the Power of Attorney by an "X", when the Decedent was able to write her signature quite well just a few months later in signing her Last Will and Testament. Of course, that Last Will and Testament also provided for the equal sharing of her assets among her three children.

It is difficult to believe that an Attorney advised Edwin Wilson to transfer the Stock in question without proper consideration of the tax basis of the ancient Stock. If he did, in fact, make the inappropriate transfers on his own, and without the counsel of a tax or trust Attorney, then he should be responsible for the inappropriate, and possible illegal, transfers under the prohibition of self-dealing; and, he may also be responsible for the unnecessary tax generated by his willful, reckless, and grossly negligent transfer of the assets without professional advice as to the income tax implications of the pre-death transfers.

**563322**

David L. Duren Attorney Opinion Letters

As a Fiduciary, he is held to a higher standard of care then he would be in making a foolish and ill-advised decision on his own behalf. As a Fiduciary, he owed a duty of care, first to his Mother, and also to the eventual beneficiaries, for his inappropriate Fiduciary acts. Again, I feel certain that no Attorney or Tax Professional would have advised Mr. Wilson to proceed as he did, so one would presume that he would bear the financial responsibility of his acts, individually.

In sum, I would suggest that Mr. Wilson may be responsible for Elizabeth incurring in the neighborhood of $315,000.00 of unnecessary tax, paid to the IRS and the State of Ohio.

Respectfully Submitted,

David L. Duren, Attorney at Law

563322            David L. Duren Attorney Opinion Letters

PROBATE COURT OF FRANKLIN COUNTY, OHIO
Robert G. Montgomery, Judge

Estate of: _____ Ruth J. Wilson _____, Deceased

Case No. ___563322___

## PRELIMINARY REPORT

I have been employed by the Attorneys for Elizabeth Koeberer, to review matters in regard to the estate of Ruth J. Wilson, pertaining to the interest of Elizabeth Koeberer in the Estate, and in regard to certain transfers made by the Attorney-in-Fact for Ruth J. Wilson, prior to her death.

The Estate of Ruth J. Wilson, was, at the time of her death, reported on IRS Form 706 as being approximately $5,575,344.00 in value. This value included "grossing up" the Estate for Estate Tax purposes, by adding back $4,148,021.00 of taxable gifts made during the Decedent's lifetime. However, the copy of the 706 furnished to me for review was not signed by the Executor; did not contain the necessary back-up information for the figures entered upon the various Schedules; and, did not include any documentation of adjustments required by the IRS for the issuance of a Federal Closing Letter, signifying that the Return was accepted as filed.

Very importantly, the Form 706 Schedule A, listing two parcels of real estate, appears to have grossly underestimated the actual value of the real estate at the time of death. If those valuations were not adjusted during the audit process of the 706, the Estate Tax preparer may have generated an extremely high capital gain for the three beneficiaries of the estate, resulting in substantial and unnecessary taxation at the later sale of the premises in 2018. Specifically, the Decedent's one-half interest in a certain parcel of real estate was indicated to be $165,271.00 on the Estate 706 Return. I believe that same parcel of real estate was valued, via an appraisal of the real estate in 2015 (less than 2 years later) as being worth approximately $1,400,000.00, for the entire value, making the Decedent's interest worth approximately $700,000.00.

It would have been appropriate to amend the 706, upon receiving the appraisal in July of 2015, to increase the Decedent's basis in the property, accordingly.

This is just one of the basis issues presented in this matter, with even more extreme consequences for ignoring income tax basis issues created, when purported lifetime gifting was facilitated by the Decedent's Attorney-in-Fact, during tax year 2012.

The biggest area of concern, in regard to my review of the facts of this case, involves scrutiny of the various substantial transfers of the Decedent's property, under the guise of a Durable Financial Power of Attorney. The facts, herein, indicate that approximately four-fifths (4/5) of the Decedent's property, including real estate and stocks and bonds, was transferred to two of the Decedent's three children, during 2012.

Although I have no written proof of recommendations from an Estate Planning Attorney,

Page 15

David L. Duren Attorney Opinion Letters

recommending that substantial gifting should occur; I am aware of circumstances in play during calendar year 2012, which may have presented the <u>initial consideration</u> of making substantial lifetime gifts before Decedember 31st, 2012. It is a fact, that there was substantial uncertainty as to whether the Tax Relief Act, as extended, which was scheduled to "sunset" at the end of 2012, would result in the overall wealth transfer exemption being reduced "back" to the $1,000,000.00 threshold. This was the former unified credit equivalent exemption for estates, and uncertainty existed, whether Congress would maintain or increase the $5,000,000.00 threshold created under the two year extension to the plan, which was set to expire on December 31, 2012.

As a result of the uncertainty, many learned tax advisors were giving advice to their clients <u>to consider</u> making substantial gifts, prior to the expiration of the Act, so the gifting would be "grand-fathered in" under the higher threshold amount; but, there were other serious considerations which needed to be addressed before embarking on such gifting plans. Competent advisors were tempering their advice with caveats, to consider as potential pitfalls in making the preemptive gifts. For example, in a tax bulletin, authored by four tax counselors written at the time in question, the advice given at the time was as follows: (See Attached)

> It is advisable, for those who can afford to do so, to take advantage of these expiring exemptions and lower rates. However, those considering making substantial gifts also must take into consideration the fact that property received as a gift does not obtain an adjustment to basis for income tax purposes, as inherited assets do.

It would seem, in the case of Ruth J. Wilson, the Attorney-in-Fact was not properly advised and supervised, as he endeavored to make the various "gifts" made during late 2012, apparently in light of the impending deadline. Gifts which completely ignored the devastating consequences of the Decedent's very low basis assets.

Tax experts were advising clients to consider making substantial gifts of property to their children or other beneficiaries, upon proper consideration of the factors referenced in the proceeding paragraphs. Additionally, if an individual happened to be incompetent, advisors might suggest that the gifting should still occur, if, a Durable Power of Attorney was in place to facilitate the legal transfer of the assets.

However, transfers by Attorney-in-Fact presented additional risks, in that different State Supreme Courts in the United States had interpreted the validity of such gifting by Attorneys-in-Fact to be; either, permitted under State Law; voidable under State Law; or, *void ab initio*. Since the Ohio Supreme Court had not addressed the issue, this presented even more uncertainty for gifts made for incompetent adults, domiciled in Ohio. Due to this uncertainty, clients were advised to risk gifting by Power of Attorney, only in situations where the donor was clearly incompetent, and unable to sign or facilitate the making of the gifts on their own behalf.

In the case of Ruth J. Wilson, all of the gift transactions appear to have been facilitated by her Attorney-in-Fact, Edson H. Wilson. It is important to note, that at the time the Power-of-Attorney document was executed by the Principal, Ruth J. Wilson, it appears that the Principal



could only execute the document by making an "X" for her signature. She appears to have been unable to sign her signature to the document. I have no evidence of her mental faculties at the time of the execution of the Power of Attorney, but given the gravity of the situation, when the Power of Attorney proceeded to make at least $4,148,021.00 of gifts of behalf of the Principal, the execution of the document does raise an additional issue.

While an estate planning attorney may have advised the Attorney-in-Fact to consider making substantial gifts before the end of December, 2012, I doubt whether such advisor would have advised the Attorney-in-Fact to make such substantial gifts to only two, of the Donor's three, living children. Especially, as the Donor later indicated her intention to share her entire estate, equally, among her three children, as expressed in her Last Will and Testament, early in 2013. It is also worthy of note, that the Last Will and Testament was signed by the Testator with her full signature, as it appears her mental and physical condition had improved, substantially, at the time of the making of her Last Will, just a few months after the Power of Attorney was "executed".

As with the careless undervaluation of the real estate, previously mentioned on the Federal 706 Estate Tax Return; it also appears that the Attorney-in-Fact failed to give proper consideration to the impact of gifting highly appreciated stock, by virtue of the Attorney-in-Fact gifting process, in total disregard of the professional advice of estate planning counsel referenced above. This has resulted to the extreme detriment of the beneficiaries, as it created substantial, and unnecessary, capital gains taxation of the assets, including those assets later transferred to Elizabeth Koeberer. It is my understanding, that all of the pre-mortem gifting made by Edson H. Wilson, on behalf of his mother, was made to the exclusion of his sister, Elizabeth Koeberer.

Apparently, in 2015, the Accountant/CPA for Elizabeth discovered the fact of the gifting made prior to the Decedent's death. At that time the inappropriate exclusion of Elizabeth Koeberer from the gift giving process was brought to light, and to the attention of Elizabeth. At that time, only after the inappropriate transfers had been exposed, Edson H. Wilson, and his sister, Christine W. Strom, agreed to transfer Elizabeth's "share" of the assets to Elizabeth (or at least a Trust allegedly created for her benefit), in an attempt to "equalize" the total assets transferred, among the three children of Ruth J. Wilson.

This appears to have been an admission that his actions as Attorney-in-Fact were not only a form of prohibited self-dealing, but were also in clear contrast to the stated intentions of his Mother, that all three children should equally share in her estate. The so-called equalizing transfers were made in 2015, two years after the death of Ruth J. Wilson, on October 1, 2013, and three years after the original gifting was facilitated. There had been no attempts to equalize the transfers to include all three beneficiaries, until Elizabeth's Accountant discovered the inequities, and called it to her attention.

Although I still want to review additional documentation, which is why I am titling this a "Preliminary Report", I am able to make several observations at this point in time. Initially, in regard to the Coshocton County Real Estate, the Executor's inappropriate valuation for the Decedent's one-half interest in the real estate on County Road 621, resulted in substantial



unnecessary taxation, in the form of capital gain, on the eventual sale of the real estate.

The property was valued at approximately $1,400,000.00 in July, of 2015. I am aware of no change in circumstances in Coshocton County, which would have caused the real estate to change substantially in value, in less than two years. The failure to obtain an appropriate appraisal at the time of death, and in the preparation of the Federal 706 Estate Tax Return, is inexcusable. It is also inexcusable, that upon obtaining an appropriate valuation for the real estate, in 2015, an amendment to the estate tax return was not filed to increase the value of the real estate. Had an appropriate valuation been entered on the Federal 706 Return, a much more modest capital gain or no capital gain would have been realized, when the property was sold in 2018.

Additionally, the transfer of the Decedent's highly appreciated stock as a gift to the estate beneficiaries (initially, to just two of the three children of the Decedent) was also ill-advised, in light of the second criteria for making the 2012 gifts, the basis of the stock. This ill-advised gifting resulted in tremendous, and unnecessary, capital gain. The Decedent owned stock in four very successful corporations, which she apparently first purchased in 1978. Without proper consideration of the gains on this stock, from 1978 until the gifting occurred in 2012, the beneficiaries lost the benefit of the "stepped-up basis" for such capital assets. If the stock was still retained by the Decedent, at the time of her death, the stock transferred to Elizabeth would have a basis of $1,410,967.60, not $116,238.10, as listed on her account as of 12/31/15.

Of course, the rule of thumb for gift taxation is, that the donee takes the donor's basis in the capital asset, when the transfer occurs as a gift. Accordingly, when the stock was transferred to two of the three children of the Decedent, those two donees took the Decedent's 1978 basis in the transferred stock. Additionally, when those two donees transferred some of the stock, three years later, to make the alleged equalizing transfers to Elizabeth, as donee, she took the basis of her two siblings in the stock, which still reverted back to Ruth J. Wilson's 1978 basis.

Now, as I look at Elizabeth's Hendley and Company investment account spreadsheet, it appears that she has $1,135,147.78 of unrealized capital gain on the stock of only four different corporations, at the time of the transfer in 2015. I further note that the date of death valuation for those same shares in the four corporations, as indicated by the attached report of the EstateVal database, the same database employed by the IRS, shows the date of death valuation for the stock would have been $1,410,967.60. As Elizabeth's shares only reprepsent one-third of the Decedent's stock, I must assume that each of the other beneficiaries also have an equal amount of unrealized gain on the inappropriately transferred shares of stock. Had the Decedent died still owning those shares of stock, all of the stock would have received a "stepped-up basis", and all of the roughly $4,000,000.00+ in capital gain could have been avoided.

In summary, and until I have had the opportunity to review additional information, I would state that due to an abuse of the apparent authority granted to Edson H. Wilson, by the purported Power of Attorney document, substantial financial damage has occurred to your client, Elizabeth Koeberer. Whether the misuse of the Power of Attorney was due to a misunderstanding of the tax advice given to Mr. Wilson, or whether the transfers were simply an

Page 18

David L. Duren Attorney Opinion Letters

563322

intentional attempt to exclude Elizabeth from her share of the estate, I cannot answer. It appears that Mr. Wilson did not intend to transfer Elizabeth's "share" to her, until he was called on the carpet by Elizabeth's CPA. It would appear that he then attempted to make a series of equalizing transfers, and apparently convinced his sister to do the same, upon the inequity having been exposed.

I also cannot, with certainty, reach a conclusion as to what form of advice Mr. Wilson received as the tax deadline of December 31st, 2012, loomed on the horizon. It would appear that Ruth J. Wilson may not have been able to make her own decision in regard to gifting at that time, since the Power of Attorney, executed with an "X", was employed, and she did not make the transfers on her own behalf.

I also doubt, that a competent attorney or tax advisor would suggest employing the Power of Attorney to transfer assets to himself and his sister, to the exclusion of his other sister, Elizabeth; as such inequitable transfers would, necessarily, raise an issue of self-dealing to the exclusion of Elizabeth.

I would also anticipate, that a competent tax advisor would have reviewed the extent and the type of assets involved in Ruth Wilson's estate, so that proper consideration of tax basis issues would have been included in the overall decision, of whether or not the preemptive transfers were appropriate in Mrs. Wilson's case.

It is commonly a fact, in the case of an elderly client, that real estate owned by the client has a very low basis; and, in this case, even a tertiary review of the Decedent's stock portfolio holdings would have revealed, the presence of an overwhelming amount of unrealized capital gain in the Client's stock portfolio. It is standard advice, when a client is considering making gifts to her children, that the client would never consider gifting assets of substantial capital gain to any beneficiary, other than a charity. It is standard advice, that such highly appreciated assets should be retained, if possible, until the eventual death of the taxpayer, at which time the assets receive a "stepped-up basis", and the gain avoids income taxation.

It is hard to believe that Edson H. Wilson was acting upon the advice of a competent estate planner, both in the manner in which he made the gifts to himself and his other sister, and that he acted in total disregard of the capital gain income tax consequences of gifting extremely appreciated assets, instead of retaining those assets in the taxpayer's estate until death. Therefore, one must conclude that the Attorney-in-Fact acted recklessly, and in total disregard of the limits upon his authority, and without reasonable consideration of the income tax implications of his acts.

It would seem that an action could be brought, on behalf of Elizabeth, to set aside the 2012 gifting of assets, on the basis of those transfers being either voidable, or *void ab initio*, on the basis of the inappropriate use of a Power of Attorney. Perhaps the Power of Attorney itself is also void; if, the Principal, Ruth J. Wilson, is determined to have been incompetent at the time of "executing" the Power of Attorney document, by using an "X" in lieu of her full signature. This may especially be true, in light of the fact that Ruth J. Wilson was able to sign her Last Will and

Testament, just a few months later, with her full legal signature.

If you would be successful in setting aside the various transfers made by the Attorney-in-Fact, the result would, necessarily, be that the property would be called back into the Estate of Ruth J. Wilson, to then be distributed, equally, among the beneficiaries, pursuant to her Last Will and Testament. If the transactions were deemed to be void, the position of the Estate could be, that the assets would all then receive a "stepped-up basis", since the assets would have been properly includable in the Decedent's probate estate at the time of her death. The 706 Return would then need to reflect the actual date of death values for each of the assets; causing the beneficiaries to receive the assets with a "stepped-up basis" to the date of death valuation, instead of the carry-over basis.

Respectfully Submitted,

David L. Duren, Attorney at Law

563322                David L. Duren Attorney Opinion Letters



# pillsbury

CONNECT     CAREERS     CONTACT     日本語

# Estate and Gift Tax Planning Opportunities

# Scheduled to "Sunset" on December 31, 2012

By Jennifer Jordan McCall, Elizabeth H.W. Fry, Kim T. Schoknecht, Ellen K. Harrison

08.06.12



The estate and gift tax laws under the Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, are scheduled to sunset on December 31, 2012. These laws provide opportunities to transfer assets to your desired beneficiaries at a tax cost that is significantly lower than under any prior tax laws. Higher income tax rates are also expected in the coming years. If you are interested in taking advantage of the current tax laws, we encourage you to contact a professional advisor as early as possible for tax planning. As the end of 2012 approaches, advisors and valuation experts are likely to be very busy as many individuals will be making gifts, either outright or in trust, and engaging in other tax planning.

**563322**

David L. Duren Attorney Opinion Letters



## Estate, Gift and Generation-Skipping Transfer Tax Laws in 2012 and Beyond

## Lower Exemptions and Higher Rates for Estate, Gift and Generation-Skipping Transfer Taxes

The Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010 (the "Tax Relief Act") established a $5 million exemption for gift, estate and generation-skipping transfer tax purposes and a 35% maximum tax rate, applicable from the beginning of 2010 through the end of 2012. For 2012, the exemption is inflation-adjusted to $5.12 million.

Currently, the generation-skipping transfer tax exemption can shelter trust assets for an unlimited number of generations, which can prove especially valuable for tax savings, as assets may grow over time and also this can avoid the recurring imposition of transfer taxes at each generation. It is possible that the generation-skipping transfer tax exemption may be limited to fewer generations in the future, and for this reason, 2012 is an opportune time for clients to establish long-term trusts to take advantage of the current unlimited duration of the generation-skipping transfer tax exemption.

It is advisable for those who can afford to do so to take advantage of these expiring exemptions and lower rates. However, those considering making substantial gifts also must take into consideration the fact that property received as a gift does not obtain an adjustment to basis for income tax purposes, as inherited assets do.

The Tax Relief Act is scheduled to "sunset" at the end of 2012. If Congress does not enact new law before the end of 2012, the gift and estate tax exemptions will return to $1 million, and the maximum rate for both taxes will be 55%. An additional 5% surtax would apply to estates and gifts between $10 million and approximately $17 million. The generation-skipping transfer tax exemption will be $1 million adjusted for inflation from 1997 and the tax rate will equal 55%.

## The Portability of the Unified Credit Between Spouses

The Tax Relief Act established portability of the applicable exclusion amount between spouses, but portability will also "sunset" at the end of 2012, unless Congress acts to extend portability or make portability permanent.



Portability allows the surviving spouse to use the portion of the deceased spouse's unused estate tax exemption. In the case of multiple marriages portability is limited to only the most recently deceased spouse. The executor of the deceased spouse's estate must affirmatively elect portability on a timely filed estate tax return.

https://www.pillsburylaw.com/en/news-and-insights/estate-and-gift-tax-planning-opportunities-scheduled-to-sunset.html
David L. Duren Attorney Opinion Letters

Because portability may be repealed, may be lost if a surviving spouse remarries and survives the person he or she remarries, may not apply for state estate tax purposes and does not apply for generation-skipping transfer tax purposes, we continue to recommend the use of trusts as part of an estate plan to minimize estate taxes.

## Roth IRAs

Higher income tax rates are expected in the coming years. At the present time, retirement plans can be rolled over to a Roth IRA paying income tax at the lower income tax rate in effect this year. Rollover is available even to taxpayers who have high adjusted gross income.

Since it remains uncertain whether Congress will enact new estate, gift, and generation-skipping transfer tax laws before the end of 2012, many individuals will likely be transferring assets, either outright or in trust, to desired beneficiaries towards the end of 2012. Valuation experts and advisors could be extremely busy towards year-end, so we suggest that you contact a professional advisor as early as possible to discuss possible tax saving opportunities.

*Download: Estate and Gift Tax Planning Opportunities Scheduled to "Sunset" on December 31, 2012*

TAGS

Estates, Trusts & Tax Planning

Home > Insights > Estate and Gift Tax Planning Opportunities Scheduled to "Sunset" on December 31, 2012

Terms of Use
Attorney Advertising
Secure Remote Access
Cookie Policy
Privacy Policy
Slavery and Human Trafficking Statement

© 2001–2019 Pillsbury Winthrop Shaw Pittman LLP

**563322**

David L. Duren Attorney Opinion Letters

Estate Valuation

| Date of Death: | 10/01/2013 |
|---|---|
| Valuation Date: | 10/01/2013 |
| Processing Date: | 05/13/2019 |

Report Type: Date of Death
Number of Securities: 4
File ID: RuthWilson



| | Shares or Par | Security Description | High/Ask | Low/Bid | Mean and/or Adjustments | Div and Int Accruals | Security Value |
|---|---|---|---|---|---|---|---|
| 1) | 13000 | BOB EVANS FARMS INC (BOBE) COM NASDAQ Stock Market 10/01/2013 | 57.81000 | 56.76000 H/L | 57.285000 | | 744,705.00 |
| 2) | 5847 | JPMORGAN CHASE & CO (46625H100; JPM) COM New York Stock Exchange 10/01/2013 | 52.09000 | 51.45000 H/L | 51.770000 | | 302,699.19 |
| 3) | 27313 | KEYCORP NEW (493267108; KEY) COM New York Stock Exchange 10/01/2013 | 11.56500 | 11.32000 H/L | 11.442500 | | 312,529.00 |
| 4) | 1373 | WASHINGTON MUT INVS FD INC (939330106; AWSHX) COM Mutual Fund values reported to NASDAQ 10/01/2013 | | 37.17000 Mkt | 37.170000 | | 51,034.41 |

Total Value: $1,410,967.60
Total Accrual: $0.00
   Total: $1,410,967.60

This report was produced with EstateVal, a product of Estate Valuations & Pricing Systems, Inc. If you have questions, please contact EVP Systems at (818) 313-6300 or www.evpsys.com. (Revision 8.1.0)

563322                           David L. Duren Attorney Opinion Letters

| Form **709** | | United States Gift (and Generation-Skipping Transfer) Tax Return | | OMB No. 1545-0020 | |
|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | | ► Information about Form 709 and its separate instructions is at *www.irs.gov/form709* · ► For gifts made during calendar year 2012. ► See Instructions. | | **2012** | |

| 1 Donor's first name and middle initial | 2 Donor's last name |
|---|---|
| RUTH J. | WILSON |

**Part 1 - General Information**

| 4 Address (number, street, and apartment number) | 5 Legal residence (domicile) |
|---|---|
| 7826 NASSAU LOOP | FRANKLIN COUNTY OH |
| 6 City, state, and ZIP or postal code | 7 Citizenship (see instructions) |
| DUBLIN, OH 43017 | UNITED STATES |

| | | Yes | No |
|---|---|---|---|
| 8 | If the donor died during the year, check here ► ☐ and enter date of death | | |
| 9 | If you extended the time to file this Form 709, check here ► ☒ | | |
| 10 | Enter the total number of donees listed on Schedule A. Count each person only once. 3 | | |
| 11a | Have you (the donor) previously filed a Form 708 (or 709-A) for any other year? If "No," skip line 11b | | X |
| b | Has your address changed since you last filed Form 709 (or 709-A)? | | |
| 12 | Gifts by husband or wife to third parties. Do you consent to have the gifts (including generation-skipping transfers) made by you and by your spouse to third parties during the calendar year considered as made one-half by each of you? (see instructions.) (If the answer is "Yes," the following information must be furnished and your spouse must sign the consent shown below. If the answer is "No," skip lines 13-18.) | | |
| 13 | Name of consenting spouse | 14 SSN | |
| 15 | Were you married to one another during the entire calendar year? (see instructions) | | |
| 16 | If 15 is "No," check whether ☐ married ☐ divorced or ☐ widowed/deceased, and give date ► | | |
| 17 | Will a gift tax return for this year be filed by your spouse? (if "Yes," mail both returns in the same envelope.) | | |
| 18 | Consent of Spouse. I consent to have the gifts (and generation-skipping transfers) made by me and by my spouse to third parties during this calendar year considered as made one-half by each of us. We are both aware of the joint and several liability for tax created by the execution of this consent. | | |

Consenting spouse's signature ►                                           Date ►

**Part 2 - Tax Computation**

| | | | |
|---|---|---|---|
| 1 | Enter the amount from Schedule A, Part 4, line 11 | 1 | 4,148,021. |
| 2 | Enter the amount from Schedule B, line 3 | 2 | |
| 3 | Total taxable gifts. Add lines 1 and 2 | 3 | 4,148,021. |
| 4 | Tax computed on amount on line 3 (see *Table for Computing Gift Tax* in instructions) | 4 | 1,432,607. |
| 5 | Tax computed on amount on line 2 (see *Table for Computing Gift Tax* in instructions) | 5 | |
| 6 | Balance. Subtract line 5 from line 4 | 6 | 1,432,607. |
| 7 | Applicable credit amount. If donor has DSUE amount from predeceased spouse(s), enter amount from Schedule C, line 5; otherwise, see instructions | 7 | 1,772,800. |
| 8 | Enter the applicable credit against tax allowable for all prior periods (from Sch. B, line 1, col. C) | 8 | |
| 9 | Balance. Subtract line 8 from line 7. Do not enter less than zero | 9 | 1,772,800. |
| 10 | Enter 20% (.20) of the amount allowed as a specific exemption for gifts made after September 8, 1976, and before January 1, 1977 (see instructions) | 10 | |
| 11 | Balance. Subtract line 10 from line 9. Do not enter less than zero | 11 | 1,772,800. |
| 12 | Applicable credit. Enter the smaller of line 6 or line 11 | 12 | 1,432,607. |
| 13 | Credit for foreign gift taxes (see instructions) | 13 | |
| 14 | Total credits. Add lines 12 and 13 | 14 | 1,432,607. |
| 15 | Balance. Subtract line 14 from line 6. Do not enter less than zero | 15 | 0. |
| 16 | Generation-skipping transfer taxes (from Schedule D, Part 3, col. H, Total) | 16 | |
| 17 | Total tax. Add lines 15 and 16 | 17 | 0. |
| 18 | Gift and generation-skipping transfer taxes prepaid with extension of time to file | 18 | |
| 19 | If line 18 is less than line 17, enter balance due (see instructions) | 19 | 0. |
| 20 | If line 18 is greater than line 17, enter amount to be refunded | 20 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including any accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than donor) is based on all information of which preparer has any knowledge.

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

► _____
Signature of donor                                           Date

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| TRACY KAUFMAN, CPA | TRACY KAUFMAN, CPA | | | P00099208 |
| Firm's name ► REA & ASSOCIATES INC, CPA'S | | | Firm's EIN ► 34-1310124 | |
| Firm's address ► 5775 PERIMETER DRIVE - STE 200 DUBLIN, OH 43017-3224 | | | Phone no. (614) 889-8725 | |

LHA For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see the instructions for this form.                  Form **709** (2012)

205201 11-51-12

1

12371011 768184 29408-GIFT          2012.04030 WILSON, RUTH J.          29408-G1

*EXH. C*

# MARY L. CIBELLA
## Mary L. Cibella Attorney at Law
### 1226 Marks Road Unit B
### Valley City, Ohio 44280
### Telephone: 216-408-4838
### Facsimile: 216-250-8444
### Email: mlcibella@worldnetoh.com

**Pre-Legal Education:**
> B.S. in Education, Kent State University, 1980

**Legal Education:**
> J.D., Cleveland-Marshall College of Law, 1983

**Professional Licenses and Certificates:**
> Comprehensive Social Studies Certification,
> State of Ohio, 1980
> Bar of the State of Ohio, Registration No. 0019011, 1984
> U.S. District Court, Northern District of Ohio, 1999

**Legal Employment:**

**November 1, 2021 to the present**
Mary L. Cibella, Attorney at Law
1226 Marks Road Unit B
Valley City, Ohio   44280
216-408-4838
Facsimile: 216-250-8444

> Private practice of law concentrating in Professional Responsibility, including, disciplinary defense (initial inquiry/investigation, formal proceedings, reinstatement cases) and grievances; Ethics Advisory Opinions; legal malpractice defense; pre-admission licensure representation of law students; unauthorized practice of law.

**June 2020 to November 1, 2021**
Mary L. Cibella, Attorney and Counselor at Law
5192 Austen Lane
Richmond Heights, Ohio   44143
216-408-4838

> Private practice of law as set forth above.

**January 2019 to June 2020**
Mary L. Cibella, Attorney and Counselor at Law
615 West Superior Avenue   Suite 1300
Cleveland, Ohio   44113
216-344-9220
Facsimile: 216-664-6999

      Private practice of law as set forth above.

**November 15, 1994 to January 2019**
Mary L. Cibella, Attorney and Counselor at Law
*Of Counsel* to:  McGinty Hilow & Spellacy Co. L.P.A.
614 West Superior Avenue   Suite 1300
Cleveland, Ohio   44113
216-344-9220
Facsimile: 216-664-6999

      Private practice of law as set forth above.

**May 1985 to November 1, 1994**
Cleveland Bar Association
113 St. Clair Ave., N.E.
Cleveland, Ohio  44114-1253
(216) 696-3525
Facsimile (216) 696-2413

      **Counsel:**  Manage Counsel's Department staff and all Counsel's Department activities and responsibilities; Screen, investigate, and evaluate professional misconduct of lawyers and judges; Advise and administer Certified Grievance Committee investigations and docket; Advise and coordinate Trial Committees; Research and advise lawyers on matters of professional ethics; Advise and administer Professional Ethics Committee research and docket; Advise, administer, and coordinate Judicial Selection Committee activities, i.e., scheduling, interviews, bar polls, printing; Advise and coordinate Judicial Campaign Fund Committee activities; Screen, investigate, and evaluate alleged Unauthorized Practice of Law violations; Advise and administer Unauthorized Practice of Law Committee investigations and docket; Screen, investigate and evaluate fee dispute matters; Advise Fee Dispute Committee and administer Fee Dispute Arbitration Program; Advise Law-Related Education Committee and coordinate its projects; Advise Commission on Women in the Law Committee and coordinate its projects; Advise Joint Bar Admissions Committee, Appeals Subcommittee and Counsel for Joint Bar Admissions Committee;  Advise Law School Liaison Committee and coordinate its projects, such as the Placement Assistance Manual; Supervise and coordinate printing of Lawyers' Desk Book & Roster; Advise and assist Alternative Dispute Resolution Committee; Administer Early Neutral Evaluation Program; Supervise and coordinate Lawyer Referral Service; Supervise and

coordinate Mentor Programs and Mentor Committee. When requested: negotiate leases, contracts, review insurance policies and other matters affecting the Association; such other duties as requested by the Board of Trustees and the Executive Director.

**February 1985 to May 1985**
**Acting Counsel:** Duties the same as those listed above for Counsel

**January 1984 to February 1985**
**Assistant to Acting Counsel:** Duties the same as those listed above for Counsel

**Professional Association Activities:**

Supreme Court of Ohio, Commission on Professionalism - former member,
    January 1, 2012 through December 31, 2017; Chair calendar year 2015
Cleveland Metropolitan Bar Association - member:
    Ethics and Professionalism Committee, Mental Health & Wellness Committee
The Judicial Conference of the Eighth Judicial District, Life Member
Ohio State Bar Foundation, Life Fellow, Fellows Class 2008
Ohio State Bar Association, Member, Council of Delegates from District 12: 95-96,96-
    98,99-00,00-02,02-04,04-06,06-08, 08-10, 10-12, 12-14, 16-17
    former member CLE Advisory Committee(7/1/2001- 6/30/2004)
Cleveland Bar Association (Association dissolved 2008) - member:
    Ethics and Professionalism Committee,
    Judicial Election Monitoring Committee; Alternative Dispute Resolution
    Committee (Chair, 1996-97 and 1997-98)
Cuyahoga County Bar Association (Association dissolved 2008) - member:
    Appellate Law Committee; Ethics Committee (Chair, 1995-96); Law Day
    Committee (Chair, 1996-97)
National Organization of Bar Counsel -- past member
    Long Range Planning Committee and Continuing Legal Education Committee
Association of Professional Responsibility Lawyers
Cleveland-Marshall College of Law Alumni Association

2002 Bench-Bar Conference (Supreme Court & Ohio State Bar Assoc.), delegate
1997 Bench-Bar Conference (Supreme Court & Ohio State Bar Assoc.), delegate
1996 Bench-Bar Conference (Supreme Court & Ohio State Bar Assoc.), delegate
Women's Law Caucus -- former member; President, 1982-83
National Association of Bar Executives, former member

**Teaching/Seminar Presentations:**

Lecturer, on various ethics, discipline, professionalism and substance abuse topics at seminars, such as:
    ABA Senior Lawyers Section (2003)
    ABA Section of Business Law (2007, 2000)

ABA General Practice Section (2011; Podcast 2020)
Applied Business Strategies (2017)
Ashtabula County Bar Association (each year 2003 to 2017; 1999 and 1998)
Baker & Hostetler (2001, 2000 and 1999)
Board of Commissioners on Grievances and Discipline
Center for Family Advocacy (2009)
Cleveland Academy of Civil Trial Attorneys (1999)
Cleveland-Marshall Law Alumni Association (2012, 2011, 2010, 2009, 2007,
    2006, 2002, 1999 and 1994)
Cleveland Metropolitan Bar Association (2017, 2010, 2008)
Cleveland Bar Association (2001,1998 and earlier years)
Cohen & Company (2012, 2011, 2010)
Cuyahoga County Bar Association (2007, 2004, 2000,1998 and earlier years)
Cuyahoga County Criminal Defense Lawyers Association (2012, 2011, 2010)
David M. Myers College (2003, 2002, 2000 and some earlier years)
Federal Bar Association (1996)
Federal Trade Commission/Better Business Bureau (2006)
Geauga County Bar Association (2016, 2011, 2001 and 1998)
Get Your Hours, LLC (each year 2002 to 2019)
Lorman Education Services (2003, 2002 and earlier years)
National City Bank (2008)
National Business Institute "NBI" (2020, 2019, 2012, 2007, 2006, 2003,
    2002 and earlier years)
Ohio Academy of Trial Lawyers (1997)
Ohio CLE Institute (2000,1999 and earlier years)
Ohio Creditors Association Seminar (2012)
Ohio State Bar Association CLE (2011, 2010, 2009, 2008, 2007, 2006, 2005,
    2004, 2003, 2001 and earlier years)
Office of Medicare Hearings and Appeals (2012, 2009, 2008)
Parma Bar Association (2002, 2001, 1998)
Reminger & Reminger Co L.P.A. (2012, 2011, 2010, 2008, 2007, 2006, 2005,
    2004, 2003, 2002 and an earlier year)
Roderick, Myers & Linton, LLP (1998)
Stark County Bar Association (2007, 2001, and some earlier years)
U.S. Attorneys Office, Northern District of Ohio (2010, 1999)
Weltman, Weinberg & Reis, Co. L.P.A. Seminar (2012, 2011)
Westshore Bar Association (2017)
WILMIC and Wisconsin Bar Association (1998)
1996 EATON Lawyers Conference
National Education Network (1996)
Kopperman & Wolf Co., Certified Public Accountants (1995)
CIGNA Financial Services, Inc. (1995 and 1994)
Lecturer, Cleveland-Marshall College of Law, Professional Responsibility Class,
    Spring 2006 and Summer 2006

Lecturer, Ohio Ethics Law and ethical issues facing Domestic Relations Judges, Seminar (1995) sponsored by the Ohio Judicial College

Lecturer, The Lawyer Grievance Process-- a 1995 Perspective, sponsored by The University of Akron School of Law, Joseph G. Miller Institute of Professional Responsibility, Board of Commissioners on Grievances and Discipline

Lecturer, The Lawyer Grievance Process -- a 1999 Perspective, sponsored by The University of Akron School of Law, Joseph G. Miller Institute of Professional Responsibility, the Board of Commissioners on Grievances and Discipline and the Ohio State Bar Association

**Publications:**

"Contingent fee contracts --Is there anything left?", *Ohio Lawyer*, January/February 1996, Volume 10, No.1

"Lawyers Have Rules Too", *Legal News for Young Americans,* May 1996, Volume 1, No. 1

"Amendments to Disciplinary Rules On Advertising and Lawyer Referral Services", *Law and Fact,* March/April 1997, Volume 72, No.2

"Ethical Dilemmas in Litigation: Finding Your Way Through", *Cleveland Bar Journal*, November 1997, Volume 69, No. 1

"New CLE Requirement Affects All Lawyers Gov. Bar R. X, Section 3 is Amended", *Law and Fact,* July/August 1998, Volume 73, No. 4

"Legal Malpractice: What You Don't Know Can Hurt You", *Cleveland Bar Journal,* March 2003, Volume 74, No. 5

"Ohio Rule of Professional Conduct 1.7 Conflicts of Interest: Current Clients", *Cleveland Bar Association Website*, 2007

"Professionalism Issues in Estate Planning", *Probate Law Journal*, November/December 2009, Volume 20, Issue 2

"Identifying and Assisting the Impaired Lawyer, A Necessary Duty", *Cleveland Metropolitan Bar Journal*, March 2011, Volume 3, No.8

"Ethics Rules Apply to All Lawyers," *Cleveland Metropolitan Bar Journal*, April 2020

"Ethics 2020 Recap", *OSBA Solo and Small Firm Newsletter*, January - March 2021, Volume 34, Issue 1

**Awards**

Kent State University's College of Education, Health and Human Services, 2012 Distinguished Service to EHHS Hall of Fame Award

Ohio State Bar Association, Women in the Profession Section, Nettie Cronise Lutes Award, 2009

Legal Aid Society of Cleveland, Trustee Award, 2004

**Community Activities:**

Kent State University
- Member, EHHS Advisory Council (2009 to 2015)

Page 30

– former Director, Cuyahoga County Alumni Chapter
– Member, EHHS Development Council (term ended 2008)
Citizens League of Greater Cleveland
– member, 2003, 2000 & 1999 Candidates Committee
Substance Abuse Initiative of Greater Cleveland
– President, elected March 2001, served until February 2003
– Member, 1994 Red Ribbon Committee;
– Chair, 1995 Red Ribbon Committee;
– Member, 1996 Red Ribbon Committee;
-- Member of Board of Trustees, 1995-96, 96-97, 97-98, 99-00
-- Co-Chair, Development Committee, 96-97, 97-98
-- Chair, Development Committee, 99-00
-- Assistant Secretary, 96-97,97-98, 99-00

As amended November 2021

Page 31

Mary Cibella Attorney Opinion Letters

# MARY L. CIBELLA
**Mary L. Cibella Attorney at Law**
**1226 Marks Road Unit B**
**Valley City,  Ohio   44280**
**Telephone: 216-408-4838**
**Facsimile: 216-250-8444**
**Email: mlcibella@worldnetoh.com**

December 14, 2021

Susan Wasserman, Esq.
746 S Yearling Road
Columbus, Ohio   43206

RE: *In the Matter of the Estate of Ruth J. Wilson*, Franklin County Probate Court
Case No. 563322

Dear Attorney Wasserman:

I have been retained to offer my opinion as to the ethical issues concerning Attorney Robert E. Weir, arising out of his representation of Ruth J. Wilson, Edson Wilson, Elizabeth Koeberer and the Elizabeth Koeberger [sic] Trust, and Attorney Robert E. Weir's actions as Trustee of the Elizabeth Koeberger [sic] Trust.

As part of my preparation for the offering of my opinion, I reviewed multiple documents. Those documents include, but are not limited to:

1.    Ruth J. Wilson Durable Power of Attorney for Financial Matters;
2.    Ruth J. Wilson Will;
3.    Elizabeth Koeberger Trust document;
4.    Various Franklin County Probate Court documents from the Estate of Ruth J. Wilson, including but not limited to Ruth J. Wilson's Death Certificate;
5.    Correspondence/communications between Adam Knolls, CPA and Edson Wilson;
6.    Correspondence/communications between Adam Knolls, CPA and Attorney Robert Weir;
7.    Correspondence/communications between Adam Knolls, CPA and Attorney Robert Barnett;
8.    Correspondence/communications between the Sheppard Law firm and the IRS;
9.    Correspondence/communications from Northwestern Mutual Life Insurance, including but not limited to insurance proceeds check negotiated by Fraise, Weir, Baker & McCullough Co.;
10.   Koeberger Trust check # 1321 in the amount of $455 made payable to Carlile, Patchen & Murphy LLP;
11.   Various ledgers for the Koeberger Trust checking account at Chase Bank;

# I    Factual Summary

**Year 2010**

On November 3, 2010, Ruth J. Wilson suffered a stroke and was taken to Riverside Hospital.

Attorney Robert E. Weir ("Weir") prepared a Durable Power of Attorney for Financial Matters ("Wilson POA") which appoints Edson H. Wilson as attorney-in-fact. It is unclear whether Ruth J. Wilson herself requested legal services from Weir to prepare the Wilson POA, or whether Edson Wilson requested that Weir prepare the Wilson POA.

On November 19, 2010, Ruth J. Wilson "signed" the Wilson POA using an "X" for her signature. Weir notarized the Wilson POA. When Ruth J. Wilson " signed ' the Wilson POA, she was still in Riverside Hospital recovering from her stroke.

**Year 2011**

Weir prepared a Will which disposed of Ruth J. Wilson's property ("Wilson Will"). On July 15, 2011, a Will for Ruth J. Wilson was signed. The two witness signatures on the copy of the Will provided to me are not legible. I have been informed that one of the witnesses to the Will was Rebecca Weir, the niece of Ruth J. Wilson and the wife of Weir. The other witness to the Will uses the Emerald Crossing, Dublin, Ohio address. Ruth J. Wilson was in the Emerald Crossing Assisted Living Facility in Franklin County on July 15, 2011, suffering from aphasia as a result of the stroke when the Will was signed.

The Wilson Will named Edson H. Wilson as the Executor. The Will provided that her property be divided between her three children, with one-third of Ruth Wilson's property bequeathed to Edson H. Wilson, one-third of Ruth Wilson's property bequeathed to Christine Strom and one-third of Ruth Wilson's property be bequeathed to the Elizabeth W. Koeberger [sic] Trust for the benefit of Elizabeth.

Weir also prepared the Elizabeth W. Koeberger [sic] Trust ("Koeberger Trust"). On July 15, 2011, the Koeberger Trust was signed. Below the signatures on the Koeberger Trust are typed: "Ruth J. Wilson, Settlor" and "Edson H. Wilson, Trustee"

Weir notarized the Koeberger Trust document. Weir's notary on the Koeberger Trust indicates that "The foregoing instrument was acknowledged before me this 15th day of July, 2011 by Ruth J. Wilson Settlor and it was notarized on July 15, 2011 in **Coshocton County, Ohio**.

Interestingly, there is a second notarization by Weir on the Koeberger Trust. Weir's second notary indicates that "The foregoing instrument was acknowledged before me this 15th day of July, 2011 by Edson H. Wilson, Settlor and it was notarized on July 15, 2011 in **Coshocton County, Ohio**.

Ruth J. Wilson was in Emerald Crossing Assisted Living Facility in Franklin County suffering from aphasia on July 15, 2011.

It is unclear whether Ruth J. Wilson herself requested legal services from Weir to prepare the Wilson Will and to prepare the Koeberger Trust, or whether Edson Wilson requested that Weir prepare the Wilson Will and the Koeberger Trust.

It is also unclear who paid Weir for his legal services to Ruth Wilson and how Weir was paid for the preparation of the Wilson POA, the Wilson Will and the Koeberger Trust.

**Year 2012**

In 2012, Edson, utilizing the Wilson POA and with Ruth J. Wilson's funds, purchased a second home for Ruth J. Wilson in Dublin, Ohio. Edson, utilizing the Wilson POA also disposes of Ruth Wilson's other Real Estate Assets.

Beginning in 2012, Elizabeth Koeberer experienced her own health problems and was in the Cleveland Clinic for a period of time. Elizabeth was diagnosed with terminal cancer.

It turned out, that Elizabeth's health problems were due to pneumonia, and not terminal cancer. So, there was a misdiagnosis of Elizabeth's condition.

On December 28, 2012, Edson, utilizing the Wilson POA transfers real property at 7826 Nasson Loop, Dublin, Ohio 43017 from Ruth J. Wilson to Edson H. Wilson and Christine W. Strom. Attorney Weir prepared the transfer document.

Also in December 2012, Edson, utilizing the Wilson POA, transfers $4,148,021 of Ruth Wilson's assets as "gifts" to himself and Christine Strom. NO portion of the assets transferred as "gifts" were transferred to Elizabeth Koeberer or to the Koeberger Trust. I have been provided an unsigned copy of the Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return

**Year 2013**

In February 2013, Edson signs a Fee Agreement with the Sheppard Law Offices Co., L.P.A. ("Sheppard Law'). Edson signs the Fee Agreement with Sheppard Law as: "Edson Wilson POA for Elizabeth Koeberer" authorizing Sheppard Law to negotiate an Offer in Compromise with the Internal Revenue Service on behalf of Elizabeth. A document from Sheppard Law references a writing granting Edson POA for Elizabeth. Elizabeth does not have a copy of a POA or a writing granting Edson POA for Elizabeth.

In February 2013, Sheppard Law submits an Offer in Compromise to the IRS on behalf of Elizabeth. Sheppard Law prepared IRS Form 2848, Power of Attorney and Declaration of Representation appointing Attorney Kenneth L Sheppard, Jr., of Sheppard Law as Elizabeth's representative. Edson signed Elizabeth's name to the Form 2848.

On October 1, 2013, Ruth Wilson dies. Ruth Wilson was 96 years old at her death. On Ruth Wilson's Certificate of Death the immediate cause of death is listed as "Adult failure to thrive, months" with conditions leading to the immediate cause listed as "Dementia, years."

On October 28, 2013, An Application to Probate Will was filed and The Estate of Ruth J.

Wilson aka Ruth Jansson Wilson, Case No. 563322, was opened in the Franklin County Probate Court. Edson was listed as the Executor of the Estate of Ruth Wilson and Weir is listed as the Attorney for the Executor.

I have been provided a Northwestern Mutual Insurance document dated December 24, 2013, entitled "Beneficiary Claim Statement." for Elizabeth's claim to her Mother's life insurance proceeds. On this document, under the "Beneficiary Information" section there is handwriting which reads, *inter alia*, "Please mail to me in care of my attorney, c/o Robert Weir, Attorney, Frase, Weir, Baer & McCullough, 305 Main Street, Coshocton, Ohio." Elizabeth signed the document in blank at the request of her brother Edson, Executor of the Estate of Ruth Wilson..

Elizabeth Koeberer was a beneficiary on Ruth Wilson's Life Insurance Policy through Northwestern Mutual Insurance. On December 30, 2013, Northwestern Mutual Insurance issued its check number WC-06527425, in the amount of $23,881.59 made payable to "Elizabeth Koeberer, 90 N Virginialee Rd, Columbus, Ohio 43209" for Elizabeth's share of the Ruth Wilson's Life Insurance.

The December 30, 2013, Northwestern Mutual Insurance check made payable to Elizabeth Koeberer is endorsed with a stamp which includes an account number and the following: "For Deposit Only, Frase, Weir, Baker & McCullough Co, IOLTA Client Trust."

Elizabeth Koeberer states that she did **not** authorize the law firm of Frase, Weir, Baker & McCullough to endorse or deposit the Northwestern Mutual Insurance check made payable **only** to Elizabeth Koeberer.

The Beneficiary Claim Statement document is **not** sufficient to give Weir or his law firm authority to endorse the Northwestern Mutual Insurance check made payable only to Elizabeth Koeberer.

**Year 2014**

On February 1, 2014, Edson designates Weir as the Successor Trustee of the Koeberger Trust. On February 7, 2014, Weir accepts the appointment and designation as Successor Trustee of the Koeberger Trust.

In April 2014 Weir brought $5,000 in cash to Elizabeth. In June 2014, Weir brought $8,000 in cash to Elizabeth. In August 2014, Weir brought $5,000 in cash to Elizabeth. Weir brought actual cash to Elizabeth. The total amount of the cash Weir brought to Elizabeth was $18,000.

At one of Weir's visits in 2014, Elizabeth's friend Bob Weiss was present when Weir brought cash to Elizabeth. Weir assured Elizabeth that there would be plenty of money passing from Ruth Wilson's Estate into the Koeberger Trust and that Elizabeth would be taken care of financially the rest of her life and would not have to worry about money.

Weir also met with Elizabeth and Beverly Cheek. During that meeting, Weir assured them that Elizabeth's inheritance would be accessible to her, that Elizabeth only need call Weir

to make a request and Weir would provide money to Elizabeth. Weir also took Elizabeth and Beverly Cheek to Chase Bank, set up a bank account for Elizabeth and provided Elizabeth with a debit card for the Chase Bank account.

By letter dated June 19, 2014, Sheppard Law submits a second request for an Offer in Compromise to the IRS on behalf of Elizabeth.

On October 23, 2014, a distribution was made from the Ruth Wilson Estate to the Koeberger Trust in the amount of $50,000. On November 4, 2014, a second distribution was made from the Ruth Wilson Estate to the Koeberger Trust in the amount of $100,000.

On December 19, 2014, Edson and Christine W. Strom each "grants to Robert E. Weir, Trustee of the Elizabeth W. Koeberer aka Elizabeth Koeberger Trust Agreement dtd July 15, 2011" the real property located at the Village of Bexley Condominium. Elizabeth resides at the Village of Bexley Condominium. Weir prepares the property transfer documents transferring Edson's interest and Christine's interest in the Bexley Condominium to the Koeberger Trust.

**Year 2015**

In January 2015, Elizabeth and the CPA she hired, Adam M. Knolls ("Knolls"), met with Weir and Edson. At that January 2015 meeting, it was first disclosed to Elizabeth that Edson had "gifted" over $4.1 million dollars of Ruth Wilson's assets to himself and Christine, utilizing the Wilson POA. Again, Weir told Elizabeth that the money in the Koeberger Trust was for Elizabeth's benefit to be used during Elizabeth's lifetime.

On or about February or March 2015, Attorney Robert B. Barnett, Jr. ("Barnett"), of the Carlile, Patchen and Murphy law firm was retained by Edson to represent Edson as Edson's personal counsel regarding the "gifting" of $4.1 million dollars of Ruth Wilson's assets to Edson and Christine utilizing the Wilson POA.

Negotiations ensured regarding the transfer of one-third of the assets to Elizabeth that were previously "gifted" to Edson and Christine.

By letter dated May 12, 2015, Barnett advises Knolls that: " Ed was the initial Trustee [Koeberger Trust]. He resigned and appointed Robert Weir as successor. Mr. Weir intends to serve until the Trust [Koeberger Trust] is funded, and then resign. Ed is intending to appoint Park National Bank as his successor."

On September 2, 2015, Elizabeth and Knolls met with Weir at Weir's office. Weir reassured Elizabeth that the assets in the Koeberger Trust were for Elizabeth's benefit. In addition, per Elizabeth and Knolls, Weir expressed interest in remaining as Trustee of the Koeberger Trust, suggesting that he was a good choice because he was **not** charging a fee to be Trustee, because he was married to Elizabeth's cousin. There was also discussion of a distribution schedule and a budget.

In September 2015, Weir prepares Deeds transferring real property from both Edson and Christine Wilson to the Koeberger Trust.

**Year 2016**

According to the Ledger for the Koeberger Trust Bank Account provided to me, two checks were paid to Weir in 2016. The first check, check number 1108, dated January 15, 2016, was made payable to Weir in the amount of $1,337. The second check, check number 1109 was in the amount of $7,077.48.

On October 8, 2016, a meeting was held at Chase Bank in Bexley with Elizabeth, Knolls, Weir and Elizabeth's daughter Alexandra present. Alexandra is Elizabeth's lineal descendent. During this meeting, Weir distributed copies of the Koeberger Trust, Ruth's Will, current investment account statements and bank statements for the Koeberger Trust. Again, there was discussion about a distribution schedule and a budget.

The purpose of the October 8 meeting was to make sure that Alexandra agreed with the distributions from the Koeberger Trust to Elizabeth. Alexandra indicated that distributions should be made to Elizabeth for whatever Elizabeth needs to live a comfortable life the way she wants, to travel and to buy the things Elizabeth likes. Alexandra approved of the distributions to Elizabeth.

Between October 8, 2016 and December 3, 2016, multiple telephone, mail and text message exchanges occurred between Knolls and Weir regarding the distribution schedule and a budget.

On December 6, 2016, Knolls sends Weir an email addressing items such as payments to Weir of over $8,400 and payments of $910 to a business, Trust Solutions. Included within the email is a summary of concerns Elizabeth had on a variety of issues over which Weir had direct control.

During this time, there is also an Ohio Tax lien issue. Knolls informs Weir that Knolls will handle the Ohio Tax lien issue. Knolls contacted Meyer and Kerschner, Ltd, the firm handling collection enforcement for the Ohio Attorney General to discuss the Ohio Tax lien issue. Knolls is informed by Meyer and Kerschner, that Weir had already contacted Meyer and Kerschner. During his communication with Meyer and Kerschner, Weir advised that he was Elizabeth's attorney and Meyer and Kerschner should send documents/information to Weir. Meyer and Kerschner sent documents to Weir.

**2017 to 2021**

Of particular note is that multiple tolling agreements and continuances were filed in this case for a period years.

There were on-going discussion about settling the dispute over the monies that were "gifted" to Edson and Christine. A private settlement agreement was drafted that would dissolve the Koeberger Trust. The private settlement agreement was not executed.

By letter dated January 16, 2017, Elizabeth informs Weir of the following: "Please be advised that you have never been authorized nor are currently authorized to act as my legal

counsel for any tax matters."

On January 30, 2017, Koeberger Trust check number 1280 in the amount of $8,893.10 was paid to Weir as "trustee fees."

On August 31, 2017, Koeberger Trust check number 1321 in the amount of $455.00 was paid to Carlise Patchen & Murphy (Weir's counsel).

On January 24, 2018, Koeberger Trust check number 1350 in the amount of $10,976.90 was paid to Weir as "trustee fees."

On October 17, 2018, Attorney Susan Wasserman, Counsel for Elizabeth Koeberer files a Motion to Set Aside Waiver of Probate of Will, To Vacate the Certificate of Service of Notice of Probate of Will, To Vacate the Entry Approving the Final Account, The Discharge of the Fiduciary, and for such other Equitable Relief in *In Re: The Estate of Ruth J. Wilson*, Franklin County Probate Court Case Number 563322.

Christine retains Attorney Jay Michael has her personal counsel for this litigation.

Barnett continues to represent Edson as Edson's personal counsel until Barnett dies. Then Attorney Jane Higgins Marx and Attorney Bryan M. Pritikin of Carlile Patchen & Murphy, LLP take over the representation of Edson.

Weir is represented by Attorney Robert Dunn and Attorney Brittany Stephen of Bailey Cavalieri LLC in this litigation.

Throughout this period of time, Knolls is communicating with Weir regarding distributions from the Koeberger Trust to Elizabeth, as well as other distributions Weir has made. Knolls repeatedly suggests and provides a budget to Weir. There is a myriad of communications between Knolls and Weir regarding why distributions are not being made to Elizabeth.

On December 17, 2018, Koeberger Trust check number 1386 in the amount of $1,543.00 was paid to Bailey Cavalieri LLC for "attorney fees."

On January 16, 2019, Koeberger Trust check number 1423 in the amount of $5,317.00 was paid to Bailey Cavalieri LLC for "attorney fees."

On January 22, 2019, Koeberger Trust check number 1425 in the amount of $12,526.12 was paid to "Robert E. Weir Trustee."

I have not been provided Ledgers for the Koeberger Trust Bank Account after 2019.

As of the writing of this Opinion, I am informed that Knolls and Weir continue to communicate regarding Weir's withholding of funds from Elizabeth.

## II    Questions Presented

What, if any, were/are the ethical duties owed by Attorney Robert Weir to Elizabeth

Koeberer?

## III    Discussion

The first factual issue to be addressed is who does/did Weir represent and what ethical duties flow from that representation?

The Wilson POA, Wilson Will and Koeberger Trust documents were all prepared by Weir.  As set forth above, Ruth J. Wilson suffered a stroke 16 days prior to "executing" the Wilson POA using an "X" for her signature.

Since Ruth J. Wilson suffered from aphasia after her stroke, there is a question as to whether Ruth J. Wilson contacted Weir to request that he represent her and prepare various documents.  There is also a question as to whether Edson contacted Weir to request that Weir prepare documents for Ruth J. Wilson.

In addition, there is a question as to whether Ruth J. Wilson had testamentary capacity to execute the Wilson POA a mere 16 days after her stroke and while she was suffering from aphasia.

## Prof. Cond. R. 1.14, Client with Diminished Capacity

Prof. Cond. R. 1.14, Client with Diminished Capacity, provides that the lawyer should maintain as far as reasonably possible a normal attorney-client relationship with the client.  If necessary, the lawyer may take protective action, such as seeking the appointment of a guardian ad litem, conservator or guardian.

I have not been provided with sufficient information as to how it came to be that Weir prepared the Wilson POA.   However, there are **no** documents provided to me that demonstrate that either a Guardian Ad Litem, Guardianship or Conservatorship was requested or enacted for Ruth Wilson.

At a minimum, when a lawyer prepares a document for signature by a person, an attorney-client relationship is created between the lawyer and that person.  Once an attorney-client relationship is created, the lawyer owes to the client all of the duties outlined in the Ohio Rules of Professional Conduct.   So, as of the signing of the Wilson POA on November 19, 2010, Weir was representing Ruth J. Wilson.

Weir's ethical duties to Ruth J. Wilson included, but were not limited to: competence, diligence, communication, confidentiality, safekeeping of funds and property, and to be free from conflicts of interest.

## Prof. Cond. R. 1.7 through 1.9, Conflicts of Interest

## Ruth Wilson

Prof. Cond. R. 1.7 (a) provides that a conflict is created when the representation of a client would be directly adverse to another current client, or if there is a substantial risk that the

Page  39

Mary Cibella Attorney Opinion Letters

lawyer's ability to consider, recommend, or carry out an appropriate course of action for the client will be materially limited by the lawyer's responsibility to another client, a former client, or a third person, or the lawyer's own personal interests.

If a conflict is created by Prof. Cond. R. 1.7(a), then a lawyer shall not accept or continue representation unless all of the following apply:
1) the lawyer will be able to provide competent and diligent representation to each affected client;
2) each affected client gives informed consent, confirmed in writing;
3) the representation is not precluded by Prof. Cond. R. 1.7c.

Comment [1] to Prof. Cond. R. 1.7 outlines the principles of loyalty and independent professional judgment as being fundamental to the attorney-client relationship. "Neither the lawyer's personal interest, the interests of other clients, nor the desires of third persons should be permitted to dilute the lawyer's loyalty to the client."

Based upon the information provided to me regarding Ruth J. Wilson's physical and mental state in November 2010 when the Wilson POA was signed with an "X," I question whether Edson was making the decisions regarding the Wilson POA or whether Ruth Wilson herself was making the decisions.

Likewise in July 2011, when the Wilson Will and Koeberger Trust were signed, there is strong evidence that Ruth Wilson was still suffering from aphasia due to her stroke, as well as suffering from dementia. By preparing the Wilson Will and the Koeberger Trust, Weir was acting as Ruth Wilson's attorney. Weir, as Ruth Wilson's attorney, owes Ruth Wilson a duty of loyalty and independent professional judgment. It is questionable whether given Ruth Wilson's physical and mental state, that Ruth Wilson had the capacity to direct Weir's actions.

Again, I question whether Edson was making the decisions regarding the Wilson Will and the Koeberger Trust.

Weir can not be serving two masters simultaneously without creating a conflict of interest.

In 2012, Edson, utilizing the Wilson POA purchases real property, transfers real property and makes "gifts" to himself and Christine Strom of $4,148,021 of Ruth Wilson's assets.

Weir prepared **all** of the deeds and the other transfer documents to effectuate the real property transfers and the asset transfers.

Weir was Ruth Wilson's attorney in 2012. If Ruth Wilson was competent in 2012, why did Weir utilize the Wilson POA and Edson to make these transactions? If Ruth was competent, the deeds and other transfer documents could have been brought to Ruth Wilson for her to sign.

In addition, since Weir prepared the Wilson Will and the Koeberger Trust, Weir **knew** that Ruth Wilson wanted her assets, whatever description and kind, to be divided equally between her three children, namely Edson, Christine and Elizabeth. The fact that the Koeberger Trust was written did **not** negate what Weir knew as Ruth Wilson's intent.

Page 40
Mary Cibella Attorney Opinion Letters

However, Weir did **not** stop Edson from "gifting" assets **only** to Edson and Christine. In fact, Weir actually participated in the "gifting" of the assets only to Edson and Christine.

Weir as attorney for Ruth Wilson owed duties of loyalty and independent professional judgment to Ruth Wilson. In addition, Weir had an obligation of communication to Ruth Wilson. Weir **knew** that Ruth Wilson's wishes in the Wilson Will and Koeberger Trust were not being followed by the "gifting" of assets to Edson and Christine utilizing the Wilson POA.

Prof. Cond. R. 1.2, Comment [11] provides, "Where the client is a fiduciary, the lawyer may be charged with special obligations in dealings with a beneficiary." *Prof. Cond. R. 1.2, Comment [11]*. Despite knowing that the "gifting" being done by Edson was in effect disinheriting Elizabeth, Weir assisted Edson with the "gifting."

At a minimum, Weir had a material limitation conflict when he assisted Edson in the "gifting" and other transactions utilizing the Wilson POA. Comment [16] to Prof. Cond. R. 1.7 sets forth relevant factors to determine whether a material limitation conflict exists. The relevant factors are: "the nature of clients' respective interests in the matter, the relative duration and intimacy of the lawyer's relationship with each client involved, the functions being performed by the lawyer, the likelihood that disagreements will arise, and the likely prejudice to each client from the conflict."

Weir is the nephew by marriage of Ruth Wilson. By all accounts, Weir and Edson are not only cousins but also good and close friends.

Weir knew that Ruth Wilson wanted her assets divided equally between her three children. Despite this knowledge, Weir assisted Edson with various transactions, including "gifting" assets **only** to Edson and Christine, thereby excluding Elizabeth.

When Edson resigned as Trustee of the Koeberger Trust in February 2014, Edson "appointed" Weir Trustee. As Trustee of the Koeberger Trust, Weir has paid himself Trustee fees from the Koeberger Trust. Weir has personally profited from being named Trustee of the Koeberger Trust.

Bd. Op. 2020-04 from Ohio's Board of Professional Conduct analyzes a material limitation conflict under Prof. Cond. R. 1.7(a)(2). As Ruth Wilson's attorney, Weir owes to Ruth Wilson his independent professional judgment and a duty of loyalty. Ruth Wilson's interests, as set forth in the Wilson Will, were that her assets be shared equally between her three children. Weir knew of Ruth Wilson's interests by virtue of being Ruth Wilson's attorney and the drafter of the Wilson Will. Instead of protecting Ruth Wilson's interests, Weir assisted Edson in transferring and "gifting" Ruth Wilson's assets **only** to Edson and Christine.

Instead of exercising independent professional judgment, loyalty to Ruth and advising Ruth of the consequences of Edson's actions, namely disinheriting Elizabeth, Weir put the interests of Edson and Christine above Ruth Wilson's interests.

Although it is not clear from the information provided to me, it is unlikely that Weir drafted deeds and other transfer documents without being paid. There was an inherent financial

Page 41
Mary Cibella Attorney Opinion Letters

interest to Weir to continue to prepare the documents to effectuate the transactions and "gifts" that Edson is directing be done.

## Elizabeth Koeberer

As set forth above, Weir owed obligations to Elizabeth by virtue of his representation of Ruth Wilson and his preparation of the Wilson POA, the Wilson Will and the Koeberger Trust.

Per the Beneficiary Claim Settlement document dated December 24, 2013, Weir is listed as Elizabeth's attorney. Once Weir represented to Northwestern Mutual Insurance that he was Elizabeth's attorney, Weir owes Elizabeth **all** of the obligations set forth in Ohio's Rules of Professional Conduct, including but not limited to, duties of loyalty and independent professional judgment.

When Weir is Elizabeth's attorney, Weir knows that Edson has "gifted" $4.1 million dollars of Ruth Wilson's assets **only** to Edson & Christine, Weir also knows that the "gifts" made by Edson utilizing the Wilson POA disinherited Elizabeth from her one-third share of those assets.

Weir has a direct conflict of interest when he undertook to represent Elizabeth on December 24, 2013.

An attorney representing Elizabeth, loyal to Elizabeth and providing independent professional judgment to Elizabeth would have researched what assets Elizabeth was entitled to receive from Ruth Wilson's assets and then would have set about to secure those assets for Elizabeth.

As of December 24, 2013, Weir is also Attorney for the Executor of the Estate of Ruth J. Wilson. Edson is the Executor of the Ruth J. Wilson Estate.

Weir has a direct conflict of interest between his ethical duties to his client Elizabeth and his duties as Attorney for the Executor of the Estate of Ruth J. Wilson.

Prof. Cond. R. 1.7c(2) precluded Weir from representing Elizabeth and while at the same time representing Edson as Executor of the Estate of Ruth J. Wilson. An attorney can not represent an heir to an Estate who has a claim against the Estate for assets that should have been part of the Estate, while also representing the Executor of the Estate.

In order to competently and diligently represent Elizabeth as set forth in Prof. Cond. R. 1.1 and 1.3, Weir would need to assert a claim on Elizabeth's behalf against Edson as Executor of the Estate of Ruth J. Wilson. Prof. Cond. R. 1.7c(2) prohibits Weir from this dual representation, because he can not bring a claim on behalf of one client against another client in the same matter.

On December 30, 2013, Northwestern Mutual Insurance issued its check number WC-06527425 in the amount of $23,881.59 made payable to Elizabeth Koeberer for Elizabeth's share of Ruth Wilson's Life Insurance.

Mary Cibella Attorney Opinion Letters

The December 30, 2013 Northwestern Mutual Insurance check made payable to Elizabeth Koeberer was endorsed with a stamp which included an account number and the following: "For Deposit Only, Frase, Weir, Baker & McCullough Co, IOLTA Client Trust.

On October 28, 2013, Weir filed an Application to Probate Will of Ruth Wilson in the Franklin County Probate Court, listing Edson as Executor and Weir as Attorney for Executor.

However, life insurance proceeds pass outside the Ruth Wilson Estate. I have not been provided **any** document wherein Elizabeth Koeberer authorizes the law firm of Frase, Weir, Baker & McCullough to endorse or deposit the Northwestern Mutual Insurance check payable **only** to Elizabeth Koeberer.

An attorney is **not** permitted to endorse someone's name on a check absent written authorization. In *Disciplinary Counsel v. Sarver*, 163 Ohio St.3d, 2020-Ohio-5478, Sarver represented Mustin, the fiduciary of her deceased daughter's estate. Mustin's daughter, Jessica, died as a result of a motor vehicle accident. Sarver negotiated a settlement with the auto insurance company of the driver of the other motor vehicle involved in the accident with Jessica.

Sarver signed Mustin's name to a Settlement Release and Settlement Check. At his disciplinary hearing, Sarver testified that Mustin gave him verbal permission to sign both the Settlement Release and Settlement Check. Mustin testified at the disciplinary hearing that she never gave Sarver permission to sign the Settlement Release or the Settlement Check.

The Supreme Court found that Sarver "forged his client's signature on the $50,000 settlement check. . ." *Sarver ¶ 40.*

Although the Northwestern Mutual Insurance check made payable only to Elizabeth Koeberer was not signed by Weir, the Northwestern Mutual Insurance check was endorsed by the use of the Frase, Weir, Baker & McCullough Co IOLTA Client Trust stamp.

Elizabeth Koeberer maintains that she did not give permission to Weir or his law firm to receive or to endorse the Northwestern Mutual Insurance check, or to deposit that check into Weir's law firm's IOLTA Account..

It appears from the Koeberger Trust Bank Account Ledger that the cash Weir brought to Elizabeth in April, June and August 2014 was from the Northwestern Mutual Insurance life insurance proceeds check. These cash payments brought by Weir to Elizabeth occurred after Weir becomes Successor Trustee of the Koeberger Trust.

The first distribution from the Ruth Wilson Estate to the Koeberger Trust occurred on October 23, 2014.

In 2016, Elizabeth had an Ohio Tax Lien issue. Weir contacted the firm of Meyer and Kerschner who were handling collection of the Tax Lien for the Ohio Attorney General. Weir informed Meyer and Kerschner that he was Elizabeth's attorney. Weir asked Meyer and Kerschner to send documents/information to Weir. Meyer and Kerschner sent the information to Weir that Weir requested.

By his own actions, Weir reaffirmed an attorney-client relationship with Elizabeth in 2016.

Weir owes duties of loyalty and independent professional judgment to Elizabeth as Elizabeth's attorney. Weir also should not permit his personal interests, the interests of other clients, nor the desires of third persons to dilute his loyalty obligations to Elizabeth,

In 2016, Weir is also Trustee of the Koeberger Trust. So, Weir is once again wearing multiple hats – Trustee of the Koeberger Trust and attorney for Elizabeth.

Elizabeth is the beneficiary of the Koeberger Trust. Weir, as both attorney for Elizabeth and Trustee of the Koeberger Trust, owes Elizabeth special obligations in his dealings with Elizabeth. *See, Prof. Cond. R. 1.2, Comment [11],*

At the September 2, 2015 meeting with Elizabeth and Knolls, Weir tells them that he was a good choice as Trustee for the Koeberger Trust, because he was **not** charging a fee to be Trustee.

Based upon the Koeberger Trust Bank Account Ledgers from 2016 to 2018, Weir took Trustees fees in 2016, 2017 and 2018. At a minimum, Weir did not adhere to his obligations of communication with his client Elizabeth as set forth in Prof. Cond. R. 1.4, Communication.

At worse, Weir "engage[d] in conduct involving dishonest, *fraud,* deceit or misrepresentation," when he told Elizabeth and Knolls in 2015 that he was not charging a fee to be Trustee, and then actually charged fees to be Trustee from 2016 through at least 2019. *See, Prof. Cond. R. 8.4, Misconduct.*

The rationale for the conflict provisions of Ohio Rules of Professional Conduct is to ensure that lawyers do not have competing interests, whether from other clients, their own interests or third persons.

Weir was the attorney for Ruth J. Wilson in 2010 when he prepared the Wilson POA. Weir was the attorney for Ruth J. Wilson in 2011 when he prepared the Wilson Will and the Koeberger Trust.

In 2012, Weir assisted Edson through the Wilson POA to "gift" Ruth J. Wilson's assets to Edson and Christine to the exclusion of Elizabeth. Weir participated in these acts knowing that Ruth J. Wilson wanted her assets to be divided equally between her three children, namely, Edson, Christine and Elizabeth.

Then on October 28, 2013, Weir files An Application to Probate Will of Ruth J. Wilson and opened the Ruth J. Wilson Estate. Weir is the Attorney for the Executor of the Ruth J. Wilson Estate.

Per the Northwestern Mutual Insurance Beneficiary Claim Statement dated December 24, 2013, Weir is Elizabeth's attorney.

In February 2014, Weir becomes the Successor Trustee of the Koeberger Trust.

Mary Cibella Attorney Opinion Letters

In 2016, Weir represents to the Meyer and Kerschner Ltd firm that he is Elizabeth's attorney.

**Weir's Conflicts**

Weir has material limitation conflicts beginning in 2010 when he prepares the Wilson POA.

Ruth Wilson suffered a stroke on November 3, 2010. A mere 16 days later, Ruth J. Wilson "signed" the Wilson POA with an "X" for her signature.

Per Elizabeth, Ruth Wilson was suffering from aphasia and other effects from her stroke. Ruth Wilson was barely able to communicate. It was unlikely that Ruth Wilson called Weir to request Weir's legal assistance.

However, once Weir prepares the Wilson POA for Ruth Wilson's signature, Weir creates an attorney-client relationship with Ruth Wilson. At least beginning on November 19, 2010, the date of the "signing" of the Wilson POA, Weir owes his professional obligations to Ruth Wilson, his client.

Weir should not permit Edson, or anyone else, to direct or control his representation of Ruth Wilson. Weir owes to Ruth Wilson all of the obligations set forth in Ohio's Rules of Professional Conduct, including but not limited to, duties of loyalty, independent professional judgment and to be free from conflicts of interest.

In 2012, when Weir assists Edson in transferring and "gifting" over $4.1 million dollars of Ruth Wilson's assets to Edson and Christine to the exclusion of Elizabeth, Weir has a material limitation conflict. Weir's material limitation conflict arises because he failed to abide by his client Ruth Wilson's stated intent in the Wilson Will (document Weir drafted), namely that Ruth Wilson's assets be divided equally between her 3 children.

Setting aside the question of the validity of the Wilson POA, when Edson approached Weir for assistance in transferring and "gifting" Ruth Wilson's assets **only** to Edson and Christine, Weir had a material limitation conflict. When Weir acted in contravention of Ruth Wilson's stated intent for distribution of her assets, Weir failed in his duty of loyalty and independent professional judgment to Ruth Wilson. Weir should not have permitted Edson, a 3rd party, to direct Weir to perform acts in contravention of Ruth Wilson's stated intent for distribution of her assets.

In addition, Weir's other material limitation conflict is that he had a personal financial incentive to bill for his legal services to prepare the deeds and other transfer documents requested by Edson.

A direct conflict occurs on December 24, 2013, when Weir lists himself as Elizabeth's attorney on the North Western Mutual Insurance Beneficiary Claim Settlement document. At this point, Weir is representing Elizabeth and also representing Edson as Executor of the Ruth J. Wilson Estate. This is a direct conflict, because Elizabeth's interests are to determine what happened to the $4.1 million dollars of Ruth Wilson's assets. In 2012, Weir assisted Edson in

Page 45

"gifting" the $4.1 million dollars in assets to Edson and Christine, thereby disinheriting Elizabeth.

One attorney can **not** ethically represent all sides to a transaction, because that attorney can not exercise loyalty to all of the clients, can not exercise independent judgment for each of the clients, and the attorney's actions are conflicted by the interests of the other clients and his personal interests.

Another conflict occurs on December 30, 2013, when the Northwestern Mutual Insurance check is deposited in the Frase, Weir, Baker & McCullough Co., IOLTA Client Trust account, when Elizabeth did **not** give verbal or written permission for the law firm to endorse the check or to deposit the check. Although Weir was the Attorney for the Estate of Ruth J. Wilson at this time, the Northwestern Mutual Insurance check is **not** a probate asset and does **not** pass through the Estate of Ruth J. Wilson.

On February 7, 2014, when Weir accepts the appointment and designation as Successor Trustee of the Koeberger Trust, Weir has additional fiduciary obligations to Elizabeth.

It appears from the Koeberger Trust Bank Account Ledgers, that Weir deposited the bulk of the Northwestern Mutual Insurance check proceeds into the Koeberger Trust in 2014. Weir then brought 3 cash payments totaling $18,000 to Elizabeth. It appears that the cash payments were from the Northwestern Mutual Insurance check that should have gone to Elizabeth directly.

Weir's obligations as Successor Trustee of the Koeberger Trust are his fiduciary duties to Elizabeth the beneficiary of the Koeberger Trust.

Elizabeth discovers at a January 2015 meeting with Weir, Edson and Knolls, that Edson "gifted" over $4.1 million dollars of Ruth Wilson's assets to Edson and Christine, utilizing the Wilson POA.

Since Weir drafted the Wilson Will, Weir knew that Ruth Wilson wanted one-third of her assets to go to Elizabeth. Weir's material limitation conflict again arose between his fiduciary duties as Successor Trustee of the Koeberger Trust and the transfers and "gifts" that he assisted Edson in making **only** to Edson and Christine.

On September 2, 2015, Weir tells Elizabeth and Knolls that Weir is a good choice to remain as Trustee of the Koeberger Trust, because Weir is not going to take Trustee fees. According to the Koeberger Trust Bank Account Ledgers from 2016 to 2019, Weir not only takes Trustee fees, but Weir also pays his own counsel, the Carlise Patchen & Murphy law firm from the Koeberger Trust. Again, Weir is putting his personal financial interests ahead of his fiduciary obligations and his direct representations to Elizabeth and Knolls.

Weir also, by his own acts in informing Meyer and Kerschner Ltd, the firm handling collection enforcement for the Ohio Tax Lien issue that he represents Elizabeth, Weir confirms his attorney-client relationship with Elizabeth.

Weir continues to have both a material limitation conflict of interest and a direct conflict of interest in his representation of Elizabeth.

Page 46

Mary Cibella Attorney Opinion Letters

I have been informed by Knolls and Elizabeth that on multiple occasions Weir would make representations that he would send a Trust distribution to Elizabeth and then failed to send such distribution.

I have also been informed by Knolls and Elizabeth that Weir has been withholding distributions from Elizabeth since June 2021.

Again, at a minimum, Weir is not fulfilling his communication obligations to his client Elizabeth and is not fulfilling his fiduciary obligations of communication with Elizabeth. *See Prof. Cond. R. 1.4.*

At maximum, Weir is engaging in conduct involving dishonest, fraud, deceit or misrepresentation in contravention of Prof. Cond. R. 8.4.

**Conclusion**

Based upon my education, training and over 37 years experience in Ohio's Disciplinary System, it is my opinion to a reasonable degree of legal certainty, that Attorney Robert E. Weir for his actions as set forth above both as attorney for Elizabeth Koeberer and the Trustee of the Koeberger Trust, has failed to abide by his ethical obligations and duties owed to Elizabeth Koeberer.

Very truly yours,

Mary L. Cibella

MLC/as

Mary Cibella Attorney Opinion Letters

**PAUL W. FLOWERS CO. L.P.A.**

December 22, 2021

TO:       **Ryan Gordon, Esq.**

FROM:    **Louis E. Grube, Esq.**
             **Paul W. Flowers, Esq.**

RE:       **Duties of a Trustee to Beneficiaries of a Wholly Discretionary Trust**
             **Koeberer, Elizabeth**

We have been asked to prepare a memorandum describing the duties owed by a trustee to the beneficiaries of a wholly discretionary trust and furnish exemplary cases showing the ways in which such a trustee has breached these responsibilities in past cases.

## I.    THE GOVERNING INSTRUMENTS

As we understand it, Elizabeth Koeberer ("Koeberer") is presently the only beneficiary of a wholly discretionary trust settled by her now-deceased mother, Ruth J. Wilson ("Mother"). The terms of this instrument permit the trustee to make distributions for the beneficiaries in the trustee's sole and absolute discretion. But there is some concern that the trustee has been paying trust assets to others, including himself and Koeberer's other sibling.

The Last Will and Testament of Ruth J. Wilson ("Will") begins by dividing the residuary estate into three shares. *Will, p. 1, § II.* Two of these shares are given without limitation to Edson H. Wilson and Christine W. Strom. *Id.* The third share is given to "Edson H. Wilson or his successor as Trustee of the Elizabeth W. Koeberger [sic] Trust dated 7/15/11." *Id.* Should any prospective heir predecease the testator, these shares are directed to alternative named beneficiaries including spouses and children or redistributed proportionately to the recipients of the other shares, depending on the circumstances. *Id.*

The Elizabeth W. Koeberer Trust ("Trust") begins with a provision governing how the net income and principal of the trust may be distributed during the life of Mother. But this clause also restates, in broad terms, Mother's intention that her estate should be split equally into three shares,

one of which should be held in trust "for the benefit of my daughter Elizabeth W. Koeberger [sic] and her issue." *Trust, p. 1, Article I.* The rest of her estate will be paid "outright and free of trust equally to my other two children, Edson H. Wilson and Christine W. Strom or their issue or spouses as provided in my Will." *Id.* Importantly, the "Trustee is directed to take all action necessary to carry such intention into effect." *Id.* After Mother's death, "sole discretion" is given to the Trustee "subject to a spendthrift trust," to "pay to, or expend" the Trust's net income and principal "for the benefit of, my daughter Elizabeth W. Koeberger, [sic] and her lineal descendants living from time to time." *Id., p. 1, Article II.*

The Trust is designed to last until and "terminate upon the death of Elizabeth W. Koeberger [sic]." *Trust, p. 2, Article III.* Only thereafter does the instrument provide in any way for distributions to Mother's "son Edson H. Wilson and [her] daughter Christine W. Strom," and only then if Elizabeth dies without "then living lineal descendants." *Id.*

The Trust's terms do not explicitly modify the trustee's common-law and statutory powers and duties to any significant degree. Significant to the Trustee's general fiduciary duty to make Trust property productive, the Trustee is permitted to "retain without liability for depreciation or loss any investments originally received or purchased from" Mother's estate. *Trust, p. 2, Article IV.* While the Trustee is directed to "keep accurate books of account with respect to this trust," he or she may be "fully discharged from all liability" only upon the joint agreement of the Trustee and all adults who "have or claim to have any beneficial interest in the income or principal." *Id., p. 3, Article VII.*

## II.   THE TRUSTEE'S AUTHORITY

In this instance, the key provisions of the Trust that bear on the trustee's duties are found in Article II.  This section gives "sole discretion" to the Trustee "subject to a spendthrift trust," to spend the Trust's net income and principal "for the benefit of, my daughter Elizabeth W. Koeberger, [sic] and her lineal descendants living from time to time."  *Id., p. 1, Article II.*  While there is a question whether the brief reference to a "spendthrift trust" is sufficient to create a true spendthrift limitation, this type of trust "imposes a restraint on the voluntary and involuntary transfer of the beneficiary's interest in the trust property."  *Scott v. Bank One Tr. Co.*, 62 Ohio St.3d 39, 44-45, 577 N.E.2d 1077 (1991).  But as "a court's purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent," it is likely that Koeberer's interest in the trust is inalienable, cannot serve as collateral, and will not be reached by creditors. *Domo v. McCarthy*, 66 Ohio St.3d 312, 318, 612 N.E.2d 706 (1993); accord *Scott* at 44-45.

The Trust separately affords broad discretion to the trustee regarding the use of the net income and principal, with the only limitation being that Koeberer and her lineal descendents are the beneficiaries.   Without a "support standard," such as a requirement to provide for "a beneficiary's medical care, care, comfort, maintenance, health, welfare, and general well-being," the trustee possesses extraordinary discretion:

> [A] trust that allows the trustee the uncontrolled discretion to distribute income and principal as the trustee determines, without a support standard, is a pure discretionary trust.  *In re Estate of Ternansky* (9th Dist.1957), 4 O.O.2d 329, 141 N.E.2d 189; *Morris v. Daiker* (1929), 35 Ohio App. 394, 172 N.E. 540.  No court can compel a trustee of a pure discretionary trust to exercise the trustee's discretion to distribute income or principal, unless the trustee acts in bad faith, dishonestly, or with an improper motive.  *Culver v. Culver* (1960), 112 Ohio App. 100, 105, 16 O.O.2d 38, 169 N.E.2d 486; *Ternansky*, 4 O.O.2d 329, 141 N.E.2d at 192-193.  With the enactment of 2006 Sub.H.B. 416, effective January 1, 2007, pure discretionary trusts are now legislatively

Paul Flowers Attorney Opinion Letter

**PAUL W. FLOWERS CO. L.P.A.**

December 22, 2021

recognized and sanctioned. R.C. 5801.01(Y) ("wholly discretionary trust" defined).

*Pack v. Osborn*, 117 Ohio St.3d 14, 2008-Ohio-90, 881 N.E.2d 237, ¶ 16-18.

### III.   RESTRICTIONS ON TRUSTEE AUTHORITY

Even the absence of restrictions on authority, however, a wholly discretionary trust is not a fund for the trustee to enjoy as he or she pleases:

> Trustees must always act in good faith and always act fairly and reasonably, and a court of equity will and can require such behaviour. [sic] Where a trustee is given uncontrolled discretion, as here, he acts much as a judicial officer and is duty bound to exercise sound discretion under the circumstances. <u>A court of equity will not tolerate abuse of sound discretion and in a proper case will compel the exercise of discretion</u>.  (Emphasis added.)

*In re Ternansky's Estate*, 76 Ohio Law Abs. 203, 141 N.E.2d 189, 192 (9th Dist.1957); *Pack* at ¶ 18; *Culver v. Culver*, 112 Ohio App. 100, 104, 169 N.E.2d 486 (10th Dist.1960) ("the courts have supervision over discretionary trusts; but the sole inquiry is limited to whether the discretion exercised by the trustee has been abused"); *Boyden v. Stevens*, 285 Mass. 176, 179, 188 N.E. 741 (1934), quoting *Corkery v. Dorsey*, 223 Mass. 97, 101, 111 N.E. 795 (1916) (" 'There is an implication, when even broad powers are conferred, that they are to be exercised with that soundness of judgment which follows from a due appreciation of trust responsibility.  Prudence and reasonableness, not caprice or careless good nature, much less a desire on the part of the trustee to be relieved from trouble or from the possibility of making a foolish investment, furnish the standard of conduct.' "); *Stevens v. Natl. City Bank*, 45 Ohio St.3d 276, 279, 544 N.E.2d 612 (1989); *Hopkins v. Cleveland Tr. Co.*, 163 Ohio St. 539, 548-549, 127 N.E.2d 385 (1955).  In general, and without exception, R.C. 5808.01 imposes a duty to "administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with Chapters 5801. to

Paul Flowers Attorney Opinion Letter

**PAUL W. FLOWERS CO. L.P.A.**

5811. of the Revised Code."

Moreover, in the absence of language to the contrary in the trust document, the discretion of a trustee is limited by the typical duties imposed in equity or by statute:

> [I]n the absence of specific stipulations in the trust, equity imposes such obligations. Every trustee owes certain duties to the beneficiaries of the trust. He agrees to administer the trust; to be loyal to the cestui que trust; to not delegate to others the doing of acts which he can reasonably be expected to perform personally; to keep and render clear and accurate accounts with respect to the administration of the trust; to give the beneficiary upon request, at reasonable times, complete information respecting the trust property, and permit inspection; to use reasonable care to preserve the trust property; to keep trust property separate and not commingle it with his own; to make trust property productive; to pay income to the cestui que trust at reasonable intervals; and, finally, to account and pay over the corpus on termination of the trust. Of course, equity imposes other duties depending on the nature of the trust property, but the foregoing are some of the duties imposed upon all trustees in the absence of any express provision.

*Homer v. Wullenweber*, 89 Ohio App. 255, 259, 101 N.E.2d 229 (1st Dist.1951); *see In re Ternansky's Estate*, 76 Ohio Law Abs. 203, 141 N.E.2d at 191 ("Appellant's claim of uncertainty in the manner of performance, since no instructions are given the trustee as regards investment of trust funds and disposition of income, if any, cannot be sustained because such matters, where the trust gives no direction with respect to them, are controlled by principles of equity."); *accord R.C. 5801.05* ("The common law of trusts and principles of equity continue to apply in this state, except to the extent modified by Chapters 5801. to 5811. or another section of the Revised Code."); *see also R.C. 5801.04(A) and (B)* (permitting trust terms to modify "the duties and powers of a trustee, relations among trustees, and the rights and interests of a beneficiary" imposed by statute, but not including the duty to "act in good faith and in accordance with the purposes of the trust").

Accordingly, a number of duties remain upon the trustee when the trust instrument has not expressly altered them. The only explicit modification of one of the typical equitable duties in the

Paul Flowers Attorney Opinion Letter

instant Trust is the provision permitting retention of investments originally acquired or purchased from Mother's estate, which would slightly adjust the basic responsibility to keep the trust property productive. *Trust, p. 2, Article IV; see, e.g., Stevens v. Natl. City Bank*, 45 Ohio St.3d 276, 280-281, 544 N.E.2d 612 (1989) (explaining how the "duty to invest idle trust funds so that they will be productive of income" may be modified or eliminated by the text of a trust instrument).

## IV.    COMMON LAW TRUSTEE DUTIES AND EXAMPLES OF BREACH

The following duties imposed upon trustees in equity, which have not been modified by the Trust, are commonly breached.

### A.    Duty to Carry Out the Terms of the Trust in Good Faith

The duty to administer a trust in good faith according to its terms and purpose is imposed by statute and common law, and it may not be modified. *E.g., In re Ternansky's Estate*, 76 Ohio Law Abs. 203, 141 N.E.2d at 192; *R.C. 5808.01; R.C. 5801.04(B)(2)*. The Supreme Court of Ohio once explained these rules as follows:

> As a general rule, a trustee's authority over the trust property is defined and limited by the instrument creating the trust, and he should be strictly guided by its provisions, and should pursue his power strictly. Atkinson v. Beckett, 34 W. Va. 584, 12 S. E. 717; Baldridge v. Walton, 1 Mo. 520. It is even held that although the will gives the broadest and fullest discretion to executors and trustees, such discretion cannot be exercised to frustrate the testator's manifest intent. In re Hall's Estate, 127 Misc. Rep. 238, 216 N. Y. S. 598.
>
> In Plummer v. Brown, 315 Mo. 627, 287 S. W. 316, a decision of the Supreme Court of Missouri handed down in 1926, it was held that the discretion given testamentary trustees to make payments to beneficiaries, when in their judgment the condition of the estate permits, must be reasonably exercised in good faith, and to further the testator's dominant purpose as disclosed by the will.

*Biles v. Webb*, 118 Ohio St. 346, 356, 161 N.E. 49, 6 Ohio Law Abs. 239 (1928). In *Biles*, a testamentary trust directed the trustee to manage a portfolio of real estate and apply income to pay

down mortgages on this property with the express intent that the "entire real estate shall be clear of all incumbrance at as early a date as possible." *Id.* at 355. After all encumbrances were paid, the property was to be sold with the proceeds distributed among the five children. *Id.* at 355-356. Instead, the trustee, who was a child of the settlor, paid the income from the property to herself and her four siblings for twenty-two years until one of them passed away. *Id.* at 353-354. Thereafter, the trustee declined to pay any income to the deceased sibling's spouse *Id.* Inevitably, the spouse of the deceased sibling sued the trustee "in equity for distribution by the trustee of the trust estate." *Id.* at 357. Her theory was that at the moment the trust could have paid off all mortgage encumbrances, the deceased sibling had a vested right to a fractional share of the trust property, which she was entitled to under his will. *Id.* at 356-357. The Court permitted the lawsuit to go forward to evidentiary proceedings over a demurrer, which is akin to the modern motion to dismiss under Civ.R. 12(B)(6). *Id.* at 357-359. The decision hinged on the relationship between the trustee's discretion and the trust terms:

> The trustee could not ignore the will, and by her unauthorized act determine when the contingent estate should vest in the beneficiaries. It is the direction of the testator which determines the time of vesting, and the testator directed in unqualified terms that, while the title should vest at the time of distribution, distribution should be seasonably made, because he directed that distribution should follow upon the paying off of the incumbrances at the earliest possible moment.

*Id.* at 357.

Courts commonly require strict compliance with the terms of a trust in this way. *E.g., May v. Copeland*, 192 Ohio App.3d 1, 2010-Ohio-6493, 947 N.E.2d 1239, ¶ 15-16, 44-61 (5th Dist.) (payment to trustee for work she did not do was not authorized by terms of trust); *Moeller v. Poland*, 80 Ohio St. 418, 89 N.E. 100 (1909) (trustee could not enter into an agreement with a life beneficiary of trust property to transfer property to her outright in contradiction of the explicit terms of the trust

granting a remainder to an orphan's asylum); *Schuster v. N. Am. Mortg. Loan Co.*, 44 Ohio Law Abs. 577, 65 N.E.2d 667 (8th Dist.1942) (each individual purchase of stock constituted a breach of the terms of a trust); *Shuster v. N. Am. Mortg. Loan Co.*, 139 Ohio St. 315, 40 N.E.2d 130 (1942) (written terms of corporate trust designed for liquidation of assets did not permit reinvestment of funds in stocks, bonds, and other securities); *Sredniawa v. Sredniawa*, 8th Dist. Cuyahoga No. 86607, 2006-Ohio-1597, ¶ 17 (none of the terms of a trust permitted a trustee to transfer property to himself outright, and transaction constituted self dealing). This deference to the terms of a trust instrument is confirmed by R.C. 5810.06, which "provides that '[a] trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance.' " *Damas v. Damas*, 6th Dist. Lucas No. L-10-1125, 2011-Ohio-6311, ¶ 28-29, quoting *R.C. 5810.06*.

But even acts that technically comply with the terms of a trust are subject to the duties of good faith and loyalty. *Stevens*, 45 Ohio St.3d at 280, 544 N.E.2d 612; *In re Bentley's Estate*, 163 Ohio St. 568, 577, 127 N.E.2d 749 (1955); *see Caswell v. Lenihan*, 163 Ohio St. 331, 339-340, 126 N.E.2d 902 (1955); *Saba v. Fifth Third Bank of NW Ohio, N.A.*, 6th Dist. Lucas No. L-01-1284, 2002-Ohio-4658, ¶ 29-30. "Self-dealing or breach of good faith on the part of a trustee, as distinguished from his failure to observe statutory directions as to the character of investments, cannot be excused on the ground that the instrument creating the trust and making him trustee gave him broad authority and unlimited discretion in the administration of the trust." *In re Binder's Estate*, 137 Ohio St. 26, 27 N.E.2d 939 (1940), paragraph ten of the syllabus. For example, in the *Binder* case, a trustee bank, "having a beneficial ownership" in a number of land trust certificates, "transferred them to itself at a profit and then placed a portion of them in the Binder trust." *Id.* at 45. The language of the instrument creating the trust gave "authority to sell, invest and reinvest the

Page | 8

**PAUL W. FLOWERS CO. L.P.A.**

December 22, 2021

same or any part thereof, at such times, in such manner and for such amount as it deems advisable and for the best interest of my said estate, the reinvestments to be subject to the same trusts as the original estate." *Id.* at 43. Despite this general authority, the Supreme Court of Ohio was withering in its criticism:

> Clearly this transaction was tainted with the vice of self-dealing, profit-taking, underwriting and syndicate participation before the trust certificates in question came into the Binder trust. Under the circumstances, the transfer of these certificates to the Binder trust is indefensible and must be declared illegal and void.

*Id.* at 45.

In the present matter, your considerations should be laser-focused on the part of the Trust that re-states the distribution in Mother's Will. The "Trustee is directed to take all action necessary to carry such intention into effect," including that the estate should be split three ways between the children. *Trust, p. 1, Article I.* And the trustee should only "pay to, or expend" the net income and principal held in trust "for the benefit of" Koeberer and her lineal descendants. *Id., Article II.* Accordingly, if a payment was made from the Trust property or income to another one of the siblings, this would frustrate Mother's explicit intent and the terms of the Trust. And to the extent the trustee may argue that one or another expenditure was really for the benefit of Koeberer or one of her children, even if it was paid to someone else, this act must have been undertaken in good faith and without fraudulent or bad intent.

### B. Duty to Keep Records, Make an Accounting, and Segregate Funds

Apart from the duty of good faith, R.C. 5808.10(A) codifies the trustee's general duty in equity to "keep adequate records of the administration of the trust." *Homer*, 89 Ohio App. at 259, 101 N.E.2d 229 (describing a trustee's equitable duties including "to keep and render clear and accurate accounts with respect to the administration of the trust"). *Accord Trust, p. 3, Article VII.* More

Page | 9

specifically, R.C. 5808.13(C) requires yearly reports regarding trust property.  R.C. 5808.10(B) also reaffirms the trustee's duty in equity to "keep trust property separate from the trustee's own property."  *Homer* at 259 (describing a trustee's equitable duties including "to keep trust property separate and not commingle it with his own").

One of the apparent problems with proving a breach of these duties of accounting and to segregate trust property is showing unique damages.  For example, in *Jones v. Elsea*, 4th Dist. Pickaway No. 02-CA-27, 2003-Ohio-4900, ¶ 3-5, a trustee and life beneficiary of a trust had sold real property held in trust, she gave herself a court-approved loan from these proceedings to purchase real estate, and there was no evidence that this loan was ever repaid.  When the trustee died, the remainder beneficiaries of the trust sued her estate, seeking a constructive trust over property acquired with the loaned funds.  *Id*. at ¶ 8.  Because the trust funds had been invested in a mortgage-backed note rather than directly expended on the house, and because the trustee held a life interest in the income of the trust, the plaintiffs were limited to seeking return of the loaned funds.  *Id*. at ¶ 17.  In reaching this holding, the Fourth District Court of Appeals noted that the trustee had breached her duties by releasing the mortgage on the note without rendering an accounting of the loaned funds.  *Id*. at ¶ 20.  She either violated her fiduciary obligations by failing to pay the loaned funds back or she commingled them with her own money by failing to account for the repayment.  *Id*.  Either way, without "evidence that either the trust or the trustee profited as a result of the trustee's failure to account for, or provide an accounting of the trust funds, commingling of the trust property with her own funds, or failure to notify appellants of the existence of the trust," there was no right to recovery of anything more than the amount that was loaned out.  *Id*. at ¶ 20-22.  Accordingly, any claim for breach of these duties should either be pled in the alternative with the understanding that damages will be duplicative of any underlying breach of the terms of a trust,

**PAUL W. FLOWERS CO. L.P.A.**

December 22, 2021

or supported by allegations of damages unique to the failure to make an accounting or segregate trust property.

Please note in closing that this memorandum is based upon the cited authorities and a limited understanding of the relevant facts, which are always subject to change.

58

DocuSign Envelope ID: 4F1FDD75-DB74-40C4-9319-72FF2D7728F5



COLLINS & SLAGLE

A LEGAL PROFESSIONAL ASSOCIATION

PHILIP M. COLLINS · EHREN W. SLAGLE · KATHRYN L. TRAVEN · ALLISON K. TRACEY

January 5, 2017

Robert E. Weir, Esq.
**Frase, Weir, Baker & McCullough**
rew@fraseweir.com

> RE: **The Elizabeth W. Koeberger [sic] Trust;**
> **Request for Your Voluntary Resignation as Trustee**

Dear Mr. Weir:

Please be advised that Elizabeth Koeberer has retained our firm to represent her relative to matters involving the Elizabeth W. Koeberger [sic] Trust ("Trust") including your removal as trustee. As you are aware, in your capacity as trustee of the Trust, you have a fiduciary duty to, *inter alia*, administer the Trust in good faith; administer the Trust in accordance with its terms and purposes and the interests of the beneficiaries; administer the Trust solely in the interests of the beneficiaries; administer the Trust as a prudent person would and to consider the purposes, terms, distributional requirements, and other circumstances of the Trust and to do so while exercising reasonable care, skill, and caution; and to administer the Trust in accordance with Chapters 5801 to 5811 of the Ohio Revised Code.

Pursuant to Ohio Rev. Code § 5810.01, "[a] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust ... [t]o remedy a breach of trust that has occurred or may occur, the court may do any of the following: . . [r]emove the trustee as provided in section 5807.06 of the Revised Code." Pursuant to Ohio Rev. Code § 5807.06, you may be removed as trustee if, because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that your removal best serves the interests of the beneficiaries.

"A breach of trust occurs when the trustee breaches one of the duties contained in Article 8 or elsewhere in the Code." *See* General Comment to Ohio Rev. Code § 5810.01. The duties contained in Article 8 include, but are not limited to, administering the trust in good faith (Ohio Rev. Code § 5808.01), administering the trust solely in the interests of the beneficiaries (Ohio Rev. Code § 5808.02(A)), administering the trust as a prudent person would and considering the purposes, terms, distributional requirements, and other circumstances of the trust (Ohio Rev. Code § 5808.04), keeping adequate records of the administration of the trust (Ohio Rev. Code § 5808.10), keeping the trust beneficiaries reasonably informed about the administration of the trust and the material facts necessary for them to protect their interests and promptly responding to a beneficiary's request for information related to the administration of the trust (Ohio Rev. Code § 5808.13(A)), and sending to the current beneficiaries at least annually a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's

21 EAST STATE STREET · SUITE 2300 · COLUMBUS, OHIO 43215-4228
TELEPHONE 614.228.1144 · FACSIMILE 614.228.7619 · WWW.COLLINS-SLAGLE.COM

**Collins, Phil (Attorney)**
**Letter to Robert Weir, Esq.**
**Page 1 of 2**

Page 59
Collins & Slagle Opinion Letter and Resignation Demand

DocuSign Envelope ID: 4F1FDD75-DB74-40C4-9319-72FF2D7728F5

Robert E. Weir, Esq.
January 5, 2017
Page 2 of 2

compensation, a listing of the trust assets, and, if feasible, the trust assets' respective market values. (Ohio Rev. Code § 5808.13(C).

Ms. Koeberer asserts the following:

- You have breached the forgoing fiduciary duties, which is the legal bases for your removal as fiduciary;
- You have failed, despite multiple representations, to establish a distribution schedule and/or make regular distributions;
- You have, in large part, failed to be responsive to Ms. Koeberer's requests (and Mr. Knolls's requests on behalf of Ms. Koeberer) for same. On numerous occasions, Mr. Knolls has provided you with a budget detailing Ms. Koeberer's expenditures in connection with obtaining from you a distribution schedule (and corresponding distributions) that comports with Ms. Koeberer's needs. Despite having a clear disclosure of Ms. Koeberer's needs, and despite numerous requests for a distribution schedule and corresponding distributions, you have failed to provide them;
- You failed to make any distributions for a period of approximately eight months from April until December 2016. Most recently, when Ms. Koeberer requested a distribution in the amount of $20,000, after not receiving any distributions for an eight-month period, you sent Ms. Koeberer only $10,000. The funds were mailed to Ms. Koeberer at an address contrary to P.O. Box 9010, Columbus, Ohio 43209, which she has previously provided to you as her mailing address. This resulted in yet another significant delay in her receiving her proceeds from the trust.

In light of the forgoing, Ms. Koeberer requests that you voluntarily resign as trustee of the Trust immediately and provide an account for your time as trustee pursuant to Ohio Rev. Code § 2109.303 and 5810.01. In the event you refuse to do so, Ms. Koeberer has authorized and directed us to file a petition requesting same. Please advise us of your intentions on or before January 15, 2017

COLLINS & SLAGLE CO., LPA

Philip M. Collins

APPROVED:

Elizabeth Koeberer      1/5/2017
_____
Elizabeth Koeberer      DATE

cc:   Adam Knolls, CPA



**COLLINS & SLAGLE**

A LEGAL PROFESSIONAL ASSOCIATION

| | |
|---|---|
| MEMO | |
| Case: | Koeberer |
| Date | Drafted: 1-3-2017; Last Updated: 1-11-2017 |
| RE: | General Timeline & Initial Impressions (Including Applicable Ohio Trust Code Provisions) |

### I. General Timeline

**11/19/2010:**    Ruth Wilson (Mom) grants Edson Wilson (son) a durable financial POA

- Includes the power to "sell or otherwise transfer for consideration all or any part of the real and personal property owned by [Ruth] for credit or upon any other terms and conditions."
- Includes the power to "sign, execute, acknowledge and deliver as [Ruth's] attorney and on [Ruth's] behalf any deed of transfer or conveyance covering personal property or real estate wheresoever situated or any discharge or release of mortgage held by [Ruth] on real estate; to negotiate and execute leases for any period of time for any property, real or personal, which [Ruth] may own from time to time; and to provide for the proper care and maintenance of such property, to pay expenses incurred in connection therewith and to declare defaults for non-payment of all or a portion of rents due under any such lease."
- Includes the power to "make gifts of any part or all of [Ruth's] property to [Ruth's] spouse, if any, [Ruth's] children, their lineal descendants, and the spouses of any of them, who may be living from time to time and including [Ruth's] agent acting under this power of attorney [Edson], by making gifts to any one or more of such persons in any amount that said agent may determine from time to time, but not in excess of the amount allowed as an annual exclusion under the current federal gift tax law except in the case of gifts to my spouse and except in a case whereby my agent determines that a larger gift promotes estate planning for me and such potential beneficiaries and either will not unreasonably reduce my financial security or is a part of my obtaining qualification for a specific government program.

**Early 2011:**    Ruth Wilson has a stroke and soon thereafter was in deteriorating health and in and out of various rehab centers in Central, Ohio.

**7/15/2011:**    Ruth Wilson allegedly executes a will and the Elizabeth W. Koeberger [sic] Trust.

- These are executed while Ruth is in a nursing home and after she was diagnosed with aphasia.

*[handwritten margin notes:]* West responded w/a saying his attorney would reply by 1/15 (1/11) — Jeff Ston-disciplinary — Letter to West applying but denied but...

Koeberer
General Timeline, Initial Impressions, & Applicable Law
Page 2 of 5

| | |
|---|---|
| [DATE]: | Edson (using his POA) disposed of several of Ruth's real estate assets at below market prices. |

- No confirming documents

| | |
|---|---|
| 12-28-12: | Edson (using his POA) purchased a second home for Ruth about one-half mile from her then-existing residence (address?) in which Ruth never moved into and is now Edson's residence (address: 7826 Nassau Loop, Dublin, Ohio 43017; lot 1892 of Muirfield Greene; deed saved as Memo – Reference Doc 10). |

| | |
|---|---|
| 2012: | <u>Without Elizabeth's knowledge</u>, Edson gifted assets in the amount of $4,148,021 in equal halves to himself and Christine (Elizabeth's and Ed's sole other sibling). |

- Barnett Communications, Page 11 of 19: Knolls indicates that the 2012 709 gift tax return provided to Knolls by Edson indicates the gifts made that year were made solely to him.
- When did Elizabeth discover these gifts were made and the estate incurred over $1 million in tax liability?
- When could have Elizabeth discovered this?

| | |
|---|---|
| 2012-Early 2013: | Elizabeth experienced her own health issues, including locally advanced left lung cancer that she received radiation treatment for in late 2002. |

| | |
|---|---|
| 10/1/2013: | Ruth died. Ed's POA terminated. |

| | |
|---|---|
| [2015]: | Approximately $1.4 mill. in assets were transferred to the trust by Edson and Christine. |

## II. Goals & Options

1. **Goal #1: Trust termination, or in the alternative, modification**

   a. 5804.02(A)(1): A trust is created only if the settlor of the trust has capacity to create a trust.
      i. SOL for challenging capacity: 5806.04(A)(1) – an action to contest the validity of a revocable trust that is made irrevocable by the death of the settlor of the trust shall be commenced <u>by the earlier of</u> the date that is two-years after the date of the death of the settlor of the trust or is 6 months from the date on which the trustee sends the person bringing the action a copy of the trust instrument and a notice informing the person of certain things (the trust's existence, the trustee's name and address, and of the time allowed under this division for commencing an action).
         1. Ruth died on October 1, 2013; therefore, this cause of action is time-barred.



Koeberer
General Timeline, Initial Impressions, & Applicable Law
Page 3 of 5

    b. 5804.06: A trust is void to the extent its creation was induced by fraud, duress, or undue influence. These terms have the same meaning for trust validity purposes as they have for purposes of determining the validity of a will.
        i. SOL for fraud & undue influence: 4 years (2305.09; Hicks v. Garrett, 2012-Ohio-3560)
        ii. Trust was created on July 15, 2011; therefore, time-barred

    c. 5804.10(A): A trust terminates to the extent a court determines that no purpose of the trust remains to be achieved
        i. 5804.10(B): A trustee or beneficiary may commence a proceeding to approve or disapprove a proposed modification or termination under sections 5804.11 to 5804.16.

    d. 5804.11(B) (termination or modification of noncharitable irrevocable trust)
        i. A noncharitable irrevocable trust may be terminated upon consent of all of the beneficiaries if the court concludes that continuance of the trust is not necessary to achieve any material purpose of the trust.
        ii. A noncharitable irrevocable trust may be modified, but not to remove or replace the trustee, upon consent of all of the beneficiaries if the court concludes that modification is not inconsistent with a material purpose of the trust.
        iii. A spendthrift provision in the terms of the trust may, but is not presumed to, constitute a material purpose of the trust.
        iv. In determining what constitutes a material purpose of a trust, a court may but is not required to consider extrinsic evidence indicating a settlor's intent at the time the instrument was executed.
        v. (C) Upon termination of a trust under division (B), the trustee shall distribute the trust property as agreed by the beneficiaries.
        vi. Application:
            1. Knolls indicates that all beneficiaries may agree to the termination of the trust. There is support in favor of the fact that the trust is not necessary to achieve any material purpose of the trust.
                a. The material purpose of the trust may include:
                    i. Elizabeth is incompetent (counter: Elizabeth is competent);
                    ii. To protect Elizabeth from creditors like the IRS and other creditors due to failed real estate investments that were a result of the real estate market demise beginning in 2007 (counter: there are no other non-IRS creditors)
                    iii. Spendthrift
                        1. Because there is a spendthrift provision (and because Ruth Wilson thought a trust was necessary for Elizabeth) a court may be more inclined to modify the trust to include a distribution schedule by which the trustee



Koeberer
General Timeline, Initial Impressions, & Applicable Law
Page 4 of 5

must abide. Therefore, the complaint may be
drafted in the alternative.

2. **Goal #2: Remove Weir as trustee of the trust**

    a. Draft letter to Weir re: his voluntary resignation (sent 1/5/17)

        i. On page 13 of 19 of the "Barnett Communication," on May 12, 2015, attorney Robert Barnett indicated that Weir intended to serve as trustee until the trust was funded and then resign. He also indicated that Edson was intending to appoint Park National Bank as his successor.

        ii. 5807.05 (resignation of trustee – notice – approval)

    b. 5807.06 (Removal of trustee – grounds – protective measures)

        i. (A) A beneficiary may request the court to remove a trustee, or the court may remove a trustee on its own initiative

        ii. (B) The Court may remove the trustee for any of the following reasons . . . (3) because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries.

    c. 5808.01 (Duties of trustee generally)

    d. 5808.02 (Duty of loyalty to beneficiaries – voidable transactions – conflicts of interest)

    e. 5808.04 (Trustee's duty to act as a prudent person)

    f. 5808.10 (A Trustee shall keep adequate records of the administration of the trust)

    g. 5808.13 (Keeping beneficiaries informed – requests – required reports): A trustee shall keep the current beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests. Unless unreasonable under the circumstances, a trustee shall promptly respond to a beneficiary's request for information related to the administration of the trust.

3. **Goal #3: Weir to withdraw as counsel for the trust**

    a. Continue considering whether a conflict of interest exists

4. **Other Considerations:**

    a. Challenge the validity of Ed's POA

        i. Claim for declaratory judgment – request an order declaring the rights and obligations regarding the validity of the POA that Elizabeth asserts is void



Koeberer
General Timeline, Initial Impressions, & Applicable Law
Page 5 of 5

as a result of Ed's and/or Weir's undue influence and fraud in the inducement.

  1. SOL for undue influence & fraud: 4 years (2305.09; Hicks v. Garrett, 2012-Ohio-3560); the SOL assigned to a declaratory judgment action is the same as the SOL for the underlying claims.
     a. Ed's POA was executed on 11-19-2010
     b. Ed's POA was recorded on 7-29-2011
     c. This cause of action is time-barred.

  ii. ORC 1337.04 provides that a POA for the conveyance, mortgage, or lease of an interest in real property must be recorded in the office of the county recorder of the county in which such property is situated, previous to the recording of a deed, mortgage, or lease by virtue of such POA.
     1. Ed's POA was executed on 11-19-2010
     2. Ed's POA was recorded on 7-29-2011

 b. Challenge whether Ed's transactions pursuant to the POA exceeded his authority, breached his fiduciary duties, etc.
   i. Obtain additional information regarding transactions, including identification of properties he transferred, dates of transfers, deeds, *etc.*

 c. Claim against Edson for intentional interference with expectancy of inheritance
   i. SOL: 4 years from date of discovery

 d. Amend name on trust.

5. **Information to consider obtaining:**
   a. Historical data/tax returns
   b. Ruth's medical records
   c. Weir to provide a complete accounting of all transactions and funds of the Trust pursuant to ORC 2109.303 and 5810.01
   d. Adam: Page 16 of 19 of Barnett Communications
      i. Did you receive the spreadsheet for Christine's transferred assets?
      ii. Did the trust receive 1/3 interest in the farm?
      iii. 1992 Volvo?
      iv. Spreadsheet prepared by Tracy Kaufman, CPA of Rea & Associates detailing the assets Ed transferred to the trust.





Pershing Advisor Solutions LLC
One Pershing Plaza
Jersey City, NJ 07399
Brokerage Services, member FINRA, SIPC

**Hendley & Company, Inc.**
Registered Investment Advisors

822 Adair Avenue, Zanesville, OH 43701
740.452.4523 • www.hendleyco.com

# Investment
## Account Statement

AV 02 045928 06292H173 A**5DGT

ELIZABETH W. KOEBERGER TRUST
UAD 07/15/11
ROBERT E WEIR TTEE
305 MAIN ST
COSHOCTON OH 43812-1588

November 1, 2023 - November 30, 2023
Account Number: ██████

### Portfolio at a Glance

| | This Period | Year-to-Date |
|---|---|---|
| **BEGINNING ACCOUNT VALUE** | $1,448,991.60 | $0.00 |
| Net Cash Deposits and Withdrawals | 0.00 | 154,401.70 |
| Net Securities In/Out of Account | 0.00 | 1,371,737.37 |
| **Adjusted Previous Account Value** | 1,448,991.60 | 1,526,139.07 |
| Dividends, Interest and Other Income | 1,544.59 | 10,798.52 |
| Other Transactions | 0.00 | -3,082.19 |
| **Net Change in Portfolio[1]** | 76,442.93 | -6,876.28 |
| **ENDING ACCOUNT VALUE** | $1,526,979.12 | $1,526,979.12 |
| Accrued Interest | $3,296.06 | |
| **Account Value with Accrued Interest** | $1,530,275.18 | |
| Estimated Annual Income | $35,817.93 | |

[1] *Net Change in Portfolio is the difference between the ending account value and beginning account value after activity.*

### Asset Summary

| | Percent | Asset Type | Last Period | This Period |
|---|---|---|---|---|
| ■ | 8% | Cash, Money Funds, and Bank Deposits | 143,341.20 | 126,221.63 |
| ■ | 20% | Fixed Income | 284,810.65 | 304,331.25 |
| ■ | 72% | Equities | 1,020,839.75 | 1,096,426.24 |
| | **100%** | **Account Total (Pie Chart)** | **$1,448,991.60** | **$1,526,979.12** |



Pershing Advisor Solutions LLC
(877) 870-7230

Page 66

Clearing through Pershing LLC,
member FINRA, NYSE, SIPC

Hendley and Company Statement

# IN THE PROBATE COURT OF FRANKLIN COUNTY, OHIO
## Robert G. Montgomery, Probate Judge

In the Matter of:
***The Elizabeth W. Koeberger Trust (sic)***
***The Elizabeth W. Koeberer Trust (Correct Spelling)***          *Case No._____*
***U/A July 15th, 2011,*** An Irrevocable Trust

### PRIVATE SETTLEMENT AGREEMENT

    Now come, the undersigned; the Successor Trustee, and 100% of the interested beneficiaries of the ***Elizabeth W. Koeberer Trust*** (Corrected), U/A July 15th, 2011; and, unanimously enter into this ***Private Settlement Agreement***, providing for the termination of the above captioned non-charitable irrevocable trust.  All of the parties to this ***Private Settlement Agreement*** agree and concur that the termination of this Trust is in the best interest of the Trust, and the beneficiaries thereof.

    WHEREAS, the Grantor, ***Ruth J. Wilson***, created the ***Elizabeth E. Koeberer Trust, U/A July 15th, 2011***, naming ***Edson H. Wilson***, as Trustee; and,

    WHEREAS, the aforementioned Trust was designed for the primary benefit of the Grantor, for her lifetime; and,

    WHEREAS, the Grantor, ***Ruth J. Wilson***, died on October 1st, 2013; and,

    WHEREAS, the Trustee, ***Edson H. Wilson***, resigned as Trustee and designated Attorney ***Robert E. Weir***, as Successor Trustee; and,

    WHEREAS, in accordance with the terms and conditions of a certain ***Private Settlement Agreement*** (with consent, release, and indemnification) dated January___, 2020, Attorney ***Robert E. Weir***, resigned as Successor Trustee, and ***Edson H. Wilson*** appointed ***Adam Knolls***, CPA, as Successor Trustee; and,

Private Settlement Agreemnt (PSA)

WHEREAS, *Edson H. Wilson, Christine W. Strom*, their spouses, and descendants (both born and unborn) have relinquished and forever disclaimed all of their beneficial interests in the aforementioned Trust (copies of their respective Disclaimers are attached hereto and labeled "Exhibit A" and "Exhibit B"); and,

WHEREAS, the terms of this Trust were prepared and executed under different circumstances; and, for creditor protection issues, which are no longer valid, as will be further detailed in the terms of this *Private Settlement Agreement*; and,

WHEREAS, the beneficiaries of the Trust now wish to terminate the Trust, which termination will, in no way, frustrate the original intent of the Grantor; and,

WHEREAS, 100% of the beneficiaries of the Trust (excepting *Edson H. Wilson* and *Christine W. Strom*, see the attached "Exhibit A" and "Exhibit B"), *Elizabeth W. Koeberer*; the Grantor's granddaughter *Alexandra Larson*; and, the Grantor's great-grandchildren (children of Alexandra) *Emma Larson*, *Genevieve Larson*, *Alexandra Larson*, and *Christine Larson*, have all joined in the execution of this *Private Settlement Agreement*, providing for the termination of said Trust; and,

WHEREAS, the now serving Successor Trustee, *Adam Knolls*, CPA, has joined in the execution of this *Private Settlement Agreement*, providing for the termination of said Trust; and,

NOW THEREFORE, the undersigned Successor Trustee, and all of the beneficiaries and interested parties to this Trust, enter into this *Private Settlement Agreement*, in accordance with the following terms and conditions:

Private Settlement Agreemnt (PSA)

## AGREEMENT

1.     At the time of the creation of this Trust, the draftsman of the Trust made a typographical error in the spelling of the primary beneficiary's name, which typographical error was, unfortunately, repeated consistently throughout the entire estate plan. All of the documents created included this error, resulting in mis-naming this Trust as the Elizabeth W. Koeberger Trust, at the time of the creation of the Trust on July 15th, 2011. The error went apparently unnoticed by the Grantor and the Trustee at the time of the execution of the document, on July 15th, 2011. The identical misspelling occurred in the Last Will and Testament of Ruth J. Wilson, which was also executed on July 15th, 2011. The correct spelling of the primary beneficiary's name is, *Elizabeth W. Koeberer*; and, therefore, this Agreement, and the Court proceedings which will accompany this Agreement, shall refer to the Trust and to the primary beneficiary as the *Trust of Elizabeth W. Koeberer, U/A July 15th, 2011*, for the benefit of *Elizabeth W. Koeberer*, the daughter of *Ruth J. Wilson*, Grantor.

2.     It is alleged that the purpose for the creation of this Trust by *Ruth J. Wilson*, the Grantor, was to protect the assets designated to pass to *Elizabeth Koeberer*, via the Grantor's Pour Over Will, and other non-probate transfers. It was the Grantor's understanding that her daughter, *Elizabeth W. Koeberer*, was, at the time of the execution of the estate planning documents, plagued by serious creditor issues, including being obligated to the Internal Revenue Service. This caused the passing reference in ARTICLE II, that the distribution of income and

Private Settlement Agreemnt (PSA)

principal after death would be "subject to a spend-thrift Trust." The information provided to the Grantor at that time, may not have been entirely accurate; but, in any event, it is no longer of any concern, as such creditor issues have all been resolved.

3.  The parties to this Agreement agree that such creditor issues are no longer in existence at this time, and that the purpose of the purported spendthrift Trust protections are no longer necessary. The Grantor's intentions in regard to these issues will not be materially frustrated by the termination of the Trust at this time.

4.  The intended funding of this Trust was to include, an approximate, one-third (1/3) share of the Grantor's total estate, for her daughter, *Elizabeth W. Koeberer*, with the other two-thirds (2/3) of the Grantor's estate passing, equally, to the siblings of *Elizabeth W. Koeberer; Edson H. Wilson* and *Christine W. Strom*, who received their one-third (1/3) shares outright, and free of Trust. Elizabeth's share was directed to this Trust, based upon information provided to the draftsman, by someone other than *Elizabeth W. Koeberer*. Since the information upon which the Grantor's decision was made did not come from Elizabeth, it is likely that the Grantor may have been misinformed as to the seriousness of her daughter's financial woes. In any event, those concerns are no longer valid, and the alleged purpose of this Trust has been negated.

5.  *Elizabeth W. Koeberer* is now 76 years of age; is not encumbered by debt in any way; and, should no longer be deprived of the full use and enjoyment of her inheritance from her mother's estate. She is, therefore, requesting the Court to

honor her request that this Trust be terminated, and that the assets currently held in Trust for her benefit should be distributed to her, unencumbered, immediately forthwith.

6.    **ARTCLE II** of the ***Elizabeth W. Koeberer*** Trust affords the right to receive income and principal of the Trust, at the Trustee's sole discretion, to ***Elizabeth W. Koeberger*** (sic), and her lineal decedents. ***Alexandra Larson***, the daughter of ***Elizabeth W. Koeberer***, is currently 49 years of age, and supports her Mother's request that this Trust be terminated, at this time.

7.    ***Elizabeth W. Koeberer*** also has four grandchildren, the children of her daughter Alexandra, who might also have an interest in this Trust by virtue of being lineal descendants of ***Elizabeth W. Koeberer***. Those grandchildren of Elizabeth, who are great-grandchildren of the Grantor, are: ***Emma Larson*** (Age 24), ***Genevieve Larson*** (Age 22), ***Alexandra Larson*** (Age 20), and ***Christine Larson*** (Age 18). Each of these adult grandchildren have executed this ***Private Settlement Agreement***, joining with and consenting to the request of their grandmother, ***Elizabeth W. Koeberer***, to terminate this Trust, at this time.

8.    ***Adam Knolls,*** CPA, is the current and acting Successor Trustee of the Trust. He has attached his signature to this ***Private Settlement Agreement***, in support of the request of ***Elizabeth W. Koeberer***, to terminate this Trust, at this time.

9.    All parties in interest to this Trust understand and agree that the primary purpose of this Trust is no longer valid or necessary under the current circumstances. Accordingly, all of the undersigned interested parties agree that the Successor

Trustee, *Adam Knolls*, CPA, is hereby authorized to distribute all assets of the *Elizabeth W. Koeberer Trust, U/A July 15th, 2011*, to *Elizabeth W. Koeberer*, to be hers, absolutely and free of Trust.

10.     The undersigned interested parties agree and authorize the Successor Trustee, *Adam Knolls*, to execute any and all necessary documents to finalize the Trust proceedings, to pay all necessary taxes and expenses for the termination of the Trust, and to make prompt distribution of all of the assets of the Trust to *Elizabeth W. Koeberer*, as expeditiously as possible.

11.     The undersigned and interested parties acknowledge and agree that this *Private Settlement Agreement* shall be the basis of a Petition/Complaint to be filed in the Franklin County Probate Court, Columbus, Ohio, seeking the approval of the Court that the *Elizabeth W. Koeberer Trust, U/A July 15th, 2011*, shall be terminated by the Journal Entry of said Court.  The parties agree that the termination of this Trust shall not result in a material alteration or frustration of the Grantor's original intent.

12.     All parties hereto acknowledge that they have been advised to consult their own legal, accounting or tax advisor with respect to this matter.  Each party has carefully read the Agreement and has had the opportunity to obtain independent advice of his or her own choosing as to the meaning and legal effect of its terms.

THEREFORE, *Adam Knolls*, Successor Trustee; *Elizabeth W. Koeberer*; *Alexandra Larson*, daughter of *Elizabeth W. Koeberer*; *Emma Larson*, *Genevieve Larson*, *Alexandra Larson*, and *Christine Larson*, grandchildren of *Elizabeth W. Koeberer*; now enter into this

Private Settlement Agreement, with the purpose of binding themselves, their executors, their heirs, and assigns, to the terms and conditions hereof. Each of the interested parties shall execute their signature and enter the date of their signature at the end of this ***Private Settlement Agreement***, as designated on the appropriate signature line. This ***Private Settlement Agreement*** shall become effective upon the execution of this Agreement by all the interested parties, and upon the effective date set forth next to their respective signatures. It is anticipated that this Agreement may be entered into in more than one "counterpart"; and, the collective attachment of all signed counterparts shall constitute one ***Private Settlement Agreement***. It is agreed and understood that the original signatures as collected on the various counterparts shall be attached to one ***Private Settlement Agreement***, which shall be attached to the Complaint to terminate the Trust, which will be filed with the Franklin County Probate Court, Columbus, Ohio.

**IN WITNESS WHEREOF**, each of the interested parties to the ***Elizabeth W. Koeberer Trust, U/A July 15th, 2011***, set their hand hereto:

_____          _____
***Adam Knolls, Successor Trustee***            ***Elizabeth W. Koeberer, Beneficiary***
Date:_____              Date:_____


_____          _____
***Alexandra Larson, Beneficiary***              ***Emma Larson, Beneficiary***
Date:_____              Date:_____


_____          _____
***Genevieve Larson, Beneficiary***             ***Alexandra Larson, Beneficiary***
Date:_____              Date:_____


_____
***Christine Larson, Beneficiary***
Date:_____

Private Settlement Agreemnt (PSA)

## DISCLAIMER



EXHIBIT
A

To: Adam Knolls, Successor Trustee of The Elizabeth W. Koeberger (*sic*, Koeberer) Revocable Trust dated July 15, 2011 (the "Trust").

The undersigned, Christine W. Strom and Mark Strom {on behalf of themselves and their unborn issue), residents of the State of Ohio (the "Disclaimants"), respectfully represent and state that:

1.      Disclaimants are contingent beneficiaries of the Trust.

2.      Adam Knolls is the Successor Trustee of the Trust.

3.      Ruth J. Wilson, the Grantor of the Trust, died on October 1, 2013.

4.      Disclaimants, on behalf of themselves and their unborn issue, hereby disclaim all of their rights as a beneficiary of the Trust, including the right to receive any distribution of assets from the Trust. The aforesaid property interests disclaimed shall hereinafter be referred to as the "Disclaimed Property."

5.      Disclaimants, irrevocably and without qualification, renounce, release, decline, disclaim and refuse to accept any and all rights or interests in and to the Disclaimed Property, which Disclaimed Property, but for this Disclaimer, may have passed to the Disclaimants as contingent beneficiaries of the Trust.

6.      This Disclaimer is irrevocable, and Disclaimants waive and renounce any right to amend or revoke this Disclaimer in any manner.

7.      Disclaimants have not accepted the Disclaimed Property, or any interests therein or benefits therefrom.

8.      Disclaimants are not insolvent as of the date of the execution of this Disclaimer and have not been insolvent at any point in time since Disclaimants' rights in the Disclaimed Property were finally ascertained and indefeasibly fixed.

9.      Disclaimants have not voluntarily assigned or transferred, or contracted to assign or transfer, any interest in the Disclaimed Property, or waived the right to disclaim the Disclaimed Property.

10.     Disclaimants have not sold or otherwise disposed of any interest in the Disclaimed Property and there has been no sale or other disposition of the Disclaimed Property pursuant to judicial process.

11.     This Disclaimer is entered into pursuant to Section 5815.36 of the Ohio Revised Code and the common law of the State of Ohio.

IN WITNESS WHEREOF, the Disclaimants have hereto set their hands this _____ day of January, 2020.

**DISCLAIMANTS:**

_____
Christine W. Strom

_____
Mark Strom

## ACKNOWLEDGMENT

STATE OF _____

COUNTY OF _____, SS:

Before me, a Notary Public in and for said State, personally appeared Christine W. Strom, who acknowledged before me that she did sign the foregoing Disclaimer for the purposes expressed therein and that the same is her free act and deed. No oath or affirmation was administered to the signer with regard to the notarial act.

In Testimony Whereof, I have hereby affixed my name and official seal this _____ day of January, 2020.

_____
Notary Public

## ACKNOWLEDGMENT

STATE OF _____

COUNTY OF _____, SS:

Before me, a Notary Public in and for said State, personally appeared Mark Strom, who acknowledged before me that he did sign the foregoing Disclaimer for the purposes expressed therein and that the same is his free act and deed. No oath or affirmation was administered to the signer with regard to the notarial act.

In Testimony Whereof, I have hereby affixed my name and official seal this _____ day of January, 2020.

_____
Notary Public

## <u>RECEIPT</u>

       The undersigned, Adam Knolls, Successor Trustee of the Trust, hereby acknowledges receipt of a fully-executed copy of the foregoing Disclaimer on this \_\_\_\_\_ day of January 2020.


                           _____
                           Adam Knolls, Trustee

# EXHIBIT

**DISCLAIMER**

**B**

To: Adam Knolls, Successor Trustee of The Elizabeth W. Koeberger (*sic*, Koeberer) Revocable Trust dated July 15, 2011 (the "Trust").

The undersigned, Edson H. Wilson, Barbara S. Wilson, and Christopher J. Wilson (on behalf of themselves and their unborn issue), residents of the State of Ohio (collectively, the "Disclaimants"), respectfully represent and state that:

1. Disclaimants are contingent beneficiaries of the Trust.

2. Adam Knolls is the Successor Trustee of the Trust.

3. Ruth J. Wilson, the Grantor of the Trust, died on October 1, 2013.

4. Disclaimants, on behalf of themselves and their unborn issue, hereby disclaim all of their rights as a beneficiary of the Trust, including the right to receive any distribution of assets from the Trust. The aforesaid property interests disclaimed shall hereinafter be referred to as the "Disclaimed Property."

5. Disclaimants, irrevocably and without qualification, renounce, release, decline, disclaim and refuse to accept any and all rights or interests in and to the Disclaimed Property, which Disclaimed Property, but for this Disclaimer, may have passed to the Disclaimants as contingent beneficiaries of the Trust.

6. This Disclaimer is irrevocable, and Disclaimants waive and renounce any right to amend or revoke this Disclaimer in any manner.

7. Disclaimants have not accepted the Disclaimed Property, or any interests therein or benefits therefrom.

8. Disclaimants are not insolvent as of the date of the execution of this Disclaimer and have not been insolvent at any point in time since Disclaimants' rights in the Disclaimed Property were finally ascertained and indefeasibly fixed.

9. Disclaimants have not voluntarily assigned or transferred, or contracted to assign or transfer, any interest in the Disclaimed Property, or waived the right to disclaim the Disclaimed Property.

10. Disclaimants have not sold or otherwise disposed of any interest in the Disclaimed Property and there has been no sale or other disposition of the Disclaimed Property pursuant to judicial process.

11. This Disclaimer is entered into pursuant to Section 5815.36 of the Ohio Revised Code and the common law of the State of Ohio.

IN WITNESS WHEREOF, the Disclaimants have hereto set their hands effective the _____ day of January, 2020.

**DISCLAIMANTS:**

_____
Edson H. Wilson

_____
Barbara S. Wilson

_____
Christopher J. Wilson


## ACKNOWLEDGMENT

STATE OF _____

COUNTY OF _____, SS:

    Before me, a Notary Public in and for said State, personally appeared Edson H. Wilson, who acknowledged before me that he did sign the foregoing Disclaimer for the purposes expressed therein and that the same is his free act and deed. No oath or affirmation was administered to the signer with regard to the notarial act.

    In Testimony Whereof, I have hereby affixed my name and official seal this _____ day of January, 2020.

_____
Notary Public


## ACKNOWLEDGMENT

STATE OF _____

COUNTY OF _____, SS:

    Before me, a Notary Public in and for said State, personally appeared Barbara S. Wilson, who acknowledged before me that she did sign the foregoing Disclaimer for the purposes expressed therein and that the same is her free act and deed. No oath or affirmation was administered to the signer with regard to the notarial act.

    In Testimony Whereof, I have hereby affixed my name and official seal this _____ day of January, 2020.

_____
Notary Public

## ACKNOWLEDGMENT

STATE OF _____

COUNTY OF _____, SS:

     Before me, a Notary Public in and for said State, personally appeared Christopher J. Wilson, who acknowledged before me that he did sign the foregoing Disclaimer for the purposes expressed therein and that the same is her free act and deed. No oath or affirmation was administered to the signer with regard to the notarial act.

     In Testimony Whereof, I have hereby affixed my name and official seal this _____ day of January, 2020.

_____
Notary Public

## RECEIPT

     The undersigned, Adam Knolls, Successor Trustee of the Trust, hereby acknowledges receipt of a fully-executed copy of the foregoing Disclaimer on this _____ day of January, 2020.

_____
Adam Knolls, Trustee

## SECOND ELIZABETH W. KOEBERER TRUST

THIS IS A SECOND TRUST AGREEMENT (sometimes referred to as "Second Trust Agreement") dated June _____, 2020, between Robert E. Weir, Successor Trustee of the Elizabeth W. Koeberger (sic) Koeberer Trust dated July 15, 2011 ("First Trust") and Adam M. Knolls as Trustee (the "Trustee"). Hereafter, Robert E. Weir may be referred to as "I", "Grantor" or "Successor Trustee".

WHEREAS, Grantor desires to create a trust under the authority granted pursuant to Ohio Revised Code 5808.18 and the Trustee is willing to accept the trust hereby created;

NOW, THEREFORE, Grantor intends to transfer property to the Trustee, in trust, and the Trustee agrees to accept such property and to hold, manage and distribute it under the terms of this Second Trust Agreement. Further, it is Grantor's intent that this Second Trust Agreement shall receive assets which will be decanted from the Elizabeth W. Koeberger Trust dated July 15, 2011.

## ARTICLE I
### Family Information of Elizabeth H. Koeberer

Elizabeth H. Koeberer is not married as of the date hereof. Her child born before the date of this Second Trust Agreement is Alexandra Larson. Her grandchildren born before the date of this Second Trust Agreement are Emma Larson, Genevieve Larson, Alexandra Larson and Christine Larson.

## ARTICLE II
### Trust Name

This Second Trust Agreement and the trusts hereunder shall be referred to as the Second Trust of Elizabeth W. Koeberer.

## ARTICLE III
### Allocation of Decanted Trust Assets

I direct the Trustee to allocate all assets received from the First Trust ("the Trust Estate") as follows:

00313706-1                Private Settlement Agreemnt (PSA)

A.  **Subtrust One for the benefit of Elizabeth W. Koeberer.** The Trustee shall set aside and allocate to a Subtrust to be known as the "EWK Subtrust" certain residential real estate commonly known as Unit 2370 in the Village at Bexley Condominium, Bexley, Ohio at its current Franklin County auditor's value of $141,000 together with liquid assets in the amount of $859,000 for a total allocation of $1 million. Within 30 days after receipt of the assets allocated to the EWK Subtrust, the Trustee shall distribute undistributed income and all principal to Elizabeth H. Koeberer. In the event, Elizabeth H. Koeberer dies before receiving distribution of the assets of this Subtrust, any and all remaining assets shall pass and be distributed outright to her daughter Alexandra Larson.

B.  **Expenses Set Aside.** From the remaining assets received by the Trustee, the Trustee is authorized to negotiate and pay claimed fiduciary expenses and legal fees of the Successor Trustee and his counsel and the attorney fees of Elizabeth H. Koeberer and Alexandra Larson, daughter of Elizabeth, pursuant to the agreed-upon Schedule attached hereto as Exhibit A.

C.  **Subtrust Two for the benefit of Alexandra Larson, daughter of Elizabeth H. Koeberer.** The Trustee shall allocate 60 percent of the value of the remaining assets decanted to this Second Trust after fully allocating Article III (A) and (B) to a Subtrust to be known as "Alexandra Subtrust" for the benefit of Alexandra Larson, daughter of Elizabeth H. Koeberer. The Trustee shall to distribute all undistributed income and principal of the Alexandra Subtrust to Alexandra Larson after expiration of the objection period required pursuant to Ohio Revised Code 5808.18 (F). In the event Alexandra Larson, daughter of Elizabeth, files an objection to the decanting process contemplated by this Second Trust Agreement, all her rights to any of the assets received by this Second Trust shall be forfeited and distributed to the EWK Subtrust.

D.  **Subtrust Three for the benefit of the Emma Larson, Genevieve Larson, Alexandra Larson, and Christine Larson.** The Trustee shall allocate all remaining Trust Assets decanted to this Second Trust after fully allocating Article III (A) (B), and (C) to a Subtrust to be known as "Remaining Subtrust" for the equal benefit of Emma Larson, Genevieve Larson, Alexander Larson, and Christine Larson. The Trustee is authorized to distribute all undistributed income and principal of the Remaining Subtrust in equal shares to Emma Larson, Genevieve Larson, Alexandra Larson, and Christine Larson or the survivor of them after expiration of the objection period required pursuant Ohio Revised Code 5808.18(F). In the event any of the beneficiaries of the Remaining Subtrust file an objection to the decanting, the rights of such

Private Settlement Agreemnt (PSA)

objecting beneficiary shall be forfeited and allocated among the beneficiaries who did not reject, if any. In the event all beneficiaries of the Remaining Subtrust file an objection, all of their rights to any of the assets received by this Second Trust shall be forfeited and distributed to the EWK Subtrust.

<center>

**ARTICLE IV**

**Payments to Disabled Persons**

</center>

Whenever property becomes distributable to a person whom the Trustee reasonably and in good faith shall determine is experiencing substantial difficulty in managing financial matters and that such difficulty is not expected to be short-term (described herein as "a Disabled Person" regardless of whether a court of competent jurisdiction has determined such person to be incompetent and regardless of whether a guardian, conservator or other legal representative has been appointed for such person), the Trustee may make the distribution in any way in which the Trustee shall deem appropriate, including (but not limited to) those enumerated in this Article.

A. **Distribution to Trust.** The Trustee may hold the property in a separate trust for the Disabled Person until the Disabled Person is no longer disabled as defined above. The Trustee may distribute to the Disabled Person as much of the net income and/or principal of the trust as the Trustee may at any time and from time to time determine, for any purpose, annually adding to principal any undistributed net income. When the Disabled Person is no longer disabled, the Trustee shall distribute the property to the formerly Disabled Person. If the Disabled Person dies before the property is distributed to him or her, then upon the Disabled Person's death, the Trustee shall distribute the property to the Executor of the Disabled Person.

B. **Distribution Subject to Authority of Trustee.** If not prohibited under applicable state law, the Trustee may actually distribute the property to anyone serving as Trustee under this Second Trust Agreement, to hold the property on behalf of the Disabled Person, but in a manner so that the property then vests in the Disabled Person, and the Trustee, in managing the property for the Disabled Person, shall have all the powers of a Trustee under this Second Trust Agreement (including the power to apply the property for the Disabled Person) and be compensated as if the property were a separate trust, but with no duty to account to any court periodically or otherwise.

C. **Distribution to a Guardian of Disabled Person's Property.** The Trustee may distribute the property to a Guardian of the Disabled Person's estate.

00313706-1    - 3 -    <center>Page 82</center>

<center>Private Settlement Agreemnt (PSA)</center>

D.      **Distribution to Disabled Person's Spouse or Parent.**  The Trustee may distribute the property to a spouse or parent of the Disabled Person even if the spouse or parent does not assume any formal fiduciary capacity concerning the property.

E.      **Exoneration of Fiduciary for Distributions for Disabled Person.**  The Trustee shall be free from any responsibility for the subsequent disposition of the property if it is distributed in one of the ways specified in this Article.

## ARTICLE V
## Spendthrift Provision

A.      **No Assignment.**  Each trust shall be a spendthrift trust to the maximum extent permitted by law and no interest in any trust hereunder shall be subject to a beneficiary's liabilities or creditor claims, assignment or anticipation.  After my death, no interest in income or principal shall be voluntarily or involuntarily anticipated, encumbered, assigned or subject to claims of creditors, spouses, former spouses or others.  Notwithstanding the foregoing, no provision of this Article shall prevent the appointment of an interest in a trust through the exercise of a power of appointment.

B.      **Protection from Creditors.**  If the Trustee shall determine that a beneficiary would not benefit as greatly from any outright distribution of trust income or principal because of the availability of the distribution to the beneficiary's creditors, the Trustee shall instead expend those amounts for the benefit of the beneficiary.  This direction is intended to enable the Trustee to give the beneficiary the maximum possible benefit and enjoyment of all the trust income and principal to which the beneficiary is entitled.

C.      **Protection from Marital Claims.**  All benefits granted to a beneficiary under this instrument shall be the separate and individual property of such beneficiary (as distinguished from marital property, community property, quasi-community property or any other form of property as to which such beneficiary's spouse might have a claim or interest arising out of the marital relationship under the law of any jurisdiction, domestic or foreign).  All benefits granted to a beneficiary hereunder shall also be free of any interference from, or control or marital power of, his or her spouse.  For purposes of this paragraph, the term "benefits" shall include real or personal property, tangible or intangible, and the provisions of this paragraph shall apply not only to benefits

Private Settlement Agreemnt (PSA)

actually paid to any beneficiary but also to trust property allocated to a trust in which the beneficiary possesses an interest hereunder.

D.     **Limitation of Court's Authority.**  No court shall have the authority or discretion to direct that there be a distribution or allowance from principal to any income beneficiary hereunder notwithstanding any applicable state statute.

## ARTICLE VI
### Trustees

A.     **Appointment of Initial Trustee.**  Grantor appoints Adam M. Knolls to serve as Trustee hereunder. Adam M. Knolls shall have the right to appoint his Successor Trustee. In the event he becomes disabled, or dies before completion of his responsibility as Trustee, Bradley Hoffman shall serve as Successor Trustee.

B.     **Number of Trustees.**  There shall never be more than one Trustee serving as Trustee hereunder.

C.     **Successor Trustees.**  If a specific successor Trustee is named to succeed a particular Trustee named in this Article, such specific successor Trustee shall serve as successor as appointed above.  In all other cases, a Trustee (the "appointing Trustee") may appoint successor Trustees in accordance with this paragraph:

1.     If only one trustee is serving hereunder and if no successor trustee has been named or identified herein or has been otherwise named pursuant to the provisions hereof, such trustee may appoint a successor trustee to serve when the appointing trustee fails or ceases to serve as trustee.

2.     If an appointing Trustee names a successor Trustee, and if Grantor has also named or provided for the appointment of one or more successor Trustees herein, the appointments Grantor has made herein shall take priority.

3.     Any appointment of a successor Trustee shall be made by an acknowledged instrument delivered to any and all other Trustees who may then be serving.

D.     **Acceptance of Appointment.**  Each Trustee appointed hereunder shall accept the appointment by executing an acknowledged instrument filed with the trust records, within thirty days of the date such person is advised of the opportunity to become a successor Trustee hereunder.

Private Settlement Agreemnt (PSA)

E.  **Trustee Exclusions.**  None of the following shall ever serve as Trustee under this Second Trust Agreement: any individual who is a beneficiary of a trust hereunder; the spouse nor a former spouse of any beneficiary of any trust hereunder; nor anyone who is married to any of the persons described above.

F.  **Compensation of Trustees.**  Individual Trustees shall receive reasonable compensation in accordance with the law of the State of Ohio in effect at the time of payment, unless the Trustee waives compensation; provided, however, that no descendant of mine who is named herein or otherwise appointed to serve as Trustee hereunder shall receive compensation for serving as Trustee hereunder.  In calculating any compensation based on the value of a trust, a policy of insurance on the life of a living person shall be deemed to have no value.

G.  **Beneficiary.**  For purposes of this Article, the term "beneficiary" shall mean any person who is named as a recipient of property under this Second Trust Agreement or who is, or in the future may be, eligible to receive income or principal under any trust created hereunder, or have the right to use any property owned by any trust created hereunder.

<div align="center">

**ARTICLE VII**

**Fiduciary Provisions**

</div>

A.  **General Provisions Regarding Changes in Fiduciaries.**

1.  Separate trusts hereunder may have different Trustees.

2.  To the extent not prohibited by applicable law, any Trustee may resign at any time without court approval, whether or not a successor has been appointed, provided the resigning Trustee complies with any applicable state law governing the resignation of the Trustee that may not be waived by a governing instrument.  Such resignation shall be by acknowledged instrument executed by the resigning Trustee and delivered to any other fiduciary acting hereunder. If no other fiduciary is then acting hereunder, any instrument by which a Trustee is resigning shall be delivered to Michael P. Ferguson, Attorney at Law, who shall have the authority to appoint an independent Successor Trustee.

3.  If any Trustee is removed, resigns or otherwise ceases to act as Trustee of any trust hereunder, the Trustee shall immediately surrender all records maintained by the Trustee with respect to such trust to the then acting Trustees or, if no other Trustee is then acting with

respect to such trust, to the successor Trustee upon receipt of written notice of the designation of the successor Trustee from the person appointing such successor Trustee.

  B. **Accountings and Other Proceedings.**

    1. I direct that a trust hereunder be subject to independent administration with as little court supervision as the applicable state law allows. The Trustee shall not be required to render to any court annual or other periodic accounts, or any inventory, appraisal, or other returns or reports, except as required by applicable state law. The Trustee shall take such action for the settlement or approval of accounts at such times and before such courts or without court proceedings as the Trustee shall determine. The Trustee shall pay the costs and expenses of any such action or proceeding, including (but not limited to) the compensation and expenses of attorneys and guardians, out of the property of the trust. The Trustee shall not be required to register any trust hereunder except as required by law.

    2. I direct that in any proceeding relating to a trust hereunder, service upon any person under a legal disability need not be made when another person not under a disability is a party to the proceeding and has the same interest as the person under the disability. The person under the disability shall nevertheless be bound by the results of the proceeding. The same rule shall apply to non-judicial settlements, releases, and exonerations.

    3. I hereby, to the full extent permitted, waive any provisions of law requiring the Trustee to notify any beneficiary (including, if applicable, any beneficiary who has not yet attained a certain age, as may be specified by law) (i) of the existence of any trust created under this Second Trust Agreement or of its becoming irrevocable for any reason, (ii) of acceptance and identification of a Trustee, (iv) of any change in the method or rate of determining the Trustee's compensation, or (v) of any right to receive or request a copy of this Second Trust Agreement or any right to receive any Trustee's report. Grantor also, to the full extent permitted by law, waives any provisions of law otherwise requiring the Trustee to furnish to any beneficiary (i) a copy of this Second Trust Agreement, on request or otherwise, or (ii) trust reports and other information periodically, on termination of any trust, or on request.

  C. **Required Release of Protected Health Information.** Each individual named herein or appointed pursuant to the provisions hereof as Trustee who fails within a reasonable time to undergo a medical examination at the written request of any person having an interest hereunder (including, but not limited to, another Trustee acting hereunder) for the sole purpose of

determining if the individual lacks the required capacity to continue to so serve hereunder or fails to cause the results of such examination to be made available within a reasonable time to the person making the written request, shall be treated as resigning as such fiduciary, provided that there is reasonable basis to request the medical examination be undertaken and provided further that no such request may be made more than once every thirty-six (36) months. The cost of the medical examination shall be borne by the trust with respect to which such individual is acting as Trustee.

        D.      **Continuation of Trustee's Powers.** Powers granted to the Trustee hereunder or by applicable law shall continue with respect to all property held hereunder to be exercisable by the Trustee until property is actually distributed to a beneficiary. By way of illustration and not by way of limitation, the Trustee may invest and reinvest and take all investment action with respect to property that has been directed to be distributed and notwithstanding any direction that the property be distributed "as it is then constituted" until such property is actually distributed.

        E.      **Additional General Provisions Regarding Fiduciaries.**

        1.      Under this Second Trust Agreement, if two or more separate trusts with the same beneficiaries and same terms are created, either by direction or pursuant to the exercise of discretion, Grantor intends that the separate trusts may, but need not, have the same investments and may, but need not, follow the same pattern of distributions. The Trustee's powers shall be exercisable separately with respect to each trust.

        2.      Except to the extent, if any, specifically provided otherwise in this Second Trust Agreement, references to the Trustee shall, in their application to a trust hereunder, refer to all those from time to time acting as Trustee and, if two Trustees are eligible to act on any given matter, they shall act unanimously, and if more than two Trustees are eligible to act on a given matter, they shall act by majority. In no event shall any Trustee hereunder be liable for any matter with respect to which he, she or it is not authorized to participate hereunder (including the duty to review or monitor trust investments). In the exercise of discretion over distributions, if this Second Trust Agreement provides that certain Trustees may participate in distributions limited by an ascertainable standard while a different set of Trustees may participate in distributions for any purpose, and if the two sets of Trustees (each acting by its own majority) want to distribute the same item of income or principal to different recipients, then the distribution desired by the set of Trustees participating in distributions for any purpose shall prevail.

3.     The Trustee shall be entitled to reimbursement for any out-of-pocket expenditures made or incurred in the proper administration of the trusts under this Second Trust Agreement or in furtherance of his or her fiduciary duties and obligations.

4.     No Trustee shall be liable to anyone for anything done or not done by any other Trustee or any beneficiary.

5.     The fact that a Trustee is active in the investment business shall not be deemed a conflict of interest. Purchases and sales of investments may be made through a corporate Trustee or through any firm of which a corporate or individual Trustee is a partner, member, shareholder, proprietor, associate, employee, owner, subsidiary, affiliate or the like. Property of a trust hereunder may be invested in individual securities, mutual funds, partnerships, LLCs, private placements or other forms of investment promoted, underwritten, managed or advised by a Trustee or such a firm.

6.     The Trustee may employ and rely upon advice given by investment counsel, delegate discretionary investment authority over investments to investment counsel and pay investment counsel reasonable compensation in addition to fees otherwise payable to the Trustee, notwithstanding any rule of law otherwise prohibiting such dual compensation. The Trustee may acquire and retain investments that present a higher degree of risk than would normally be authorized by the applicable rules of fiduciary investment and conduct, may make short sales of any type, and may engage in any other type of financial investment or arrangement even if not specifically described herein and even if not currently used in markets at the time of execution of this Second Trust Agreement. No investment, no matter how risky or speculative, shall be absolutely prohibited, so long as prudent procedures are followed in selecting and retaining the investment. The Trustee may, but need not, favor retention of assets originally owned by me. The Trustee shall not be under any duty to diversify investments, regardless of any rule of law requiring diversification, and any such duty is hereby waived.

7.     The fact that a Trustee (or a firm of which a Trustee is a member or with which a Trustee is otherwise affiliated) renders legal or other professional services to a trust hereunder shall not be deemed a conflict of interest, and the Trustee may pay fees for such services to such Trustee or firm, including, if applicable, advance payment of such fees on account, without prior approval of any court or any beneficiary, whether or not there is a Trustee to approve such payment, if permitted by applicable state law, and this provision shall serve as authorization of the

Private Settlement Agreemnt (PSA)

payment of such fees to the extent such authorization is required by applicable state law. An attorney or other Trustee who also renders professional services shall receive full compensation for both services as a Trustee and the professional services rendered, except as specifically limited by law.

        8.

        9.    A Trustee may irrevocably release one or more powers held by the Trustee while retaining other powers.

        10.

    F.    **Waiver of Bond.**  No Trustee shall be required to give bond or other security in any jurisdiction and, if despite this exoneration, a bond is nevertheless required, no sureties shall be required.

## ARTICLE VIII
### Governing Law and Trustee Powers

The Trustee shall have all of the powers granted by the Ohio Trust Code and the Ohio Uniform Principal and Income Act, as amended and in effect at the time of exercise of the power, except as limited in this agreement. In addition, the Trustee may, without prior authority from any court, exercise all powers conferred by this Agreement or by common law or by any fiduciary powers act or other statute of the State of Ohio or any other jurisdiction whose law applies to the trust. The Trustee shall have sole and absolute discretion in exercising these powers. Except as specifically limited by this Agreement, these powers shall extend to all property held by the Trustee until actual distribution of the property. The powers of the Trustee shall include the following:

    A.    **Place of Administration.**  The validity and construction of the trusts established under this Second Trust Agreement are governed by the law of the State of Ohio. The principal place of administration of these trusts is also the State of Ohio and their administration is governed by the law of the State of Ohio, but the Trustee may change the principal place of administration from time to time to another State or to a jurisdiction outside of the United States and thereafter the law of the new jurisdiction applies. The Trustee need not give notice to the beneficiaries of any transfer of the principal place of administration to another jurisdiction.

    B.    **Special Trustee Liability Provision.**  Some persons may be hesitant to serve as Trustee hereunder because of a concern about potential liability. Therefore, with respect to any

trust created hereunder (i) no Trustee shall incur any liability by reason of any error of judgment, mistake of law, or action of any kind taken or omitted to be taken in connection with the administration of any trust created hereunder if in good faith reasonably believed by such Trustee to be in accordance with the provisions and intent hereof, except for matters involving such Trustee's bad faith or reckless indifference to the purposes of the trust or the interests of the beneficiaries, (ii) no Trustee shall have any fiduciary responsibility to observe, monitor or evaluate the actions of any other Trustee and shall not be liable to any party for the failure to seek to remedy a breach of trust, or in a recurring situation to request instructions from a court having jurisdiction over the trust, even if a Trustee may be guilty of a gross violation of fiduciary duties hereunder, and (iii) each Trustee shall be fully indemnified by the trust estate against any claim or demand by any trust beneficiary or trust creditor, except for any claim or demand based on such Trustee's bad faith or reckless indifference to the purposes of the trust or the interests of the beneficiaries. Expenses incurred by a Trustee in defending any such claim or demand shall be paid by the trust estate in advance of the final disposition of such claim or demand, provided the Trustee agrees to repay such amount if it shall ultimately be determined that such Trustee is not entitled to be indemnified as authorized by this paragraph.

C. **Distributions to Minor Beneficiaries.** The Trustee may distribute any of the Trust Fund to a beneficiary under twenty-one (21) years of age by distribution to any appropriate person (who may be a Trustee) chosen by the Trustee as custodian under any appropriate Uniform Transfers (or Gifts) to Minors Act, to be held for the maximum period of time allowed by law. The Trustee may also sell any asset that cannot be held under this custodianship and invest the sales proceeds in assets that can be so held.

D. **Security Interests.** The Trustee may grant security interests and execute all instruments creating such interests upon such terms as the Trustee may deem advisable.

E. **Tax Elections and Allocations.** The Trustee may make all tax elections and allocations the Trustee may consider appropriate, including any election to treat this Second Trust as part of my estate for income tax purposes, even though a Trustee may have an interest affected by the election, except where a Trustee is prohibited from participating in the election by another provision of this Second Trust Agreement; provided, however, this authority is exercisable only in a fiduciary capacity and may not be used to enlarge or shift any beneficial interest except as an

incidental consequence of the discharge of fiduciary duties. Tax elections and allocations made in good faith shall not require equitable adjustments.

        F.    **Determinations About Property.** The Trustee may determine what property is covered by general descriptions contained in this Second Trust Agreement.

        G.    **Investment Responsibility.** The Trustee may retain any property originally owned by me and invest and reinvest in all forms of real and personal property, whether inside or outside the United States, including, without limitation, common trust funds of a corporate Trustee, mutual funds, partnerships (including a partnership in which a Trustee is a partner) and other forms of joint investment (which may but need not be managed by, advised by or affiliated with a Trustee), without regard to any principle of law limiting delegation of investment responsibility by the Trustee.

        H.    **Compromise Claims or Debts.** The Trustee may compromise claims or debts and abandon or demolish any property which the Trustee shall determine to be of little or no value.

        I.    **Borrowings.** The Trustee may borrow from anyone, even if the lender is a Trustee under this Second Trust Agreement, and may pledge property as security for repayment of the funds borrowed, including the establishment of a margin account. No Trustee shall be personally liable for any such loan, and such loan shall be payable only out of assets of the trust.

        J.    **Sale or Exchange of Property.** The Trustee may sell property at public or private sale, for cash or upon credit, exchange property for other property, lease property for any period of time and give options of any duration for sales, exchanges or leases. The Trustee may give such warranties or indemnifications as the Trustee may deem advisable.

        K.    **Participation in Mergers and Reorganizations.** The Trustee may join in any merger, reorganization, voting-trust plan or other concerted action of security holders and delegate discretionary powers (including investment powers) in entering into the arrangement.

        L.    **Allocate Gain to Income or Principal.** The Trustee (other than any Interested Trustee) may allocate within the meaning of Reg. §1.643(a)-3(b) to income or to principal, or partly to income and partly to principal, all or part of the realized gains from the sale or exchange of trust assets; provided, however, that, if income is defined under an applicable state statute as a unitrust amount and the trust is being administered pursuant to such statute, the allocation of gains to income must be exercised consistently and the amount so allocated may not be greater than the

excess of the unitrust amount over the amount of distributable net income determined without regard to Reg. §1.643(a)-3(b).

M.      **Distributions as Paid from Capital Gains.** The Trustee (other than any Interested Trustee) may deem, within the meaning of Reg. §1.643(a)-3(e), any discretionary distribution of principal as being paid from capital gains realized during the year. The Trustee (other than any Interested Trustee) may take any action that may be necessary in order for such deeming to be respected for tax purposes.

N.      **Distributions in Cash or Kind.** The Trustee may, without the consent of any beneficiary, distribute in cash or in kind, and allocate specific assets in satisfaction of fractional shares or pecuniary sums among the beneficiaries (including any trust) in such proportions, not necessarily pro rata, as the Trustee may determine, even though a Trustee has an interest affected by the distribution and even though different beneficiaries entitled to the same sum or share may thereby receive different mixes of assets, possibly with different income tax bases, as long as the fair market value of property on the date of distribution is used in determining the extent to which any distribution satisfies a sum or share. The decision of the Trustee in dividing any portion of the Trust Fund between or among multiple beneficiaries shall be binding on all persons.

O.      **Application of Property.** The Trustee may apply to the use or for the benefit of any individual, any property whether principal or income, that otherwise would or could be distributed directly to such individual.

P.      **Improvements to Property.** The Trustee may, with respect to any real property: (i) partition, subdivide or improve such property and enter into agreements concerning the partition, subdivision, improvement, zoning or management of any real estate in which a trust hereunder has an interest and impose or extinguish restrictions on any such real estate; (ii) sell, exchange, lease for any period, mortgage, alter or otherwise dispose of such property and execute any instrument necessary to do that; and (iii) charge to principal the net loss incurred in operating or carrying non-income producing real property.

Q.      **Acquisition and Maintenance of Real Property.** The Trustee may acquire, hold and maintain any residence (whether held as real property, condominium or cooperative apartment) for the use and benefit of any one or more of the beneficiaries of any trust whenever that action is consistent with the terms of that trust, and, if the Trustee shall determine that it would be in the best interests of the beneficiaries of that trust (and consistent with the terms of that trust)

to maintain a residence for their use but that the residence owned by that trust should not be used for such purposes, the Trustee may sell said residence and apply the net proceeds of sale to the purchase of such other residence or make such other arrangements as the Trustee shall deem suitable for the purpose. Any proceeds of sale not needed for reinvestment in a residence as provided above shall be added to the principal of that trust and thereafter held, administered and disposed of as a part thereof. The Trustee may pay all carrying charges of such residence, including, but not limited to, any taxes, assessments and maintenance thereon, and all expenses of the repair and operation thereof, including the employment of household employees (including independent contractors) and other expenses incident to the running of a household for the benefit of the beneficiaries of that trust. Without limiting the foregoing, the Trustee may permit any income beneficiary of any trust created hereunder to occupy any real property or use any personal property forming a part of that trust on such terms as the Trustee may determine, whether rent free or in consideration of payment of taxes, insurance, maintenance and ordinary repairs or otherwise.

        R.

        S.     **Digital Assets and Accounts.** The Trustee may take any action with respect to any Digital Assets, Digital Accounts, and Digital Devices held as part of any trust hereunder (whether by explicit transfer or by general assignment), or which are, or were, owned or lawfully used by me in connection with any asset held as part of any such trust, as the Trustee shall deem necessary or appropriate, and as shall be permitted under applicable state, Federal, or international law, giving due effect to the authorization provided in this paragraph. This authority shall include, but shall not be limited to, (a) the authority to access or control any Digital Device, including any computer, camera, telephone, or data storage device owned or lawfully used by me, individually or jointly, (b) the authority to manage, control, delete, or terminate any e-mail, telephone, bank, brokerage, investment, insurance, social networking, internet service provider, retail vendor, utility or other account which is, or was, owned or lawfully used by me, individually or jointly, and (c) the authority to change a username and password used by me to gain access to such accounts and information. Grantor expressly authorizes the disclosure to the Trustee of (a) a full catalogue of the Digital Assets and Digital Accounts transferred from the First Trust into the Second Trust, including a full catalogue of electronic communications sent or received by me, as Successor Trustee of the First Trust and (b) all content of electronic communication sent or received by me, as Successor Trustee of the First Trust. The Trustee may engage experts or consultants or any

other third party, and may delegate authority to such experts, consultants or third party, as necessary or appropriate to effectuate the actions authorized under this paragraph. This authority is intended to give my "lawful consent" for the Trustee to take the actions described in this paragraph, to the fullest extent allowable under The Electronic Communications Privacy Act, as amended, the Computer Fraud and Abuse Act of 1986 as amended, the Gramm-Leach-Bliley Act, as amended, and any other Federal, state, or international laws that may require such consent or authorization. To the extent that a specific reference to any such law is required in order to grant the Trustee the authority described in this paragraph, it is my intent to reference such law, whether currently in existence or enacted or amended to require such reference after the date of this Second Trust Agreement.

T. **Hold Trusts as Combined Fund.** The Trustee may hold two or more trusts hereunder as a combined fund (allocating ratably to such trusts all receipts from, and expenses of, the combined fund) for convenience in investment and administration, but no combination of trusts for this purpose may alter their status as separate trusts.

U. **Division of Trusts.** The Trustee may divide any trust into two or more separate trusts and administer them as separate trusts, either before or after the trust is funded, to enable the GST Exemption to be allocated separately to one of the trusts, to enable the election under Code Sec. 2652(a)(3) to be made separately over one of them or otherwise to make possible a separate trust with a zero inclusion ratio because the trusts have different transferors for GST purposes or for any other tax or non-tax purpose. Any such division shall be by fractional shares and each share shall participate pro rata in income, appreciation and depreciation to the time of division. Any relevant pecuniary amount (such as the obligation to pay an annuity, or the right to withdraw that amount referred to in Code Sec. 2514(e)(1) (currently, Five Thousand Dollars ($5,000)) shall be applied to the separate trusts based on the fractional shares into which they are divided. If a trust is divided pursuant to this paragraph into two trusts, one that is exempt from Federal generation-skipping transfer tax ("GST Exempt Trust") and one that is not exempt from Federal generation-skipping transfer tax ("GST Non-Exempt Trust"), then, without limiting the Trustee's discretion, hereunder Grantor suggests that no distribution of principal be made from such GST Exempt Trust until the principal of such GST Non-Exempt Trust is exhausted, unless there is a compelling reason to do so.

V.      **Loans.**  The Trustee may make loans to, may buy property from, and generally shall have the power to make contracts with my estate or the trustee of any trust subject to any wealth transfer tax upon my death, regardless of the fact that one or more or all of the persons serving as Trustee hereunder are also serving as a selling or borrowing or otherwise contracting Executor or Trustee; provided that such loans shall be for adequate interest and shall be adequately secured, and such purchases shall be for the property's then fair market value.

W.      **Reliance Upon Advice.**  The Trustee may employ and rely upon advice given by accountants, attorneys, investment bankers, and other expert advisors and employ agents, clerks and other employees and pay reasonable compensation to such advisors or employees in addition to fees otherwise payable to the Trustee, notwithstanding any rule of law otherwise prohibiting such dual compensation.

X.      **Additions to Trust**.  The Trustee may accept or decline to accept additions from any source.

Y.      **Custodian Employed.**   The Trustee may employ a custodian, hold property unregistered or in the name of a nominee (including the nominee of any bank, trust company, brokerage house or other institution employed as custodian), and pay reasonable compensation to a custodian in addition to any fees otherwise payable to the Trustee, notwithstanding any rule of law otherwise prohibiting such dual compensation.

## ARTICLE IX
### Definitions and Miscellaneous Provisions

The following definitions and miscellaneous provisions shall apply under this Second Trust Agreement:

A.      **Spouse**.  An individual's "spouse" is the person (if any) to whom that individual is married at any given time.

B.      **Surviving Spouse.**  The "surviving spouse" of an individual is the person (if any) who survives that individual and who is married to and living with that individual as a married couple at the time of his or her death.

C.      **Descendants**.  References in this Second Trust Agreement to a person's "children," "grandchildren," and other "descendants" shall refer respectively to that person's children,

grandchildren, and descendants, whenever born, as determined according to applicable governing law, except to the extent modified herein.

D.    **Survivorship.** Any beneficiary hereunder who dies within thirty (30) days following the date of my death or the termination of or distribution from any trust under this Second Trust Agreement for which entitlement the date of the beneficiary's death shall be relevant, shall be deemed to have predeceased me or to have died before the termination of or distribution from that trust, as the case may be, for all purposes of this Second Trust Agreement.

E.    **Minor and Adult.** Whether an individual is a minor or an adult shall be determined under the laws of the individual's domicile at the time in question.

F.    **Digital Assets, Accounts and Devices.** The following definitions and descriptions shall apply to the authority of the Trustee with respect to the Digital Assets and Accounts held hereunder:

1.    "Catalogue of electronic communications" shall mean a record of identifying information regarding electronic communications (as defined in 18 U.S.C. § 2510(12), as amended) sent or received by Grantor, as Successor Trustee of the First Trust, including, without limitation, the identity of the person with whom Grantor had the communication, the electronic address of such person, and the time and date of the communication.

2.    "Content of electronic communications" shall mean information concerning the substance or meaning of electronic communications (as defined in 18 U.S.C. § 2510(12), as amended) sent or received by Grantor, as Successor Trustee of the First Trust which is stored in electronic form by a custodian providing service for such communications to the public, or which is carried or maintained by a remote-computing service to the public, and which is not readily accessible to the public.

3.    "Digital Assets" shall include any electronic record in which Grantor, as Successor Trustee of the First Trust, controlled or maintained, including any asset or liability which is itself an electronic record, regardless of the ownership of the device or account used to create such electronic record.

4.    A "Digital Device" is an electronic device that can create, generate, send, share, communicate, receive, store, display, or process information.

5.    "Digital Accounts" shall include all arrangements under which a custodian carries, maintains, processes, receives or stores a Digital Asset or provides goods or services in

Private Settlement Agreemnt (PSA)

which Grantor, as Successor Trustee of the First Trust, controlled, maintained or was  lawfully entitled to use. regardless of the ownership of any device on which the Digital Account is accessed or stored.

G.     **Interested Trustee.**  With respect to any trust, an "Interested Trustee" is a Trustee who is (i) a transferor of property to the trust, including a person whose qualified disclaimer resulted in property passing to the trust; or (ii) a person who is, or in the future may be, eligible to receive income or principal pursuant to the terms of the trust.  A Trustee described in (i) is an Interested Trustee only with respect to the transferred property (including income and gain on, and reinvestment of, such property).  A person is described in (ii) even if he or she has a remote contingent remainder interest, but is not described in (ii) if the person's only interest is as a potential appointee under a non-fiduciary power of appointment held by another person which has not yet been exercised or the exercise of which can take effect only in the future, such as a testamentary power held by a living person.  A Trustee who is not an Interested Trustee is a "Disinterested Trustee."

H.     **Per Stirpes.**  Property that is to be divided among an individual's surviving or then-living descendants "per stirpes" or in "per stirpital shares" shall be divided into as many equal shares as there are children of the individual who are then living or who have died leaving surviving or then-living descendants.  A share allocated to a deceased child of the individual shall be divided further among such deceased child's surviving or then-living descendants in the same manner.

I.     **Disabled Grantor or Trustee.**  No individual shall serve as Trustee during any period in which such individual is determined to be disabled in accordance with the provisions of this paragraph. An individual shall be deemed to be "disabled" if the individual has been adjudged incapacitated or incompetent by a court of competent jurisdiction. An individual shall also be deemed to be "disabled," whether or not there is an adjudication of incapacity or incompetence, if (1) with respect to a Trustee, another then-serving Trustee or, if there is none, the next successor Trustee, receives written certification that the examined individual is having significant difficulties, physically or mentally, in receiving and evaluating information sufficient to create impairments in the individual's ability to make or communicate responsible decisions concerning the individual's personal welfare or the management of the individual's or the Trust's financial affairs and that such impairments are not anticipated to be of short duration.  For purposes of this

paragraph, an impairment that is anticipated to last less than one (1) month shall be of short duration. The following shall apply to any certification required by this paragraph:

1.      The certification shall be valid only if it is signed by a licensed medical provider, who is the primary health care provider of, and has personally examined, the. In the event that the individual to be examined does not have a primary health care provider, then the certification shall be valid if signed by at least two (2) licensed medical providers, at least one of whom is an attending or treating physician who has personally examined the individual and the other of whom has also personally examined the individual.

2.      This certification need not indicate any cause for the disability of the Trustee or me.

3.      A certification of disability shall be rescinded when a serving Trustee receives a certification that the former Trustee is no longer having significant difficulties or impairments in managing the assets of the Trust, as the case may be. This certification, too, shall be valid only if it is signed by a licensed medical provider who is the primary health care provider of, and has personally examined, the. In the event that the individual to be examined does not have a primary health care provider, then the certification shall be valid if signed by at least two (2) licensed medical providers, at least one of whom is an attending or treating physician who has personally examined the individual, and the other of whom has also personally examined the individual.

4.      No person is liable to anyone for actions taken in reliance on the certifications under this paragraph or for dealing with a Trustee other than the one removed for disability based on these certifications.

J.      **Change of Situs.** The situs of the property of any trust created hereunder may be maintained in any jurisdiction, in the discretion of the Trustee (other than an Interested Trustee), and thereafter transferred at any time or times to any jurisdiction selected by the Trustee (other than an Interested Trustee). Upon any such transfer of situs, the trust estate of that trust may thereafter, at the election of the Trustee (other than an Interested Trustee) of said trust, be administered exclusively under the laws of (and subject, as required, to the exclusive supervision of the courts of) the jurisdiction to which it has been transferred. Accordingly, if the Trustee (other than an Interested Trustee) of any trust created hereunder elects to change the situs of any such

Private Settlement Agreemnt (PSA)

trust, said Trustee is hereby relieved of any requirement of having to qualify in any other jurisdiction and of any requirement of having to account in any court of such other jurisdiction.

## ARTICLE X
### Revocability of Trust and Rights Reserved

I reserve the rights listed in this article, each of which may be exercised whenever and as often as Grantor may wish.

A. **Amend or Revoke.** The right, to be exercised solely by an acknowledged instrument in writing, to revoke or amend this Second Trust Agreement or any trust hereunder, but only in the event an objection is filed by any beneficiary pursuant to Ohio Revised Code 5808.18. After expiration of the relevant objection time set forth in Ohio Revised Code 5808.18, this Second Trust Agreement shall become irrevocable.

## ARTICLE XI
### No Contest

A. **Effect of Attempted Contest.** In the event that any person (1) directly or indirectly contests or attacks this Second Trust Agreement or any trust or beneficial interest created hereunder, or (2) conspires with or voluntarily assists anyone associated with any such contest or attack, singly or in conjunction with any other person(s), then Grantor specifically disinherits such person and such person's descendants; all interests and properties given to or created for the benefit of such person and such person's descendants, directly or in trust, under this Second Trust Agreement, shall be forfeited, and such property shall be disposed as if such person and their descendants had predeceased the effective date of this trust.

B. **Acts Constituting a Contest.** The acts described below shall constitute a contest for purposes of this Article:

1. **Direct or Indirect Contest.** Such person unsuccessfully contests or, in any manner, attacks or seeks to impair or invalidate any provision of this Second Trust Agreement on any grounds whatsoever;

2. **Unsuccessful Claim of Entitlement.** Such person unsuccessfully claims entitlement to any asset of passing under this Second Trust Agreement based on any written, oral or implied contract, or any quantum meruit theory;

00313706-1    - 20 -                 **Page  99**

3.  **Challenge of Fiduciary Appointment.**  Such person unsuccessfully challenges the appointment of any person or entity named to serve as Trustee hereunder,;

4.  **Objection to Construction or Interpretation.**  Such person uses equitable action or legal process to object to any reasonable construction or interpretation of this Second Trust Agreementor any provision thereof that is adopted or proposed in good faith by the Trustee;

5.  **Assistance and Conspiracy.**  Such person conspires with or voluntarily assists anyone attempting to do any of these things, undertakes any of these things as an agent or fiduciary, undertakes to do any of these things through an agent or fiduciary, or would benefit from any action so undertaken by an agent or fiduciary and does not openly demand that such agent or fiduciary cease and desist from undertaking such action.

C.  **Expenses of Contest.**  Expenses to resist any contest or attack of any nature (including the acts described in the section above entitled "Acts Constituting a Contest.") upon any provision of this Second Trust Agreement shall be paid from the Trust Estate as an expense of administration or, if the contest or attack relates to a particular trust created hereunder, then from the property thereof as an expense of administration.  Such expenses shall include, but not be limited to, reasonable attorneys' fees and costs.  The Trustee is specifically authorized and encouraged vigorously to defend against any of the acts described in the section above entitled "Acts Constituting a Contest."

D.  **Miscellaneous.**  If any provision of this Article is void or ineffective, all other provisions shall remain in full force and effect.  A determination by the Trustee regarding the applicability of this Article shall be determinative, absent clear and convincing evidence that such determination was made in bad faith or was grossly negligent.  This Article may apply to a claim of incapacity, undue influence or improper execution if such claim is not ultimately sustained, or a creditor's claim, contract claim, tort claim, or other claim filed with the Trustee.

E.  **Withdrawal of Contest.**  Notwithstanding the foregoing, the provisions of this Article shall not apply unless and until the Trustee has given written notice of such fiduciary's intent to enforce the foregoing provisions against a particular person to such person or such person's authorized representative, and given such person the opportunity to voluntarily dismiss or withdraw any petition or action that such fiduciary deems to constitute a contest or to otherwise cooperate in defending or terminating a contest.  If such person dismisses or withdraws such petition, contest or other claim or takes other actions requested by such fiduciary within thirty (30)

business days after receipt of such notice, then this Article shall not apply with respect to such petition or contest or other claim; provided that such fiduciary shall have the broadest permissible discretion in terms of insisting on a particular form or scope of dismissal or withdrawal in order to ensure that the petition, contest or other claim will not reoccur.

      F.    **Determination to Allow Action.** The Trustee, in the exercise of sole and absolute discretion, may determine that a particular action should be allowed because Grantor would have wanted such action to be taken, even though such action otherwise would constitute a violation of this Article and otherwise would result in a forfeiture. If the Trustee shall make such a determination, and shall execute and acknowledge a document declaring a particular action is not subject to this Article, then this Article shall not apply to such action, but only to the extent expressly provided in such document.

## ARTICLE XII
## Savings Clause

      Should any of the provisions or directions of this Second Trust Agreement fail or be held ineffectual or invalid for any reason, it is my desire that no other portion or provision of this Second Trust Agreement be invalidated, impaired or affected thereby, but that this Second Trust Agreement be construed as if such invalid provision or direction had not been contained therein.

## ARTICLE XIII
## Captions

      The captions used in this Second Trust Agreement are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this Second Trust Agreement or the intent of any provision therein.

      I am familiar with and understand the contents of this Second Trust Agreement, including the paragraph entitled Special Trustee Liability Provision, and hereby confirm that such contents reflect my intent with respect to this Second Trust Agreement.

      IN WITNESS WHEREOF, the Trustee and Grantor, have signed this Second Trust Agreement, effective the day and year first above written and executed by each of us on the dates set forth below.

Dated: June _____, 2020

_____
Robert E. Weir, as Grantor

Dated: June _____, 2020

_____
Adam M. Knolls, as Trustee

_____
Signature of Witness

_____
Name of Witness

_____
Signature of Witness

_____
Name of Witness

| | |
|---|---|
| STATE OF OHIO | ) |
| | ) |
| FRANKLIN | ) |

I HEREBY CERTIFY that on June _____, 2020, before me, the subscriber, a Notary Public in and for Franklin, Ohio, personally appeared Robert E. Weir, as Grantor, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, and acknowledged that the foregoing instrument was executed by Robert E. Weir, as Grantor, for the purposes therein contained.

This is an acknowledgment certificate. No oath or affirmation was administered to the signer.

WITNESS my hand and notarial seal.

Dated: June _____, 2020

_____
Notary Public

_____
Print Name of Notary

My Commission Expires: _____

| | |
|---|---|
| STATE OF OHIO | ) |
| | ) |
| FRANKLIN | ) |

I HEREBY CERTIFY that on June _____, 2020, before me, the subscriber, a Notary Public in and for Franklin, Ohio, personally appeared Adam M. Knolls, as Trustee, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, and acknowledged that the foregoing instrument was executed by Adam M. Knolls, as Trustee, for the purposes therein contained.

This is an acknowledgment certificate. No oath or affirmation was administered to the signer.

WITNESS my hand and notarial seal.

Dated: June _____, 2020

_____

Notary Public

_____

Print Name of Notary

My Commission Expires: _____

Private Settlement Agreemnt (PSA)